

*Shareholder Meetings and Notice Thereof*

Under the Articles, we are required to hold a general meeting of shareholders each year in Luxembourg. The meeting is normally convened in April. In addition, the Board may call any number of extraordinary general meetings, which may be held in Luxembourg or elsewhere, although any extraordinary general meeting convened to amend the Articles will be held in Luxembourg. The Board of Directors is further obliged to call a general meeting of shareholders to be held within thirty days after receipt of a written demand therefor by shareholders representing at least one-fifth of the outstanding shares entitled to vote thereat.

The Articles require notice of any general meeting to be sent by first class mail, postage prepaid, to all shareholders at least twenty days prior to such meeting. Shareholders may be represented by written proxy, provided the written proxy is deposited with us at our registered office in Luxembourg, or with any of our Directors, at least five days before the meeting.

*Dividends*

Under the Articles, holders of Common Shares and Founder's Shares participate in annual dividends, if any are declared, in the following order of priority:

- $0.005 per share to Founder's Shares and Common Shares equally;
- thereafter, all further amounts are payable to Common Shares only.

Interim dividends can be declared up to three times in any fiscal year by the Board of Directors. Interim dividends can be paid, but only after the prior year's financial statements have been approved by the shareholders at a general meeting, and any such interim dividend must be approved by our independent auditors. Final dividends are declared once a year at the annual general meeting of the shareholders. Interim and final dividends on Common Shares and Founder's Shares can be paid out of earnings, retained and current, as well as paid-in surplus.

Luxembourg law authorizes the payment of stock dividends if sufficient surplus exists to provide for the related increase in stated capital or the par value of the shares issued in connection with any stock dividend. Luxembourg law requires that 5% of our unconsolidated net profits each year be allocated to a legal reserve before declaration of dividends. This requirement continues until the reserve is 10% of our stated capital, as represented by the Common Shares, after which no further allocations are required until further issuance of shares.

The legal reserve may also be satisfied by allocation of the required amount at the time of issuance of shares or by a transfer from paid-in surplus. The legal reserve is not available for dividends. The legal reserve for all of our existing Common Shares has heretofore been satisfied and appropriate allocations will be made to the legal reserve account at the time of each new issuance of Common Shares.

*Liquidation Preference*

Under the Articles, in the event of a liquidation, all of our debts and obligations must first be paid, and thereafter all of our remaining assets are paid to the holders of Common Shares and Founder's Shares in the following order of priority:

- Common Shares ratably to the extent of the stated value thereof (e.g. $1.00 per share);
- Common Shares and Founder's Shares participate equally up to $0.05 per share; and
- thereafter, Common Shares are entitled to all remaining assets.

*Equal Treatment Provision*

If we merge, consolidate or enter into any similar transaction with another entity or such other entity will remain the survivor, the Common Shares held by holders other than holder(s) of Founder's Shares shall be entitled to receive consideration which is no less per share than the consideration per share received by the holder(s) of Founder's Shares, the latter per share amount to be determined by dividing the aggregate of all consideration received by such holder(s) for all shares owned by them, including Founder's Shares, by the total number of Common Shares which they own.

*Restrictions on Shareholders*

Our Articles of Incorporation provide that in recognition of the fact that certain shareholdings may threaten us with "imminent and grave damage", which term includes adverse tax consequences, a hostile takeover attempt or adverse governmental sanctions,

(i) no U.S. Person (as defined in the Articles) shall own, directly or indirectly, more than 9.9% of our outstanding shares,

(ii) all shareholders who are U.S. Persons may not own, directly or indirectly, more than 49.9% of our outstanding shares (including for these purposes the shares of U.S. Persons who were shareholders as of August 31, 1987),

(iii) all shareholders of any single country may not own, directly or indirectly, more than 49.9% of our outstanding shares, and

(iv) no person may own, directly or indirectly, more than 20% of our outstanding shares unless a majority of the Board shall have authorized such shareholding in advance.

The Articles provide that the foregoing restrictions, except as specified in (iii) above, shall not apply to any person who was a shareholder as of August 31, 1987, or certain Affiliates or Associates (as such terms are defined in the Articles) of such person.

*Change in Control*

Except as described above, there are no provisions in our Articles of Incorporation that would have the effect of delaying, deferring or preventing a change in control of Stolt-Nielsen and that would only operate with respect to a merger, acquisition or corporate restructure involving us or any of our subsidiaries.

*Non-Luxembourg Shareholders*

There are no limitations under Luxembourg law on the rights of non-residents to hold or vote our shares.

**Material Contracts**

We have not entered into a material contract, other than contracts entered into in the ordinary course of business, since May 30, 2000.

**Exchange Controls**

We have been advised by Elvinger, Hoss & Prussen, our Luxembourg counsel, that at the present time there are no exchange controls in existence in Luxembourg which would restrict the export or import of capital, including but not limited to, foreign exchange controls, or affect our ability to make payments of dividends, interest or other amounts to non-resident holders of Common Shares.

**Limitations Affecting Shareholders**

Our Articles of Incorporation (the "Articles") provide restrictions on the shareholdings of certain persons. In particular, the Articles provide that the following restrictions shall apply to Persons (defined to include any individual, firm, corporation, or other entity, and certain associates and affiliates thereof) who became shareholders on or after September 1, 1987: (i) no one U.S. Person (including any person who is a citizen or resident of the U.S., a corporation organized under the laws of the U.S., or any State thereof, a corporation organized under the laws of any other jurisdiction whose shares are owned by U.S. Persons, a partnership organized under the laws of any State of the U.S. and certain trusts and estates) may own, directly or indirectly, more than 9.9% of our outstanding shares; (ii) all shareholders who are U.S. Persons may not own, directly or indirectly, more than 49.9% (including for these purposes shares held by Persons who were shareholders prior to September 1, 1987) of our outstanding shares in the aggregate; (iii) no more than 49.9% (including for these purposes shares held by Persons who were shareholders prior to September 1, 1987) of our shares shall, in the aggregate, be owned by all shareholders of any particular country (including any person who is a citizen or resident of any such country, a corporation, partnership, association, or other entity organized or created under the laws of any such country and certain trusts and estates); and (iv) no Person may own, directly or indirectly, more than 20% of our outstanding shares unless a majority of the Board shall have approved such shareholding in advance.

In addition to the restrictions on shareholders described above, the Board is authorized to restrict, reduce or prevent the ownership of our shares if it appears to the Board that such ownership may threaten us with "imminent and grave damage". Luxembourg Company Law does not provide a specific definition of imminent and grave damage, but instead leaves the interpretation of the phrase within the Board's discretion. We have been advised by our Luxembourg counsel, Elvinger, Hoss & Prussen, that there are no Luxembourg judicial interpretations of the phrase, but that situations involving hostile takeovers, adverse tax consequences to Stolt-Nielsen or governmental sanctions are likely to be among the situations covered by such phrase.

In order to enforce the foregoing restrictions, the Articles empower the Board to take certain remedial action including causing us: (i) to decline to register any prohibited transfer; (ii) to decline to recognize any vote of a shareholder precluded from holding shares; (iii) to require any shareholder on our Register of Shareholders or any prospective shareholder to provide information to determine whether such person is precluded from holding shares; and (iv) upon the issuance of a notice, to require the sale of shares to us at the lesser of (A) the amount paid for the shares if acquired within the twelve months immediately preceding the date of the notice, and (B) the last quoted price for the shares on the day immediately preceding the day on which the notice is served (provided that the Board may in its discretion pay the amount calculated under (B) in situations where (A) would otherwise apply and result in a lower purchase price, if the Board determines it equitable after taking into account specified factors) and to remove the name of any shareholder from the Register of Shareholders immediately after the close of business on the day the notice is issued and payment is made available.

Our form of share certificate requires a certification to be made upon the transfer of ownership regarding the citizenship of the transferee. The certification is intended to assist us in enforcing the restrictions described above.

**Taxation**

*Luxembourg Taxation*

The following is intended only as a general summary of certain tax considerations affecting dividend payments by us relevant to prospective investors in Stolt-Nielsen. It does not constitute and

57

should not be construed to constitute legal or tax advice to any such investor. Prospective investors are therefore urged to consult their own tax advisers with respect to their particular circumstances. Double taxation treaties may contain rules affecting the description in this summary.

*Stolt-Nielsen*

We are a holding company under the law of July 31, 1929 of Luxembourg and are eligible for the following taxation provided for by the decree of December 17, 1938. An annual tax on all amounts paid by us on interest payments made on bonds or debentures issued by us would be levied at the rate of 3% on such interest payments. We have not and do not contemplate issuing bonds or debentures so that this tax on interest is unlikely to become relevant. Additionally an annual tax on all amounts paid by us as dividends and non-resident Directors' fees will be computed on the following basis:

(i) 3% of the first 2,400,000€ or the equivalent thereof;

(ii) 1.8% of the next 1,200,000€; and

(iii) 0.1% of any balance;

with a minimum annual tax of 48,000€. These taxes are paid by us.

Subject to the foregoing, we, as a Luxembourg holding company, are not liable under present Luxembourg law for any income tax, withholding tax, capital gains tax, estate or inheritance tax, or any other tax (except for a contribution tax of 1% on issues of share capital), calculated by references to our capital, assets or income.

*Shareholders*

Under present Luxembourg law, so long as we maintain our status as a holding company, no income tax, withholding tax, capital gains tax, estate or inheritance tax is payable in Luxembourg by shareholders in respect of our common shares, except for shareholders domiciled, resident (or, in certain circumstances, formerly resident) or having a permanent establishment in Luxembourg.

Shareholders domiciled or resident in Luxembourg (except holding companies) or who have a permanent establishment in Luxembourg with whom the holding of our common shares is effectively connected, have to include the dividend received in their taxable income during the relevant period.

Physical persons domiciled or resident in Luxembourg are not subject to taxation of capital gains unless the disposal of our common shares preceded the acquisition or the disposal occurs within 6 months following the acquisition of our common shares. Physical persons domiciled or resident in Luxembourg who own more than 10% (the limit being 25% for those participations which had been acquired prior to fiscal year 2002 and disposed of at the latest during fiscal year 2007) of the issued common shares are liable to taxation on capital gains even after the 6 months holding and physical persons who were formerly residents or domiciled in Luxembourg will remain so liable during a period of 5 years after they have given up their domicile or residence in Luxembourg or their holding has been reduced below 10% (the limit being 25% for those participations which had been acquired prior to fiscal year 2002 and disposed of at the latest during fiscal year 2007) provided they had their domicile or residence in Luxembourg for more than 15 years.

Income and capital gains on common shares which are included in the assets of a trade or business of a physical person domiciled or resident in Luxembourg or in the permanent establishment in Luxembourg of a non-resident and income and capital gains on common shares which are held by Luxembourg corporations (other than holding companies) will be included in the taxable income of the relevant taxpayers.

There is no Luxembourg transfer duty or stamp tax applicable on sales acquisitions of the common shares.

*U.S. Federal Income Taxation*

The following is a summary of the principal U.S. federal income tax consequences that may be relevant with respect to the acquisition, ownership and disposition of Common Shares or ADSs. This summary addresses only the U.S. federal income tax considerations of holders that will hold Common Shares or ADSs as capital assets. This summary does not address tax considerations applicable to holders that may be subject to special tax rules, such as financial institutions, insurance companies, real estate investment trusts, regulated investment companies, grantor trusts, dealers or traders in securities or currencies, tax-exempt entities, persons that received Common Shares or ADSs as compensation for the performance of services, persons that will hold Common Shares or ADSs as part of a "hedging" or "conversion" transaction or as a position in a "straddle" for U.S. federal income tax purposes, persons that have a "functional currency" other than the U.S. dollar or holders that own (or are deemed to own) 10% or more (by voting power or value) of our stock. Moreover, this summary does not address the U.S. federal estate and gift or alternative minimum tax consequences of the acquisition, ownership and disposition of Common Shares or ADSs. This summary (i) is based on the Internal Revenue Code of 1986, as amended (the "Code"), U.S. Treasury Regulations and judicial and administrative interpretations thereof, in each case as in effect and available on the date of this Report. All of the foregoing are subject to change, which change could apply retroactively and could affect the tax consequences described below.

The U.S. Treasury Department has expressed concern that depositaries for American depositary receipts, or other intermediaries between the holders of shares of an issuer and the issuer, may be taking actions that are inconsistent with the claiming of U.S. foreign tax credits by U.S. holders of such receipts or shares. Accordingly, the analysis regarding the availability of a U.S. foreign tax credit for Luxembourg taxes and sourcing rules described below could be affected by future actions that may be taken by the U.S. Treasury Department.

For purposes of this summary, a "U.S. Holder" is a beneficial owner of Common Shares or ADSs that, for U.S. federal income tax purposes, is: (i) a citizen or resident of the U.S., (ii) a partnership or corporation created or organized in or under the laws of the U.S. or any state thereof (including the District of Columbia), (iii) an estate the income of which is subject to U.S. federal income taxation regardless of its source or (iv) a trust if such trust validly elects to be treated as a U.S. person for U.S. federal income tax purposes or if (x) a court within the U.S. is able to exercise primary supervision over its administration and (y) one or more U.S. persons have the authority to control all of the substantial decisions of such trust. A "Non-U.S. Holder" is a beneficial owner (or, in the case of a partnership, a holder) of Common Shares or ADSs that is not a U.S. Holder.

Each holder is urged to consult its own tax advisor with respect to the U.S. federal, state, local and foreign tax consequences of acquiring, owning or disposing of Common Shares.

*Ownership of ADSs in General*

For U.S. federal income tax purposes, a holder of ADSs generally will be treated as the owner of the Common Shares represented by such ADSs.

*Foreign Personal Holding Company Status*

Stolt-Nielsen is a "foreign personal holding company" for U.S. federal income tax purposes. As a result, U.S. Holders would be subject to U.S. federal income tax on their share of any undistributed foreign personal holding company income (generally, taxable income calculated as if we were a U.S. corporation, subject to adjustments for any dividends paid and certain other items) received by us but not actually distributed to shareholders. To the extent that a U.S. Holder were required to include amounts in income under this rule, such amounts would be added to the tax basis of the Common Shares or ADSs held by such U.S. Holder. We have made distributions in an amount sufficient to

eliminate undistributed foreign personal holding company income in the past and, subject to compliance with certain financing covenants limiting its ability to pay dividends, we intend to distribute all such income it may receive in the future.

*Distributions*

Subject to the discussion above under "Foreign Personal Holding Company Status", the gross amount of any distribution by Stolt-Nielsen of cash or property (other than certain distributions, if any, of Common Shares distributed pro rata to all shareholders of Stolt-Nielsen, including holders of ADSs) with respect to Common Shares or ADSs will be includible in income by a U.S. Holder as dividend income to the extent such distributions are paid out of the current or accumulated earnings and profits of Stolt-Nielsen as determined under U.S. federal income tax principles. Such dividends will not be eligible for the dividends received deduction generally allowed to corporate U.S. Holders. Subject to the discussion above under "Foreign Personal Holding Company Status", to the extent, if any, that the amount of any distribution by Stolt-Nielsen exceeds our current and accumulated earnings and profits as determined under U.S. federal income tax principles, it will be treated first as a tax-free return of the U.S. Holder's adjusted tax basis in the Common Shares or ADSs and thereafter as capital gain.

Dividends received by a U.S. Holder with respect to Common Shares or ADSs will be treated as foreign source income, which may be relevant in calculating such holder's foreign tax credit limitation. The limitation on foreign taxes eligible for credit is calculated separately with respect to specific classes of income. For this purpose, dividends distributed by Stolt-Nielsen generally will constitute "passive income", or, in the case of certain U.S. Holders, "financial services income".

Subject to the discussion below under "Backup Withholding Tax and Information Reporting Requirements," a Non-U.S. Holder of Common Shares or ADSs generally will not be subject to U.S. federal income or withholding tax on dividends received on Common Shares or ADSs, unless such income is effectively connected with the conduct by such Non-U.S. Holder of a trade or business in the U.S.

*Sale or Exchange of Common Shares or ADSs*

A U.S. Holder generally will recognize gain or loss on the sale or exchange of Common Shares or ADSs equal to the difference between the amount realized on such sale or exchange and the U.S. Holder's adjusted tax basis in the Common Shares or ADSs. Such gain or loss will be capital gain or loss. In the case of a noncorporate U.S. Holder, the maximum marginal U.S. federal income tax rate applicable to such gain will be lower than the maximum marginal U.S. federal income tax rate applicable to ordinary income if such U.S. Holder's holding period for such Common Shares or ADSs exceeds one year and will be further reduced if such holding period exceeds five years. Gain or loss, if any, recognized by a U.S. Holder generally will be treated as U.S. source income or loss for U.S. foreign tax credit purposes. The deductibility of capital losses is subject to limitations.

Subject to the discussion below under "Backup Withholding Tax and Information Reporting Requirements," a Non-U.S. Holder of Common Shares or ADSs generally will not be subject to U.S. federal income or withholding tax on any gain realized on the sale or exchange of such Common Shares or ADSs unless (i) such gain is effectively connected with the conduct by such Non-U.S. Holder of a trade or business in the U.S. or (ii) in the case of any gain realized by an individual Non-U.S. Holder, such holder is present in the U.S. for 183 days or more in the taxable year of such sale or exchange and certain other conditions are met.

*Backup Withholding Tax and Information Reporting Requirements*

U.S. backup withholding tax and information reporting requirements generally apply to certain payments to certain noncorporate holders of stock. Information reporting generally will apply to

payments of dividends on, and to proceeds from the sale or redemption of, Common Shares or ADSs made within the U.S. to a holder of Common Shares or ADSs (other than an "exempt recipient", including a corporation, a payee that is not a U.S. person that provides an appropriate certification and certain other persons). A payor will be required to withhold 31% of any payments of dividends on, or the proceeds from the sale or redemption of, Common Shares or ADSs within the U.S. to a holder (other than an "exempt recipient") if such holder fails to furnish its correct taxpayer identification number or otherwise fails to comply with, or establish an exemption from, such backup withholding tax requirements.

THE ABOVE SUMMARY IS NOT INTENDED TO CONSTITUTE A COMPLETE ANALYSIS OF ALL TAX CONSEQUENCES RELATING TO ACQUISITION, OWNERSHIP AND DISPOSITION OF SHARES OR ADSs. PROSPECTIVE PURCHASERS AND HOLDERS OF SHARES OR ADSs ARE URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE TAX CONSEQUENCES OF THEIR PARTICULAR SITUATIONS.

**Documents on Display**

We are subject to the informational requirements of the Securities Exchange Act of 1934 applicable to foreign private issuers and, in accordance with these requirements, we file reports with the Securities and Exchange Commission. As a foreign private issuer, we are exempt from the rules under the Exchange Act relating to the furnishing and content of proxy statements, and our officers, directors and principal shareholders are exempt from the reporting and short-swing profit recovery provisions contained in Section 16 of the Exchange Act. In addition, we are not required under the Exchange Act to file periodic reports and financial statements with the Commission as frequently or as promptly as U.S. companies whose securities are registered under the Exchange Act.

You may read and copy any documents that we file with the Commission, including this Report and the related exhibits, without charge at the Commission's public reference room at 450 Fifth Street, N.W., Washington D.C. 20549 and at the Commission's regional office at Citicorp Center, 500 West Madison Street, Suite 1400, Chicago, Illinois 60661. You may also obtain copies of the documents at prescribed rates by writing to the Public Reference Section of the Commission at 450 Fifth Street, N.W., Washington D.C. 20549. Please call the Commission at 1-800-SEC-0330 for further information on the pubic reference room. In addition, this Report and the related exhibits are publicly available through the website maintained by the Commission at www.sec.gov.

**Item 11. Quantitative and Qualitative Disclosures about Market Risk**

The information included under the caption "Management's Discussion and Analysis—Market Risk" on page 27 of our 2001 Annual Report filed with the Securities and Exchange Commission on Form 6-K on April 9, 2002 is incorporated herein by reference.

**Item 12. Description of Securities Other than Equity Securities.**

Not applicable.

## PART II

**Item 13. Defaults, Dividend Arrearages and Delinquencies.**

None.

**Item 14. Material Modifications to the Rights of Security Holders and Use of Proceeds.**

On March 7, 2001, we reclassified our non-voting Class B Shares to Common Shares on a one-for-one basis. See "Introduction."

**Item 15. [Reserved]**

**Item 16. [Reserved]**

# PART III

## Item 17. Financial Statements.

We have elected to provide financial statements for the fiscal year ended November 30, 2001 and the related information pursuant to Item 18.

## Item 18. Financial Statements.

### Consolidated Financial Statements

Report of Independent Public Accountants

Consolidated Statements of Income for the years ended November 30, 2001, 2000 and 1999

Consolidated Balance Sheets as of November 30, 2001 and 2000

Consolidated Statements of Shareholders' Equity for the years ended November 30, 2001, 2000 and 1999

Consolidated Statements of Cash Flows for the years ended November 30, 2001, 2000 and 1999

Notes to Consolidated Financial Statements

Our Consolidated Financial Statements and related notes referred to above and the report of Arthur Andersen LLP, our independent public accountants, attached as an exhibit to this Report, are incorporated herein by reference to our Consolidated Financial Statements filed with the Commission on Form 6-K/A on May 31, 2002.

### Supplementary Schedules

Report of Independent Public Accountants on Schedules

Schedule II-Valuation and Qualifying Accounts

**Item 19. Exhibits.**

1.1   Amended and Restated Articles of Incorporation. Incorporated by reference to Stolt-Nielsen's Annual Report on Form 20-F for the fiscal year ended November 30, 2000, filed with the Securities and Exchange Commission on May 30, 2001.

2.1   Deposit Agreement among Stolt-Nielsen S.A., Citibank, N.A., as Depositary and the holders and beneficial owners of American Depositary Receipts. Incorporated by reference to Stolt-Nielsen's Registration Statement on Form F-6 filed with the Securities and Exchange Commission on December 21, 1995.

2.2   Form of American Depositary Receipt (included in Exhibit 2.1).

8.1   Significant subsidiaries as of the end of the year covered by this Report: See "Significant Subsidiaries" under "Item 4. Information on the Company."

10.1  Consent of Arthur Andersen LLP, Independent Public Accountants.

10.2  Consent of Elvinger, Hoss & Prussen.

10.3  Stolt-Nielsen 2001 Annual Report, pages 19 through 30.

10.4  Consolidated Financial Statements and report of Arthur Andersen.

10.5  Financial Data Schedule.

99.1  Letter of Stolt-Nielsen, addressed to the Securities and Exchange Commission, regarding representations to Stolt-Nielsen by Arthur Andersen.

## SIGNATURES

The registrant hereby certifies that it meets all of the requirements for filing on Form 20-F and that it has duly caused and authorized the undersigned to sign this annual report on its behalf.

STOLT-NIELSEN S.A.

By: /s/ NIELS G. STOLT-NIELSEN
    Name: Niels G. Stolt-Nielsen
    Title: Chief Executive Officer

By: /s/ JAN CHR. ENGELHARDTSEN
    Name: Jan Chr. Engelhardtsen
    Title: Chief Financial Officer

Date: May 31, 2002

(This page has been left blank intentionally.)

## INDEX TO REPORT OF INDEPENDENT PUBLIC ACCOUNTANTS
## AND SUPPLEMENTARY SCHEDULE

Report of Independent Public Accountants .................................... F-2

Supplementary Schedule

Schedule II—Valuation and Qualifying Accounts ................................ F-3

**REPORT OF INDEPENDENT PUBLIC ACCOUNTANTS**

To STOLT-NIELSEN S.A.

We have audited in accordance with auditing standards generally accepted in the United States, the consolidated financial statements included in Stolt-Nielsen S.A.'s Annual Report to Shareholders incorporated by reference in this Form 20-F, and have issued our report thereon dated January 30, 2002. Our audits were made for the purpose of forming an opinion on those statements taken as a whole. The schedule listed in the Index on page F-1 is the responsibility of the Company's management and is presented for purposes of complying with the Securities and Exchange Commission's rules and is not part of the basic consolidated financial statements. This schedule has been subjected to the auditing procedures applied in the audits of the basic consolidated financial statements and, in our opinion, fairly states in all material respects the financial data required to be set forth therein in relation to the basic consolidated financial statements taken as a whole.

/s/ ARTHUR ANDERSEN LLP

New York, New York
January 30, 2002

SCHEDULE II

## STOLT-NIELSEN S.A. AND SUBSIDIARIES
## VALUATION AND QUALIFYING ACCOUNTS
(amounts in thousands)

|  | Balance at Beginning of Period | Charged to Costs and Expenses | Write Offs Against the Reserve | Other Add (Deduct)(a) | Balance at End of Period |
|---|---:|---:|---:|---:|---:|
| **For the year ended November 30, 1999:** | | | | | |
| Allowance for doubtful accounts | $ 9,185 | $ 2,983 | $(1,307) | $ (148) | $10,713 |
| Other | 39,396 | 14,251 | (3,914) | (8,150) | 41,583 |
| **For the year ended November 30, 2000:** | | | | | |
| Allowance for doubtful accounts | $10,713 | $ 3,081 | $(1,121) | $ (218) | $12,455 |
| Other | 41,583 | 18,719 | (5,000) | 1,628 | 56,930 |
| **For the year ended November 30, 2001:** | | | | | |
| Allowance for doubtful accounts | $12,455 | 5,477 | (3,379) | 621 | $15,174 |
| Other | 56,930 | 5,130 | (4,393) | (2,771) | 54,896 |

(a) Includes the effect of exchange rate changes on beginning balances of valuation and qualifying accounts, except as otherwise noted.

Case 3:03-cv-00409-DJS   Document 30-14   Filed 10/27/2003   Page 16 of 16