UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Joel Menkes, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Stolt-Nielsen S.A., *et al.*, <br><br> *Defendants*. | Civ. Action No. 3:03 CV 409 (DJS) <br><br> January 16, 2004 |

### DEFENDANTS' REPLY MEMORANDUM
### IN SUPPORT OF THEIR MOTION TO DISMISS
### THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs' opposition brief confirms that (i) "[t]he federal securities laws indeed impose no requirement that an issuer engage in public *mea culpas*" (Opp. at 1), and (ii) Plaintiffs have alleged no facts satisfying the heightened pleading standards mandated by the PSLRA. The Complaint must be dismissed in its entirety.

**I.   PLAINTIFFS CONCEDE THAT THE SECURITIES LAWS DO NOT REQUIRE DEFENDANTS TO "ENGAGE IN PUBLIC *MEA CULPAS*"**

While Plaintiffs candidly concede that the securities laws do not require issuers to "engage in public *mea culpas*," Plaintiffs nonetheless assert that Defendants here had an obligation to disclose their alleged wrongdoing. To support their contention, Plaintiffs rely principally on *In re Sotheby's Holdings, Inc. Securities Litigation*, No. 00 Civ. 1041 (DLC), 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000), but that case is fundamentally unlike the instant one.

In *Sotheby's*, the court expressly acknowledged that "there is no general duty under SEC regulations for corporations to disclose uncharged illegal conduct." 2000 WL 1234601, at *4. The court recognized, however, that when a corporation "'does make a disclosure — whether it

be voluntary or required — there is a duty to make it complete and accurate.'" *Id.* (quoting *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 26 (1st Cir. 1987)). Consequently, the *Sotheby's* court declined to dismiss the complaint before it because there were allegations that Sotheby's had affirmatively represented in its securities filings that it was engaging in "'*intense*' competition with its 'primary auction competitor,' Christie's," when in fact Sotheby's and Christie's had "eliminated price competition between the two houses." *Id.* at *4. The court held that Sotheby's' bold "*affirmative* statements" regarding competition "triggered the requirement to disclose the illegal conduct." *Id.* (emphasis added); *see also Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 366 (3d Cir. 2002) (reversing dismissal because "Pinker's complaint points to press releases and annual and semi-annual reports issued by Roche in which it described competition in the vitamin market as, among other things, '*fiercely*' and '*highly*' competitive.") (emphasis added). Thus, *Sotheby's* concerned the accuracy of affirmative statements as to the intensity of competition, rather than a general failure to disclose uncharged wrongdoing.

Plaintiffs here cannot point to any affirmative statement in SNSA's public filings that characterizes the level of competition in SNTG's parcel tanker business as "intense" or otherwise. The only statement Plaintiffs point to is one observing that SNSA's "tanker operations compete with operators based primarily in Europe and the Asia Pacific region." Opp. at 12. But this statement is completely devoid of any characterization of the level or intensity of competition, either generally or against specific competitors with which SNTG is alleged to have colluded. The focus of the SNSA statement is merely the geographic location of competitors. Accepting the allegations of the Complaint as true, the statement cited by Plaintiffs is accurate. The Complaint does not dispute that SNSA's tanker operations competed with other companies in Europe or Asia Pacific.

Plaintiffs flatly mischaracterize the *Sotheby's* holding. According to Plaintiffs, the *Sotheby's* court ruled that Sotheby's "breached its duty to disclose," because "like SNSA and SNTG here, Sotheby's public statements attributed improved revenue to legitimate causes, when in fact, the complaint alleged that the improved revenues flowed from 'illegal collusion.'" Opp. at 11-12. In fact, the *Sotheby's* court expressly declined to rule on this point: "Given the conclusion that the statements regarding competition give rise to a duty to disclose, the Court need not reach the issue[] of [] whether Sotheby's statements regarding the reasons for growth in revenues and earnings . . . also triggered a duty to disclose the alleged price fixing agreement." 2000 WL 1234601, at *4 n.3.

As noted in Defendants' moving memorandum — and unrefuted by Plaintiffs — to allow this Complaint to proceed would impose upon corporations, their directors and senior executives, a duty to self-report wrongdoing (or possible wrongdoing), regardless of the consequences to the corporation, lest non-disclosers be charged with securities fraud. Mem. at 7. Such requirement, however, "would make a silly, unworkable rule." *Amalgamated Clothing and Textile Workers Union v. J.P. Stevens and Co., Inc.*, 475 F. Supp. 328, 332 (S.D.N.Y. 1979), *vacated as moot*, 638 F.2d 7 (2d Cir. 1980). In practical terms, it would mean that any possible violation of a federal statute or regulation would create an overarching securities law private right of action. And it would routinely require a "case within a case" in securities actions: a plaintiff would have to prove the underlying wrongdoing as a predicate to establishing a securities law violation. Such is not the intent of the securities laws. *See Common Sense Legal Reform Act of 1995*, H.R. Rep. No. 104-50, pt. 1, at 14 (1995) (Majority Report) (House Committee on Commerce urging securities reform and noting: "The federal securities laws specifically endow the Securities and

Exchange Commission (SEC) with broad regulatory and enforcement powers. In contrast, however, Congress wrote quite narrowly in authorizing private parties to file lawsuits.").[1]

Additionally — although Plaintiffs concede that Regulation S-K compels (i) the disclosure by corporations of "material *pending* legal proceedings," and "proceedings known to be contemplated by governmental authorities," and (ii) the disclosure by directors and senior executives of pending legal proceedings (Mem. at 4 (quoting Regulation S–K) (emphasis added)) — Plaintiffs argue that Item 101(d)(3) of Regulation S-K and SEC Form 20-F compelled Defendants to disclose alleged legal wrongdoing *before* any investigations were even pending. *See* Opp. at 9-10, 13-16. Notably, Plaintiffs cite *no* cases supporting this novel contention. In fact, as reflected in Defendants' moving brief, courts have held that Regulation S-K does not require such disclosures *before* governmental proceedings or investigations are initiated. *See* Mem. at 2-4. Indeed, had the SEC intended companies to disclose possible wrongdoing even before Government investigations were imminent, it would have expressly required as much in its regulations, rather then *expressly limiting* the disclosure requirement to "pending legal proceedings" or "proceedings known to be contemplated by governmental authorities."

---

[1] On the duty to disclose issue, Plaintiffs — in footnotes and without analysis — cite other cases that are equally inapposite: *In re Craftmatic Securities Litigation*, 890 F.2d 628, 640 and n.16 (3d Cir. 1990) (duty to disclose issue was not before the court as that was not the basis for the district court's dismissal; passing reference in footnote to duty to disclose); *In re Par Pharmaceutical, Inc. Securities Litigation*, 733 F. Supp. 668, 672-74 (S.D.N.Y. 1990) (allegations that defendant corporation failed to promptly notify the investing public that it was under investigation for bribery; when it finally disclosed the investigation, it expressly denied the allegations); *Ballan v. Wilfred American Education Corp.*, 720 F. Supp. 241, 244 (E.D.N.Y. 1989) (allegations that defendants failed to "disclose the investigations in any documents likely to be received by shareholders or the investing public," and that defendants "launched a scheme to conceal the investigations and to mislead shareholders and the investing public . . ."); *Greenfield v. Professional Care, Inc.*, 677 F. Supp. 110, 112-13 (E.D.N.Y. 1987) (involving allegations that, among other things, defendants failed to disclose a state investigation into Medicaid fraud); *Warner Communications, Inc. v. Murdoch*, 581 F. Supp. 1482, 1490-91 (D. Del. 1984) (court dismissed plaintiffs' Rule 10b-5 claim that defendants breached their duty to disclose management's "entrenchment plan," and acknowledged that "the federal securities laws do not impose a duty upon parties to publicly admit the culpability of their actions").

## II. PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE THAT DEFENDANTS ACTED WITH SCIENTER

As Defendants' moving memorandum carefully explains (Mem. at 9-12), scienter can be established either by alleging (i) "motive and opportunity to commit fraud," or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Disregarding *Shields*, Plaintiffs argue, without analysis, that they have adequately pleaded scienter *as to the embargo allegations*. Opp. at 18-20. (Plaintiffs say practically nothing about the antitrust allegations, all but conceding their insufficiency).[2] But Plaintiffs never even mention, let alone discuss, *how* they satisfy either *Shields* test. In fact, the words "motive and opportunity," or "strong circumstantial evidence of conscious misbehavior or recklessness" appear nowhere in the opposition memorandum. Plaintiffs fail to discuss either test because their Complaint can satisfy neither.

Moreover, Plaintiffs do not deny that their Complaint also disregards *Chill v. General Electric Corp.*, 101 F.3d 263 (2d Cir. 1996), and improperly blurs the juridical distinction between SNSA and its subsidiary SNTG. Mem. at 9. Nor do Plaintiffs deny that the factual bases for Plaintiffs' allegations — newspaper articles and a Government affidavit — relate solely to conduct at SNTG, not SNSA. *See Id.*

Plaintiffs claim that SNTG and SNSA both engaged in "deliberate illegal conduct" by violating embargo restrictions. Opp. at 18.[3] (Again, Plaintiffs do not dispute the inadequacy of

---

[2] If the Complaint now hinges on allegations of embargo violations, assuming a duty to disclose, such failure cannot possibly be material given the relatively few shipments alleged.

[3] Plaintiffs cite (but do not discuss) *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) for the proposition that securities plaintiffs "may adequately plead scienter by alleging deliberate illegal conduct." Opp. at 18 and n.72. But the complaint in *Novak* satisfied scienter because plaintiffs specifically alleged that defendants "discussed the need" to comply with accounting guidelines, "but refused to do so because that would damage the Company's financial prospects." *Id.* at 311-12. Here, Plaintiffs nowhere tether their formulaic recitations of liability to any factual allegations establishing "strong circumstantial evidence of conscious misbehavior or recklessness."

their antitrust allegations). But Plaintiffs never plead or explain precisely *what* embargo restrictions SNSA allegedly violated. Indeed, Plaintiffs do not cite a single embargo regulation that any Defendant violated. This is especially significant because the regulations governing trade with Cuba (31 C.F.R. Part 515), the Sudan (31 C.F.R. Part 538) and Iran (31 C.F.R. Part 560) are extremely complicated — especially for non-U.S. companies like SNSA and SNTG. Those regulations do not forbid all trade with those countries. Indeed, as non-U.S. entities, SNSA and SNTG *could* trade with those countries, to varying degrees, in ways that U.S. companies could not — a fact that Plaintiffs implicitly acknowledge (*see* Cmpl. ¶ 52 (describing how Defendants had structured trade with Iran to "insulate" U.S. operations)). Consequently, Plaintiffs' bare contention that SNSA and SNTG traded with those countries, breaking U.S. law — without more — does not satisfy the PSLRA's scienter requirement.

Plaintiffs also claim that SNTG's scienter was "imputed" to SNSA because SNSA's general counsel was supposedly "informed about SNTG's trading with Iran." Opp. at 18. In making this claim, Plaintiffs rely on paragraphs 54 and 62 of the Complaint.[4] But the Complaint only asserts that SNSA's general counsel was informed that "the new structure with Pickering in Singapore and Wingfield in Connecticut *risked* violating the U.S. embargo with Iran." Cmpl. ¶ 54 (emphasis added). This single ambiguous allegation represents Plaintiffs' *only effort* in their opposition to explain SNSA's scienter regarding the embargo violations.[5]

---

[4] Actually, paragraph 62 is not an independent allegation that SNSA's general counsel had knowledge of the alleged embargo violation; it merely restates the allegation in paragraph 54.

[5] To support their claim that the e-mail SNSA's general counsel "also received" was sufficient to impute scienter to SNSA (Cmpl. ¶ 54), Plaintiffs cite to *In re Atlantic Financial Management., Inc.*, 784 F.2d 29 (1st Cir. 1986). But *Atlantic Financial* is inapposite because that case deals with control-person liability under Section 20(a), and only mentions scienter in passing). Moreover, Plaintiffs' reliance on *Cromer Finance Ltd. v. Berger*, Nos. 00 Civ. 2284 (DLC), 00 Civ. 2498 (DLC), 2002 WL 826847, *3-8 (S.D.N.Y. May 2, 2002) is similarly misplaced. In that case, the court found that Deloitte Touche Tohmatsu could be held liable for the actions of one of its partners based on the complaint's specific allegations that the partner had "actual authority to act as Deloitte's agent when performing audit work." *Id.* at *4. By contrast, not only have Plaintiffs failed to allege that SNSA's general counsel *knew* that

Regarding the Individual Defendants, Plaintiffs do not dispute that the Complaint alleges *no* facts tying Niels G. Stolt-Nielsen to the alleged wrongdoing, establishing that he was aware of the alleged wrongdoing at SNTG when it occurred, or establishing that he made the statements attributed to him knowing they were false or misleading. Mem. at 9. Plaintiffs also do not dispute that the Complaint only mentions Jacob Stolt-Nielsen twice — in the caption, and to identify him as a defendant. *Id.* Nor do Plaintiffs dispute that the Complaint only mentions Reginald Lee to name him as a defendant, and to claim that SNTG's U.S. operations' insulation from the Iran trade ended when Lee was appointed to run SNTG. *Id.* at 12. Although Defendants specifically challenged the Complaint's scienter allegations regarding *each* of these Defendants, Plaintiffs muster no facts supporting scienter as to any of them. In fact, Plaintiffs only discuss — in an extremely cursory manner — Samuel Cooperman's alleged scienter. Opp. at 19-20. But as noted in Defendants' moving memorandum, the Complaint's factual allegations against Cooperman indicate that, contrary to Plaintiffs' conclusory allegations, Cooperman took active steps to remedy alleged wrongdoing.[6] Mem. at 11-12.

Instead of pointing to alleged facts actually supporting scienter, Plaintiffs merely claim that "where improprieties are alleged on key contracts, the inference of scienter is strong." Opp. at 19. To support this proposition, Plaintiffs merely cite (Opp. at 19 n.78) — but do not analyze — *In re Raytheon Securities Litigation*, 157 F. Supp. 2d 131, 148 (D. Mass. 2001), and *In re MicroStrategy, Inc. Securities Litigation*, 115 F. Supp. 2d 620, 634 (E.D. Va. 2000). The types of "key contracts" that those cases discuss, however, are open, detailed and written contracts —

---

U.S embargo restrictions actually were being violated, Plaintiffs have failed to allege any facts establishing that the conduct of SNSA's general counsel could bind an entire company — SNSA.

[6] Even the *Sotheby's* case — upon which Plaintiffs rely heavily — compels dismissal of the Complaint as to the Individual Defendants. *See* 2000 WL 1234601, at *7-*8 (dismissing complaint as to individual defendants because "boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter").

not antitrust agreements that may be hidden from senior executives or directors. Moreover, Plaintiffs do not allege that the key contracts that Defendants would have been aware of — actual shipping contracts — should have alerted any Defendant to antitrust violations.

### III. THE COMPLAINT DOES NOT SATISFY THE PSLRA'S HEIGHTENED PLEADING REQUIREMENTS

As Defendants' moving memorandum explains, *most* of the allegedly misleading statements identified in the Complaint relate to SNTG's tank container operations — *not* parcel tanker operations. Mem. at 12-16. Plaintiffs all but concede this point, and argue that there are at least *two* statements in their 106-paragraph Complaint that actually relate to the correct operational unit — paragraphs 68 and 70.[7] Opp. at 21. But, paragraph 68 of the Complaint, is not — as Plaintiffs present it — a seamless statement regarding parcel tanker operations. Plaintiffs have actually spliced two separate statements, from different parts of a press release, to craft one convenient quote.[8] And as with the bulk of allegations regarding public statements, the second block quote in paragraph 68 relates to tank container operations, not parcel tanker operations. The portion of paragraph 68 that does relate to parcel tankers merely says: "Income from operations for SNTG's parcel tanker division was $20.5 million in the first quarter of 2002 compared to $20.3 million in the first quarter of 2001." Moreover, paragraph 70 — from SNSA's Form 20-F filed May 31, 2002 — merely mentions that in 2000, SNTG had entered into

---

[7] Additionally, as noted in Defendants' moving memorandum, even if the allegations related to the correct operational unit, several paragraphs, including paragraph 68, are non-actionable forward-looking statements. *See* Mem. at 15-16, n.3. Although Plaintiffs assert the statements are not "meaningful" (Opp. at 23), they do not deny that the Complaint fails to allege that the corporate officers making the statements "had actual knowledge . . . that the statement[s] [were] false or misleading," 15 U.S.C. § 78u-5(c)(1)(B), rendering the statement non-actionable.

[8] The statement, according to the Complaint, is: "Excluding the restructuring charges, the Stolt-Nielsen Transportation Group reported results on par with the first quarter of last year. *Income from operations for SNTG's parcel tanker division was $20.5 million in the first quarter of 2002 compared to $20.3 million in the first quarter of 2001.*" Cmpl. ¶ 68 (emphasis from original omitted, new emphasis added). The emphasized portion of the statement comes from the fourth paragraph of the press release, whereas the un-emphasized portion comes from the second paragraph of the press release.

"co-service agreements" with three competitors.[9] Notably, Plaintiffs do not contend that either statement is false.[10] Under the PSLRA, Plaintiffs cannot seriously contend that these two innocuous passages save their Complaint from dismissal.

Plaintiffs next argue that "nowhere does the Complaint purport to limit its allegations of antitrust and embargo violations to just parcel tanker operations." Opp. at 22. But Plaintiffs do not deny, nor can they, that the factual bases of their Complaint — press articles and a Government affidavit — only discuss alleged wrongdoing in parcel tanker operations. After apparently scouring SNSA's public statements for something to salvage their misplaced allegations, Plaintiffs mischaracterize a statement in one of SNSA's Form 20-F's describing parcel tanker operations as being "fully integrated" with tank container operations. Opp. at 22; *id.* at n.87. In fact, the statement says: "SNTG offers fully integrated transport and logistic services including intercontinental parcel tanker, coastal parcel tanker, river parcel tanker, tank container, rail, and storage." Mem. Exh. B at 12. Then, implicitly conceding that they have no facts tying tank container operations to the alleged wrongdoing, Plaintiffs **speculate** that one "cannot assume that misconduct at SNTG was confined to the parcel tanker operations." Opp. at 22. As the Second Circuit made clear in *Chill v. General Electric Corp.*, 101 F.3d 263, 267 (2d Cir. 1996), Plaintiffs have no "license to base claims of fraud on speculation and conclusory allegations."

---

[9] Plaintiffs offer no facts to establish (i) any relationship between the co-service agreements and the alleged conspiracy, or (ii) the impropriety of such lawful and routine co-service agreements.

[10] Contrary to Plaintiffs' assertion, paragraph 69 is not enough to salvage the allegations in paragraph 68. *See* Opp. at 21. First, Paragraph 69 blindly asserts that "a material portion of Stolt's revenues was being generated through illegal conduct, thereby risking regulatory action against the Company," and that "the Company's success in re-signing certain shipping contracts stemmed in large part" from the antitrust conspiracy. Cmpl. ¶ 69. But Plaintiffs allege no facts supporting their assertions of materiality or the cause for the success of re-signing shipping contracts.

The Complaint makes clear that Plaintiffs had *no idea* that parcel tanker operations and tank container operations are entirely different operational units of SNTG. It makes no sense — and Plaintiffs know it — for Plaintiffs to recite public statements regarding an operational unit that was *not* accused of wrongdoing. Plaintiffs' attempt to salvage their Complaint strains credulity and makes a mockery of the heightened pleading standards of the PSLRA — effectively rendering those standards meaningless. If any complaint fails the particularity requirements of the PSLRA, it is certainly this one.

> DEFENDANTS STOLT-NIELSEN S.A.,
> STOLT-NIELSEN TRANSPORTATION
> GROUP LTD., JACOB STOLT-NIELSEN,
> NIELS G. STOLT-NIELSEN, SAMUEL
> COOPERMAN AND REGINALD J.R. LEE
>
> By: _/s/ Donna Nelson Heller_
> Donna Nelson Heller (ct06854)
> Patrick J. McHugh (ct14072)
> Finn Dixon & Herling LLP
> One Landmark Square
> Suite 1400
> Stamford, CT  06901-2689
> Tel: (203) 325-5000
> Fax: (203) 348-5777
> Email: dheller@fdh.com
> Email: pmchugh@fdh.com
>
> *Of Counsel*
> J. Mark Gidley
> Christopher M. Curran
> Jaime M. Crowe
> Peter J. Carney
> **WHITE & CASE LLP**
> 601 Thirteenth Street, N.W.
> Washington, DC 20005
> Tel: (202) 626-3600
> Fax: (202) 639-9355

## CERTIFICATION

I hereby certify that a true and correct copy of the foregoing was mailed, United States mail, first class, postage prepaid to the following on this the 16th day of January, 2003:

David Randall Scott, Esq.
Scott & Scott, LLC
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415

Marc A. Topaz, Esq.
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004

Samuel A. Rudman, Esq.
Cauley, Geller, Bowman Coates & Rudman, LLP
200 Broadhollow Road
Suite 406
Melville, NY 11747

_____
Donna Nelson Heller