UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOEL MENKES, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>STOLT-NIELSEN S.A., JACOB STOLT-NIELSEN, NIELS G. STOLT-NIELSEN, SAMUEL COOPERMAN, and REGINALD JR. LEE,<br><br>    Defendants. | Civil Action No. 3:03-cv-00409-DJS<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S MEMORANDUM OF DECISION, DATED NOVEMBER 10, 2005 |

**TABLE OF CONTENTS**

                                                                                           **Page**

I.    PRELIMINARY STATEMENT ....................................................................................1

II.    ARGUMENT..................................................................................................................3

        A.    The Applicable Legal Standards on a Motion for Reconsideration.........................3

        B.    SNSA Has Admitted that It Learned of SNTG's Anticompetitive Conduct In 2002 and this Fact When Combined with Other Allegations In the Complaint Raises a Strong Inference of Scienter .....................................................5

        C.    SNTG, Cooperman and Lee May Be Held Liable for SNSA's Materially False and Misleading Statements...............................................................................6

                1.    Primary Liability..........................................................................................6

                2.    Scheme Liability ..........................................................................................8

        D.    Knowledge Held by SNTG, a Major Division of SNSA, Is Imputed to SNSA Under the Concept of Corporate Scienter....................................................10

        E.    At a Minimum, Plaintiffs Should Be Given the Opportunity to Amend the Complaint................................................................................................................12

III.    CONCLUSION............................................................................................................13

## TABLE OF AUTHORITIES

Page

**CASES**

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) .................................................................................................. 7

*B.H. v. Southington Board of Education*,
   Civ. Action No. 3:02 cv 252 (CRU), 2004 U.S. Dist. LEXIS 237
   (D. Conn. Jan. 7, 2004) ............................................................................................................ 3

*Burzynski v. Travers*,
   111 F.R.D. 15 (E.D.N.Y. 1986) ................................................................................................ 4

*Caterpillar v. Great Am. Ins. Co.*,
   62 F.3d 955 (7th Cir. 1995) .................................................................................................... 11

*Chill v. GE*,
   101 F.3d 263 (2d Cir. 1996) .................................................................................................... 12

*City of Monroe Emples. Ret. Sys. v. Bridgestone Corp.*,
   399 F.3d 651 (6th Cir. 2005) .................................................................................................... 7

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) .................................................................................................... 7

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) .................................................................................................................. 9

*Federal Ins. Co. v. Sheldon*,
   222 B.R. 690 (S.D.N.Y. 1998) .................................................................................................. 4

*Gavenda v. Orleans County*,
   95-C, 2000 U.S. Dist. LEXIS 13915
   (W.D.N.Y. 2000) ....................................................................................................................... 4

*Geressy v. Digital Equip. Corp.*,
   980 F. Supp. 640 (E.D.N.Y. 1997) .......................................................................................... 4

*In re General Elec. Sec. Litig.*,
   No. 94 Civ. 4024, 1995 U.S. Dist. LEXIS 14490
   (S.D.N.Y. Oct. 4, 1995) ............................................................................................................ 6

*In re Global Crossing, Ltd. Sec. Litig.*,
   322 F. Supp. 2d 319 (S.D.N.Y. 2004) ...................................................................................... 9

                                                                           **Page**

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003)..................................................................2, 10, 12

*In re Kidder Peabody Sec. Litig.*,
    10 F. Supp. 2d 398 (S.D.N.Y. 1998).........................................................................2, 6, 7

*In re Motorola Secs. Litig.*,
    No. 03 C 287, 2004 U.S. Dist. LEXIS 18250
    (N.D. Ill. Sept. 9, 2004) ...................................................................................................11

*In re NUI Sec. Litig.*,
    314 F. Supp. 2d 388 (D.N.J. 2004) ................................................................................10

*In re Philip Servs., Corp. Sec. Litig.*,
    98 Civ. 0835, 2004 U.S. Dist. LEXIS 9261
    (S.D.N.Y. May 24, 2004)................................................................................................11

*In re Stanley*,
    185 B.R. 417 (D. Conn. 1995) .........................................................................................3

*In re Warner Communications Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985).................................................................................11

*In re Worldcom, Inc. Secs. Litig.*,
    352 F. Supp. 2d 472 (S.D.N.Y. 2005).......................................................................2, 10

*LiButti v. United States*,
    178 F.3d 114 (2d Cir. 1999)..............................................................................................4

*Liona Corp., Inc. v. PCH Assocs.*,
    949 F.2d 585 (2d Cir. 1991).............................................................................................3

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
    54 F.3d 1424 (9th Cir. 1995) .........................................................................................11

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).............................................................................................5

*Picard Chem. Profit Sharing Plan v. Perrigo Co.*,
    940 F. Supp. 1101 (D. Mich. 1996) .................................................................................7

*Radha Bhavatarini Devi Narumanchi v. Federal Emergency Mgmt. Agency*,
    No. 99-6139, 1999 U.S. App. LEXIS 30444
    (2d Cir. 1999)..................................................................................................................12

                                                                                    **Page**

*SEC v. U.S. Envtl., Inc.*,
    155 F.3d 107 (2d Cir. 1998)..........................................................................................5

*SEC v. Zandford*,
    535 U.S. 813 (2002)......................................................................................................9

*The Metropolitan Entertainment Co., Inc. v. Koplik*,
    25 F. Supp. 2d 367 (D. Conn. 1998)..............................................................................3

*U.S. Quest, Ltd. v. Kimmons*,
    228 F.3d 399 (5th Cir. 2000) .........................................................................................9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b)........................................................................................................................8, 9

17 C.F.R.
    §240.10b-5 ................................................................................................................8, 9

Federal Rules of Civil Procedure
    Rule 60(b)(2)..................................................................................................................4
    Rule 59(a)(2), (b) ...........................................................................................................4

Lead Plaintiffs Irene Rucker and Gustav Rucker (the "Ruckers" or "Lead Plaintiffs") respectfully submit this Memorandum of Law In Support of Their Motion for Reconsideration of this Court's Memorandum of Decision, dated November 10, 2005 ("Decision" attached hereto as Exhibit "A") in favor of the Motion to Dismiss the Consolidated Amended Class Action Complaint ("Complaint") by Defendants Stolt-Nielson S.A. ("SNSA" or the "Company"), Stolt-Nielson Transportation Group, Inc. ("SNTG"), Jacob Stolt-Nielson, Niels G. Stolt-Nielson, Samuel Cooperman and Reginald J.R. Lee (collectively, the "Defendants").

## I. PRELIMINARY STATEMENT

On November 10, 2005, this Court dismissed Plaintiffs' Complaint, with prejudice. The Court held, *inter alia*, that Plaintiffs had sufficiently alleged actionable misstatements and omissions (the "Actionable Statements") but had failed to adequately plead scienter. Decision, p. 23.[1] Plaintiffs have filed a motion for reconsideration and respectfully ask this Court to reconsider its decision on three grounds and/or permit Plaintiffs to amend the Complaint.

**First**, Plaintiff has discovered an admission by SNSA that supports a strong inference that SNSA had knowledge of SNTG's anticompetitive conduct at the time SNSA made the Actionable Statements. After reviewing the Decision, Plaintiff examined SNSA's recent SEC filings and discovered that SNSA has admitted that it learned of SNTG's anti-competitive conduct in 2002. SNSA's 20-F disclosures, filed on June 4, 2003, for the fiscal year ending November 30, 2002 (Attached hereto as Exhibit B),[2] filed on June 16, 2004, for the fiscal year ending November 30, 2003 (Attached hereto as Exhibit C) and on May 31, 2005, for the fiscal year ending November 30,

---

[1] "Decision, p. __" refers to Memorandum of Decision of this Court, dated November 10, 2005.

[2] Due to the voluminous nature of Exhibits B through D – 1128 total pages – only the relevant portions of the Exhibits are included with Plaintiffs' Motion for Reconsideration.

- 1 -

2004 (Attached hereto as Exhibit D), each include the following statement:

> **In 2002, we became aware of information that caused us to undertake an internal investigation regarding potential improper collusive behavior in our parcel tanker and intra−Europe inland barge operations**. Consequently, we decided to voluntarily report conduct to the Antitrust Division of the U.S. Department of Justice (the "DOJ" or "Antitrust Division") and the Competition Directorate of the European Commission ("EC"). [Emphasis added.]

SNSA's admission that it learned of SNTG's anticompetitive conduct in 2002, combined with the other allegations in the Complaint, as detailed in the Decision, supports a strong inference of scienter that when SNSA made the Actionable Statements it knew of SNTG's anticompetitive behavior. Plaintiffs respectfully submit that this Court should reconsider its decision and sustain the Complaint or permit Plaintiffs the opportunity to amend the Complaint to include these new allegations.

**Second**, although the Court clearly held that SNTG and Defendants Cooperman and Lee had knowledge of SNTG's anticompetitive behavior, the Court did not consider whether they could be held responsible for SNSA's materially false and misleading statements. Plaintiffs respectfully submit that SNTG, Cooperman and Lee may be held liable for SNSA's representations on two bases: primary liability or scheme liability. Under primary liability, SNTG, Cooperman and Lee can be held liable for SNSA's statements because they were a knowing source of SNSA's materially false and misleading statements. *See In re Kidder Peabody Sec. Litig.*, 10 F. Supp. 2d 398, 402 (S.D.N.Y. 1998) (sustaining allegations for primary liability against a subsidiary company for statements attributed to the parent company). Under scheme liability, SNTG, Cooperman and Lee may be held liable because they actively participated in a scheme to defraud investors. *See In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 385 (S.D.N.Y. 2003) ("Section 10(b) and Rule 10b-5 impose primary liability upon those persons or entities who employ manipulative and deceptive practices while engaged in a scheme to defraud.").

**Third**, the Court failed to consider scienter as to SNSA, the corporate entity. In this regard, the Court should examine SNSA's collective knowledge and intent and not focus on the knowledge

of any one individual or entity.  When that is done here, it is respectfully submitted that the Complaint sufficiently alleges the corporate scienter of SNSA.  *In re Worldcom, Inc. Secs. Litig.*, 352 F. Supp. 2d 472, 497 (S.D.N.Y. 2005).

Finally, given the new factual allegations regarding SNSA's knowledge of SNTG's anticompetitive behavior, it is respectfully submitted that if the Court is not inclined to reconsider the Decision, then it should vacate that portion of the Decision which dismisses the Complaint with prejudice and permit Plaintiffs the opportunity to replead the Complaint to include the new allegations.  Therefore, Plaintiffs can address the concerns of the Court and can now properly plead scienter as to SNSA and the other defendants.  Justice requires that the Court permit Plaintiffs to opportunity to correct the Complaint.

## II.   ARGUMENT

### A.   The Applicable Legal Standards on a Motion for Reconsideration

A court may reconsider a prior ruling on the following grounds: "(1) an intervening change in controlling law; (2) the availability of newly discovered evidence; and (3) the need to correct clear error or prevent manifest injustice."  *The Metropolitan Entertainment Co., Inc. v. Koplik*, 25 F. Supp. 2d 367 (D. Conn. 1998); *see also B.H. v. Southington Board of Education*, Civ. Action No. 3:02 cv 252 (SRU), 2004 U.S. Dist. LEXIS 237 (D. Conn. Jan. 7, 2004) ("[T]he function of a motion for reconsideration is to present the court with an opportunity to correct manifest errors of law or to consider newly discovered evidence."); Federal Rules of Civil Procedure ("FRCP"), rule 59; FRCP, rule 60.  The doctrine for granting a motion for reconsideration "is a discretionary rule of practice and generally does not limit a court's power to reconsider an issue."  *Liona Corp., Inc. v. PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991).  *In re Stanley*, 185 B.R. 417, 421 (D. Conn. 1995).

A plaintiff is entitled to introduce new evidence if the plaintiff shows that: "(1) the evidence was newly discovered since the trial, (2) the moving party was diligent in discovering the new evidence; (3) the newly discovered evidence could not be merely cumulative or impeaching; (4) the

- 3 -

newly discovered evidence was material; and (5) that a new trial, with the newly discovered evidence, will probably produce a different result." *Geressy v. Digital Equip. Corp.*, 980 F. Supp. 640, 648 (E.D.N.Y. 1997) (granting 59(e) motion where noteworthy publicity became available only after the trial); *Gavenda v. Orleans County*, 95-CV-0251E(Sc), 2000 U.S. Dist. LEXIS 13915 (W.D.N.Y. 2000) (citing the *Geressy* standard).

Where alleged new evidence is concerned, the legal standards under Rule 59(a)(2) and Rule 60(b)(2)[3] are identical. *See Burzynski v. Travers*, 111 F.R.D. 15, 16, n.1 & 18 (E.D.N.Y. 1986). "In order to obtain relief on the basis of newly discovered evidence, the moving party must demonstrate not only that the evidence existed at the time of the prior action and that it justifiably was not available to the movant . . . but also that the evidence would be admissible and of such import as probably to have changed the result in the prior action." *Federal Ins. Co. v. Sheldon*, 222 B.R. 690, 693 (S.D.N.Y. 1998); *see also LiButti v. United States*, 178 F.3d 114, 119 (2d Cir. 1999) (stating that a motion to reconsider will be granted providing that alleged new evidence must change the outcome).

---

[3]   Rule 60(b) states:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

**B.     SNSA Has Admitted that It Learned of SNTG's Anticompetitive Conduct In 2002 and this Fact When Combined with Other Allegations In the Complaint Raises a Strong Inference of Scienter**

Newly discovered evidence reveals that SNSA and its officials had knowledge of SNTG's anti-competitive conduct as early as 2002, or, more importantly, at the time SNSA issued the statements alleged in paragraphs 66, 68, 74 and 76 of the Complaint. *See* Ex. B through D. In its 2002, 2003 and 2004 disclosures, SNSA admitted to possessing information regarding SNTG's improper business tactics and, in fact, declared that it conducted an internal investigation into its wholly-owned subsidiary's anti-competition activities.

This newly discovered information provides the missing link sought by this Court in its scienter analysis. In its analysis, this Court stated that without facts showing "knowledge of the anti-competitive conduct to SNSA's management . . . the court can only assume, and not infer, that SNSA's management knew about the illegal activity." Decision, p. 27. Now, with the help of SNSA's 20-F statements, this Court need not assume or infer SNSA's knowledge of the activity. Instead, the Court has a direct admission by SNSA that it was in possession of information concerning SNTG's anticompetitive conduct at the time that it issued the Actionable Statements. This sufficiently alleges that Defendants acted with conscious disregard and recklessness for the truth of their statements. *See Novak v. Kasaks*, 216 F.3d 300, 305 (2d Cir. 2000) (holding that it is well-settled that knowledge of the proscribed activity is sufficient scienter under §10(b) where defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation); *see also SEC v. U.S. Envtl., Inc.*, 155 F.3d 107, 111 (2d Cir. 1998).

Based upon the new evidence, Plaintiffs respectfully request that this Court reconsider its Decision and issue a finding of scienter on the part of SNSA.[4]

---

[4]     In the alternative, Plaintiffs should be afforded the opportunity to replead the allegations with the benefit of quoting the statements made in SNSA's 20-F disclosures.

### C. SNTG, Cooperman and Lee May Be Held Liable for SNSA's Materially False and Misleading Statements

#### 1. Primary Liability

Primary liability for the issuance of materially false and misleading statements is not restricted to those who participate in the fraud or scheme to defraud. In this regard, SNTG, Cooperman and Lee should be held liable for SNSA's materially false and misleading statements and disclosures made by SNSA, because SNTG, Cooperman and Lee were directly responsible for the misrepresentations or omissions, using SNSA as a conduit for conveying materially false information to investors. *See Kidder*, 10 F. Supp. 2d at 402.

In *Kidder*, the complaint alleged that parent company General Electric Company ("GE") made false and misleading statements regarding its revenue, which stemmed from false profits derived from its wholly-owned subsidiary Kidder, Peabody & Co. ("Kidder). The Complaint alleged that Kidder should be held responsible for the statements made by GE.[5] The Court reasoned that "if plaintiffs can show that defendants were the original and knowing source of a misrepresentation and that defendants knew or should have known that that misrepresentation would be communicated to investors, primary liability should attach." *Kidder*, 10 F. Supp. 2d at 407. Here, it is undisputed that SNTG is the original and knowing source of the false and misleading statements involving its business operations. (The issue in question was if – or to what extent – SNSA was involved or aware of the anti-competitive measures performed by its wholly-owned subsidiary, SNTG.)

Despite the fact that SNTG, Cooperman and Lee did not directly communicate the false and misleading statements to the public, SNTG, Cooperman and Lee should nevertheless be held

---

[5] A separate action was filed against GE for its role in the alleged fraud. *See In re General Elec. Sec. Litig.*, No. 94 Civ. 4024, 1995 U.S. Dist. LEXIS 14490 (S.D.N.Y. Oct. 4, 1995), *aff'd*, *Chill v. General Elec. Co.*, 101 F.3d 263 (2d Cir. 1996). The Complaint against GE was dismissed and the dismissal was affirmed on appeal.

primarily liable for Plaintiffs' securities claim. Courts generally hold that a party need not communicate directly with investors in order to be held responsible for materially false and misleading statements made to the public. *See City of Monroe Emples. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 686, n.29 (6th Cir. 2005) ("The requirement that the plaintiff allege that the defendant made a misrepresentation does not mean that the plaintiff must allege that the defendant communicated that misrepresentation directly to the plaintiff."); *Cooper v. Pickett*, 137 F.3d 616, 624 (9th Cir. 1997) (stating that a party "cannot escape liability simply because it carried out its alleged fraud through the public statements of third parties"); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1226 (10th Cir. 1996) (noting that "there is no requirement that the alleged violator directly communicate misrepresentations to plaintiffs for primary liability to attach"). Rather, a defendant that used or allowed another party to covey the message containing misstatements may be liable as a primary violator. *See*, for example, *Picard Chem. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101 (W.D. Mich. 1996) ("In such circumstances, it was the defendant's original statement which misled investors--the person who communicated the statement to investors served as a mere conduit for [the] defendant's statement.").

In *Kidder*, the court held that, as a subsidiary of GE, "it is reasonable to infer that Kidder knew this information would reach securities analysts, GE stockholders and others in the investment community." *Kidder*, 10 F. Supp. 2d at 407. Likewise, SNTG, Cooperman and Lee knew that SNTG's anti-competitive actions would be omitted from SNSA's statements and disclosures, thereby affecting the issuance of false and misleading statements about SNSA and its subsidiaries. The decision in Kidder further articulated the following:

> [H]olding a subsidiary immune from liability for statements communicated by its parent under these facts would lead to an anomalous result. A subsidiary could freely disseminate false information to the market through its parent, but investors relying on that information to their detriment would be left with no remedy: an action could not be brought against the subsidiary, and the parent would escape liability because it lacked scienter. This "would lead to a result 'so bizarre' that Congress

could not have intended it." This is precisely the situation facing plaintiffs in this case, where the lawsuit against GE was dismissed because plaintiffs' allegations against GE failed to establish scienter. [Citations omitted.]

*Id.*

Here too, the claim for primary liability against SNTG, Cooperman and Lee should be sustained for the subsidiary's role in the false and misleading statements by SNSA. The allegations set forth in paragraphs 66, 68, 74 and 76 should, therefore, be reinstated as applied directly to SNTG, Cooperman and Lee.

### 2. Scheme Liability

SNSA and SNTG, the parent and subsidiary companies, schemed to conceal the anti-competitive measures conducted by SNTG in the operations of the subsidiary. Defendants should thereby be held liable for the executing the scheme that resulted in the fraud on investors.

The language of §10(b) of the 1934 Act, entitled "Employment of manipulative and deceptive devices," expressly states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

15 U.S.C. §78j(b). Rule 10b-5 promulgated by the SEC flows directly from the language of §10(b) itself and provides:

> §240.10b-5 Employment of manipulative and deceptive devices
>
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

      (a)      To employ any device, scheme, or artifice to defraud,

      (b)      To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

      (c)      To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. §240.10b-5.

In addition to forbidding "any untrue statement of a material fact," Rule 10b-5 also provides for scheme liability. Scheme liability is endorsed by the text of §10(b). According to the United States Supreme Court, §10(b)'s prohibition of "any manipulative or deceptive device or contrivance" encompasses any "scheme to defraud." Specifically, in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976), the Supreme Court defined the term "device" as "[t]hat which is devised, or formed by design; a contrivance; an invention; project; scheme; often, a scheme to deceive; a stratagem; an artifice" and defined the term "contrivance" to mean "a scheme, plan, or artifice." *Id*. at 199 n.20 (quoting *Webster's International Dictionary* (2d ed. 1934)). Indeed, the term "scheme" is unmistakably encompassed by the broad language of §10(b).[6]

Federal District Courts in the Second Circuit echo the broad language of Rule 10(b) and §10b-5 and the understanding that a party to a fraudulent scheme should be held primarily liable for the fraud. *See In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 335 (S.D.N.Y. 2004) (holding accountants liable for the fraudulent scheme behind the false and misleading statements by defendant corporation, on the basis that liability may "be assigned based on the use of a manipulative

---

[6] Rule 10b-5 – adopted by the SEC for the implementation of §10(b) – makes it unlawful for any person "directly or indirectly" to employ "any device, scheme, or artifice to defraud," "[t]o make any untrue statement[s]," or to "engage in any act, practice, or course of business which operates . . . as a fraud or deceit upon any person." 17 C.F.R. §240.10b-5; *see also U.S. Quest, Ltd. v. Kimmons*, 228 F.3d 399, 407 (5th Cir. 2000).

or deceptive device or participation in a scheme to defraud"); *Initial Pub. Offering*, 241 F. Supp. 2d at 385; *see also SEC v. Zandford*, 535 U.S. 813, 817-818 (2002) (reaffirmed the broad reading of the language under Section 10(b)).

Here, based on the allegations in the Complaint – and more so when coupled with the newly discovered information expressing SNSA's awareness and knowledge of its subsidiary's anti-competitive tactics – the scheme to defraud investors is apparent. SNTG conducted the anti-competitive activity. SNSA and SNTG then mislead investors by reporting on SNTG's operations without disclosing its business methods. This Court should thereby reconsider its Decision in light of the alleged scheme between SNSA and SNTG, or, in the alternative, allow Plaintiffs the opportunity to replead.

> **D.     Knowledge Held by SNTG, a Major Division of SNSA, Is Imputed to SNSA Under the Concept of Corporate Scienter**

In order "[t]o carry their burden of showing that a corporate defendant acted with scienter, plaintiffs in securities fraud cases need not prove that any one individual employee of a corporate defendant also acted with scienter; Proof of a corporation's collective knowledge and intent is sufficient." *In re Worldcom, Inc. Secs. Litig.*, 352 F. Supp. 2d 472, 497 (S.D.N.Y. 2005). In its Decision, this Court recognized that Plaintiffs' adequately alleged knowledge of SNTG's anti-competitive activities on the part of senior officials at SNTG. Decision, p. 26. This Court likewise recognized the critical importance of SNTG's operations to SNSA. Decision, p. 27. Yet, the Court determined that the apparent lack of knowledge on the part of SNSA management did not support an inference of scienter. Decision, p. 27. Plaintiffs respectfully request that this Court re-examine this issue on the basis that knowledge held by personnel that are critical to a company can be imputed to the company itself.

Here, SNTG's involvement in the anti-competitive conduct and/or the knowledge held by senior management at SNTG should impute knowledge of the conduct to SNSA. *See In re NUI Sec.*

*Litig.*, 314 F. Supp. 2d 388, 410-413 (D.N.J. 2004) (finding collective scienter on the part of corporate defendant where there were allegations that the company's assistant general counsel was notified of improper bad debt procedures); *Caterpillar v. Great Am. Ins. Co.*, 62 F.3d 955, 962 (7th Cir. 1995) (stating that a corporation may be liable for actions by senior management personnel that are "intrinsically corporate and bear the imprimatur of the corporation itself"). In fact, even assuming that SNTG – the source of the knowledge and information at issue – is found not liable, SNSA may be held primarily liable in their stead. Indeed, there are conceivable situations where the individual actors would not be liable, but their corporate employer would be held responsible. A case may depend on the collective scienter of employees and defenses that are available to individuals and not available to the corporation. *See Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) (noting that "collective scienter could be a basis for liability"); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 752 (S.D.N.Y. 1985) (noting that corporate scienter differs from individual scienter and that "the requisite degree of scienter is likely to be easier to attribute to [the corporate defendant] than to the individual defendants"); *see also In re Motorola Secs. Litig.*, No. 03 C 287, 2004 U.S. Dist. LEXIS 18250 (N.D. Ill. Sept. 9, 2004) (finding corporate scienter, and not individual scienter, based on an inference of what the corporation knew or should have known); *In re Philip Servs., Corp. Sec. Litig.*, 98 Civ. 0835 (MBM), 2004 U.S. Dist. LEXIS 9261 (S.D.N.Y. May 24, 2004) (concentrating on the firm's collective state of mind, not that of individual partners or employees, in the context of securities fraud).

Clearly, the knowledge maintained by SNTG and its management should be imputed to SNSA (irrespective of the Court's finding as to liability on the part of SNTG). This Court should, therefore, reconsider its Decision and reinstate the allegations of the Complaint as against SNSA.

### E. At a Minimum, Plaintiffs Should Be Given the Opportunity to Amend the Complaint

At the very minimum, Plaintiffs should be permitted to amend the allegations of the Complaint. Indeed, leave to replead is routinely granted, particularly where the party seeking leave has expressed an intention to allege additional facts to comply with the particularity requirements of FRCP 9(b). *See Chill v. GE*, 101 F.3d 263, 271 (2d Cir. 1996) ("In general, leave to amend should be freely granted, especially where dismissal of the complaint was based on Rule 9(b), and there must be good reason to deny the motion."); *Radha Bhavatarini Devi Narumanchi v. Federal Emergency Mgmt. Agency*, No. 99-6139, 1999 U.S. App. LEXIS 30444 (2d Cir. 1999) ("In general, leave to amend "'should be freely granted, especially where dismissal . . . was based on Rule 9(b).'") (quoting *Chill*); *Initial Pub. Offering*, 241 F. Supp. 2d at 397 ("leave to replead should be granted when a complaint is dismissed.").

Here, Plaintiffs have provided the Court with the substance of the additional allegations they intend to plead. Moreover, the facts Plaintiffs seek to include in an amended complaint are directly responsive to the concerns raised by the Court in granting dismissal of the Complaint. Specifically, the proposed amended complaint will plead the actual knowledge of Defendants, as well as when Defendants possessed that knowledge, thereby curing any of the deficiencies identified by the Court. *See* Decision, p. 27.

Plaintiffs, therefore, respectfully seek leave to replead in order to allege scienter, with greater particularity, against Defendants.

**III.     CONCLUSION**

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court reconsider its Decision and/or permit Plaintiffs the opportunity to amend the Complaint.

DATED:  November 28, 2005                    SCOTT + SCOTT, LLC
                                                                         DAVID R. SCOTT (CT 16080)

DAVID R. SCOTT

108 Norwich Avenue
Colchester, CT  06415
Telephone:  860/537-3818
860/537-4432 (fax)

Liaison Counsel

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
MARK S. REICH
200 Broadhollow Road, Suite 406
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Lead Counsel for Plaintiffs

I:\STOLT-NIELSEN, S.A 23074 (S)\Pleadings\051128 Motion for Reconsideration FINAL.doc