UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Joel Menkes, *et al.*,

      *Plaintiffs*,

      *v.*

Stolt-Nielsen S.A., *et al.*,

      *Defendants.*

Civ. Action No. 3:03 CV 409 (DJS)

December 19, 2005

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION FOR RECONSIDERATION

DEFENDANTS STOLT-NIELSEN S.A.,
STOLT-NIELSEN TRANSPORTATION
GROUP LTD., JACOB STOLT-NIELSEN,
NIELS G. STOLT-NIELSEN, SAMUEL
COOPERMAN AND REGINALD J.R. LEE

Michael P. Shea (#ct19598)
Jason S. Weathers (#ct24579)
Day, Berry & Howard LLP
City Place
Hartford, Connecticut 06103
Tel:  (806) 275-0146
Fax:  (806) 275-0343
Email: mpshea@dbh.com

*Of Counsel*
J. Mark Gidley
Christopher M. Curran
Peter J. Carney
Jaime M. Crowe
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Tel: (202) 626-3600
Fax: (202) 639-9355

## TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ......................................................................................ii

**INTRODUCTION** ................................................................................................... 1

I.     The "Facts" Plaintiffs Now Proffer Are Not New, Should Not Be
Considered By the Court and Do Not Support Scienter ........................................ 2

II.    The Court Should Reject Plaintiffs' New and Fatally Flawed Primary and
Scheme Liability Theories ...................................................................... 6

      A.      Primary Liability ....................................................................... 6

      B.      Scheme Liability ...................................................................... 9

III.    The Court Should Reject Plaintiffs' Vague And Unsupported Corporate
Scienter Theory ................................................................................. 11

IV.    The Court Should Reject Plaintiffs' Request To Amend Because Amendment
Would Be Futile and Plaintiffs Have Waited Inexcusably Long ......................... 14

      CONCLUSION…………………………………………………………………..18

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                    <u>Page</u>

*Aaron v. Securities and Exchange Commission*, 446 U.S. 680 (1980)........................................ 10

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) .......................................... 15

*B.H. v. Southington Bd. of Ed.*, Civil Action No. 3:02cv252 (SRU),
  2004 WL 51001 (D. Conn. Jan. 7, 2004) ................................................................. 1

*Brown v. City of Oneonta*, 858 F. Supp. 340 (N.D.N.Y. 1994) .................................... 3

*Carson v. Polley*, 689 F.2d 562 (5th Cir. 1982) ........................................................ 16

*Chill v. General Electric Co.*, 101 F.3d 263 (2d Cir. 1996)................................. 4, 14, 15

*Copland v. Grumet*, 88 F. Supp. 2d 326 (D.N.J. 1999) ................................................ 8

*Cresswell v. Sullivan & Cromwell*, 922 F.2d 60 (2d Cir. 1990)................................... 15

*Davidson v. Scully*, 172 F. Supp. 2d 458 (S.D.N.Y. 2001)........................................... 6

*Ernst & Ernst v. Hochfelder*, 425 U.S. 186 (1976) .............................................. 10, 11

*Fidel v. Farley*, 392 F.3d 220 (6th Cir. 2005) .......................................................... 16

*First Equity Corp. of Florida v. Standard & Poor's Corp.*
  690 F. Supp. 256 (S.D.N.Y. 1988) ......................................................................... 12

*Geressy v. Digital Equip. Corp.*, 980 F. Supp. 640 (E.D.N.Y. 1997) ............................ 3

*Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22 (2d Cir. 2000) .................................. 10

*Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360 (S.D.N.Y. 2001) .............................. 10

*Higginbotham v. Baxter Int'l, Inc.*, 2005 WL 1272271, No. 04 C 4909
  (N.D. Ill. May 25, 2005) ...................................................................................... 12

*In re American Bank Note Holographics, Inc. Sec. Litig.*,
  93 F. Supp. 2d 424 (S.D.N.Y. 2000)...................................................................... 14

*In re Alpharma, Inc. Sec. Litig.*, 372 F.3d 137 (3d Cir. 2004) ...................................... 4

*In re Cable Wireless, PLC, Sec. Litig.*, 321 F. Supp. 2d 749 (E.D. Va. 2004) ............................ 12

*In re Global Crossing Ltd. Sec. Litig.*, 322 F. Supp. 2d 319 (S.D.N.Y. 2004) ............................ 11

*In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) .......................... 11

*In re Kidder Peabody Sec. Litig.*,
  No. 94 Civ. 3954 (JFK), 1995 WL 590624 (S.D.N.Y. Oct. 4, 1995) ........................................ 14

*In re Kidder Peabody Sec. Litig.*, 10 F. Supp. 2d 398 (S.D.N.Y. 1998) ............................... 7, 8, 9

*In re WorldCom Securities Litigation*, 352 F. Supp. 2d 472 (S.D.N.Y. 2005) ............................ 13

*Kirlin v. Conopco, Inc.*, No. 94 Civ. 2675 (AGS), 1996 WL 263026
  (S.D.N.Y. May 16, 1996) ........................................................................................... 16

*Koehler v. Bank of Bermuda (New York) Ltd.*, 209 F.3d 130 (2d Cir. 2000) .............................. 15

*Kolbeck v. LIT America, Inc.*, 923 F. Supp. 557 (S.D.N.Y. 1996),
  *aff'd*, 152 F.3d 918 (2d Cir. 1998) ................................................................................ 9

*Kushner v. Beverly Enters, Inc.*, 317 F. 3d 820 (8th. Cir. 2003) ........................................... 4

*Landy v. Mitchell Petroleum Tech. Corp.*, 734 F. Supp. 608 (S.D.N.Y. 1990) ........................... 10

*Leonelli v. Pennwalt Corp.*, 887 F.2d 1195 (2d Cir. 1989) ................................................. 15

*MacDraw, Inc. v. CIT Group Equip/ Fin., Inc.*, 157 F.3d 956 (2d Cir. 1998) ............................ 15

*Miller v. Champion Enters., Inc.*, 346 F.3d 660 (6th Cir. 2003) ........................................... 16

*Music Research, Inc. v. Vanguard Recording Soc'y*, 547 F.2d 192 (2d. Cir. 1976) ..................... 3

*PAB Aviation, Inc. v. United States*, No. 98-CV-5952 JG, 2000 WL 1240196
  (E.D.N.Y. Aug. 24, 2000) ............................................................................................. 6

*Rosenzweig v. Azurix Corp.*, 332 F.3d 854 (5th Cir. 2003) ........................................... 15, 16

*Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53 (2d Cir. 1993) ......................................... 3

*SEC v. Zandford*, 535 U.S. 813 (2002) ......................................................................... 11

*Sequa Corp. v. GBJ Corp.*, 156 F.3d 136 (2d Cir. 1998) ................................................... 17

*Shields v. Citytrust Bancorp*, 25 F.3d 1124 (2d Cir. 1994) ................................................. 15

*Shields v. Robinson-Van Vuren Assocs., Inc.*, No. 98 civ. 8785 (DLC), 1999 WL 1267465
  (S.D.N.Y. Dec. 29, 1999) ........................................................................................... 16

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 364 F.3d 353 (5th Cir. 2004) ..................... 12

*United States v. Bank of New England*, 821 F.2d 844 (1st Cir. 1987) ......................................... 13

*United States v. IBT*, 179 F.R.D. 444 (S.D.N.Y. 1998) ................................................................. 2

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370 (2d Cir. 2001) ..................................... 2, 3

*United States v. Union Corp.*, 194 F.R.D. 223 (E.D. Penn. 2000) .............................................. 16

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) ................................................. 6, 7, 8

## STATUTES

15 U.S.C. § 78j(b) ..................................................................................................................... 12

17 C.F.R. § 240.10b-5 ............................................................................................................... 12

Federal Rules of Civil Procedure:
    Rule 9(b) ............................................................................................................ 9, 10, 15
    Rule 59 ........................................................................................................................ 17

## OTHER AUTHORITIES

Thomas Hagemann & Joseph Grinstein, *The Mythology of Aggregate
  Corporate Knowledge: A Deconstruction*, 65 Geo. Wash. L. Rev. 210 (1997) ......................... 13

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Joel Menkes, *et al*., | |
| *Plaintiffs*, | |
| *v.* | Civ. Action No. 3:03 CV 409 (DJS) |
| Stolt-Nielsen S.A., *et al.*, | December 19, 2005 |
| *Defendants*. | |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION FOR RECONSIDERATION

On November 10, 2005, this Court issued a carefully-reasoned 28-page Memorandum of Decision dismissing each count of Plaintiffs' consolidated amended class action complaint. Plaintiffs have now moved for reconsideration of the Court's dismissal. But as Plaintiffs and this Court have acknowledged: "[T]he function of a motion for reconsideration is to present the court with an opportunity to correct manifest errors of law or to consider newly discovered evidence." *B.H. v. Southington Bd. of Ed.*, No. Civ. A. 302CV252SRU, 2004 WL 51001, at *1 (D. Conn. Jan. 7, 2004) (Exh. 1); *see* Mem. at 3 (quoting *B.H.*). Here, neither basis for reconsideration exists.

Notably, Plaintiffs' reconsideration papers do ***not*** claim that the Court's November 10 opinion contains "manifest errors of law." Rather, Plaintiffs seek reconsideration — and leave to amend their complaint — based on their claim that they have obtained one piece of "newly discovered evidence" and because Plaintiffs want to present entirely new theories of liability.

**ORAL ARGUMENT NOT REQUESTED**

But Plaintiffs' "newly discovered evidence" is not new and Plaintiffs could (and should) have discovered it years ago with even minimal due diligence. And Plaintiffs' new liability theories — which they failed to raise over the past two-and-a-half years — are fatally flawed. Plaintiffs' belated efforts to salvage their case do not justify reconsideration of this Court's thorough November 10 opinion. Even if the Court considers Plaintiffs' newly proffered piece of evidence and new liability theories, dismissal would still be warranted. For the reasons that follow, the Court should deny Plaintiffs' motion for reconsideration.

I.     THE "FACTS" PLAINTIFFS NOW PROFFER ARE NOT NEW, SHOULD NOT BE CONSIDERED BY THE COURT AND DO NOT SUPPORT SCIENTER

In an effort to salvage paragraphs 66, 68, 74 and 76 of their consolidated amended class action complaint ("Complaint"), Plaintiffs claim that "*[a]fter reviewing*" this Court's decision, they finally "examined SNSA's recent SEC filings and discovered that [SNSA] learned of SNTG's anti-competitive conduct in 2002," and that these "recent SEC filings" support "a strong inference that SNSA had knowledge of SNTG's anticompetitive conduct at the time SNSA made the Actionable Statements." Mem. at 1 (emphasis added). In fact, the publicly-available statements contained in the "recent SEC filings" *preceded* the Complaint. Without considering the substance of the "recent SEC filings," the Court should reject Plaintiffs' argument as it is inexcusably late and relies on evidence that Plaintiffs could have discovered years ago with even minimal due diligence.

According to the Second Circuit, a "party seeking relief from judgment" has "an onerous standard to meet." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001). The Court of Appeals thus described with approval the test employed by district courts:

> [T]he movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have

changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Id.* (quoting *United States v. IBT*, 179 F.R.D. 444, 447 (S.D.N.Y. 1998)).  Courts have denied motions for reconsideration when the party seeking relief could (or should) have discovered the evidence earlier.  *See, e.g.*, *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993) (affirming district court denial of motion to vacate judgment on basis of newly-discovered evidence where "[t]here was no indication that [movant] could not have discovered this evidence earlier"); *Music Research, Inc. v. Vanguard Recording Soc'y*, 547 F.2d 192, 196 (2d. Cir. 1976) (refusing to set aside judgment where evidence alleged to have been newly discovered was the type of evidence plaintiff could have discovered earlier with due diligence); *Brown v. City of Oneonta*, 858 F. Supp. 340, 343 (N.D.N.Y. 1994) (denying motion for reconsideration where party failed to show "why this information could not have been produced during the original motion").  Even Plaintiffs acknowledge that for a Court to consider new evidence, a plaintiff must have acted diligently.  *See* Mem. at 3-4 (quoting *Geressy v. Digital Equip. Corp.*, 980 F. Supp. 640, 648 (E.D.N.Y. 1997)).

The "recent SEC filings" that Plaintiffs now proffer begin with SNSA's Form 20-F/A disclosure statement filed **June 4, 2003**.  (The subsequent disclosure statements Plaintiffs reference in their memorandum merely reiterate the disclosure contained in SNSA's June 4, 2003 Form 20-F/A).  The information Plaintiffs proffer is not at all "new."  By the time Plaintiffs filed their Complaint on **September 8, 2003**, Plaintiffs had enjoyed public access to this Form 20-F/A information for over three months.  More than two-and-a-half years have now passed since SNSA first issued its June 4, 2003 disclosure statement.  Plaintiffs' newly proffered evidence is simply not the "type of evidence which with due diligence . . . could not have been discovered" before the Court dismissed this case.  *Int'l Bhd. of Teamsters*, 247 F.3d at 392.

Experienced securities counsel seeking to advance the interests of an entire class certainly must (or should) have been aware of SNSA's June 4, 2003 Form 20-F/A. Plaintiffs have offered no justification as to why they could not have discovered this publicly-available information earlier — if not by the time they first amended their complaint, then sometime within the past two-plus years. Plaintiffs' contention that they only examined SNSA's June 4, 2003 Form 20-F/A "[a]fter reviewing the Decision" can hardly satisfy their due diligence obligations. Under the circumstances, this Court should not even consider Plaintiffs' newly proffered — although by no means new — evidence.

Even if the Court considers Plaintiffs' "newly discovered evidence," however, it does **not** establish SNSA's or Niels G. Stolt-Nielsen's scienter. *See* Mem. of Decision at 27. In finding that Plaintiffs' Complaint failed to establish SNSA's and Niels G. Stolt-Nielsen's scienter, this Court carefully explained:

> As currently constituted, the complaint does not establish a clear link between those who were involved in anti-competitive arrangements at SNTG and SNSA management. . . . [T]he court cannot, without any information in the complaint as to the ***manner*** by which information flowed from SNTG to SNSA and ***how*** involved SNSA was in monitoring SNTG's activities from which the anti-competitive conduct originated complete the link from those with knowledge of the anti-competitive conduct to SNSA's management. Without facts such as these, the court can only assume, and not infer, that SNSA's management knew about the illegal activity.

Mem. of Decision at 26-27 (emphasis added) (relying on *In re Alpharma, Inc. Sec. Litig.*, 372 F.3d 137, 150 (3d Cir. 2004), *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 828 (8th. Cir. 2003) and *Chill v. General Electric Co.*, 101 F.3d 263, 268 (2d Cir. 1996)). Misapprehending SNSA's "recent SEC filings," Plaintiffs claim that the SNSA statements they now proffer present a strong inference of scienter.

In fact, the "evidence" Plaintiffs now cling to does **not** establish "a clear link between those who were involved in anti-competitive arrangements at SNTG and SNSA management."

Specifically, Plaintiffs still have not established "the **manner** by which information flowed from SNTG to SNSA," or "*how* involved SNSA was in monitoring SNTG's activities from which the anti-competitive conduct originated." If anything, SNSA's Form 20-F/A statements undercut Plaintiffs' allegation that Defendants "acted with conscious disregard and recklessness for the truth of their statements." Mem. at 5. SNSA's Form 20-F/A statements reinforce that SNTG and SNSA only "became aware" of information in 2002 that led them to launch an investigation of SNTG. The fact that SNTG and SNSA launched an investigation of SNTG upon learning of potentially anticompetitive activity shows that they discharged their duties diligently and responsibly.

Moreover, close examination of SNSA's "recent SEC filings" makes clear that Plaintiffs overstate SNSA's public statements regarding the investigation of SNTG. Notably, SNSA admits nowhere in the proffered Form 20-F/A statements that it "learned of SNTG's anti-competitive conduct in 2002" as Plaintiffs allege. *See* Mem. at 1. Rather, SNSA only states that sometime in 2002, SNTG and SNSA "became aware of information that caused [them] to undertake an internal investigation regarding *potential* improper collusive behavior in [their] parcel tanker and intra-Europe inland barge operations." SNSA Form 20-F/A filed June 4, 2003 (Pl. Exh. B) at 63 (emphasis added). There is a big difference between becoming aware of information sufficient to undertake an investigation and "learn[ing] of anticompetitive conduct." Plaintiffs cynically disregard this difference. Only after SNTG and SNSA completed their investigation did they "voluntarily report certain conduct" to U.S. and European antitrust authorities in 2003. *Id.* Thus, on February 25, 2003 — after the internal investigation of SNTG

was complete — SNSA publicly disclosed SNTG's entry into the DOJ's Corporate Leniency Program.[1]

## II.    THE COURT SHOULD REJECT PLAINTIFFS' NEW AND FATALLY FLAWED PRIMARY AND SCHEME LIABILITY THEORIES

Plaintiffs also urge the Court to reinstate paragraphs 66, 68, 74 and 76 of the Complaint under newly proffered primary or "scheme" theories of liability.  Mem. at 2, 6-10.  Because Plaintiffs could have presented these theories earlier, Plaintiffs are foreclosed from presenting these arguments now.  *See, e.g.*, *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (denying plaintiff's request for reconsideration of summary judgment decision and stating that "[a] motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court."); *PAB Aviation, Inc. v. United States*, No. 98-CV-5952 JG, 2000 WL 1240196, at *1 (E.D.N.Y. Aug. 24, 2000) (Exh. 2) (denying motion for reconsideration because motion "involves only reformulations of arguments already considered and rejected," and noting that in any event, parties "may not advance a new argument in a motion to reconsider; that argument is waived.").  Even if considered, however, Plaintiffs' theories cannot salvage their Complaint.

### A.    Primary Liability

Plaintiffs now argue, for the first time, that Defendants SNTG, Cooperman and Lee can be held primarily liable for SNSA's alleged misstatements.  Plaintiffs' theory, however, is foreclosed by the Second Circuit's decision in *Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d

---

[1] Assuming Plaintiffs' theory is correct (which it is not) that "SNSA admitted that it learned of SNTG's anti-competitive conduct in 2002," paragraph 66 of the Complaint alleges statements made in 2001 — before SNSA could have "learned of SNTG's anti-competitive conduct in 2002."  Moreover, because Plaintiffs do not allege **when** in 2002 SNSA "learned of SNTG's anti-competitive conduct," the statements contained in paragraphs 68, 74 and 76 still do not establish scienter because the statements do not cover all of 2002.

Cir. 1998), because SNSA did *not* attribute any of the allegedly actionable statements to Defendants SNTG, Cooperman or Lee.

In *Wright*, the Second Circuit held that "a secondary actor cannot incur primary liability under the [Securities Exchange] Act [of 1934] for a statement not attributed to that actor *at the time of its dissemination*." *Id.* at 175 (emphasis added). As the court explained, "[s]uch a holding would circumvent the reliance requirement of the Act, as reliance only on representations made by others cannot itself form the basis of liability." *Id.* (emphasis added) (internal quotations omitted). Specifically, the Court of Appeals held that "the misrepresentation must be attributed to that specific actor at the time of public dissemination, that is, in advance of the investment decision." *Id.* Because the allegedly false press releases in *Wright* "did not attribute any assurances to Ernst & Young and, in fact, did not mention Ernst & Young at all," the Second Circuit found that "Ernst & Young neither directly nor indirectly communicated misrepresentations to investors." *Id.* As a result, the Second Circuit upheld the district court's dismissal.

In this case, Plaintiffs have utterly failed to satisfy *Wright*. Plaintiffs have not alleged — and cannot allege — that Defendants SNTG, Cooperman or Lee were the sources of SNSA's alleged misrepresentations in the SEC filings. No SNSA statement upon which Plaintiffs rely was attributed to Defendants SNTG, Cooperman or Lee "*at the time of its dissemination*" — or ever. In fact, SNSA made no attributions regarding the statements upon which Plaintiffs could have relied.

Without even addressing *Wright*, however, Plaintiffs advance their primary liability theory by urging a misapplication of *In re Kidder Peabody Sec. Litig.*, 10 F. Supp. 2d 398, 402 (S.D.N.Y. 1998) — a district court case decided *before* the Second Circuit decided *Wright*. *See*

*Copland v. Grumet*, 88 F. Supp. 2d 326, 332-33 (D.N.J. 1999) (applying *Wright* and noting that "it is likely that the [*Kidder*] court's holding has been called into question by *Wright*."). Even if it retains any authoritative value, however, *Kidder* is inapposite.

The court in *Kidder* held that Plaintiffs had sufficiently pleaded the primary liability of secondary actors because Plaintiffs could show that the secondary actors "were the original and knowing source of a misrepresentation ***and*** that [the secondary actors] knew or should have known that misrepresentation would be communicated to investors . . . ." *Kidder*, 10 F. Supp. 2d at 407 (emphasis added). As the court explained:

> [P]laintiffs allege that [the secondary actors] were the "original and knowing source" of the alleged misrepresentations of Kidder's earnings, which were conveyed to investors by GE in public filings, reports and press releases. There is no dispute that Kidder provided GE with financial data on a quarterly basis and that the data was incorporated in GECS's financial statements and GE's quarterly and annual reports.

*Id.* (describing and citing to specific allegations contained in complaint). By contrast, in this case, Plaintiffs allege ***no facts*** establishing that Defendants SNTG, Cooperman or Lee were the "'original and knowing source' of the alleged misrepresentations of [SNTG's] earnings, which were conveyed to investors by [SNSA] in public filings, reports and press releases." *See id.* Nor do Plaintiffs establish that SNTG, Cooperman or Lee "provided [SNSA] with financial data on a quarterly basis and that the data," — or any data supplied to SNSA by SNTG, Cooperman or Lee — "was incorporated in [SNSA's] financial statements and [SNSA's] quarterly and annual reports." *See id.*

*Kidder* is also inapposite because in *Kidder* plaintiffs alleged that parent company GE was a mere "conduit." As the court explained: "Also undisputed is that GE's role in disseminating this information was limited to serving as a conduit. GE believed that the information provided by Kidder accurately reflected Kidder's financial performance." *Id.* (citing

to complaint).  The court continued:  "GE apparently did nothing more than collect the information and transcribe it onto the page.  Kidder controlled the content of the information.  When GE opened its mouth regarding Kidder, Kidder's words came out."  *Id*.  By contrast, Plaintiffs here do not allege that SNSA was serving merely as a "conduit," or that when SNSA "opened its mouth regarding [SNTG], [SNTG's] words came out."  *See id*.  To the contrary, Plaintiffs allege — including in their pending motion — that SNSA knowingly issued misstatements in its public filings.  In short, even if it were still good law, Plaintiffs' principal authority, *Kidder*, provides no support for Plaintiffs' primary liability theory.

### B.    Scheme Liability

Almost in passing, and with virtually no analysis or explanation of the allegations supporting it, Plaintiffs propose — again for the first time — that Defendants should be held liable under "scheme liability."  Mem. at 8-10.  According to Plaintiffs, SNSA and SNTG somehow "schemed to conceal the anti-competitive measures conducted by SNTG in the operations of the subsidiary."  Mem. at 8.  Plaintiffs, however, utterly fail to explain — or even substantiate — their newfound basis for liability except to assert generally that "based on the allegations in the Complaint — and more so when coupled with the newly discovered information . . . the scheme to defraud investors is apparent."  *Id.* at 10.

Plaintiffs' wholly conclusory assertion does not relieve them of their obligation pursuant to Rule 9(b) of the Federal Rules of Civil Procedure to allege the fraudulent "scheme" with particularity.  Plaintiffs, however, fail to satisfy Rule 9(b) as they offer no analysis about who participated in the scheme, what individuals did to carry it out, how the alleged scheme actually worked, or even what parts of the Complaint actually support this "apparent" scheme.  *See Kolbeck v. LIT America, Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996) (explaining that "[b]road

allegations that several defendants participated in a scheme . . . do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b)") (citing *Landy v. Mitchell Petroleum Tech. Corp.*, 734 F. Supp. 608, 620-21 (S.D.N.Y. 1990) ("Plaintiffs must clearly identify each defendant's role in the scheme and what their connection was to the alleged misrepresentation."), *aff'd*, 152 F.3d 918 (2d Cir. 1998)).

In addition, SNSA's public statements undermine any notion that a "scheme" to defraud investors existed between SNTG and SNSA. As noted above, SNSA's and SNTG's announcement that they commenced an investigation of SNTG in 2002 actually reflects that SNSA and SNTG's upper management were unaware of SNTG's alleged misconduct and had to launch an investigation to discover it — hardly evidence of a "scheme." This undercuts Plaintiffs' "scheme liability" theory as the law clearly requires a party to engage in "***knowing participation** in a fraudulent scheme*" for liability under Section 10(b) to attach. *See Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir. 2000) (emphasis added) (requiring defendants to have known of the fraudulent activity and to have actively participated in it); *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368-369 (S.D.N.Y. 2001) (finding that, even though defendant should have known that a statement in a press release was false, the corporation did not knowingly participate in the scheme to issue a false press release).

Moreover, Plaintiffs seem to offer this new "scheme liability" theory as if it somehow relieves them of — or at least lightens — their burden to plead scienter. It does not. *See Aaron v. Securities and Exchange Commission*, 446 U.S. 680, 697-98 (1980) (noting that a plaintiff must establish scienter — later heightened by the PSLRA — to bring a private action alleging a "scheme") (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)). The Supreme Court made unquestionably clear in *Ernst & Ernst*, a ***pre-PSLRA*** case, that plaintiffs must plead

scienter notwithstanding plaintiffs' specific allegations regarding how the scheme directly involved efforts to control the price of securities.[2]  425 U.S. at 199 (noting that the language of Section 10(b) "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities.").  This Court has already found that Plaintiffs have failed to adequately plead scienter.  SNSA's June 4, 2003 Form 20-F does not change this, and Plaintiffs should not be allowed to evade this requirement through conclusory assertions.

## III.  THE COURT SHOULD REJECT PLAINTIFFS' VAGUE AND UNSUPPORTED CORPORATE SCIENTER THEORY

Again in passing, Plaintiffs advance another theory of liability against SNSA — this time "corporate scienter" — but provide *no* explanation of or substantiation supporting this new theory.  Mem. at 10.  Barren of any analysis, Plaintiffs blithely contend that "SNTG's involvement in the anti-competitive conduct and/or knowledge held by senior management at SNTG should impute knowledge of conduct to SNSA."  Mem. at 10.  Plaintiffs also cite to a number of cases without providing much, if any, analysis.

In advancing their new theory, Plaintiffs ignore that this Court — relying on *Shields*, *Chill* and *Novak* (among other cases) — implicitly rejected Plaintiffs' generalized scienter theory by requiring Plaintiffs to allege that "the speaker of each false or misleading statement acted with the required scienter."  Mem. of Decision at 23.  Ultimately, however, Plaintiffs' "corporate

---

[2] Plaintiffs' three other cases — also cited without analysis — support this plaintiffs' burden.  *See In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 325-27, 329 (S.D.N.Y. 2004) (describing the securities scheme (alleged in great detail in the complaint) directly involving efforts to manipulate the value of securities, and noting that plaintiffs had alleged, among other things, that (i) plaintiffs' securities were "controlled or artificially affected by defendants' deceptive or manipulative conduct," and (ii) "the defendants engaged in the manipulative conduct with scienter") (internal quotations omitted); *In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 384-90 (S.D.N.Y. 2003) (describing in great detail the securities scheme alleged by plaintiffs, and noting that pursuant to the PSLRA, plaintiffs had to "plead facts that give rise to a 'strong inference' that the defendant acted with the required state of mind," and that those facts "must be stated with particularity"); *SEC v. Zandford*, 535 U.S. 813, 817-18 (2002) (a case that did not even concern the scope or applicability of "scheme liability").

scienter" theory is meaningless because, regardless of what the aggregate knowledge of SNTG employees may have been, Plaintiffs still fail to identify "the manner by which information flowed from SNTG to SNSA and how involved SNSA was in monitoring SNTG's activities." Mem. of Decision at 27.

Notably, Plaintiffs' "corporate scienter" theory has not been adopted by the Second Circuit. In fact, the theory has been soundly criticized by many courts. *See Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 365-66 (5th Cir. 2004) ("For purposes of determining whether a statement made by the corporation was made by it with the requisite Rule 10(b) scienter we believe it appropriate to look to the state of mind of the individual corporate official . . . rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment."); *Higginbotham v. Baxter Int'l, Inc.*, No. 04 C 4909, 04 C 7096, 2005 WL 1272271, at *8 (N.D. Ill. May 25, 2005) (Exh. 3) (holding that corporate scienter must be shown through "the corporate employee responsible for issuing the alleged misrepresentations or at least that a senior officer or director of the corporation must have the pertinent scienter"); *In re Cable & Wireless, PLC, Sec. Litig.*, 321 F. Supp. 2d 749, 772 (E.D. Va. 2004) (finding company could not be held to possess scienter where investors failed to plead scienter as to its senior officers); *First Equity Corp. of Florida v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y. 1988) ("A corporation can be held to have a particular state of mind only when that state of mind is possessed by a single individual."). Additionally, courts have acknowledged that it is "inappropriate" to apply corporate scienter when the misconduct requires the specific intent to defraud or deceive, such as with Section 10(b) or Rule 10b-5. *See, e.g.*, *Southland*, 365 F.3d at 366.

In advancing their new "corporate scienter" claim, Plaintiffs rely mainly on *In re WorldCom Securities Litigation*, 352 F. Supp. 2d 472, 497 (S.D.N.Y. 2005) (a summary judgment case). That case extended the holding of *United States v. Bank of New England*, 821 F.2d 844 (1st Cir. 1987) (appeal from criminal convictions) — which was not a securities action — allowing plaintiffs to aggregate the knowledge of all employees to establish scienter in the corporation instead of requiring plaintiffs to allege that at least one employee had the requisite scienter. *WorldCom* is inconsistent with the cases discussed above.

Even if the Court were to consider Plaintiffs' new argument, the courts in *WorldCom* and *Bank of New England* allowed plaintiffs to pursue an aggregated knowledge theory based on culpable corporate conduct — namely, defendants' willful blindness of wrongdoing. *Bank of New England*, 821 F.2d at 857 (upholding criminal conviction because suspicions had arisen at defendant bank regarding the reportability of certain transactions and employees' failure to inquire in the face of red flags "constituted flagrant indifference to the obligations imposed by the [Currency Transaction Reporting] Act"); *WorldCom*, 352 F. Supp.2d at 497-99 (detailing defendant accounting firm's failure to maintain independence, its improper accounting procedures and its "failures to pursue and investigate what the Lead Plaintiff characterizes as red flags"); *see also* Thomas Hagemann & Joseph Grinstein, The Mythology of Aggregate Corporate Knowledge: A Deconstruction, 65 Geo. Wash. L. Rev. 210, 210 & 236-37 (1997). Here, Plaintiffs do not allege that SNTG or SNSA remained willfully blind of the alleged misconduct. In fact, once SNTG and SNSA suspected in 2002 that something might be amiss at SNTG, they commenced an investigation — a far cry from the type of conduct alleged in *Bank of New England* or *WorldCom*.

Finally, *not one* of Plaintiffs' cases dealt with the imputation of knowledge from a subsidiary to a parent corporation. This Court's decision rejecting a generalized scienter claim against SNSA is well grounded. In *In re American Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 443-44 (S.D.N.Y. 2000), for example, the district court noted that "a subsidiary's fraud cannot be 'automatically' imputed to its corporate parent." Additionally, the Second Circuit noted when examining *Kidder*-related litigation that, "the district court's determination that the Kidder defendants 'arguably' had a motive does not necessarily mean that the parent company, GE, had any motive. Ultimately, whether Kidder defrauded plaintiffs and whether its parent, GE, defrauded plaintiffs are different questions." *Chill*, 101 F.3d at 268 (citing *In re Kidder Peabody Sec. Litig.*, No. 94 Civ. 3954 (JFK), 1995 WL 590624, at *5 (S.D.N.Y. Oct. 4, 1995)). Plaintiffs cannot satisfy their scienter burden simply by presuming the imputation of knowledge from SNTG to SNSA. The Court was entirely correct in finding that Plaintiffs failed to specifically allege scienter as to SNSA, and Plaintiffs allege nothing now to change that.

## IV.   THE COURT SHOULD REJECT PLAINTIFFS' REQUEST TO AMEND BECAUSE AMENDMENT WOULD BE FUTILE AND PLAINTIFFS HAVE WAITED INEXCUSABLY LONG

At this late date, Plaintiffs also move for leave to amend their Complaint to address the deficiencies raised in the Court's November 10, 2005 Decision. Plaintiffs' request should be denied because (i) as established above, amending the Complaint would be futile, and (ii) Plaintiffs have unduly delayed amending the Complaint.

Plaintiffs contend that their proposed amended complaint would properly plead scienter. As noted above, however, other than the one piece of "newly discovered evidence" that has been publicly available for at least two-and-a-half years and predates the Complaint, Plaintiffs proffer no facts establishing scienter under any of their new theories. While Plaintiffs rely on *Chill* to

argue that leave to amend is often granted in the context of a Rule 9(b) dismissal, Plaintiffs fail to note that the Second Circuit in *Chill* upheld the **denial** of plaintiffs' motion to re-plead because futility is a "good reason to deny leave to amend." *Chill*, 101 F.3d at 272 (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995)).  Courts in this Circuit routinely deny motions to re-plead based on futility.  *See, e.g.*, *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1198-99 (2d Cir. 1989) (affirming denial of plaintiff's request to amend based on futility); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994) (noting that "it is not clear that the failure of pleading could be remedied by further amendment" in affirming the district court's dismissal of complaint without granting leave to amend); *Koehler*, 209 F.3d at 138 (affirming denial of plaintiff's request to amend where "any amendment would be futile because [plaintiff] had not, and could not, plead the elements of a securities fraud claim").  Nothing in Plaintiffs' reconsideration papers cures the deficiencies identified in the Court's thorough November 10 opinion.  Amendment now would be futile.

In addition, Plaintiffs' request should be denied because of Plaintiffs' undue delay in seeking leave to amend.  As discussed above, Plaintiffs' "newly discovered evidence" is not new — it is two-and-a-half years old and predates their Complaint — and Plaintiffs' new theories of liability did not have to await the Court's November 10 opinion.  Plaintiffs' delay in seeking leave to amend is simply inexcusable.  *See MacDraw, Inc. v. CIT Group Equip/ Fin., Inc.*, 157 F.3d 956, 962 (2d Cir. 1998) (stating that a district court has discretion to deny leave to amend "where the motion is made after an inordinate delay, no satisfaction is made for the delay, and the amendment would prejudice the defendant") (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003) (affirming district court's denial of leave to amend complaint because of plaintiff's delay in

seeking leave); *Shields v. Robinson-Van Vuren Assocs., Inc.*, No. 98Civ.8785 (DLC), 1999 WL 1267465, at *3 (S.D.N.Y. Dec. 29, 1999) (Exh. 4) (denying motion to amend complaint, in part, because "Plaintiff ha[d] not provided sufficient justification for the eight month delay in seeking to amend the complaint.").

Plaintiffs' situation is remarkably similar to that of plaintiffs in *Rosenzweig*.  In that case, the Fifth Circuit affirmed the district court's denial of plaintiffs' request for leave to amend their securities complaint (raised in their reconsideration papers).  The court noted that "a litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend."  *Rosenzweig*, 332 F.3d at 864 (quoting *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982)).  The court explained that plaintiffs had not presented any facts that were ***not available*** prior to the district court's dismissal.  *Id* at 865; *see also Kirlin v. Conopco, Inc.*, No. 94CIV.2675 (AGS), 1996 WL 263026, at *2 (S.D.N.Y. May 16, 1996) (Exh. 5) (denying motion to amend complaint because plaintiff wanted leave to re-plead "more than two years" after plaintiff had filed his initial complaint).

Finally, Plaintiffs' request for leave to amend the Complaint should be denied because this Court dismissed Plaintiffs' allegations ***with prejudice***.  *See United States v. Union Corp.*, 194 F.R.D. 223, 236 (E.D. Penn. 2000) ("By dismissing with prejudice, therefore, this court declined to grant [the moving party] any leave to amend or replead any of the counterclaims, suggested that the pleading deficiency could not be corrected, and thus expressly stated that [the moving party] was denied such leave to amend"); *Fidel v. Farley*, 392 F.3d 220, 236 (6th Cir. 2005) (in upholding a district court's dismissal of a securities action, the court noted that the "purpose of the PSLRA would be frustrated if district courts were required to allow repeated amendments to complaint filed under the PSLRA") (quoting *Miller v. Champion Enters., Inc.*,

346 F.3d 660, 692 (6th Cir. 2003)).  The Court's dismissal of Plaintiffs' complaint "with prejudice" and instruction to the clerk of the court to "close" the file reflected this Court's considered judgment that the pleading deficiencies in Plaintiffs' complaint could not be cured. Such ruling precludes Plaintiffs from having a third "bite at the apple" years after they filed their initial complaint. *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) ("It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple") (internal quotations omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Reconsideration of the Court's Memorandum of Decision, Dated November 10, 2005.

<div style="margin-left:40%">

DEFENDANTS STOLT-NIELSEN S.A.,
STOLT-NIELSEN TRANSPORTATION
GROUP LTD., JACOB STOLT-NIELSEN,
NIELS G. STOLT-NIELSEN, SAMUEL
COOPERMAN AND REGINALD J.R. LEE


By: /s/_____
    Michael P. Shea (#ct19598)
    Jason S. Weathers (#ct24579)
    Day, Berry & Howard LLP
    City Place
    Hartford, Connecticut 06103
    Tel:  (806) 275-0146
    Fax:  (806) 275-0343
    Email: mpshea@dbh.com

</div>

*Of Counsel*
J. Mark Gidley
Christopher M. Curran
Peter J. Carney
Jaime M. Crowe
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC 20005
Tel: (202) 626-3600
Fax: (202) 639-9355