Not Reported in F.Supp.2d                                                                                                              Page 1
Not Reported in F.Supp.2d, 2000 WL 1234601 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,059
**(Cite as: 2000 WL 1234601 (S.D.N.Y.))**

**Motions, Pleadings and Filings**

United States District Court, S.D. New York.
In re SOTHEBY'S HOLDINGS, INC. Securities Litigation
**No. 00 Civ. 1041(DLC).**

Aug. 31, 2000.

Sherrie R. Savett, Gary E. Cantor, Berger & Montague, P.C., Philadelphia, PA, for Plaintiffs' Lead Counsel.

Daniel W. Krasner, Fred Taylor Isquith, Michael Jaffe, Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY, for Plaintiffs' Local Counsel.

Greg A. Danilow, Timothy E. Hoeffner, Jonathan Margolis, Timothy A. Greensfelder, Weil, Gotshal & Manges LLP, New York, NY, for Defendants Sotheby's Holdings Inc., Sotheby's Inc., William S. Sheridan, Joseph A. Domonkos, Patricia A. Carberry, and Cyndee L., Grillo.

Scott W. Muller, Gregory G. Ballard, Davis Polk & Wardwell, New York, NY, for Defendant A. Alfred Taubman.

John S. Siffert, Lisa A. Baroni, Lankler Siffert & Wohl LLP, New York, NY, for Defendant Diana D. Brooks.

OPINION and ORDER
COTE, J.

*1 In this securities fraud class action, plaintiffs--all persons and entities who purchased Sotheby's Class A common stock ("common stock") from February 11, 1997 to February 21, 2000 ("the Class Period")--allege that defendants, Sotheby's Holdings, Inc., its subsidiary, Sotheby's Inc. (individually and collectively "Sotheby's"), and certain of Sotheby's present and former executive officers and directors ("the Individual Defendants"), misrepresented material facts in their public statements, reports to shareholders and SEC filings relating to the existence of competition in the industry and the source and growth of Sotheby's commission rates, auction sales, revenue and earnings. Specifically, plaintiffs allege that the public statements made by the defendants were false and misleading in that they failed to disclose that Sotheby's commission revenues and, therefore, a material portion of its profit margins and net income, were derived from an illegal antitrust conspiracy. Plaintiffs assert that the defendants' actions violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder. All defendants have submitted motions to dismiss the complaint in its entirety. For the reasons discussed below, the motions of defendants Williams S. Sheridan ("Sheridan"), Joseph A. Domonkos ("Domonkos"), Patricia A. Carberry ("Carberry"), and Cyndee L. Grillo ("Grillo") (collectively, the "Financial Officer Defendants") and of defendant Sotheby's, Inc. are granted; the motions of defendant Sotheby's Holdings, Inc. and of defendants A. Alfred Taubman ("Taubman") and Diana D. Brooks ("Brooks") are denied.

BACKGROUND
*The Parties*

The Consolidated Amended Class Action Complaint ("Complaint") alleges the following facts. Defendant Sotheby's Holdings, Inc. primarily serves as a holding company and parent company of defendant Sotheby's, Inc. During the Class Period, Sotheby's, Inc. conducted auctions in the United States through its auction house located in New York, New York. Sotheby's is one of the world's largest auctioneers of fine arts, antiques and collectibles. Its aggregate auction sales in 1998 and 1999, were approximately $1.940 billion and $2.259 billion, respectively.

Defendant Taubman was Chairman of the Board of Directors of Sotheby's Holdings, Inc. between 1983 and approximately February 21, 2000. Between 1983 and the present, Taubman controlled more than 60% of the voting stock of Sotheby's Holdings, Inc. and owned and still owns in excess of 22% of its equity. Taubman signed Sotheby's annual reports filed with the SEC for fiscal years 1996 and 1997. [FN1] Taubman resigned his position as Chairman on February 20, 2000, soon after government investigations into Sotheby's business practices became public.

FN1. While the Complaint does not include the

Case 3:03-cv-00409-DJS    Document 57-11    Filed 03/20/2006    Page 2 of 8

Not Reported in F.Supp.2d                                                                                   Page 2
Not Reported in F.Supp.2d, 2000 WL 1234601 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,059
**(Cite as: 2000 WL 1234601 (S.D.N.Y.))**

allegation that Taubman signed the 1996 Annual Report, the plaintiffs rely on it in their opposition to the motions. These annual reports are quoted in the Complaint at some length and therefore incorporated by reference. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co.,* 75 F.3d 801, 809 (2d Cir.1996).

Defendant Brooks was the President and Chief Executive Officer of Sotheby's Holdings, Inc. and Sotheby's, Inc. between April 1994 and approximately February 21, 2000. Brooks signed Sotheby's annual reports filed with the SEC for fiscal years 1997 and 1998. Brooks also resigned soon after the government investigations were made public.

**\*2** Defendants Sheridan, Domonkos, Carberry and Grillo served in various capacities as financial officers at Sotheby's at relevant times during the Class Period. They signed Sotheby's quarterly and/or annual reports during their employment.

*The Price-Fixing Agreement*

Christie's International PLC ("Christie's") is one of the world's largest auction houses. Together with Sotheby's, the two auction houses control an estimated 95% of the $4 billion worldwide auction market. Sotheby's and Christie's generally function as agents accepting property on consignment from their clients ("Auction Items"), selling the Items at auction in return for a "seller's commission," based on the auction sale's price, and a "buyer's premium," a predetermined percentage fee.

Prior to the early 1980s, Sotheby's and Christie's only charged a commission to the seller of Auction Items. In the early 1980s, Christie's began requiring that all buyers pay a premium of 10% on Auction Items. Approximately two years later, Sotheby's instituted a premium fee of 10% for all buyers. Prior to entering into the commission-fixing scheme alleged in the complaint, Sotheby's and Christie's competed with each other in aggressive price-cutting.

In the early 1990s, as the art market went into recession and revenues at Sotheby's and Christie's dropped, the two auction houses competed for major consignments by reducing the official 10% seller commissions to zero, effectively wiping out profits. Thereafter, Sotheby's and Christie's agreed to fix the prices of their auction services in the United States. They agreed to increase the buyer's premium, and in March and April, 1995, the two houses instituted identical changes to their seller's commission policy, changing from a flat commission to a variable one based on the value or selling price of Auction Items. The complaint describes further evidence of collusion in the form of shared preferred customer lists that identified clients that were spared from paying the new fees.

*The Government Investigation*

In the Spring of 1997, the United States Department of Justice ("DOJ") launched an antitrust investigation into collusive and price-fixing practices between Sotheby's and Christie's and empaneled a grand jury. Subpoenas were issued in the Spring of 1997 to Sotheby's, Christie's and others that called for documents going back to January 1, 1992. According to an article in the *New York Times* dated February 1, 2000, the Government required Sotheby's to provide the names of officials or employees who had "direct or indirect responsibility, including management-oversight responsibility, for setting, recommending or negotiating consignors' commissions and/or buyers' premiums." In late January and during February 2000, Christie's disclosed that the Antitrust Division of the DOJ had granted Christie's "conditional amnesty" under the Antitrust Division's Corporate Leniency Policy. Under this policy, the corporation or individual is admitted into the program only if it reports "illegal activity" and "reports the wrongdoing with candor and completeness."

*The Misleading Statements*

**\*3** The Complaint alleges that Sotheby's publicly touted the positive impact of the new commission structure and increased auction sales as the sources of improved revenues, when the real cause of the increased profits was the illegal collusion. The Complaint also alleges that Sotheby's issued statements misrepresenting the level of competition in the auction market. To support these allegations, plaintiffs point to specific statements, including language in Sotheby's 1996, 1997 and 1998 Annual Reports. Sotheby's stock rose

Case 3:03-cv-00409-DJS   Document 57-11   Filed 03/20/2006   Page 3 of 8

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2000 WL 1234601 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,059
**(Cite as: 2000 WL 1234601 (S.D.N.Y.))**

from $14 a share in 1995, to a high of $47 in 1999. Never during that time did Sotheby's disclose any arrangement or agreement with Christie's to fix premium and commission charges.

DISCUSSION

This Court may grant a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., only if " 'it appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief." ' Cohen v. Koenig, 25 F .3d 1168, 1172 (2d Cir.1994) (quoting Conley v. Koenig, 355 U.S. 41, 45-46 (1957)). In considering the motion, the court must take "as true the facts alleged in the complaint and draw[ ] all reasonable inferences in the plaintiff's favor." Jackson Nat'l Life Ins. v. Merrill Lynch & Co. 32 F.3d 697, 699-700 (2d Cir.1994). The court can dismiss the claim only if, assuming all the facts alleged to be true, plaintiffs still fail to plead the basic elements of a cause of action.

I. Primary Violations of Section 10(b)

Section 10(b) of the Exchange Act provides that:
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange -
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). SEC Rule 10b-5 "more specifically delineates what constitutes a manipulative or deceptive device or contrivance." Press v. Chemical Inv. Servs. Corp., 166 F.3d 529, 534 (2d Cir.1999). Rule 10b-5 requires the following for a plaintiff to maintain a misrepresentation claim:
> "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused [plaintiff] injury ."

Id. (quoting In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 264 (2d Cir.1993)) (brackets in original). Securities fraud claims are subject to the requirements of Rule 9(b), Fed.R.Civ.P., which provides that "[i]n all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity." See Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir.2000).

A. Duty to Disclose

**\*4** All of the defendants contend that the complaint is defective because the plaintiffs allege no circumstances giving rise to a duty under the securities laws to disclose the alleged collusive conduct with Christie's. Plaintiffs respond that Sotheby's made a number of false or misleading affirmative statements in public filings and in press releases--as to the level of competition in the industry and the reasons for Sotheby's growth in revenues and earnings--that triggered the requirement to disclose the illegal conduct.

The Complaint alleges misrepresentations with sufficient particularity to withstand a motion to dismiss. Specifically, the Complaint alleges that defendants' statements in Sotheby's Annual Reports on Form 10-K that there was "intense" competition with its "primary auction competitor," Christie's, and that the amount of commission proposed by auction houses was a factor in the decision made by a seller of Auction Items, were false and misleading because the price-fixing agreement between Sotheby's and Christie's had eliminated price competition between the two houses. [FN2] A jury could conclude that these statements could have led reasonable investors to believe that Sotheby's and Christie's were competing with each other in the usual manner, that is, through price.

> FN2. For example, Sotheby's 1997 Form 10-K stated that:
> Competition in the international art market is intense. A fundamental challenge facing the auctioneer or dealer is to obtain high quality and valuable property for sale. The Company's primary auction competitor is Christie's.
> ...
> A complex array of factors may influence the

Not Reported in F.Supp.2d                                                                                                                              Page 4
Not Reported in F.Supp.2d, 2000 WL 1234601 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,059
**(Cite as: 2000 WL 1234601 (S.D.N.Y.))**

seller's decision. These factors include ... the amount of commission proposed by dealers or auction houses to sell a work on consignment.

Defendants rely on a series of cases holding that there is no general duty under SEC regulations for a corporation to disclose uncharged illegal conduct. *See, e.g., Roeder v. Alpha Indus., Inc., 814 F.2d 22, 27 (1st Cir.1987); United States v. Matthews, 787 F.2d 38, 49 (2d Cir.1986); United States v. Crop Growers Corp., 954 F.Supp. 335, 347 (D.D.C.1997)*. These cases reflect the principle that " 'so long as uncharged criminal conduct is not required to be disclosed by any rule lawfully promulgated by the SEC, nondisclosure of such conduct cannot be the basis of a criminal prosecution." ' *Crop Growers, 954 F.Supp. at 346* (quoting *Matthews, 787 F.2d at 49).*

Generally, "an omission is actionable under the securities laws only when the [defendant] is subject to a duty to disclose the omitted facts." *Time Warner, 9 F.3d at 267; see also Basic Inc. v. Levinson, 485 U.S. 224, 239 n. 17 (1988)*. "A duty to disclose arises whenever secret information renders prior public statements materially misleading." *Time Warner, 9 F.3d at 268*. A statement is materially misleading if "there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available." ' *Id. at 267-68* (quoting *TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 499 (1976)*). Thus, "[w]hen a corporation does make a disclosure-- whether it be voluntary or required--there is a duty to make it complete and accurate." *Roeder, 814 F.2d at 26*. This duty to disclose exists even where the omitted information relates to allegedly illegal conduct. *See In re Par Pharm., Inc. Sec. Litig., 733 F.Supp. 668, 675 (S.D.N.Y.1990)* ("The illegality of corporate behavior is not a justification for withholding information that the corporation is otherwise obligated to disclose."); *Ballan v. Wilfred Am. Ed. Corp., 720 F.Supp. 241, 249 (E.D.N.Y.1989)* ("The fact that a defendant's act may be a crime does not justify its concealment."). [FN3]

> FN3. Given the conclusion that the statements regarding competition give rise to a duty to disclose, the Court need not reach the issues of (1) whether Sotheby's statements regarding the reasons for its growth in revenues and earnings, including the impact of its commission schedule, or (2) the more tenuous theory that statements that it was cooperating with the DOJ investigation, also triggered a duty to disclose the alleged price-fixing agreement.

B. Sotheby's, Inc.

**\*5** Sotheby's, Inc., argues that because the plaintiffs do not allege that any of the misleading statements were made by Sotheby's, Inc. and because no aiding and abetting liability exists under Section 10(b), *see Central Bank v. First Interstate Bank, 511 U.S. 164, 177-78 (1994)*, the claim against Sotheby's, Inc. must be dismissed. For primary liability to attach to a defendant, the misrepresentation must "be attributed to that specific actor." *Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir.1998)*. A misrepresentation may be attributed to a corporate defendant if it was made by or on behalf of the corporation. *See Time Warner, 9 F.3d at 265* (*Rule 9(b)* requires plaintiff to identify the corporate insider in its pleadings to allege corporate liability based on press reports attributed to anonymous corporate insiders); *United States v. Jacques Dessange, Inc., 103 F.Supp.2d 701, 705-06 (S.D.N.Y.2000)* (DLC) (holding that corporation may be criminally liable for actions of a supervisory employee where the employee's actions "were for the benefit of and authorized by the company") (quoting *United States v. Paccione, 949 F.2d 1183, 1200 (2d Cir.1991)*).

A primary violator of Section 10(b) is any actor who " 'participated in the fraudulent scheme." ' *SEC v. U.S. Environmental, Inc., 155 F.3d 107, 112 (2d Cir.1998)* (quoting *SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1471 (2d Cir.1996)*). A finding that the defendant communicated the misrepresentation directly to the plaintiff is not necessary. *See Wright, 152 F.3d at 175; In re Kidder Peabody Sec. Litig., 10 F.Supp.2d 398, 407 (S.D.N.Y.1998)*. If a plaintiff "can show that defendants were the *original and knowing source* of a misrepresentation and that defendants knew or should have known that [that] misrepresentation would be communicated to investors, primary liability should attach." *10 F.Supp.2d at 407* (emphasis added); *see also U.S. Environmental, 155 F.3d at*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00409-DJS    Document 57-11    Filed 03/20/2006    Page 5 of 8

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2000 WL 1234601 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,059
**(Cite as: 2000 WL 1234601 (S.D.N.Y.))**

112 (distinguishing cases where liability did not attach because defendant who was the source of the misrepresentation had no legal duty to disclose or prevent a fraudulent act).

The Complaint does not specifically allege that Sotheby's, Inc. made any false or misleading statements. Instead, the statements alleged to be actionable are identified as having been made by "Sotheby's"--which is defined to include both the parent and subsidiary--or by an individual who was an officer of both companies. An examination of the Annual Reports, which are incorporated through the references made to them in the Complaint, *see supra* n. 1, indicate that they were filed by and on behalf of Sotheby's Holdings, Inc. The press reports quoted in the Complaint do not identify the corporate speaker as someone from Sotheby's, Inc. When there is an identification, it is to Sotheby's Holdings, Inc. Regarding Sotheby's, Inc., the Complaint alleges only that it is a subsidiary of Sotheby's Holdings, Inc., which is its parent and holding company, and that Sotheby's, Inc. conducts auctions. There are no allegations that Sotheby's, Inc. was the original and knowing source of any misleading statements.

**\*6** Plaintiffs argue that from the Complaint's allegations, it is reasonable to infer that "the financial information and statements on competition in the auction business ... were endorsed by, the subsidiary." Such an inference is inappropriate, especially in light of the heightened pleading requirements for securities fraud claims. Furthermore, even were the Court to make this inference, absent additional allegations that any information transmitted to Sotheby's Holdings, Inc. by Sotheby's, Inc. was itself false and misleading and that its source knew it to be such, plaintiffs would still fail to state a claim against Sotheby's, Inc. *See* Kidder, 10 F.Supp.2d at 407. Because plaintiffs fail to allege any act or omission on the part of Sotheby's, Inc. sufficient to subject it to liability under Section 10(b), the complaint as to Sotheby's, Inc. is dismissed.

C. The Individual Defendants

The Individual Defendants contend that plaintiffs have not sufficiently pled the elements of a Section 10(b) claim to link the Individual Defendants to the alleged fraud. To satisfy the requirements of Rule 9(b), Fed.R.Civ.P., in pleading a fraud claim, a complaint must " '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ' Acito v. IMCERA Group, Inc., 47 F.3d 47, 51 (2d Cir.1995) (*quoting* Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993)); *see also* Novak, 216 F.3d at 306. In pleading a securities fraud violation, a complaint must allege that a defendant acted with scienter. *See* Novak, 216 F.3d at 306 (collecting cases). When pleading scienter, "with respect to each act or omission" alleged to violate the securities laws, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Second Circuit has held that to satisfy this scienter requirement, "a complaint may (1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud." Rothman v. Gregor, No. 00-7005, 2000 WL 959484, at \*7 (2d Cir. July 11, 2000); *see also* In re Carter-Wallace Sec. Litig., 220 F.3d 36,--(2d Cir.2000).

A plaintiff may sufficiently plead conscious misbehavior through allegations of deliberate illegal conduct. *See* Novak, 216 F.3d at 308. To plead recklessness, a plaintiff must allege facts showing conduct that was "highly unreasonable, representing an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Rothman, 2000 WL 959484, at \*8 (quotation omitted). Recklessness has been sufficiently pled where there are specific allegations that a defendant knew of facts or had access to information contradicting his public statements, or where he failed to review information that he had a duty to monitor, or where he ignored obvious signs of fraud. *See* Novak, 216 F.3d at 308. "Where plaintiffs contend [a] defendant[ ] had access to contrary facts, they must specifically identify the reports or statements containing this information." Id. at 309.

**\*7** To plead facts supporting a strong inference of the

Case 3:03-cv-00409-DJS    Document 57-11    Filed 03/20/2006    Page 6 of 8

Not Reported in F.Supp.2d                                                                                      Page 6
Not Reported in F.Supp.2d, 2000 WL 1234601 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,059
**(Cite as: 2000 WL 1234601 (S.D.N.Y.))**

requisite scienter by showing motive and opportunity, a plaintiff must allege facts showing "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged," and "the means and likely prospect of achieving the concrete benefits by the means alleged." *Press,* 988 F.Supp. at 390 (quoting *Shields,* 25 F.3d at 1129). General allegations of motive "possessed by virtually all corporate insiders" are insufficient to raise a strong inference of fraudulent intent. Novak, 216 F.3d at 307.

In its recent decision in Novak v. Kasaks, 216 F.3d 300, after summarizing prior case law, the Second Circuit explained that a complaint pleads facts sufficient to raise a "strong inference" of fraudulent intent where it sufficiently alleges that a defendant:

> (1) benefitted in a concrete and personal way from the purported fraud ...; (2) engaged in deliberately illegal behavior ...; (3) knew facts or had access to information suggesting that [her] public statements were not accurate ...; or (4) failed to check information [she] had a duty to monitor.

*Id.* at 311.

1. The Financial Officer Defendants

The plaintiffs argue that they have alleged facts sufficient to raise a strong inference of recklessness on the part of the Financial Officer Defendants. There are no allegations of the scienter of the Financial Officer Defendants apart from conclusory allegations regarding the Individual Defendants as a group. For example, the Complaint alleges that the Individual Defendants were "aware that the statements being made by Sotheby's" were misleading, that they "knew or were grossly reckless in not recognizing that the disclosures in public filings with the SEC ... were blatantly false," and that "their executive and/or directorial positions provided them with access to internal corporate documents and information ... and allowed them to have conversations and meetings with other corporate officers and employees." The Complaint does not allege that any of the Financial Officer Defendants possessed any specific knowledge of the alleged illegal conduct, does not allege the existence of any specific documents or other information contradicting their public statements that were available to the Financial Officer Defendants, and does not allege facts demonstrating that the Financial Officer Defendants failed to review or check information that they had a duty to monitor or that they ignored obvious signs of fraud, *see* Novak, 216 F.3d at 308.

Apparently conceding these failings, the plaintiffs argue that those such as the Financial Officer Defendants who are in senior positions of a corporation are presumed to be "knowledgeable about significant practices at their company." It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter. *See* Novak, 216 F.3d at 309; *In re Health Management Sys. Inc. Sec. Litig.,* No. 97 Civ. 1865(HB), 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998); *In re WRT Energy Sec. Litig.,* No. 96 Civ. 3210(JFK), NO. 96 Civ. 3611(JFK), 1997 WL 576023, at *14 (S.D.N.Y. Sept. 15, 1997); *Duncan v. Pencer,* No. 94 Civ. 0321(LHP), 1996 WL 19043, at *14 (S.D.N.Y. Jan. 18, 1996). The facts demonstrating the requisite scienter must be pleaded with particularity, thus, in attempting to establish scienter by showing recklessness or conscious misbehavior,

> **\*8** conclusory allegations--that Defendants "knew but concealed" some things, or "knew or were reckless in not knowing" other things--do not satisfy the requirements of Rule 9(b).... [S]uch allegations are "so broad and conclusory as to be meaningless."

*Shields,* 25 F.3d at 1129 (quoting Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 119-20 (2d Cir.1982)). Because the allegations of the Complaint do not raise a strong inference of fraudulent intent on the part of the Financial Officer Defendants, Count I of the Complaint must be dismissed as to them.

2. Taubman and Brooks

The Complaint does, however, allege facts sufficient to raise a strong inference that Taubman and Brooks acted with fraudulent intent. The Complaint alleges that both Taubman and Brooks were directly involved in arranging the illegal price-fixing agreement, and that each of them signed 10-Ks that, in light of the illegal agreement, they knew were false or misleading. Allegations that defendants had actual

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00409-DJS    Document 57-11    Filed 03/20/2006    Page 7 of 8

Not Reported in F.Supp.2d    Page 7
Not Reported in F.Supp.2d, 2000 WL 1234601 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,059
**(Cite as: 2000 WL 1234601 (S.D.N.Y.))**

knowledge that their statements were false or misleading are sufficient to plead scienter. See *Novak,* 216 F.3d at 308.

II. Section 20(a) of the Exchange Act

In Count II of the Complaint plaintiffs assert a claim of secondary liability against the Individual Defendants under Section 20(a) of the Exchange Act. The Individual Defendants contend that they are not control persons within the meaning of Section 20(a). To establish a prima facie case of liability under Section 20(a), a plaintiff must show:

> (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) "that the controlling person was in some meaningful sense a culpable participant" in the primary violation.

*Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir.1998) (quoting *SEC v. First Jersey Securities, Inc.,* 101 F.3d 1450, 1472 (2d Cir.1996)). Control over a primary violator may be established by showing that "the defendant possessed 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." ' *First Jersey,* 101 F.3d at 1473 (quoting 17 C.F.R. § 240.12b-2). Actual control over the wrongdoer and the transactions in question is necessary for control person liability. See *In re Blech Sec. Litig.,* 961 F.Supp. 569, 586-87 (S.D.N.Y.1997). Thus, officer or director status alone does not constitute control. *See Livent,* 78 F.Supp.2d at 221 (collecting cases).

1. Financial Officer Defendants

As discussed above, the Complaint contains no detailed allegations regarding the state of mind of the Financial Officer Defendants in making the alleged misstatements. For this same reason, the Section 20(a) claim against the Financial Officer Defendants must be dismissed for failure to allege culpable participation in the fraud. *See Livent,* 78 F.Supp.2d at 222 (dismissing Section 20(a) claims where plaintiffs did not adequately allege scienter element of Section 10(b) claim against those defendants).

2. Taubman and Brooks

**\*9** The Complaint does state a claim for control person liability against Taubman and Brooks.

CONCLUSION

For the reasons stated, the motions of Sotheby's, Inc. and the Financial Officer Defendants are granted and the claims against them are dismissed without prejudice; the motions of Sotheby's Holdings, Inc. and of Taubman and Brooks are denied. The plaintiffs having requested leave to amend to cure any deficiencies in their pleading, any amended complaint shall be filed by September 15, 2000.

SO ORDERED:

Not Reported in F.Supp.2d, 2000 WL 1234601 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,059

**Motions, Pleadings and Filings (Back to top)**

• 2001 WL 34727451 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Support of Proposed Settlement (Feb. 09, 2001)

• 2001 WL 34766720 (Trial Motion, Memorandum and Affidavit) Motion for Approval Op the Proposed Settlement and the Joint Petition for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (Feb. 09, 2001)

• 2001 WL 34766510 (Trial Motion, Memorandum and Affidavit) Affidavit of Sherrle R. Savett on Behalf of Plaintiffs' Counsel in Support of the Settlement and the Joint Petition of Plaintiffs' Counsel for an Award of Attorneys' Fees and Reimbursement of Expenses (Feb. 08, 2001)

• 2001 WL 34766514 (Trial Motion, Memorandum and Affidavit) Affidavit of Edward J. Sincavage, Cpa Regarding Dissemination of Notice to the Class (Feb. 07, 2001)

• 2000 WL 34474857 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law of Sotheby's Holdings, Inc. and Sotheby's Inc. in Support of Their Motion to Dismiss the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (Jul. 14, 2000)

• 2000 WL 34474858 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of a. Alfred Taubman's Motion to Dismiss the Consolidated Amended Class Action Complaint (Jul. 14, 2000)

Not Reported in F.Supp.2d                                                                                                    Page 8
Not Reported in F.Supp.2d, 2000 WL 1234601 (S.D.N.Y.), Fed. Sec. L. Rep. P 91,059
**(Cite as: 2000 WL 1234601 (S.D.N.Y.))**

- 2000 WL 34474859 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of the Financial Officer Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (Jul. 14, 2000)

- 2000 WL 34474855 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Sotheby's Holdings, Inc. and Sotheby's, Inc.'s Motion to Dismiss the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (Jul. 07, 2000)

- 2000 WL 34474856 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to the Motions to Dismiss Filed by the Financial Officer Defendants, Defendant A. Alfred Taubman, and Defendant Diana D. Brooks (Jul. 07, 2000)

- 2000 WL 34474851 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Diana D. Brooks's Motion to Dismiss the Consolidated Amended Class Action Complaint (Jun. 16, 2000)

- 2000 WL 34474852 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of A. Alfred Taubman's Motion to Dismiss the Consolidated Amended Class Action Complaint (Jun. 16, 2000)

- 2000 WL 34474853 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Financial Officer Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (Jun. 16, 2000)

- 2000 WL 34474854 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Sotheby's Holdings, Inc. and Sotheby's Inc. in Support of Their Motion to Dismiss the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (Jun. 16, 2000)

- 2000 WL 34474850 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (Jun. 02, 2000)

- 2000 WL 34474849 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of Motion by the Assils for Appointment of Lead Plaintiffs and for Approval of Lead Plaintiffs' Selection of Berman, Devalerio & Pease LLP as Lead Counsel (May. 16, 2000)

- 2000 WL 34474848 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of Motion by Eric Jacoby and Alan and Kevin Assil for Appointment of Lead Plaintiffs and for Approval of Lead Plaintiffs' Selection of Co-Lead Counsel (May. 11, 2000)

- 2000 WL 34474847 (Trial Motion, Memorandum and Affidavit) Additional Memorandum in Support of Designation of Eric Jacoby as Lead Plaintiff and Designation of Berger & Montague, P.C. as Lead Counsel (May. 10, 2000)

- 2000 WL 34474846 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion by Eric Jacoby and Alan and Kevin Assil for Consolidation, Appointment of Lead Plaintiffs Under Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 and for Approval of Lead Plaintiffs' Selection of Lead Counsel (Apr. 11, 2000)

- 2000 WL 34474990 (Trial Pleading) Class Action Complaint for Violations of the Federal Securities Law (Feb. 10, 2000)

- 1:00cv01041 (Docket) (Feb. 10, 2000)

END OF DOCUMENT