Not Reported in F.Supp.2d                                                                                                                      Page 1
Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)
**(Cite as: 2000 WL 489713 (S.D.N.Y.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Alan FELLMAN, On Behalf of Himself and All Others Similarly Situated,
Plaintiffs,
v.
ELECTRO OPTICAL SYSTEMS CORP., Charles Weaver, George C. Chachas, U.S.
Milestone, Thomas Edward Cavanagh, William Levy, Donald & Co., Cosimo Tacopino,
the Future Superstock, and Barrow Street Research,
Defendants.
No. 98 Civ.6403 LBS.

April 25, 2000.

*MEMORANDUM AND ORDER*

SAND, J.

**\*1** Plaintiff Alan Fellman, on behalf of himself and all others similarly situated (collectively, "Plaintiffs") bring this action against defendants The Future Superstock ("FSS"), Barrow Street Research ("BSR"), Jeffrey M. Bruss ("Bruss") (collectively, the "Moving Defendants"), Electro Optical Systems Corporation ("EOSC"), Charles Weaver, George C. Chachas, U.S. Milestone, Thomas Edward Cavanagh, William Levy, Donald & Co., and Cosimo Tacopino (collectively, the "Defendants"), asserting violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Presently before the Court are (i) BSR's motion to dismiss the Amended Complaint, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4; and (ii) FSS's motion to dismiss the Amended Complaint, likewise pursuant to Rules 9(b) and 12(b)(6), and the PSLRA, and (iii) Bruss's motion to dismiss the Amended Complaint as against him on the ground that it is time-barred.

Background

The following facts are drawn from the Amended Complaint and documents explicitly referenced therein, *see* Koppel v. 4987 Corp., 167 F.3d 125, 128 (2d Cir.1999); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir.1991), and are assumed to be true for purposes of considering the Moving Defendants' motions.

Plaintiffs' action is brought as a class action, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b), on behalf of all individuals who purchased or otherwise acquired the common stock of EOSC between December 18, 1997 and March 27, 1998 inclusive (the "Class Period"). *See* Am. Compl. ¶ 1. Plaintiff Fellman, along with 38 other plaintiffs, were appointed lead plaintiffs by this Court's December 3, 1998 Order. *See id.* ¶ 7.

Defendant FSS is and at all relevant times was an internet newsletter based in Illinois that promoted EOSC stock. Defendant Bruss is the sole shareholder, officer, and director of FSS. Defendant BSR is and at all relevant times was an internet investment research firm based in New York that promoted EOSC stock. *See id.* ¶¶ 15-17.

Plaintiffs allege generally that,
> [d]uring the Class Period, [Defendants] engaged in a scheme to manipulate and artificially inflate the stock of [EOSC].... [Defendants] controlled and manipulated the market price at which [EOSC] stock was traded through a series of stock transactions and then made false and misleading statements which kept the stock price of [EOSC] at an artificially inflated level so that they could liquidate their holdings of the stock at a substantial profit.

*Id.* ¶ 28. Plaintiffs allege that this scheme began in November 1997, when WTS Transnational Corporation ("WTS"), a privately-held company, sought financing for a fingerprint verification device it was developing. To this end, WTS approached Defendant Cavanagh, a partner in an investment firm called U.S. Milestone, and Cavanagh obtained one million dollars in financing. *See id.* ¶ 29. On December 18, 1997, WTS was acquired by a shell corporation called Curbstone Acquisition Corporation ("Curbstone"), by means of a reverse stock acquisition agreement. Pursuant to the agreement, approximately 15.5 million newly issued shares of restricted Curbstone common

Case 3:03-cv-00409-DJS    Document 57-12    Filed 03/20/2006    Page 2 of 12

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)
**(Cite as: 2000 WL 489713 (S.D.N.Y.))**

stock were issued to WTS, 2.1 million of which were given to Defendant U.S. Milestone, and 500,000 of which were given to Defendant Levy. *See id.* ¶¶ 31, 32. The merged entity became EOSC. *See id.* ¶ 33.

**\*2** On December 19, 1997, Defendant Cavanagh, with the help of Defendant Donald & Co., artificially inflated EOSC's stock price through a series of manipulative transactions. *See id.* ¶ 34. Also on December 19, 1997, the parties to the merger issued an announcement describing the merger that was allegedly replete with false and misleading statements. *See id.* ¶ 36. Similarly, on December 24, 1997, EOSC filed an 8-K with the SEC that allegedly contained numerous false and misleading statements. *See id.* ¶ 37-41.

For the alleged purpose of maintaining and increasing the artificially inflated EOSC stock price, Cavanagh engaged the services of FSS. On or about January 17, 1998, FSS issued a five-page newsletter touting EOSC as its "stock-pick of the year." This newsletter allegedly contained numerous false and misleading statements. *See id.* ¶ 43. On January 30, 1998, FSS issued a second newsletter touting EOSC. It likewise allegedly contained false and misleading statements. *See id.* ¶ 45.

Similarly, for the alleged purpose of maintaining and increasing the artificial inflation of EOSC stock, EOSC engaged the services of BSR to create and publish a research report on EOSC. Memo. Opp. at 8. On February 9, 1998, BSR issued a favorable research report on EOSC, recommending purchase of EOSC stock. This research report was allegedly riddled with false and misleading statements. Am. Compl. ¶¶ 47-48. BSR allegedly neglected to inform the public that it received $10,000 for its report on EOSC. *See id.* ¶ 49.

On unspecified dates subsequent to February 9, 1998, those defendants holding shares of EOSC stock sold their shares and collected proceeds of over $10 million. *See id.* ¶ 50. Finally, on March 13, 1998, the SEC commenced a lawsuit to stop the fraudulent sale and manipulation of EOSC stock, and halted trading of the stock for ten days. *See id.* ¶ 53.

Plaintiffs filed their initial complaint on August, 27, 1998. On December 3, 1998, the Court appointed Defendant Fellman and 38 other individuals as lead plaintiffs in this action. Defendants U.S. Milestone, Donald & Co., and Tacopino answered the complaint. Defendants FSS and BSR each filed motions to dismiss, which motions were heard and granted on May 27, 1999, with leave to amend. In our May 27, 1999 ruling, we specifically required that,

> with respect to defendant [FSS] and the defendant [BSR], that they not be lumped together with the other entities who were involved in the formulation and the direct sales of the stock, ... [and that] the [amended] complaint specifically indicates - if it is alleged that they were participants in a scheme to defraud, the date[ ] [of their participation] ... [and] some factual predicate for the belief that they were doing this not as journalists but as defrauders.

Transcript of Oral Argument, May 27, 1999 ("1st Tr."), at 27-28. On June 29, 1999, Plaintiffs filed the Amended Complaint, which complaint added Defendant Bruss. On August 27, 1999, Defendants FSS and Bruss moved to dismiss, and, likewise, on August 30, 1999, Defendant BSR moved to dismiss. Oral argument was heard on the motions on January 20, 2000.

**\*3** In the Amended Complaint, Plaintiffs assert the following two causes of action: (1) violation of Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5, against all of the defendants; and (2) violation of Section 20(a) of the Securities Exchange Act, against Defendants Chachas, Cavanagh, and Levy.

Plaintiffs assert that the Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa.

For the reasons given below, (i) Defendant BSR's motion to dismiss the Amended Complaint is granted, (ii) Defendant Bruss's motion to dismiss the Amended Complaint insofar as it names him as a defendant is granted, and (iii) Defendant FSS's motion to dismiss the Amended Complaint is denied.

## Legal Standard

On a motion to dismiss for failure to state a claim upon which relief may be granted, *see* F.R.C.P. 12(b)(6), we must "construe in plaintiff['s] favor factual allegations in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00409-DJS    Document 57-12    Filed 03/20/2006    Page 3 of 12

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)
**(Cite as: 2000 WL 489713 (S.D.N.Y.))**

complaint.... Dismissal of the complaint is proper only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.,* 155 F.3d 59, 67 (2d Cir.1998) (*quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)) (footnote omitted) (citation omitted).

Discussion

Count I of the Amended Complaint alleges that Defendants FSS, BSR, and Bruss violated Section 10(b) of the Securities Exchange Act of 1934 [FN1] and SEC Rule 10b-5. [FN2] Am. Compl. § 81 *et seq.* To state a cause of action under Section 10(b) or Rule 10b-5, plaintiffs must allege that the defendant (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury. *See In re International Bus. Mach. Corp. Sec. Litig.,* 163 F.3d 102, 106 (2d Cir.1998) (citations omitted).

> FN1. Section 10(b) provides in relevant part:
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe.
> 15 U.S.C. § 78j.
>
> FN2. Rule 10b-5 provides:
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
> 17 C.F.R. § 240.10b-5.

Under the PSLRA, a "plaintiff [who] alleges that the defendant ... made an untrue statement of material fact ... shall specify each statement alleged to have been misleading, the reason why the statement is misleading, and, if an allegation regarding the statement ... is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). Similarly, under Federal Rule of Civil Procedure 9(b), a plaintiff alleging securities fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were made." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994).

Under the PSLRA, a plaintiff alleging securities fraud must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). As noted, an allegation of securities fraud under Rule 10b-5 requires scienter, i.e., "intent to deceive, manipulate or defraud, or knowing misconduct." *Press v. Chemical Inv. Servs. Corp.,* 166 F.3d 529, 538 (2d Cir.1999) (citations and internal quotations omitted). The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields,* 25 F.3d at 1128 (citation omitted). In order adequately to plead motive, a plaintiff must "detail concrete benefits that could be realized by one or more of the false statements and wrongful disclosures alleged." *Id.* at 1130. To plead opportunity adequately, a plaintiff must allege "the means and likely prospect of achieving concrete benefits by the means alleged." *Id.* Reckless conduct has

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 4
Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)
**(Cite as: 2000 WL 489713 (S.D.N.Y.))**

been defined as "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." SEC v. McNulty, 137 F.3d 732, 741 (2d Cir.), *cert. denied, sub nom* Shanklin v. SEC, 525 U.S. 931 (1998) (citation and internal quotations omitted).

**\*4** Finally, the PSLRA created a two-pronged safe harbor for forward-looking statements. The first prong provides in relevant part that a securities fraud defendant
> shall not be liable with respect to any forward-looking statement, whether written or oral, if and to the extent that the forward-looking statement is identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement....

15 U.S.C. § 78u-5(c)(1)(A)(i). The second prong provides that a securities fraud defendant shall not be liable if
> the plaintiff fails to prove that the forward-looking statement (i) if made by a natural person, was made with actual knowledge by that person that the statement was false or misleading; or (ii) if made by a business entity; was (I) made by or with the approval of an executive officer of that entity; and (II) made or approved by such officer with actual knowledge by that officer that the statement was false or misleading.

*Id.* § 78u-5(c)(1)(B). *See* High View Fund, L.P. v. Hall, 27 F.Supp.2d 420, 427 (S.D.N.Y.1998) ("The PSLRA imposes a marginally higher scienter standard for forward-looking statements, requiring proof that the statements were made with 'actual knowledge' of their falsity.") (*quoting* 15 U.S.C.A. § 78u-5(c)(1)(B)(i)). The two prongs operate independently. *See* H.R. Conf. Rep. No. 104-369 at 47, 1995 USCCAN 746.

I. BSR

Plaintiffs appear to allege that seven statements from BSR's February 9, 1998 research report were materially false and misleading, and that BSR either had actual knowledge of their falsity or made them in reckless disregard of their truth. *See* Am Compl. ¶ 70. As each of these statements - with the possible exception of the seventh - is clearly a forward looking statement, each is a candidate for one (or both) of the PSLRA's safe harbor provisions. We consider these seven statements seriatem.

  1. *EOSC is poised to become the low-cost, high performance leader in the design and production of electronic fingerprint verification systems.*

*Id.* ¶ 69. Although Plaintiffs allege in a general manner that BSR had actual knowledge of the falsity of statement (1), *see id.* ¶ 70, they allege no specific facts from which such actual knowledge can be inferred. Instead, they confine themselves to alleging that BSR was *reckless* in making statement (1) "in light of what [BSR's] 'independent investigation' ... necessarily would have revealed," Memo. Opp. at 18, i.e., that "[a]s of February, 1998, [EOSC] had not even produced the prototype of the device, much less engaged in testing," Am. Compl. ¶ 71(1).

Were we to treat this allegation of recklessness as to statement (1) as an allegation that BSR had actual knowledge of the falsity of statement (1), we would conclude nonetheless that Plaintiffs had failed adequately to allege actual knowledge. Plaintiffs' mention of BSR's "independent investigation" is apparently a reference to the following statement from BSR's research report on EOSC: "This report is based on BSR's independent analysis and judgment...." Conniff Aff. Ex. C, at 7. Plaintiffs conveniently fail to address, however, the complete sentence of which this statement is but a part: "This report is based on BSR's independent analysis and judgment but relies on material supplied by the subject company and other sources believed to be reliable; except as otherwise indicated, BSR has made no independent verification and does not guarantee the information's accuracy or completeness." *Id.* This sentence makes clear that BSR's report was largely based on information provided to it by EOSC. As such, it does not follow that BSR's analysis of EOSC "necessarily would have revealed that [EOSC] did not even have [a] working prototype of their product." Memo. Opp. at 18. Hence, Plaintiffs have not adequately alleged facts from which actual knowledge of the lack of a prototype can be inferred.

**\*5** In view of the foregoing, we find that statement (1) is protected by the "actual knowledge" prong of the PSRLA safe harbor. *See* In re Advanta Corp. Sec. Litig., 180 F.3d 525, 537 (3d Cir.1999).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00409-DJS    Document 57-12    Filed 03/20/2006    Page 5 of 12

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)
**(Cite as: 2000 WL 489713 (S.D.N.Y.))**

  2. *We believe EOSC has the inside track in bringing this type of product into widespread commercial use.*

Id. ¶ 69. Once again, although Plaintiffs allege in a general way that BSR had actual knowledge of the falsity of this statement, *see id.* ¶ 70, they allege no specific facts from which such actual knowledge can be inferred. Plaintiffs merely allege that BSR was *reckless* in making statement (2) "because the biometrics field was saturated with a number of larger and better financed companies with similar products at more advanced stages of development." Memo. Opp. at 18.

Were we to treat this allegation of recklessness as an allegation that BSR had actual knowledge of the falsity of statement (2), we would find that Plaintiffs had failed nonetheless adequately to allege actual knowledge because BSR's report specifies the factual bases for statement (2), [FN3] and there is no allegation that BSR had actual knowledge that these facts were false. In short, we find that statement (2) is protected by the "actual knowledge" safe harbor.

> FN3. For example, while acknowledging the existence of seven competitors and eight competing products, *see* Conniff Aff. Ex. C, at 8, the report explains that EOSC's fingerprint scanner "is expected to be sold, starting in mid-year 1998, at a retail price ... far less than competing, equivalent performing units, and will offer substantially higher image resolution than the competition," *id.* at 1. The lower price and higher image resolution of EOSC's scanner is explained, in turn, by the fact that this device is based on a "patented, breakthrough design." *Id.* at 2.

  3. *We estimate that after a net loss of $1.8 million or $0.09 per share for fiscal 1998, the company will break into profitability sometime early in 1999 and could achieve net income of $10.9 million or $0.52 per share by 2001.*
  4. *EOSC's revenue and earnings potential is clearly huge.*
  5. *Beginning in 1999, revenues and earnings should build very rapidly.*
  6. *EOSC estimates a long-term potential market size at 3.4 million scanners for information security, and another 3.5 million for access control.*

Id. ¶ 69. Here again, although Plaintiffs allege in a general way that BSR had actual knowledge of the falsity of these statements, *see id.* ¶ 70, they allege no specific facts from which such actual knowledge can be inferred. Accordingly, we find that statements (3), (4), (5), and (6) are protected by the "actual knowledge" safe harbor.

  7. *We recommend purchase of the EOSC shares for investors seeking strong long-term capital appreciation.*

Am. Compl. ¶ 69. We doubt that such a "recommendation" statement is properly analyzed in terms of truth and falsity. Assuming *arguendo* that such statements can be assessed in terms of falsity, however, statement (7) qualifies as a forward looking statement, in that it is a statement concerning EOSC's future condition. Once again, although Plaintiffs allege in a general way that BSR had actual knowledge of the falsity of this statement, *see id.* ¶ 70, they allege no specific facts from which such actual knowledge can be inferred. Accordingly, we find that statement (7) is also protected by the "actual knowledge" safe harbor.

In sum, we find that each of the seven statements identified by Plaintiffs are protected by the "actual knowledge" prong of the PSLRA's safe harbor. Hence - regardless of whether Plaintiffs have adequately pleaded the standard five elements of securities fraud, *see supra* p. 6 - we conclude that Plaintiffs have failed adequately to allege securities fraud under Section 10(b) and Rule 10b-5.

**\*6** Having concluded that Plaintiffs have failed adequately to allege securities fraud, we need not reach BSR's arguments that the Amended Complaint should be dismissed (i) to the extent that it alleges that BSR aided and abetted securities fraud by others, *see* BSR's Memo. at 19; and (ii) because Plaintiffs have not complied with the certification requirement of the PSRLA, *see id.* at 20.

II. Bruss

"Litigation instituted pursuant to Section 10(b) and Rule 10b-5 ... must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364 (1991). Bruss argues that Plaintiffs' 10(b)/10b-5 claim against him is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00409-DJS    Document 57-12    Filed 03/20/2006    Page 6 of 12

Not Reported in F.Supp.2d                                                                                               Page 6
Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)
**(Cite as: 2000 WL 489713 (S.D.N.Y.))**

time-barred because (i) the "[t]he Amended Complaint alleges that 'the truth about the scheme was revealed to the public' on March 13, 1998," and (ii) "[t]he Amended Complaint was filed on June 29, 1999, more than one year after" March 13, 1998. FSS/Bruss Memo. at 6.

Plaintiffs' proffer two replies to this argument. They contend, first, that their "allegations against Mr. Bruss relate back to plaintiffs' original allegations against FSS...." Memo. Opp. at 3 n. 4. Bruss disagrees, arguing (i) that "[t]here is no relation back provided by Section 10(b)," and (ii) that "plaintiffs clearly were not mistaken as to the identity of Mr. Bruss." FSS/Bruss Memo. at 7.

To determine which of the parties has the better of this argument, we look to Federal Rule of Civil Procedure 15(c). Rule 15(c) specifies three, separate means by which an amended pleading may relate back to an original pleading. Rule 15(c)(1) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when relation back is permitted by the law that provides the statute of limitations applicable to the action...." F.R.C.P. 15(c)(1). Bruss's claim that Section 10(b) does not provide for relation back is true, but misleading; Section 10(b) does not include a statute of limitations at all. However, as the case law that provides the statute of limitations for Section 10(b), viz., *Lampf,* does not provide for relation back, it follows that Rule 15(c)(1) is unavailable to Plaintiffs.

Rule 15(c)(2) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading...." F.R.C.P. 15(c)(2). Given that Plaintiffs' allegations against Bruss are nearly identical to their allegations against FSS, the Amended Complaint easily satisfies this requirement. However, where the amendment consists in the addition of a defendant, subsection (2) of Rule 15(c) arguably cannot be the sole basis for finding relation back. This is because subsection (3) of Rule 15(c) specifically concerns this type of amendment and requires the satisfaction of subsection (2). More specifically, Rule 15(c)(3) provides:

> *7 An amendment of a pleading relates back to the date of the original pleading when the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

F.R.C.P. 15(c)(3). Bruss's claim that Plaintiffs were not mistaken as to the identity of Bruss is clearly a reference to this provision. Bruss attempts to amplify this claim by citing *In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.,* 815 F.Supp. 620 (S.D.N.Y.1993). *See* FSS/Bruss Memo. at 7. In *Integrated Resources,* Judge Sweet observed that,

> the notice prong of Rule 15(c) is intertwined with the element of mistake. Unless the plaintiffs can allege a specific reason why they failed to identify ... corporate officers [in addition to the corporation itself] in the original complaint, an officer will not expect to be sued personally for the sins of the corporation and so will have no true notice of the lawsuit within the meaning of Rule 15(c).

*Id.* at 647. Plaintiffs make at most one statement that could qualify as an allegation of a specific reason why they failed to identify Bruss - "the sole shareholder, officer and director of defendant FSS," Am. Compl. ¶ 16 - in their original complaint, viz., "Plaintiffs [sic] allegations against Mr. Bruss ... were timely in light of the fact that the SEC did not file suit against Mr. Bruss until October, 1998." Memo. Opp. at 3 n. 4. Assuming *arguendo* that Plaintiffs intended this statement to justify their failure to name Bruss in their original complaint, we find this justification inadequate. Surely Plaintiffs could have learned of Bruss's role in FSS by means other than an SEC lawsuit.

This brings us to Plaintiffs' second response to Bruss's time-bar claim. It is nothing other than the just-quoted statement, viz., "Plaintiffs [sic] "allegations against Mr. Bruss ... were timely in light of the fact that the SEC did not file suit against Mr. Bruss until October, 1998." Memo. Opp. at 3 n. 4. We are at a loss to understand how or why

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 7
Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)
**(Cite as: 2000 WL 489713 (S.D.N.Y.))**

the date on which the SEC filed suit against Bruss in another matter is relevant to the question of when the one year limitations period began to run for the violation(s) alleged by Plaintiffs. As noted, *Lampf* held that the limitations period expires "one year after the discovery of the facts constituting the violation." 501 U.S. at 364. By their own admission, Plaintiffs discovered "the facts constituting the violation" on which they predicate their action on March 13, 1998. *See* Am. Compl. ¶ 53.

**\*8** In view of the foregoing, we conclude that Plaintiffs' securities fraud claim against Bruss is time-barred.

III. FSS

A. Falsity

Plaintiffs allege that FSS's January 17, 1998 and January 31, 1998 newsletters concerning EOSC contained seven false and misleading statements. We consider each in turn.

   1. "Last week we [FSS] met with [EOSC] in Boston, Massachusetts for the purpose of ... testing their products.... We found that ... the product is incredibly accurate. In fact, while we tested or used the product, the accuracy rate was 100%."

Conniff Aff. Ex. 3, at 3. Plaintiffs allege that this statement is false because, "[a]s of January, 1997, EOSC did not have any product designs, much less prototypes of its product...." Am. Compl. ¶ 59(1). (In their Memorandum in Opposition, Plaintiffs state that "as of January, 1998" EOSC did not have any prototypes. Memo. Opp. at 17. We presume that the reference to January 1997 in the Amended Complaint is a typographical error, and that Plaintiffs intended to refer to January 1998.) We find that Plaintiffs have adequately alleged the falsity of statement (1).

   2. *EOSC is a "well developed start up."*

Conniff Aff. Ex. 3, at 1. Plaintiffs allege that statement (2) is false because EOSC "had spent seven years in research but still had no working product." *Id.* ¶ 59(2). We find this explanation of falsity inadequate. The meaning of "well developed start up" is clearly quite vague. And one would think that a company with a product that had been under development for seven years could qualify as "well developed."

   3. *EOSC's fingerprint scanner is "a significant and unique product,"* making EOSC "one of the pioneers in the biometrics field."

Conniff Aff. Ex. 3, at 1, 4. Plaintiffs allege that this claim is false because "there were a number of better capitalized companies that had already developed similar biometric products...." *Id.* ¶ 59(3). The claim that other companies had similar products is not inconsistent with the claim that EOSC had a product that had some unique attributes - including its alleged significantly lower cost and greater accuracy. Nor is the claim that there were other better capitalized companies inconsistent with the claim that EOSC would be *one* of the pioneers in the biometrics field. Therefore, we find that Plaintiffs have failed adequately to allege the falsity of statement (3).

   4. *"We [FSS] believe EOSC has broken both the cost barrier and the technology barrier (accuracy of the product)."*

Conniff Aff. Ex. 3, at 3. Plaintiffs allege that, "[n]either being experts nor having fully researched [EOSC], FSS had no basis to assert" statement (4). *Id.* ¶ 59(4). We find this explanation of the falsity of statement (4) inadequate for two reasons. First, although a biometrics expert might be in a better position to make statement (4) than a mere stock analyst, it does not follow that a mere stock analyst can have "no basis" for making statement (4). Similarly, although a person who had "fully researched" EOSC would be in a better position to make statement (4) than someone who had researched it less than fully, it does not follow that the latter person would have "no basis" for making statement (4).

**\*9** 5. *EOSC is a "well financed" company.*

Conniff Aff. Ex. 3, at 1. Plaintiffs allege that statement (5) was false because EOSC was "cash starved and entered into Regulation S transactions in order to secure ... bridge loans." *Id.* ¶ 59(6). Given that "well financed" is neither synonymous with "cash rich," nor antonymous with "having Regulation S-based bridge loans," we find that Plaintiffs have failed adequately to allege the falsity of statement (5).

   6. *EOSC is a "fully reporting company."*

Conniff Aff. Ex. 3, at 1. Plaintiffs allege that statement (6) was false because, at the time FSS made it, EOSC "had just merged into a shell company without independently meeting SEC requirements. In fact EOSC had not made a filing with the SEC until issuing an 8-K on February 18, 1998 - a whole month *after* FSS said they were fully reporting." *Id.* ¶

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00409-DJS    Document 57-12    Filed 03/20/2006    Page 8 of 12

Not Reported in F.Supp.2d                                                                                                                                Page 8
Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)
**(Cite as: 2000 WL 489713 (S.D.N.Y.))**

59(7). We find this allegation of falsity inadequate because the expression "fully reporting company" can have two meanings. First, it can mean that the company is of the sort required by law to file the full complement of SEC filings. *See* Lora C. Siegler, *Availability of Implied Private Action for Violation of Section 13 of Securities Exchange Act of 1934,* 110 A.L.R. Fed. 758 (1992) ("Section 12 [of the Securities and Exchange Act of 1934, 15 U.S.C. § 78L] requires, in general, issuers with securities traded on a national exchange and issuers with more than 500 equity holders and more than $1 million in assets to register the outstanding equity securities with the SEC. Issuers with a class of securities so registered are known as "fully reporting companies."). Second, it can mean that, during a particular period of time, the company has in fact filed all documents it is required by Section 12 to file. Plaintiffs simply assume that EOSC intended the second meaning. Because it is entirely possible that EOSC intended the first meaning, it follows that Plaintiffs have failed adequately to allege the falsity of statement (6).

> 7. On January 31, 1998, EOSC "received a minimum 1000 unit order from ADL Data Systems."

Am. Compl. ¶ 57. Plaintiffs allege that statement (7) is false because "ADL never ordered or purchased 1000 Fingerprint Verification Units." *Id.* ¶ 59(9). This is clearly an adequate allegation of the falsity of statement (7). [FN4]

> FN4. In addition to the preceding seven statements, Plaintiffs also make several other allegations of falsity. With one exception, each of these is either too vague to consider or repetitious. The one exception is an allegation directed solely at Bruss. Having concluded that Plaintiffs' claim against Bruss is time-barred, we need not reach this latter allegation.

In sum, we find that Plaintiffs have adequately alleged the falsity of statements (1) and (7).

B. Scienter

1. Motive and Opportunity

Plaintiffs allege that FSS had opportunity to defraud them because (i) by its own admission, FSS "ha[d] full access to [EOSC] and its management and products, and (ii) FSS "ha[d] a wide distribution via the Internet, giving [it] access to thousands, if not millions, of investors." Memo. Opp. at 14.

As for motive, Plaintiffs allege that, "the fact that Bruss and FSS were compensated via direct payment, stock ownership, or through some other admitted 'financial dealings,' gives rise to sufficient motivation with which they committed the acts" alleged. Am. Compl. ¶ 67. Plaintiffs appear to base this allegation, *see* Memo. Opp. at 15, solely on the following statement from FSS's newsletter concerning EOSC: "The Editor, members of the Editor's family and/or entities with which they are affiliated *may* own stock or have other financial dealings with the companies reviewed in this publication." FSS/Bruss Memo. Ex. C, at 4 (emphasis added). We find that this cautionary language does not support Plaintiffs' allegation that FSS and Bruss *in fact* "were compensated" for issuing the EOSC profile. [FN5] Accordingly, we conclude that Plaintiffs have failed adequately to allege motive. [FN6]

> FN5. In this connection, FSS points out that Bruss testified under oath (in a related matter before Judge Cote, *SEC v. Cavanagh,* 1 F.Supp.2d 337 (S.D.N.Y.1998)) that FSS was not compensated in any way for issuing its newsletter concerning EOSC. See FSS/Bruss Memo. at 5. Such testimony falls beyond the range of materials that may be considered in deciding a motion to dismiss.

> FN6. Plaintiffs allege that FSS "engaged in a *common* plan, scheme, and unlawful course of conduct with the other defendants named herein in an effort to induce [Plaintiffs] to purchase [EOSC] common stock during the Class Period at artificially inflated prices...." Am. Compl. ¶ 58 (emphasis added). Given that Plaintiffs' sole factual support for this allegation appears to be the claim that FSS was compensated by EOSC for issuing its newsletters concerning EOSC, we find this "common plan" allegation to be purely conclusory.

2. Conscious Misbehavior or Recklessness

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 9
Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)
**(Cite as: 2000 WL 489713 (S.D.N.Y.))**

**\*10** Plaintiffs allege that, "[a]t a minimum, FSS ... recklessly disregarded the truth" in making statement (1) (viz., "Last week we [FSS] met with [EOSC] in Boston, Massachusetts for the purpose of ... testing their products.... We found that ... the product is incredibly accurate. In fact, while we tested or used the product, the accuracy rate was 100%.") "because as of January, 1998, EOSC did not have prototypes of its product." Memo. Opp. at 17. Prima facie, this appears to be an adequate allegation of recklessness. Indeed, it makes more sense to say that it is an adequate allegation of conscious misbehavior. If FSS stated that it tested device X, and device X did not in fact exist, it can be strongly inferred that FSS was conscious of the falsity of the statement that it tested device X. [FN7]

> FN7. At oral argument on the motion to dismiss the original complaint, counsel for FSS pointed out that Bruss testified under oath (in a related matter before Judge Cote, *SEC v. Cavanagh,* 1 F.Supp.2d 337 (S.D.N.Y.1998)) that he had tested *a* fingerprint verification device furnished to him by EOSC. 1st Tr. at 14. Similarly, at oral argument on FSS's motion to dismiss the Amended Complaint, counsel for FSS stated that, at the hearing before Judge Cote, "Mr. Bruss testified as to having gone to Boston and what he believed to be the product and that he tested it and it was accurate ." Transcript of Oral Argument, Jan. 20, 2000, at 12. Such testimony falls beyond the range of materials that may be considered in deciding a motion to dismiss.

Having found that Plaintiffs have adequately alleged that Plaintiffs were at least reckless in making statement (1), we conclude that Plaintiffs have adequately alleged scienter with respect to statement (1). [FN8]

> FN8. We do not consider in this connection the other statement, the falsity of which Plaintiffs have been determined adequately to allege (viz., statement (7)), because Plaintiffs allege no facts from which it may be strongly inferred that FSS was reckless in making it.

C. Materiality

"A statement is material only if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *In re International Bus. Mach. Corp. Sec. Litig.,* 163 F.3d 102, 106-07 (2d Cir.1998) (citations and internal quotations omitted). Furthermore, "[t]he materiality of an item of information is a mixed question of law and fact. The legal component depends on whether the information is relevant to a given question in light of the controlling substantive law. The factual component requires an inference as to whether the information would likely be given weight by a person considering that question." *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1466-67 (2d Cir.1996), *cert denied,* 522 U.S. 812 (1997) (citations omitted).

FSS argues, on three grounds, that Plaintiffs have failed to allege materiality. FSS argues, first, that as "FSS's stated source of information was [EOSC] and its management[,] .... any statements by FSS did not significantly alter the total mix of information available about [EOSC]." FSS/Bruss Memo. at 11. This argument is highly unpersuasive. If EOSC did not independently release to the public the information it provided to FSS, then FSS's release of this information to the public clearly could have altered the total mix of information. Furthermore, even if EOSC had independently released to the public the very information it supplied to FSS, it does not follow that EOSC's and FSS's release of the same information reached identical segments of the public.

FSS argues, second, that in view of the fact that its newsletter concerning EOSC "included disclosures both at to FSS's source and reliability of the information being provided as well as possible financial interests in the profiled company," *id.,* "Plaintiffs could not have reasonably given weight to the FSS newsletter in making an investment decision," *id.* at 12-13. We find this argument likewise unpersuasive. Notwithstanding these numerous and various disclosures, it would have been perfectly reasonable to believe statement (1), viz., "Last week we [FSS] met with [EOSC] in Boston, Massachusetts for the purpose of ... testing their products.... We found that ... the product is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:03-cv-00409-DJS    Document 57-12    Filed 03/20/2006    Page 10 of 12

Not Reported in F.Supp.2d                                                                Page 10
Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)
**(Cite as: 2000 WL 489713 (S.D.N.Y.))**

incredibly accurate. In fact, while we tested or used the product, the accuracy rate was 100%."

**\*11** Finally, FSS argues that it would have been unreasonable for Plaintiffs to rely on FSS's newsletter given that, two months earlier, the "Stock Detective" website posted an extremely negative article on FSS. *See id.* at 12. This argument is also unpersuasive. FSS fails to allege that a single member of the class was aware of the Stock Detective assessment of FSS.

We think it evident that a reasonable investor, upon reading statement (1) in FSS's newsletter concerning EOSC, would have viewed it as significantly altering the total mix of information available to them about EOSC. As such, we find that Plaintiffs have adequately alleged the materiality of statement (1).

D. Reliance

Plaintiffs allegation of reliance (or transaction causation [FN9]) "relies" on the so-called fraud on the market theory. *See* Am Compl. ¶ 25. In *Basic Inc. v. Levinson,* 485 U.S. 224, 241-47 (1988), the Supreme Court established that a plaintiff can adequately plead reliance under this theory. As the Court explained,

> FN9. See *Press,* 116 F.3d at 539 (noting that "[r]eliance [is] also referred to as 'transaction causation' ").

"The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations."
Id. at 241-42 (*quoting Peil v. Speiser,* 806 F.2d 1154, 1160-1161 (3d Cir.1986)). *Basic* established a rebuttable presumption of reliance where a plaintiff alleges that he purchased his shares in such an open and developed securities market. *See Ceres Partners v. GEL Assoc.,* 918 F.2d 349, 360 (2d Cir.1990).

In determining whether the plaintiff has adequately pleaded that the securities market in question is open and developed, courts have looked to the following definitions:
> --An open market is one in which anyone, or at least a large number of persons, can buy or sell.
> --A developed market is one which has a relatively high level of activity and frequency, and for which trading information (e.g., price and volume) is widely available. It is principally a secondary market in outstanding securities. It usually, but not necessarily, has continuity and liquidity
> (the ability to absorb a reasonable amount of trading with relatively small price changes).

*Cammer v. Bloom,* 711 F.Supp. 1264, 1276 n. 17 (D.N.J.1989) (citations omitted). Plaintiffs allege that "[t]he common stock of [EOSC] traded in an efficient market." Am. Compl. ¶ 25(c). Support for this allegation appears to be limited to the claim that, "[d]uring the Class Period, millions of shares of [EOSC] stock were actively traded on the Over the Counter Bulletin Board...." Am. Compl. ¶ 20. We find that plaintiffs have adequately alleged that EOSC stock traded in an open and developed market.

**\*12** FSS attempts to rebut Plaintiffs' fraud on the market allegation by arguing that, "[i]f the market was efficient, the information from the Stock Detective about FSS was considered by the market...." FSS/Bruss Memo. at 14. This appears to be an attempt to invoke the "truth-on-the-market corollary" of the fraud on the market theory. *In re Blech Sec. Litig.,* 928 F.Supp. 1279, 1297 (S.D.N.Y.1996). To establish a truth-on-the-market defense, a defendant must show that the public received accurate, corrective information from an alternative source with the "degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created" by the defendant's misrepresentations. *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1116 (9th Cir.1989), *cert. denied,* 496 U.S. 943 (1990). We find that the Stock Detective's negative comments about FSS fall far below this requisite level of intensity for the simple reason that they were about FSS

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 11
Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)
**(Cite as: 2000 WL 489713 (S.D.N.Y.))**

rather than about EOSC itself. Assuming *arguendo* that A's comments about stock analyst B's recommendations about company C can have an impact on the price of C's stock, it is highly likely that such indirect effect on stock price will be far less than the direct effect on stock price produced by B's comments on C.

In sum, we find that Plaintiffs have adequately pleaded reliance.

E. Loss Causation

"To establish loss causation a plaintiff must show, that the economic harm that it suffered occurred as a result of the alleged misrepresentations. We have on occasion likened loss causation to the tort concept of proximate cause, because, similar to proximate cause, in order to establish loss causation, a plaintiff must prove that the damage suffered was a foreseeable consequence of the misrepresentation." *Citibank, N.A. v. K-H Corp.,* 968 F.2d 1489, 1495 (2d Cir.1992). The Second Circuit has yet explicitly to address the issue of how this proximate causation requirement is to be met in cases in which the plaintiff proceeds under a fraud on the market theory. The Ninth Circuit, however, has held that, "[i]n a fraud-on-the-market case, plaintiffs establish loss causation if they have shown that the price on the date of purchase was inflated because of the misrepresentation." *Knapp v. Ernst & Whinney,* 90 F.3d 1431, 1438 (9th Cir.1996); see also *In Re Control Data Corp. Securities Litigation,* 933 F.2d 616, 619 (8th Cir.1991); *Ausa Life Ins. Co. v. Ernst & Young,* 991 F.Supp. 234, 249 (S.D.N.Y.1997), *rev'd and vacated on other grounds,* 206 F.3d 202 (2d Cir.2000) (noting that "two other circuits, the Eighth and Ninth, assume loss causation in cases based on a fraud-on-the-market theory") (citations omitted).

Plaintiffs allege that, "[f]ollowing FSS's January 17, 1998 newsletter, the trading volume of [EOSC] stock reached a high of 2,507,600 (more than 70% of the market float), and the stock price rose. Both the stability in [EOSC's] stock price at around $5 as well as its ultimate rise to $7 was artificial and in part created by representations made by ... FSS." Am. Compl. ¶ 56. Similarly, Plaintiffs argue that "on February 2, 1998 (the next trading day [after FSS's second

newsletter concerning EOSC stock] ), on heavy trading volume of 2,045,400, [EOSC's] stock rose to $6 per share." As Plaintiffs have thus alleged that "the price on the date of purchase was inflated because of the misrepresentation[s]," we find that Plaintiffs have adequately alleged loss causation.

*13 Having found that, with respect to FSS, Plaintiffs have adequately alleged falsity, scienter, reliance, and causation, we conclude that Plaintiffs have adequately alleged securities fraud under Section 10(b) and Rule 10b-5.

F. The PSLRA Certification Requirement

The PSLRA provides that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that states that the plaintiff has reviewed the complaint and authorized its filing...." 15 U.S.C. § 78u-4(a)(2)(A)(i). FSS argues that the Amended Complaint should be dismissed because "[n]o [such] certification accompanies the Amended Complaint." FSS/Bruss Memo. at 8. Plaintiffs respond that the PSLRA requires only that such certification accompany the initial complaint, and that FSS has provided no authority to the contrary. Memo. Opp. at 24. Plaintiffs clearly have the better of this argument. On its face, the statute requires the class representatives to submit such a certification "with the complaint." No mention is made of the need to file an additional certification with an amended complaint. Furthermore, assuming *arguendo* that the statute is unclear on this matter, the legislative history of the provision is silent on the need for such an additional certification. [FN10] In short, we find FSS's objection on this matter to be without merit.

> FN10. FSS also argues that the Amended Complaint should be dismissed because the certification signed by Plaintiff Fellman and the other class representatives "state ... only that [they] ha[ve] 'reviewed a version of the compliant,' " whereas "the statute plainly and clearly requires" that the class representatives "review and authorize the filing of 'the' complaint, not a 'version' of the complaint." FSS/Bruss Memo. at 8. At oral

Not Reported in F.Supp.2d                                                                                              Page 12
Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)
**(Cite as: 2000 WL 489713 (S.D.N.Y.))**

argument, Plaintiffs' counsel, Mr. Brody, made the following statement on this matter: "I will represent to this court, yes, [the class representatives] all had the version of [the complaint], but I was the attorney responsible for directing the certification and complaint to these individuals and I will represent to this Court that they received the exact copy of the complaint that was filed with this Court. The only exception being Mr. Fellman who couldn't have received that copy because he had to give me a certification in addition to the complaint which we then filed with the Court." 1st Tr. at 19. In view of this offer, we find the alleged defect insufficient to support FSS's motion to dismiss the Amended Complaint. However, we order Mr. Brody to promptly file an affidavit concerning these matters.

G. Aiding and Abetting

Finally, FSS argues that "[a] fair reading of the Amended Complaint shows that plaintiffs have again alleged no mor than that FSS and Mr. Bruss aided and abetted the other defendants in their fraudulent scheme," and thus that, in view of the Supreme Court's holding that aiding and abetting liability is unavailable under Section 10(B) and Rule 10b-5, *see Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164 (1994), the Amended Complaint should be dismissed. FSS/Bruss Memo. at 14. This argument is without merit. The *Central Bank* Court explicitly held that "[a]ny person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5, assuming all of the requirements for primary liability under Rule 10b-5 are met." 511 U.S. at 1455. The preceding analysis has determined that Plaintiffs have adequately alleged primary liability vis-a-vis FSS.

Conclusion

In light of the foregoing, (i) Defendant BSR's motion to dismiss the Amended Complaint as against it is granted in its entirety, (ii) Defendant Bruss's motion to dismiss the Amended Complaint as against him is granted in its entirety, and (iii) Defendant FSS's motion to dismiss the Amended Complaint as against it is denied. As Plaintiffs have already been given an opportunity to amend their pleading, the Amended Complaint, insofar as it is directed at Defendants BSR and Bruss, is dismissed with prejudice. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Comps., Inc.,* 75 F . 3d 801, 815 (2d Cir.1995).

**\*14** As for FSS, the Court directs Plaintiffs and FSS to confer and submit a proposed scheduling order by June 15, 2000. This proposed order should include a discovery schedule, a date for submission of the pre-trial order, and a date for a post-discovery conference with the Court.

Finally, Mr. Brody is instructed to promptly file an affidavit verifying when the class representatives reviewed the original complaint and that they believed it to be accurate.

SO ORDERED

Not Reported in F.Supp.2d, 2000 WL 489713 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 3403693 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Defendant Barrow Street in Support of Motion to Dismiss Amended Complaint (Aug. 31, 2004)

• 2000 WL 34528577 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law of Defendant Barrow Street in Support of Motion to Dismiss Amended Complaint (Jan. 10, 2000)

• 1:98cv06403 (Docket) (Sep. 10, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.