UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Joel Menkes, *et al.*,<br><br>      *Plaintiffs*,<br><br>      *v.*<br><br>Stolt-Nielsen S.A., *et al.*,<br><br>      *Defendants*. | Civ. Action No. 3:03 CV 409 (DJS)<br><br>April 25, 2006 |

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION TO DISMISS THE
<u>SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiffs' opposition memorandum confirms that Plaintiffs still have not filled the "factual void" or established the necessary "clear link" between those with knowledge of misconduct and SNSA management. Mem. of Decision at 26-27. Nor have Plaintiffs stated a claim against the Individual Defendants for securities fraud. If anything, Plaintiffs' opposition memorandum underscores the weakness of Plaintiffs' case and highlights their failure to satisfy their burden of pleading a "reasonable and strong" inference of scienter, or to allege circumstances constituting fraud "with particularity," as mandated by the PSLRA's heightened pleading standards. In short, this complaint is now ripe for dismissal with prejudice. *See* Mem. at 1 n.1 (unrebutted by Plaintiffs and citing cases supporting dismissal with prejudice).

**I.    PLAINTIFFS STILL HAVE FAILED TO ALLEGE A REASONABLE AND
       <u>STRONG INFERENCE OF FRAUDULENT INTENT</u>**

*First*, as Defendants emphasized in their opening memorandum — and Plaintiffs have failed to rebut — the case law is clear that allegations of board membership and "access" to information (such as Plaintiffs allege here) are insufficient to establish scienter. *See* Mem. at 5-6 (citing numerous cases); *In re Alpharma, Inc. Sec. Litig.*, 372 F.3d 137, 149-50 (3d Cir. 2004)

(finding that plaintiffs failed to allege scienter against individual defendants, including members of the board who had access to information and worked in the same headquarters where a "whistleblower" reported potential fraudulent activity by the company); *In re Health Mgmt., Inc. Sec. Litig.*, 970 F. Supp. 192, 205 (E.D.N.Y. 1997) (explaining that if courts found scienter properly pleaded against directors by virtue of their position and access to certain information, "the executives of virtually every corporation in the United States would be subject to fraud allegations").

Plaintiffs' only retort is to assert: "Defendants do not deny that SNTG and its executives had knowledge of SNTG anti-competitive activities." Opp'n at 13. But Defendants need not deny — or admit — anything until they file an answer. In this phase of the litigation, the burden rests entirely upon Plaintiffs to state a claim by sufficiently alleging the "strong inference" of fraudulent intent mandated by the PSLRA. *See* 15 U.S.C. § 78u-4(b)(2) (making clear that the PSLRA's heightened pleading burden rests upon Plaintiffs).

In opposing dismissal, Plaintiffs assert that paragraphs 31 and 32 of their latest complaint (reciting allegations also contained in the dismissed complaint) allege that SNTG's Andrew Pickering "advised members of both SNSA and SNTG of SNTG's conspiracy with Odfjell." Opp'n at 13. Then, contrary to the cases discussed in Defendants' opening memorandum, Plaintiffs cite to paragraphs 12, 13 and 48 (alleging board membership and access to information), and ask the Court to *assume* (because Plaintiffs cannot allege) that Jacob Stolt-Nielsen and Niels G. Stolt-Nielsen somehow knew of the conspiracy that Mr. Pickering allegedly described. *Id.* at 13-14. Of course, nothing in any of the paragraphs Plaintiffs cite comes close to alleging that either Jacob Stolt-Nielsen or Niels G. Stolt-Nielsen actually knew of Mr. Pickering's alleged statements. Plaintiffs' assertions of board membership and alleged "access"

2

to information fail to allege the "reasonable and strong" inference of scienter mandated by the PSLRA.

*Second*, with respect to paragraphs 51-56 of the latest complaint (regarding the O'Brien litigation), Defendants noted (among other things) that Plaintiffs "fail to allege *anything* to establish that Mr. O'Brien *in fact* notified Messrs. Stolt-Nielsen about alleged antitrust violations," and that "Plaintiffs really are asking this Court to assume facts and draw adverse inferences against Defendants based upon Stolt-Nielsen's assertion of the attorney-client privilege in the O'Brien litigation" — something courts, including the Second Circuit, forbid. Mem. at 12-13 (citing cases) (emphasis in original). Once again, Plaintiffs deny none of this. Consequently, this Court should draw *no* adverse inferences against Defendants based upon paragraphs 51-56, or Stolt-Nielsen's assertion of its legal privileges.

*Third*, as Defendants observed in their opening memorandum — and Plaintiffs do not deny: "Plaintiffs' allegation [in paragraph 50] does *not* establish that SNSA learned of anticompetitive conduct in 2002, nor do Plaintiffs identify which SNSA statements were made misleading by the initiation of an investigation in 2002." Mem. at 9 (emphasis in original). Plaintiffs now minimize the significance of paragraph 50 — an allegation at the heart of Plaintiffs' motion for reconsideration last November — by asserting (in a footnote) that "the allegations regarding SNSA's investigation in 2002 simply refutes [sic] the position taken by Defendants until now; namely that SNSA and its executives were unaware of any wrongdoing by SNTG during the Class Period." Opp'n at 14 n.14. But as noted above, Defendants have not filed an answer and, therefore, have taken no position regarding their awareness of "any wrongdoing." At this stage, Plaintiffs bear the burden of stating a claim — which they have failed to do.

3

While Plaintiffs make the sweeping assertion that "Defendants' argument overlooks the numerous other allegations imputing knowledge to SNSA and its executives to dates as far back as early 2002 (¶¶38, 40, 42, 50, 54, 74, 76, and 82), April 2001 (¶¶49, 50, 80 and 84) and even 1998 (¶31)," (*id.*), those paragraphs — most of which also appeared in the dismissed complaint — allege nothing that would allow knowledge to be imputed to SNSA or its executives. Moreover, Plaintiffs assert that the district court in Stolt-Nielsen's case against DOJ "issued a finding of fact that the bid rigging conspiracy began well in advance of the Class Period." *Id.* Of course, that finding (which concerned SNTG only) does ***not*** establish SNSA's or the Individual Defendants' awareness of such conspiracy, much less their fraudulent intent.[1] In short, Plaintiffs' now-marginalized paragraph 50 does not support their scienter allegations.

***Fourth***, in their opening memorandum, Defendants argued that Plaintiffs' effort to establish Jacob Stolt-Nielsen's scienter by relying — in paragraph 49 of the complaint — on an article from an obscure trade journal was hardly "the stuff of which 'reasonable and strong' inferences are made." Mem. at 6. As Defendants noted, the scienter allegation in paragraph 49 relied on about six layers of hearsay and is "sorely lacking in specifics." *Id.* at 7.

Plaintiffs deny none of this and make ***no effort*** to rehabilitate the article, instead asserting that "Plaintiffs may rely on media articles to plead a case." Opp'n at 14 n.14. But the cases Plaintiffs cite for this proposition actually help Defendants — not Plaintiffs. For example, the court in *In re McKesson HBOC, Inc. Securities Litigation*, 126 F Supp. 2d 1248, 1272 (N.D. Cal. 2000), explained that "newspaper articles should be credited only . . . if they are sufficiently particular and detailed to indicate reliability." As Defendants noted in their opening

---

[1] On March 26, 2006, a two-judge panel of the U.S. Court of Appeals for the Third Circuit reversed and remanded the district court's decision in *Stolt-Nielsen, S.A. v. United States*, 352 F. Supp. 2d 553 (E.D. Pa. 2005). The panel's decision was ***not*** based on the district court's factual findings, but on the panel's conclusion that federal courts cannot enjoin issuance of an indictment.

memorandum, the *Tradewinds* article is a multilayered hearsay statement that lacks any indicia of reliability (Mem. at 6-7) — it is neither "sufficiently particular" nor "detailed." Moreover, *McKesson* explained that "if the newspaper article includes numerous factual particulars and is based on an ***independent investigative effort***, it is a source that may be credited in determining whether plaintiffs have alleged facts sufficient to raise a strong inference of scienter." *McKesson*, 126 F. Supp. 2d at 1272 (emphasis added). Here, the *Tradewinds* article does ***not*** include "numerous factual particulars" and is certainly ***not*** "based on an independent investigative effort." *See also Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 79, 81 (D. Del. 2002) (cited by Plaintiffs and rejecting certain media sources).

## II. PLAINTIFFS STILL HAVE FAILED TO PLEAD MATERIAL MISSTATEMENTS WITH PARTICULARITY

As Defendants explained in their opening memorandum, Plaintiffs have failed to plead "material misstatements" with the particularity required by the PSLRA and Rule 9(b). Mem. at 13-17. Indeed, as evidenced by Stolt-Nielsen's SEC filings — and unrebutted by Plaintiffs — the differences between Stolt-Nielsen's parcel tanker and tank container operations are stark. *See id.* at 15 (detailing differences). As Defendants explained: "Throughout its SEC filings — including in the presentation of detailed financial data — Stolt-Nielsen's parcel tanker operations are always treated separately." *Id.* As Defendants have observed: "Plaintiffs' latest complaint is as absurd as one alleging an antitrust conspiracy affecting gold, and then pointing to statements about diamonds to allege a violation of the securities laws." *Id.* at 17.

Unable to explain how statements regarding tank containers were made material or misleading by a conspiracy affecting parcel tankers, Plaintiffs rest on the Court's dicta from its order dismissing Plaintiffs' earlier complaint — dicta which was based on a confused record of Plaintiffs' making (*see* Mem. at 15) — to blithely assert that Plaintiffs should not have to debate

5

"trivial nuances." Opp'n at 28. This is fatal to Plaintiffs' case, however, because Plaintiffs have "failed to plead with sufficient particularity the reasons why these statements are false or misleading." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, No. 97 Civ. 1865 (HB), 1998 WL 283286, at *4 (S.D.N.Y. June 1, 1998) (Exh. 1).[2] Moreover, while the Court's earlier dicta concluded that this issue was "more properly reserved" for another day, (Mem. of Decision at 11 n.4), Plaintiffs' claims — as evidenced by the cases cited in Defendants' opening memorandum (Mem. at 14, 17) — present a fundamental pleading deficiency, evident on the face of the complaint, that requires dismissal **now**. *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 168 (2d Cir. 2005) (making clear that Rule 9(b)'s "strict **pleading** requirements" apply "*assiduously* to securities fraud") (emphasis added).[3]

Finally, Plaintiffs assert that "the distinction drawn by Defendants (concerning SNTG's tank and parcel tanker operations) remains murky." Opp'n at 29. Defendants' opening memorandum makes clear that this is simply not true. *See* Mem. at 15 (detailing differences). Plaintiffs' only support for their assertion is this single sentence from a Stolt-Nielsen filing: "SNTG offers fully integrated transport and logistic services including intercontinental parcel tanker, coastal parcel tanker, river parcel tanker, tank container, rail, and storage." Opp'n at 29

---

[2] As discussed below, in arguing that Stolt-Nielsen had a duty to disclose antitrust conduct, Plaintiffs assert — with practically no analysis — that Stolt-Nielsen's public statements were material and misleading. But Plaintiffs nowhere explain how antitrust conduct in parcel tankers rendered false statements regarding tank containers. In fact, it would appear that Plaintiffs are the ones making "material misstatements" in their opposition memorandum by trying to conceal that the Stolt-Nielsen statements Plaintiffs allege to be misleading relate to tank containers and not to the company-at-large (as they clearly — and misleadingly — imply throughout their opposition memorandum).

[3] The complaint clearly is ripe for dismissal now. *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (considering a Rule 12(b)(6) dismissal and concluding that plaintiffs had "not plead[ed] fraud with the requisite particularity" because there was "nothing in the complaint that link[ed] the actual and projected revenues of these four facilities to plaintiffs' claim that the financial projections contained in the slide are false or misleading"); *In re Century Bus. Servs. Sec. Litig.*, No. 1:99CV02200, 2002 WL 32254513, at *15 (N.D. Ohio June 27, 2002) (Mem. Exh. 8) (ruling on a Rule 12(b)(6) motion that the complaint was not sufficiently particular because plaintiffs had failed "to draw any nexus between the allegedly fraudulent statements and the facts on which the fraud allegation is based"); *Ahmed v. Trupin*, 781 F. Supp. 1017, 1025 (S.D.N.Y. 1992) (ruling on a Rule 12(b)(6) motion that the complaint failed particularity because it did not identify a "link" to the allegedly improper activities).

(quoting SNSA Form 20-F filed May 31, 2002).  As discussed in Defendants' opening memorandum, this single statement merely lists the array of *services* that Stolt-Nielsen offers. *See id.*  Plaintiffs' assertion that "[t]hrough this statement, SNSA does not characterize — to their shareholders, their customers and the public — the distinction regarding SNTG's business operations that it now represents to this Court," (Opp'n at 29), would be laughable if it were not so disingenuous.  As painstakingly described in Defendants' opening memorandum (Mem. at 15), Stolt-Nielsen's public filings — accessible to shareholders, customers and the public — carefully distinguish parcel tanker from tank container operations.[4]  Indeed, it is these clearly articulated — and clearly understandable — distinctions that Plaintiffs cannot rebut and thus choose to dismiss as "trivial nuances."[5]

### III.  DEFENDANTS HAD NO DUTY TO SELF-REPORT ALLEGEDLY UNLAWFUL CONDUCT

As Defendants explained in their opening memorandum, the law does not require companies or individuals to accuse themselves of unlawful conduct. Mem. at 18-19.  Moreover, the cases upon which this Court relied to find that Stolt-Nielsen had a duty to disclose antitrust wrongdoing are inapposite.  *Id.* at 20.  *Sotheby's Holdings* related to allegations of intense competition in the relevant operational unit or market, while the other cases upon which the Court relied related to defendants' failure to promptly disclose government investigations — something not alleged here. *Id.*

---

[4] The Fourth Circuit decision in *Ottmann* that Plaintiffs cite (Opp'n at 23 n.17) is inapposite.  Unlike defendants in *Ottmann*, who had worked to combine two pre-existing separate companies into one, Stolt-Nielsen treats parcel tanker and tank container operations as different businesses — because they are.  *Ottmann* certainly does not, as Plaintiffs would hope, stand for the proposition that passing use of the word "integrated" in a public filing relieves a plaintiff of its obligation to plead fraud with particularity.

[5] Plaintiffs' contention that "Defendants themselves have difficulty parsing the distinction between SNTG's tank container and parcel tanker operations" is unfounded.  Opp'n at 29 n.25 (referencing footnote 8 of Defendants' opening memorandum).  The distinctions could not be clearer.  *See* Mem. at 15.  Footnote 8 of Defendants' opening memorandum merely underscores just how badly Plaintiffs have failed the particularity test, since the only alleged misstatement that is not strictly about tank containers is so broad and generic as to be non-actionable.

Aware that they have failed to allege any material misstatements in the correct operational unit (unlike plaintiffs in *Sotheby's Holdings*), Plaintiffs strain to defend the applicability of *Sotheby's Holdings* and other cases by merely asserting — without meaningful analysis — that Stolt-Nielsen's statements were material and misleading. All the while, Plaintiffs avoid mentioning that the conspiracy they allege was *not* company-wide (as they clearly imply), but limited to parcel tankers. *See* Opp'n at 22-23, 25 and 26. But try as they might, Plaintiffs cannot escape the obvious. Not one of the cases they cite — *Sotheby's Holdings*, *Texas Gulf Sulphur*, *Par Pharmaceutical*, *Ottmann*, *Shapiro*, *Sirrom Capital*, *International Paper*, *Ballan* — is applicable here. In each of those cases (unlike this one) the alleged conduct and misstatements related to the same operational unit or market. Under the circumstances, Stolt-Nielsen had no duty to self-report wrongdoing.

## IV.   PLAINTIFFS' "CORPORATE SCIENTER" THEORY DOES NOT SALVAGE THEIR CASE

Plaintiffs' vague and generalized "corporate scienter" theory of liability is not enough to salvage their case and is inconsistent with this Court's — and the PSLRA's — requirement that "the speaker of each false or misleading statement [must have] acted with the requisite scienter." Mem. of Decision at 23. Indeed, the Second Circuit has *not* adopted an aggregated knowledge theory.[6] Notably, Plaintiffs do not cite a single case in which knowledge was imputed from a subsidiary to a parent. *See In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d

---

[6] In fact, this theory has been rejected by numerous courts. *See, e.g.*, *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 602-03 (7th Cir. 2006) (finding that the group pleading doctrine did not survive the enactment of the PSLRA and scienter must be alleged for *each* defendant in multiple defendant cases) (emphasis added); *Nordstrom v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) (cited by Plaintiffs, but ultimately finding "there is no case law supporting an independent 'collective scienter' theory"); *Fener v. Belo Corp.*, No. Civ. A. 3:04-CV-1836, 2006 WL 832514, at *6 (N.D. Tex. Mar. 30, 2006) (rejecting group pleading doctrine to aggregate inferences of scienter against corporate defendant where no single defendant possessed the requisite scienter) (Exh. 2); *In re Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002) (relying on *Nordstrom* and noting that "the Ninth Circuit has rejected the concept of 'collective scienter' in attributing scienter to a corporation").

424, 443-44 (S.D.N.Y. 2000) (noting that "a subsidiary's fraud cannot be 'automatically' imputed to its corporate parent").

Other cases Plaintiffs cite do not support "corporate scienter" here.[7] For example, the court in *In re Worldcom, Inc. Securities Litigation*, 352 F. Supp. 2d 472, 499 (S.D.N.Y. 2005), allowed plaintiffs to apply collective knowledge and intent principles based on the nature of an accounting firm and detailed evidence of "reckless misconduct through defendant's cumulative pattern of decisions and inaction by several Andersen auditors that encompassed a multitude of important accounting issues." By contrast, Plaintiffs here have failed to allege any such "cumulative pattern of decisions and inaction." If anything, Plaintiffs' allegations establish that Stolt-Nielsen acted diligently and responsibly by launching an internal investigation in 2002. *See* Mem. at 8-11.

## V. PLAINTIFFS' "SCHEME LIABILITY" THEORY DOES NOT SALVAGE THEIR CASE

Plaintiffs' "scheme liability" theory is equally unavailing. To state a claim for "scheme liability" based on conduct that violates Rule 10b-5(a) or (c), "the plaintiff must allege that a defendant (1) committed a deceptive or manipulative act, (2) with scienter, that (3) the act affected the market for securities or was otherwise in connection with their purchase or sale, and that (4) defendants' actions caused the plaintiffs' injuries." *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 622 (S.D.N.Y. 2005). Plaintiffs have not satisfied this test. Because Plaintiffs have failed to establish scienter, their "scheme liability" theory necessarily fails. Moreover,

---

[7] Plaintiffs' reliance on *In re Dynex Capital, Inc. Securities Litigation*, No. 05 Civ. 1897 (HB), 2006 WL 314524, at *9-10 (S.D.N.Y. Feb. 10, 2006) (Mem. Exh. 5), and *In re NUI Securities Litigation*, 314 F. Supp. 2d 388, 410-13 (D.N.J. 2004), is misplaced because (among other things) plaintiffs in those cases established scienter through "motive and opportunity" and not — as here — through recklessness. *See* Mem. of Decision at 24 (noting that "Plaintiffs attempt to meet their pleading burden by way of the latter method" (*i.e.*, allegations of recklessness); Mem. at 2 (noting same).

9

scheme liability claims must be pleaded with particularity pursuant to Rule 9(b). *Id.* Plaintiffs fall woefully short of this high standard as their "scheme liability" argument is entirely devoid of any factual support. Indeed, after a lengthy recitation of cases, Plaintiffs make three short conclusory sentences (*see* Opp'n at 22), but offer no particularized allegations supporting their "scheme liability" theory. *See Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996) (explaining that "[b]road allegations that several defendants participated in a scheme . . . do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b)") (citing *Landy v. Mitchell Petroleum Tech. Corp.*, 734 F. Supp. 608, 621 (S.D.N.Y. 1990) ("Plaintiffs must clearly identify each defendant's role in the scheme and what their connection was to the alleged misrepresentation."), *aff'd*, 152 F.3d 918 (2d Cir. 1998)). In fact, Plaintiffs offer ***not a single*** allegation explaining how Defendants supposedly schemed to conceal the wrongdoing.

|  | DEFENDANTS STOLT-NIELSEN S.A., STOLT-NIELSEN TRANSPORTATION GROUP LTD., JACOB STOLT-NIELSEN, NIELS G. STOLT-NIELSEN, SAMUEL COOPERMAN AND REGINALD J.R. LEE |
|---|---|
|  | By: /s/ Jaime M. Crowe |
| Michael P. Shea (#ct19598)<br>Jason S. Weathers (#ct24579)<br>Day, Berry & Howard LLP<br>City Place I<br>Hartford, Connecticut 06103-3499<br>Tel: (860) 275-0356<br>Fax: (860) 275-0343<br>Email: jsweathers@dbh.com | J. Mark Gidley (#ct18450)<br>Christopher M. Curran (#ct22743)<br>Peter J. Carney (#ct24721)<br>Jaime M. Crowe (#ct25657)<br>WHITE & CASE LLP<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005<br>Tel: (202) 626-3600<br>Fax: (202) 639-9355<br>jcrowe@whitecase.com |

10

## **CERTIFICATION**

    I hereby certify that on April 25, 2006, a copy of the foregoing Reply Memorandum in Support of Motion To Dismiss The Second Consolidated Amended Class Action Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By:     /s/ Jaime M. Crowe
           Jaime M. Crowe (#ct25657)
           **WHITE & CASE LLP**
           701 Thirteenth Street, N.W.
           Washington, DC 20005
           Tel: (202) 626-3600
           Fax: (202) 639-9355
           jcrowe@whitecase.com