UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOEL MENKES, Individually and On Behalf of All Others Similarly Situated,<br><br>                      Plaintiffs,<br><br>vs.<br><br>STOLT-NIELSEN S.A., JACOB STOLT-NIELSEN, NIELS G. STOLT-NIELSEN, SAMUEL COOPERMAN and REGINALD J.R. LEE,<br><br>                      Defendants. | Civil Action No. 3:03-cv-00409-DJS<br><br>CLASS ACTION<br><br>FORM 26(f) REPORT OF PARTIES' PLANNING MEETING<br><br>August 11, 2006 |

      The original Complaint was filed on March 7, 2003.

      The original Complaint was served on Defendant Samuel Cooperman on March 17, 2003.

      The original Complaint was served on Defendant Reginald J.R. Lee on March 27, 2003.

      Appearance of Attorney for Stolt-Nielsen S.A. and Samuel Cooperman was entered on March 28, 2003.

      Appearance of Attorney for Reginald J.R. Lee was entered on April 14, 2003.

      Appearance of Attorney for Jacob Stolt-Nielsen and Niels G. Stolt-Nielsen was entered on April 17, 2003.

      Waiver of Service of Summons as to Stolt-Nielsen S.A., Jacob Stolt-Nielsen and Niels G. Stolt-Nielsen was executed on April 29, 2003.

      The Consolidated Amended Class Action Complaint was filed on September 8, 2003.

Defendants filed a Motion to Dismiss the Consolidated Amended Class Action Complaint on October 27, 2003.

The Memorandum of Decision granting Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint was entered by this Court on November 10, 2005.

The Second Consolidated Amended Class Action Complaint was filed on March 1, 2006.

Defendants filed a Motion to Dismiss the Second Consolidated Amended Class Action Complaint on March 20, 2006.

The Memorandum of Decision denying Defendants' Motion to Dismiss the Second Consolidated Amended Complaint was entered by this Court on June 19, 2006.

Pursuant to Fed. R. Civ. P. 16(b), 26(f), D. Conn. L. Civ. R. 16, and this Court's Order of June 19, 2006, conferences were held on July 27, 2006, August 1, 2006, and August 10, 2006. The participants were:

Mark S. Reich and Joseph Russello of Lerach Coughlin Stoia Geller Rudman & Robbins LLP for lead plaintiffs Irene Rucker and Gustav Rucker (referred to herein as "Lead Plaintiffs"), and

Jaime M. Crowe and Anurag Maheshwary of White & Case LLP for Defendants Stolt-Nielsen S.A. ("SNSA"), Stolt-Nielsen Transportation Group Inc. ("SNTG")[1] (collectively, "the Companies"), Jacob Stolt-Nielsen, Niels G. Stolt-Nielsen, Samuel Cooperman ("Cooperman") and Reginald J.R. Lee ("Lee")[2] (collectively, the "Defendants").

---

[1] Defendant Stolt-Nielsen Transportation Group Inc., a Delaware corporation, is an indirect subsidiary of SNSA. Stolt-Nielsen Transportation Group Ltd., a Bermuda company, is a wholly-owned subsidiary of SNSA. In the Complaint, "SNTG" refers to both Stolt-Nielsen Transportation Group Inc. and Stolt-Nielsen Transportation Group Ltd.

[2] Jacob Stolt-Nielsen, Niels G. Stolt-Nielsen, Samuel Cooperman, and Reginald J.R. Lee are collectively referred to as the "Individual Defendants."

## I. Certification

The undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II. Jurisdiction

### A. Subject Matter Jurisdiction

Lead Plaintiffs bring this action pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 as amended (the "1934 Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Thus, Lead Plaintiffs maintain that this Court has federal question jurisdiction over the subject matter of this action pursuant to Section 27 of the 1934 Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

### B. Personal Jurisdiction

Lead Plaintiffs maintain that for the following reasons, personal jurisdiction and venue are proper in the District of Connecticut. Venue is proper in this District under § 27 of the Exchange Act and under 28 U.S.C. § 1391(b). Lead Plaintiffs maintain that SNTG is headquartered in this District and that the alleged underlying anti-competitive conduct emanated from SNTG's offices in this District. Defendants deny that SNTG is headquartered in this District. Lead Plaintiffs contend that SNSA maintains executive offices in this District. Defendants deny that SNSA maintains executive offices in this District. Finally, Defendants' allege that materially false and misleading statements and omissions reached this District.

### III.   Brief Description of Case[3]

Lead Plaintiffs Irene Rucker and Gustav Rucker brought the instant federal securities class action complaint purportedly on behalf of all persons or entities who purchased or otherwise acquired securities of SNSA's American Depository Receipts ("ADRs") from February 1, 2001 through February 20, 2003 (the "Class Period"), and all United States ("U.S.") located purchasers of SNSA ordinary shares traded on the Oslo Stock Exchange (together with ADRs referred to herein as "SNSA securities") to recover damages allegedly caused by the Companies and the Individual Defendants.

Lead Plaintiffs allege that, during the Class Period, Defendants made or issued materially false and misleading statements about the Companies' revenues, earnings, and business practices.  Specifically, Lead Plaintiffs allege these statements were materially false and misleading because they misrepresented and failed to disclose that a material portion of SNSA's and SNTG's revenues and earnings during the Class Period was derived from an illegal pact between SNTG and its main competitor, Odfjell ASA ("Odfjell").

The Complaint alleges that SNTG and Odfjell, among other things, conspired to rig bids for international shipping contracts.  Lead Plaintiffs contend that by concealing their anti-competitive behavior, the Companies portrayed to the public that they were immune to the economic downturn that was negatively impacting the rest of the shipping industry.  The Complaint alleges that, to the contrary, the illegal activity was the true reason for the Companies' financial success.

---

[3] The sections of this Report setting forth the position of one party solely reflect the views of that party and are made subject to and without prejudice to the rights of opposing parties to disagree.

Lead Plaintiffs allege that the false and misleading statements regarding the Companies' revenues, earnings, and business practices – specifically omitting SNTG's anti-competitive behavior – inflated the price of SNSA securities.  According to the Complaint, when the market learned about SNTG's anti-competitive behavior, the price of SNSA securities declined, thereby causing damage to those who had purchased SNSA securities at the alleged artificially inflated prices during the Class Period.  For the foregoing reasons, Lead Plaintiffs contend that Defendants violated Sections 10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

\*   \*   \*

As reflected in their two motions to dismiss, Defendants believe that Lead Plaintiffs have failed to assert a claim under the securities laws.  Defendants believe that the Complaint relies on the flawed assumption that the federal securities laws impose a duty to disclose uncharged antitrust violations.  In addition, Defendants submit that the Complaint fails to satisfy the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Defendants maintain that Lead Plaintiffs will be unable to present evidence sufficient to prove their claims.

Defendants submit that Lead Plaintiffs' allegations of material misstatements are insufficient.  Although Lead Plaintiffs allege an antitrust conspiracy affecting SNTG's parcel tanker operations, Lead Plaintiffs rely on alleged misstatements relating to SNTG's entirely separate tank container operations.  Significantly, Defendants believe that Lead Plaintiffs will not be able to establish a nexus between the allegedly illegal conduct involving parcel tankers and the alleged misstatements concerning tank containers.  This omission should be dispositive of their claims.

Defendants submit that Lead Plaintiffs will not be able to establish Defendants' fraudulent intent. Lead Plaintiffs will not be able to establish a clear link between those who were involved in allegedly anti-competitive activities at SNTG and SNSA. Further, the allegations fail to establish that the Individual Defendants, including Samuel Cooperman and Reginald J.R. Lee, as officers of SNTG, made or caused to be made the alleged false and misleading statements.

Finally, Defendants maintain that Plaintiffs will be unable to satisfy their burden of proving that this action should proceed as a class action. Rather, Defendants believe that this matter should proceed as an individual action.

    **A.**    **Claims of Lead Plaintiffs. Lead Plaintiffs submit the following summary of their claims:**

1.    **First Cause of Action -- Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5**. Lead Plaintiffs submit that during the Class Period, Defendants, the Companies and the Individual Defendants carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Lead Plaintiffs and other Class members, as alleged in the Complaint; (ii) artificially inflate and maintain the market price of SNSA common stock; and (iii) cause Lead Plaintiffs and other members of the Class to purchase SNSA stock at artificially inflated prices. Lead Plaintiffs maintain that in furtherance of this unlawful scheme, plan and course of conduct, Defendants, the Companies and the Individual Defendants took the actions set forth in the Complaint. These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common

stock in an effort to maintain artificially high market prices for SNSA common stock in violation of Section 10(b) of the Exchange Act of 1934 and SEC Rule 10b-5.

2.   **Second Cause of Action -- Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a).** Lead Plaintiffs maintain that by reason of their ownership of SNSA securities, management positions, and/or membership on SNSA's Board of Directors, each of the Individual Defendants was a controlling person of SNSA within the meaning of Section 20 of the 1934 Act throughout the Class Period.  The Complaint alleges that the Individual Defendants, because of their positions of control and authority as officers and/or directors of the Companies, controlled the content of various SEC filings, press releases, and other public statements about the Companies, and caused the Companies to engage in the unlawful and improper conduct complained of in the Complaint.  Lead Plaintiffs maintain that the Individual Defendants all received daily reports regarding the sales, revenues, new and repeat customers and other business performance, including the alleged illegal pact between SNTG and Odfjell.  Lead Plaintiffs contend by virtue of their positions, relationships and power, the Companies and the Individual Defendants all were controlling persons of SNTG and its officers, employees and agents.  In this regard, according to the Complaint, Defendants are primarily and/or jointly and severally liable, as direct participants in and co-conspirators of the claims alleged in the Complaint.

   B.   **Defenses of Defendants.  Defendants submit the following summary of their defenses:**

Defendants submit this summary of their defenses subject to and without prejudice to their forthcoming Answers to the Second Consolidated Amended Class Action Complaint. Because of the deficiencies in the Complaint, however, Defendants cannot state fully at this time what additional specific substantive defenses they will assert.  Accordingly, Defendants reserve the right to supplement their statement of defenses if and when Lead Plaintiffs more clearly state

their claims and theories. However, Defendants intend to dispute the material allegations of the Complaint. For purposes of this report, however, Defendants maintain as follows:

1. **First Cause of Action -- Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.** In answering the Complaint, Defendants will deny Lead Plaintiffs' allegations regarding the alleged violations of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Moreover, for the reasons stated in their two motions to dismiss, Defendants continue to believe that Lead Plaintiffs have failed to state a claim under the applicable provisions of the securities laws. Among other things, Defendants deny that they carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Lead Plaintiffs and other Class members, as alleged in the Complaint; (ii) artificially inflate and maintain the market price of SNSA common stock; and (iii) cause Lead Plaintiffs and other members of the Class to purchase SNSA stock at artificially inflated prices. Defendants further deny that in furtherance of this unlawful scheme, plan and course of conduct, they took the actions set forth in the Complaint. Defendants further deny that in furtherance of this unlawful scheme, plan and course of conduct, Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for SNSA common stock in violation of Section 10(b) of the Exchange Act of 1934 and SEC Rule 10b-5.

2. **Second Cause of Action -- Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a).** In answering the Complaint, Defendants will deny Lead Plaintiffs' allegations regarding the

alleged violations of Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a). Moreover, for the reasons stated in their two motions to dismiss, Defendants continue to believe that Lead Plaintiffs have failed to state a claim under the applicable provisions of the securities laws. Among other things, Defendants deny that the Individual Defendants, because of their positions of control and authority as officers and/or directors of the Companies, controlled the content of various SEC filings, press releases, and other public statements about the Companies, and caused the Companies to engage in the unlawful and improper conduct complained of in the Complaint.

## IV.     Statement of Undisputed Facts

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1        Defendant SNSA is a holding company and the parent company of Defendant SNTG.

2.       SNTG is a wholly-owned indirect subsidiary of SNSA.

3.       SNTG and Stolt-Nielsen Inc. maintain offices in Connecticut, located at 800 Connecticut Avenue, Fourth Floor East, Norwalk, CT 06854.

4.       Defendant Jacob Stolt-Nielsen has served as Chairman of SNSA since he founded the Company in 1959. During the Class Period, Jacob Stolt-Nielsen served on the Board of Directors for SNSA. During the Class Period, Jacob Stolt-Nielsen served on the Board of Directors for SNTG.

5.       Defendant Niels G. Stolt-Nielsen has served as Chief Executive Officer ("CEO") of SNSA during the Class Period. During the Class Period, Niels G. Stolt-Nielsen served on the Board of Directors for SNSA. During the Class Period, Niels G. Stolt-Nielsen served on the Board of Directors for SNTG.

6.  Defendant Cooperman served as non-executive Chairman of SNTG from about August 2001 to July 2003.

7.  Defendant Lee served as CEO of SNTG during the Class Period.

8.  Lead Plaintiffs filed a Memorandum in Support of the Motion of Irene and Gustav Rucker for Appointment as Lead Plaintiff stating that Lead Plaintiffs purchased 1000 shares of SNSA ADRs at a price of $8.0700 per share on November 19, 2002.

9.  Lead Plaintiffs filed an attachment to a Declaration in Support of the Motion of Irene and Gustav Rucker for Appointment as Lead Plaintiff providing that the average closing price of their SNSA ADRs during the period February 21, 2003 through May 15, 2003 was $6.3611.

10. Lead Plaintiffs filed a Memorandum in Support of the Motion of Irene and Gustav Rucker for Appointment as Lead Plaintiff stating that Lead Plaintiffs suffered estimated losses of $1,708.90 in connection with their purchase of shares of SNSA ADRs during the Class Period.

## V.  Case Management Plan:

### A.  Standing Order on Scheduling in Civil Cases

The parties request modification of the deadlines in the Standing Order on Scheduling in Civil Cases. As invited by the Court in its June 19, 2006 Memorandum of Decision, Defendants will be filing a motion to dismiss Lead Plaintiffs' scheme liability claim pursuant to Fed. R. Civ. P. 12(b). In that same order, the Court stayed all proceedings. If and when the stay is lifted, absent agreement of the parties, Defendants intend to file a motion to stay discovery pending final resolution of related criminal proceedings.

### B.  Scheduling Conference with the Court

The parties have not been able to reach agreement on every date for a proposed scheduling order, as identified below.

In this Court's June 19, 2006 Memorandum of Decision denying Defendants' second motion to dismiss, the Court stated that "[t]he stay of this litigation shall remain in effect until further order from this court" except that it allowed for filing by August 11, 2006 of Defendants' motion addressing the scheme liability claim and the parties' proposed discovery plan.  Dkt. # 63 at 21.

Lead Plaintiffs request a pretrial conference, preferably in person, with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).  Lead Plaintiffs maintain that such a conference is particularly important in light of Defendants' suggestion that the existing stay should remain in place pending the United States Department of Justice's investigation (and possible criminal proceedings) against some or all of the Defendants.  Lead Plaintiffs do not agree that a continuation of the stay is warranted.

Both parties agree that a conference would be the most expeditious way to solve this conflict, although Defendants believe that resolution of the conflict should await full briefing on these issues.

This report sets forth the parties' differing proposals for discovery deadlines, and the reasons underlying their respective positions, for the Court's consideration in connection with entering an appropriate order pursuant to Fed. R. Civ. P. 16(b).  Both parties are available, at this Court's convenience, for an in-person conference.

     **C.**    **Early Settlement Conference**

1.    The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice.  The parties engaged in telephone discussions and the parties believe settlement is unlikely at this time.

2.    The parties do not request an early settlement conference because settlement is unlikely at this time.

      3.      At this time, the parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

      **D.**      **Joinder of Parties and Amendment of Pleadings**

      1.      Lead Plaintiffs should be allowed to file motions to join additional parties and/or amend the pleadings until 21 days after the latter of: (i) this Court's decision on Defendants' forthcoming motion to dismiss Lead Plaintiffs' scheme liability claim; or (ii) the Court's lifting of the stay of the litigation.

      2.      Defendants should be allowed to file motions to join additional parties and/or to file Answers to the Complaint until 21 days after the latter of: (i) this Court's decision on Defendants' forthcoming motion to dismiss Lead Plaintiffs' scheme liability claim; or (ii) the Court's lifting of the stay of the litigation.

      **E.**      **Discovery**

      1.      Lead Plaintiffs anticipate requesting all relevant and non-privileged documents from Defendants and various non-parties pertaining to, for example: (a) the course of conduct sustained in Lead Plaintiffs' Amended Complaint; (b) each Defendants' participation in the anti-competitive activities and/or bid rigging activities conducted by SNTG and Odfjell; (c) when each Defendant had knowledge of the anti-competitive activities and/or bid rigging activities conducted by SNTG and Odfjell; (d) Defendants' scienter. Defendants reserve the right to object to any such discovery.

      2.      Defendants' anticipate seeking discovery from Lead Plaintiffs and third parties on topics including, but not limited to: (a) the characteristics of the putative class(es); (b) the type(s) of securities purchased by Lead Plaintiffs and putative class members; (c) the dates of purchase and prices paid for such securities; and (d) other issues relating to class certification. Defendants also anticipate requesting all relevant and non-privileged documents from Lead Plaintiffs and non-parties regarding the bases for each of Lead Plaintiffs' allegations contained in

the Second Consolidated Amended Class Action Complaint, including, but not limited to Lead Plaintiffs' allegations of antitrust violations by SNTG, and Lead Plaintiffs' reasonable reliance on the alleged false and misleading statements.

      3.      The parties do not agree on the commencement date of discovery.

           (a)      <u>Lead Plaintiffs' Position.</u>  Lead Plaintiffs propose that discovery in this matter commence immediately.  Lead Plaintiffs do not believe that any criminal proceeding eventually brought against all or some of the Defendants should affect the progression of discovery in this civil matter and contend that a request for such a stay would constitute a prejudicial delay against Lead Plaintiffs.  In fact, to date, none of the Defendants have been indicted.  Also, Lead Plaintiffs do not believe that the sole outstanding issue of "scheme liability" should halt discovery, as the scheme liability claim would not add or subtract any parties to the action or alter the overriding nature of the action.  Rather, the issue of scheme liability simply adds an additional theory of liability against Defendants.

           (b)      <u>Defendants' Position.</u>  Defendants maintain that the stay should remain in place until resolution of potential criminal proceedings against Defendants and third parties.  It is well-settled that criminal investigations should proceed without interference from the civil process in order to protect the integrity of the criminal investigation.  In addition, civil proceedings may unfairly burden individuals who may be forced to invoke their Fifth Amendment rights, which may raise an adverse inference against them.  Defendants believe that discovery in this proceeding could interfere with the Government's criminal investigation and unfairly prejudice Defendants.  Moreover, a stay would not prejudice Lead Plaintiffs.  In fact, a stay would benefit Lead Plaintiffs because a criminal investigation could clarify Defendants' antitrust liability, which is the basis for this action.

Regarding the scheme liability claim, Defendants assert that resolution of this claim will affect the overall scope of discovery, as this claim represents an entirely distinct theory of liability. Defendants believe this claim will require discovery that is separate and distinct from discovery required for other claims. Thus, the overall scope of discovery depends on this Court's resolution of Lead Plaintiffs' scheme liability claim. Lead Plaintiffs have expressed their willingness to dismiss their scheme liability claim and would like to discuss with the Court the prospect of dropping this claim with the interest of proceeding with discovery on an immediate basis.

4. The parties do not agree on whether to bifurcate discovery.

(a) <u>Lead Plaintiffs' Position.</u> It is Lead Plaintiffs' position that discovery should not be bifurcated and that discovery concerning the merits of any and all claims alleged in the Complaint should be conducted in conjunction with any necessary class certification questions.

(b) <u>Defendants' Position.</u> Defendants believe that bifurcated discovery will result in a more efficient and economical resolution of Lead Plaintiffs' claims. Accordingly, Defendants intend to seek two phases of discovery. The first phase of discovery would be limited to issues relevant to (a) whether Lead Plaintiffs' allegations of fraudulent statements relate to parcel tankers or tank containers and the differences between parcel tankers and tank containers; and (b) class certification. The second phase would concern the merits of Lead Plaintiffs' claims. With respect to the parcel tankers and tank containers issue, in this Court's November 11, 2005 order on Defendants' initial motion to dismiss, the Court found that "Defendants' argument draws a nice distinction more properly reserved for the time when presentation of evidence is appropriate." Dkt. # 43 at 11 n.4. In addition, proceeding with class discovery first and resolving the class certification issue is efficient and economical because if

class certification is denied, this litigation will proceed only as to Lead Plaintiffs, which will significantly expedite this litigation and perhaps lead to pretrial resolution. Lead Plaintiffs claim to have suffered losses of $1,708.90 in connection with their purchase of SNSA ADRs, and the issue of class certification greatly affects the value of this case.

Following completion of the proposed first phase of discovery, Defendants intend to file a motion for summary judgment based on Plaintiffs' failure to distinguish between parcel tankers and tank containers. The Court's resolution of this motion and the class certification issue will impact the scope of merits discovery, thereby resulting in a proceeding more efficient than a proceeding with just a single phase of discovery.

5. The parties agree that they will not request permission to serve more than 25 interrogatories, including subparts.

6. The parties agree that Lead Plaintiffs and Defendants may propound 30 written document demands.

7. The parties anticipate that Lead Plaintiffs and Defendants will require a total of 10 depositions of fact witnesses each.

8. The scheduling of written discovery and depositions will be more suitably determined upon the resolution of the disagreements between the parties as outlined above.

9. Lead Plaintiffs intend to call expert witnesses at trial. Lead Plaintiffs will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by a date not later than 4 months before the deadline for completing all discovery. Depositions of any such experts will be completed by a date not later than 3 months before the deadline for completing all discovery.

10. Defendants intend to call expert witnesses at trial. Defendants will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R.

Civ. P. 26(a)(2) by a date not later than 2 months before the deadline for completing all discovery. Depositions of such experts will be completed by a date not later than the discovery cutoff date.

11.    A damages analysis will be provided by any party who has a claim or counterclaim for damages by a date not later than the discovery cutoff date.

### F.    Dispositive Motions:

Defendants submit that if discovery is bifurcated to permit discovery on issues relevant to parcel tankers/tank containers and class certification first, and merits discovery second, Defendants will likely seek summary judgment on the parcel tankers/tank containers issue soon after the close of the first phase of discovery.

The scheduling of dispositive motions will be more suitably determined upon the resolution of the disagreements between the parties as outlined above.

### G.    Joint Trial Memorandum

The scheduling of joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be more suitably determined upon the resolution of the disagreements between the parties as outlined above.

## VI. TRIAL READINESS

The scheduling of a trial date will be more suitably determined upon the resolution of the disagreements between the parties as outlined above.

Dated: August 11, 2006

| **LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP** | **WHITE & CASE LLP** |
|---|---|
| /s/ Mark S. Reich | /s/ Jaime M. Crowe |
| Samuel H. Rudman | J. Mark Gidley (#ct18450) |
| Mark S. Reich | Christopher M. Curran (#ct22743) |
| 58 South Service Road, Suite 200 | Peter J. Carney (#ct24721) |
| Melville, NY 11747 | Jaime M. Crowe (#ct25657) |
| Telephone: 631/367-7100 | 701 Thirteenth Street, N.W. |
| 631/367-1173 (fax) | Washington, DC 20005 |
| | Telephone: 202/626-3600 |
| | 202/639-9355 (fax) |
| *Lead Counsel for Plaintiffs* | |
| **SCOTT + SCOTT, LLC** | **DAY, BERRY & HOWARD LLP** |
| David R. Scott (CT 16080) | Michael P. Shea (#ct19598) |
| 108 Norwich Avenue | Jason S. Weathers (#ct24579) |
| Colchester, CT 06415 | City Place I |
| Telephone: 860/537-3818 | 185 Asylum Street |
| 860/537-4432 (fax) | Hartford, CT 06103-3499 |
| | Telephone: 860/275-0356 |
| | 860/275-0343 (fax) |
| *Liaison Counsel* | *Attorneys for Defendants* |

**CERTIFICATION**

    I hereby certify that on August 11, 2006, a copy of the foregoing Form 26(f) Report of Parties' Planning Meeting was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

By:    /s/ Jaime M. Crowe
        Jaime M. Crowe (#ct25657)
        WHITE & CASE LLP
        701 Thirteenth Street, N.W.
        Washington, DC 20005
        Tel: (202) 626-3600
        Fax: (202) 639-9355
        jcrowe@whitecase.com