UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Joel Menkes, *et al.*, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> Stolt-Nielsen S.A., *et al.*, <br><br> *Defendants*. | Civ. Action No. 3:03 CV 409 (DJS) <br><br> August 11, 2006 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' SCHEME LIABILITY CLAIM**

Plaintiffs' Second Consolidated Amended Class Action Complaint ("Complaint") alleges that Defendants violated Section 10(b) of the 1934 Securities and Exchange Act and SEC Rule 10b-5(a) and (c) because they "engaged and carried out a common plan, scheme, and unlawful course of conduct" which operated as a "fraud and deceit upon Lead Plaintiffs." Complaint ¶ 98. Plaintiffs thereby claim that Rule 10b-5(a) and (c) gives rise to a "scheme liability" claim against Defendants.

Defendants respectfully submit that the Court should dismiss Plaintiffs' scheme liability claim. ***First***, as the Court recently recognized, Plaintiffs' "basis for scheme liability is [] not immediately apparent from the complaint." Mem. of Decision of June 19, 2006 at 20. This failure has prejudiced Defendants' efforts to understand and defend against those allegations, and runs afoul of the heightened pleading requirements of the PSLRA and Rule 9(b). ***Second***, Plaintiffs have alleged that the proscribed "scheme" was Defendants' participation in antitrust violations. The law is clear, however, that that is ***not*** the type of "scheme" that Section 10(b) and Rule 10b-5 proscribe. ***Finally***, Plaintiffs' scheme liability theory is really an allegation that Defendants aided and abetted in fraudulent conduct. The Supreme Court, however, has held that

Section 10(b) and Rule 10b-5 do not support a private right of action for aiding and abetting. As a result, and as more fully set forth herein, the Court should dismiss Plaintiffs' scheme liability claim arising from Rule 10b-5(a) and (c).

## I. PLAINTIFFS HAVE FAILED TO PROPERLY PLEAD SCHEME LIABILITY

While the Complaint alleges that "[e]ach defendant is liable as a participant in a fraudulent scheme," (Complaint ¶ 20), in their last brief opposing dismissal of the Complaint, Plaintiffs retreated from this sweeping allegation to claim only that "SNTG, Cooperman and Lee Are Liable Under the Concept of Scheme Liability." Opp'n Mot. to Dismiss (filed April 11, 2006) at 20. Thus, dismissal of Rule 10b-5(a) and (c) liability against Defendants SNSA, Jacob Stolt-Nielsen and Niels G. Stolt-Nielsen is appropriate as Plaintiffs' opposition papers necessarily concede. Dismissal of the Rule 10b-5(a) and (c) claim against SNTG, Samuel Cooperman and Reginald J.R. Lee, however, also is appropriate.

As with any securities fraud claim based on Section 10(b) and Rule 10b-5, Plaintiffs' scheme liability theory is subject to the heightened pleading standards of the PSLRA, as well as Rule 9(b) of the Federal Rules of Civil Procedure. *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 168 (2d Cir. 2005) ("*Any* fraud must be pled with particularity, Fed. R. Civ. P. 9(b); but the rule is applied *assiduously* to securities fraud . . . . So no claim should be filed unless and until it can be supported by specific factual allegations.") (emphasis added) (citing *Novak v. Kasaks*, 216 F.3d 300, 307-10 (2d Cir. 2000)); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 813 (2d Cir. 1996) (declaring that securities-fraud "[p]laintiffs do not, however, enjoy a license to base claims of fraud on speculation and conclusory allegations") (internal quotations omitted).

Despite filing their third complaint in this matter and briefing the scheme liability issue three times — (i) in their initial brief supporting reconsideration of this Court's Memorandum of Decision of November 10, 2005, (ii) in the reply that followed, and (iii) in their opposition to Defendants' last motion to dismiss — Plaintiffs have failed to articulate any actionable claim for scheme liability under Rule 10b-5(a) and (c). Despite several opportunities, as this Court noted in its Memorandum of Decision of June 19, 2006 (at 20), "plaintiffs have not made the particulars of their claim immediately apparent from the complaint." *See also id.* ("The basis for scheme liability is [] not immediately apparent from the complaint."). Just as the Court has struggled to understand the basis for Plaintiffs' scheme liability allegations, so too have Defendants who have to defend against Plaintiffs' sweeping and vague allegations.

The history of this litigation establishes that Plaintiffs' scheme liability claim is nothing more than an afterthought, as evidenced by Plaintiffs' vague and thinly-pleaded allegations. Although the complaint that preceded the current one also alleged (in passing and using the same boilerplate that the current Complaint uses) that Defendants "schemed" to defraud investors (*see, e.g.*, Consolidated Amended Class Action Complaint (filed September 3, 2003) ¶ 22)), in opposing Defendants' first motion to dismiss on December 3, 2003, Plaintiffs never claimed that their case should be spared dismissal based on scheme liability. The first time Plaintiffs ever advanced scheme liability was ***after*** this Court had already dismissed Plaintiffs' last complaint and Plaintiffs moved for reconsideration of that dismissal. There, Plaintiffs made passing reference to a few cases and asserted — in conclusory fashion and with no factual detail regarding each Defendant's role — that "Defendants should be held liable for the [sic] executing the scheme that resulted in the fraud on investors." Mot. for Recon. at 8-10.

Although the Court ultimately allowed Plaintiffs to file the current Complaint, Plaintiffs' allegations of scheme liability have not advanced beyond the vague and imprecise allegations they urged in their reconsideration papers. Among other deficiencies, the Complaint simply makes no effort — as it must — to "inform *each* defendant of its role in the fraud." *Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996) (rejecting "[b]road allegations that several defendants participated in a scheme" because they did "not satisfy Rule 9(b)."). Nor does the Complaint inform *each* Defendant — as it must — of that Defendant's role in the alleged scheme. *Landy v. Mitchell Petroleum Tech. Corp.*, 734 F. Supp. 608, 621 (S.D.N.Y. 1990) ("Plaintiffs must clearly identify each defendant's role in the scheme and what their connection was to the alleged misrepresentation."), *aff'd*, 152 F.3d 918 (2d Cir. 1998)). Certainly, these Defendants — who are already defending against Plaintiffs' allegations that they violated Rule 10b-5(b) — should not also be forced to defend against Plaintiffs' undeveloped, vague and confusing scheme liability theory. Because the securities laws require that "[a]ny fraud must be pled with particularity," and because this requirement applies "assiduously to securities fraud," (*Lentell*, 396 F.3d at 168), Plaintiffs' failure to do so with the clarity and particularity demanded by the securities laws is fatal to their Rule 10b-5(a) and (c) claim.

## II. THE SCHEME PLAINTIFFS ALLEGE IS NOT ACTIONABLE UNDER THE SECURITIES LAWS

In papers filed with the Court, Plaintiffs have argued — albeit without any factual analysis — that Defendants' alleged antitrust conduct *was* the scheme that violated Rule 10b-5(a) and (c). *See* Opp'n Mot. to Dismiss (filed April 11, 2006) at 22 (describing the scheme as "the bid rigging conspiracy"); *id.* (describing "the scheme between SNTG and Odfjell"). In fact, while SNTG's allegedly anticompetitive conduct may give rise — and indeed has given rise — to antitrust claims, such conduct is not the type of scheme that the securities laws proscribe.

Plaintiffs bring their scheme liability claim pursuant to Rule 10b-5(a) and (c). For nearly three decades now, the Supreme Court has made clear that the SEC's rulemaking authority — pursuant to which Rule 10b-5(a) and (c) was promulgated — is limited to matters falling within the federal securities laws:

> Rule 10b-5 was adopted pursuant to authority granted the [Securities and Exchange] Commission under § 10(b). The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is "the power to adopt regulations to carry into effect the will of Congress as expressed by the statute," . . . [The scope of the Rule] cannot exceed the power granted the Commission by Congress under § 10(b).

*Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472-73 (1977) (modifications in original) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 212-14 (1976)); *see also Santa Fe*, 430 U.S. at 472 ("[T]he language of the statute must control the interpretation of the Rule."); *United States v. O'Hagan*, 521 U.S. 642, 651 (1997) ("Liability under Rule 10b-5 . . . does not extend beyond conduct encompassed by § 10(b)'s prohibition"). As one court of appeals recently explained in holding that Rule 10b-5(a) and (c) does not give rise to scheme liability in a private action: "a private plaintiff 'may not bring a 10b-5 suit against a defendant for acts not prohibited by the *text* of § 10(b).'" *In re Charter Communications Sec. Lit.*, 443 F.3d 987, 992 (8th Cir. 2006) (quoting *Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 173 (1994)) (emphasis added).

The text of Section 10(b) only proscribes specific types of conduct "in connection with the purchase or sale of any security." *See also SEC v. Zandford*, 535 U.S. 813, 822 (2002) (making clear that a scheme to defraud *must* coincide with the purchase or sale of securities). Nothing in the text of Section 10(b), however, proscribes anticompetitive conduct — the Sherman Act does that. Any claim that Section 10(b) reaches the alleged antitrust "scheme" is belied by the text of Section 10(b).

The Complaint alleges a classic antitrust conspiracy between SNTG and Odfjell. Complaint ¶¶ 29-45. The Complaint also makes clear that the alleged antitrust conspiracy — the alleged "scheme" — was directed at SNTG's and Odfjell's customers. *Id.* Indeed, the Complaint alleges that "SNTG and its competitors schemed to fix shipping rates, rig bids and allocate customers *in violation of applicable antitrust and competition laws*" — not the securities laws. Complaint ¶ 29 (emphasis added). The Complaint nowhere alleges that the anticompetitive conduct was intended to target the securities markets, much less that the alleged antitrust conspiracy was "in connection with the purchase or sale of any security." In short, neither the text of Section 10(b) nor case law — including Supreme Court precedents — countenance the scheme liability theory Plaintiffs advance here. *See, e.g.*, *Pross v. Katz*, 784 F.2d 455, 459 (2d Cir. 1986) (holding that the federal securities laws proscribe fraud that is "an integral part of the purchase and sale of securities," and that "the incidental involvement of securities did not implicate the antifraud provisions of the federal securities laws") (relying upon *Chem. Bank v. Arthur Anderson & Co.*, 726 F.2d 930 (2d Cir. 1984)); *Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 241-42 (S.D.N.Y. 2006) (dismissing a claim alleging a fraudulent scheme to misappropriate technology alleged to be "key" to the value of defendants' stock because the alleged scheme involved certain crimes, "but no transactions in the relevant securities"); *In re Dynegy Sec. Litig.*, 339 F. Supp. 2d 804, 916 (S.D. Tex. 2004) (dismissing claim because plaintiffs failed to allege how conduct coincided with the purchase or sale of securities). As in those cases, this Court should dismiss Plaintiffs' scheme liability claim as the scheme alleged here involved antitrust violations, "but no transactions in the relevant securities." *Leykin*, 423 F. Supp. 2d at 241-42.

**III.    THE SUPREME COURT HAS FORECLOSED PLAINTIFFS' CLAIM**

Of course, the fundamental defects discussed in the foregoing sections provide a sufficient basis for this Court to dismiss Plaintiffs' scheme liability claim. Independent of those reasons, however, the Court may also dismiss Plaintiffs' scheme liability claim because the crux of the claim is really that Defendants aided and abetted SNSA in its fraud — a claim precluded by the Supreme Court's decision in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994). In *Central Bank*, the Supreme Court made clear that "[e]xtending the 10b-5 cause of action to aiders and abettors no doubt makes the civil remedy more far reaching, but it does not follow that the objectives of the statute are better served. Secondary liability for aiders and abettors exacts costs that may disserve the goals of fair dealing and efficiency in the securities markets." *Id.* at 188.

Because of *Central Bank*'s proscription, "nowadays, increasingly more plaintiffs, in an attempt to sidestep the ruling" are asserting scheme liability claims under Rule 10b-5(a) and (c). Matthew L. Mustokoff, *"Scheme" Liability Under Rule 10b-5: The New Battleground in Securities Fraud Litigation*, 53 Fed. Law. 20, 20 (2006). About four months ago, however, in *In re Charter Communications Securities Litigation*, 443 F.3d 987 (8th Cir. 2006), the Eighth Circuit became the first court of appeals to consider — and reject — the type of broad scheme liability claim Plaintiffs urge here.

In *Charter Communications*, plaintiffs alleged that defendants, which included a publicly-traded company and its vendors, had engaged in a fraudulent scheme "intended to artificially boost the Company's reported financial results." 443 F.3d at 989 (internal quotations omitted). As the court explained, the company improperly inflated earnings by "deliberately delaying the disconnecting of customers no longer paying their bills, improperly capitalizing labor costs, and entering into sham transactions with two equipment vendors that improperly

inflated Charter's reported operating revenues and cash flow." *Id.* Specifically, plaintiffs alleged that those transactions "were sham or wash transactions with no economic substance, contrived to inflate Charter's operating cash flow by some $17,000,000 in the fourth quarter of 2000 in order to meet revenue and operating cash flow expectations of Wall Street analysts." *Id.* at 989-90. The court observed that, while plaintiffs alleged that defendant vendors "entered into these sham transactions knowing that Charter intended to account for them improperly and that analysts would rely on the inflated revenues and operating cash flow in making stock recommendations," plaintiffs never alleged that defendant vendors "played any role in preparing or disseminating the fraudulent financial statements and press releases through which Charter published its deception to analysts and investors." *Id.*

In affirming the district court's dismissal of plaintiffs' scheme liability theory, the Eighth Circuit — relying on *Central Bank* — held that "any defendant who does not make or affirmatively cause to be made a fraudulent misstatement or omission, or who does not directly engage in manipulative securities trading practices, is at most guilty of aiding and abetting and cannot be held liable under § 10(b) or any subpart of Rule 10b-5." *Id.* Among other reasons, the court held that the defendant vendors were not liable under plaintiffs' scheme liability theory because "[n]one of the alleged financial misrepresentations by Charter was made by or even with the approval of the Vendors." *Id.* at 992.

While the Second Circuit has not definitively resolved this issue, its precedents strongly suggest that it would reject the type of scheme liability claim Plaintiffs urge here. This is because, while some circuits have been more liberal in interpreting *Central Bank*, the Second Circuit has adopted a "bright-line test" pursuant to which "a secondary actor is liable if it makes a misstatement that is attributable to the defendant at the time the statement is publicly

-8-

disseminated." Mustokoff, 53 Fed. Law. at 20 (referencing *Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997)). In *Shapiro*, the Second Circuit — echoing *Charter Communications* — quoted with approval one district court's analysis:

> [I]f *Central Bank* is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b).

123 F.3d at 720 (brackets in original) (quoting *In re MTC Elec. Techs. Shareholders Litig.*, 898 F. Supp. 974, 987 (E.D.N.Y. 1995)); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) (same); *Dynegy Sec. Litig.*, 339 F. Supp. 2d (S.D. Tex. 2004) (dismissing claim against defendant because "plaintiffs cannot invoke subsections (a) and (c) of Rule 10b-5 to circumvent *Central Bank's* limitations on liability"). Because SNSA is the one that actually made an allegedly false or misleading statement through its SEC filings, Plaintiffs' claim of scheme liability against subsidiary SNTG, as well as Samuel Cooperman and Reginald J.R. Lee — who were officers only of the subsidiary — would be at best "merely aiding and abetting" conduct not actionable under *Central Bank* or Second Circuit precedents. Under the circumstances, the Court should dismiss Plaintiffs' scheme liability claim.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss Plaintiffs' Scheme Liability Claim.

Respectfully submitted,

*Defendants Stolt-Nielsen S.A., Stolt-Nielsen Transportation Group Ltd., Jacob Stolt-Nielsen, Niels G. Stolt-Nielsen, Samuel Cooperman and Reginald J.R. Lee*

By: /s/ Jaime M. Crowe

| | |
|---|---|
| Michael P. Shea (ct19598) | Christopher M. Curran (ct22743) |
| Jason S. Weathers (ct24579) | J. Mark Gidley (ct18450) |
| Day, Berry & Howard LLP | Peter J. Carney (ct24721) |
| City Place I | Jaime M. Crowe (ct25657) |
| 185 Asylum Street | WHITE & CASE LLP |
| Hartford, Connecticut 06103-3499 | 701 Thirteenth Street, N.W. |
| Tel: (860) 275-0356 | Washington, D.C. 20005 |
| Fax: (860) 275-0343 | Tel: (202) 626-3600 |
| E-Mail: jsweathers@dbh.com | Fax: (202) 639-9355 |
| | E-Mail: jcrowe@whitecase.com |