UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Joel Menkes, *et al*., | |
| *Plaintiffs*, | |
| *v.* | No. 3:03-CV-409 (DJS) |
| Stolt-Nielsen S.A., *et al.*, | September 26, 2006 |
| *Defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO STAY DISCOVERY**

DEFENDANTS STOLT-NIELSEN S.A.,
STOLT-NIELSEN TRANSPORTATION
GROUP LTD., JACOB STOLT-NIELSEN,
NIELS G. STOLT-NIELSEN, SAMUEL
COOPERMAN AND REGINALD J.R. LEE

Michael P. Shea (#ct19598)
Jason S. Weathers (#ct24579)
Day, Berry & Howard LLP
City Place I
Hartford, Connecticut 06103-3499
Tel:  (860) 275-0356
Fax:  (860) 275-0343
Email: jsweathers@dbh.com

J. Mark Gidley (#ct18450)
Christopher M. Curran (#ct22743)
Peter J. Carney (ct#24721)
Jaime M. Crowe (ct#25657)
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Tel: (202) 626-3600
Fax: (202) 639-9355

## TABLE OF CONTENTS

**SECTION**                                                          **PAGE**

TABLE OF AUTHORITIES ........................................................................................ ii

BACKGROUND .................................................................................................... 1

ARGUMENT ........................................................................................................ 5

    I.    The Substantial Burden Civil Discovery Will Impose on Defendants Supports a Stay of Discovery ................................................................................. 7

    II.    A Stay of Civil Discovery Will Not Prejudice Plaintiffs and Can Potentially Benefit Them ........................................................................................ 10

    III.    A Stay of Civil Discovery Promotes Judicial Economy and Efficiency ................. 11

    IV.    The Public Interest Favors a Stay of Civil Discovery ................................... 12

    V.    A Stay of Civil Discovery As To All Parties is Appropriate ....................... 15

CONCLUSION .................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE**

*Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6 (D. Conn. 2002) ................ *passim*

*Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985) ........................................................................7, 8

*Citibank, N.A. v. Hakim*, No. 92 Civ. 6233 (MBM), 1993 WL 481335
(S.D.N.Y. Nov. 18, 1993) ....................................................................................................................6

*Gideon v. Wainwright*, 372 U.S. 335 (1963) ................................................................................13

*Hicks v. City of New York*, 268 F. Supp. 238 (E.D.N.Y. 2003) .....................................................6

*In re Par Pharms.,* 133 F.R.D. 12 (S.D.N.Y. 1990) .......................................................................6

*Javier H. v. Garcia-Botello*, 218 F.R.D. 72 (W.D.N.Y. 2003) ............................................. *passim*

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.,* 628 F.2d 1368 (2d Cir. 1980) ............................5, 7

*Sec. & Exch. Comm'n v. Tandem Mgmt., Inc.*, No. 95 Civ. 8411 (JGK),
2001 WL 1488218 (S.D.N.Y. Nov. 21, 2001) ......................................................................... 13-14

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573 (S.D.N.Y. 2001) .......... 6, 10-11

*Stolt-Nielsen S.A. v. United States*, 442 F.3d 177 (3d Cir. 2006) .........................................3, 4, 14

*Stolt-Nielsen S.A. v. United States*, 352 F. Supp. 2d 553 (E.D. Pa. 2005) ....................................3, 4

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
886 F. Supp. 1134 (S.D.N.Y. 1995) ...................................................................................................6

*United States v. Certain Real Prop.,* 751 F. Supp. 1060 (E.D.N.Y. 1989) .....................................6

*Volmar Distribs., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36 (S.D.N.Y. 1993) .......7, 8, 10, 11

*White v. Mapco Gas Prods., Inc.*, 116 F.R.D. 498 (E.D. Ark. 1987) ..................................... *passim*

**RULES**

Sup. Ct. R. 13(1) .............................................................................................................................15

**OTHER AUTHORITIES**

Manual for Complex Litigation (Fourth) § 30.4 (2004) ................................................................12

On September 6, 2006, in breach of its Amnesty Agreement with Defendant Stolt-Nielsen Transportation Group Ltd. ("SNTG"), the Antitrust Division of the United States Department of Justice brought a federal grand jury indictment against, among others, Stolt-Nielsen S.A. ("SNSA"), SNTG and Samuel A. Cooperman (the "Antitrust Defendants") — all of whom are Defendants in this matter. *See* Indictment (Ex. 1). In the indictment, the Antitrust Division alleges that the Antitrust Defendants, and several unnamed coconspirators associated with SNSA or SNTG, engaged in criminal antitrust conduct. As a result of the Antitrust Division's breach, amnesty applicants SNSA and SNTG, as well as their executives, are presently defending against a criminal proceeding brought by the Antitrust Division.

Given that Plaintiffs' securities action arises out of the publicly-announced Antitrust Division investigation of SNSA and SNTG, it is not surprising that the indictment's allegations center on the same antitrust allegations that are at the core of Plaintiffs' claims. As a result of their indictment, the Antitrust Defendants now confront the dilemma of simultaneously defending themselves in the criminal case, while facing onerous and disruptive civil discovery in this case. In such situations, courts in this circuit routinely stay civil discovery to reduce the prejudice to defendants and to minimize the potential Fifth Amendment and Due Process concerns that might arise by requiring a party to defend against civil and criminal proceedings simultaneously. For the reasons that follow — consistent with the prevailing practice in this circuit — Defendants move this Court for a stay of discovery pending resolution of the criminal case against the Antitrust Defendants.

## <u>BACKGROUND</u>

This action is one of several lawsuits filed in connection with the February 2003 Antitrust Division announcement that it was investigating possible anticompetitive conduct in the parcel

tanker industry.  According to the novel theory in Plaintiffs' Second Amended Complaint ("Complaint"), Defendants somehow violated federal securities laws by failing to disclose that SNTG purportedly increased its revenues by engaging in anticompetitive conduct.  *See* Compl. ¶¶ 57-71.  Tracking the public details of the Antitrust Division's investigation, the Complaint relies heavily on the allegations of Government investigators and media reports describing the very antitrust conduct that the Antitrust Division is investigating and that has now ripened into an indictment.  *See generally* Compl. ¶¶ 29-56.  Indeed, all of Plaintiffs' allegations concerning Defendants' antitrust conduct are based directly or indirectly on the Government investigation of the Antitrust Defendants and others at SNSA and SNTG.

The criminal matter now pending in Philadelphia raises substantial constitutional questions.  On January 15, 2003, after voluntarily coming forward with evidence of antitrust conduct, SNTG — for its own benefit and that of its directors, officers and employees — entered into the Antitrust Division's corporate amnesty program.  *See* Amnesty Agreement (Ex. 2). Pursuant to the Amnesty Agreement, SNTG agreed to provide the Antitrust Division with evidence regarding an antitrust conspiracy in the parcel tanker industry.  In exchange for that cooperation, the Antitrust Division agreed "not to bring any criminal prosecution against SNTG for any act or offense it may have committed prior to the date of this letter [January 15, 2003] in connection with the anticompetitive activity being reported."  Amnesty Agreement at 2; *see also id.* at 3 (providing similar amnesty to SNTG directors, officers and employees).  Pursuant to the Amnesty Agreement, SNTG and SNTG executive Richard B. Wingfield (a non-party to this action) provided the Antitrust Division with evidence regarding that antitrust conspiracy.  Mr. Cooperman was one of the company executives who helped bring SNTG into the Amnesty

Program and encouraged employees to provide truthful and, if necessary, incriminating information to investigators.

The Antitrust Division used that information to successfully prosecute coconspirators. To date, two corporate coconspirators have pleaded guilty to antitrust violations and paid fines totaling $62 million.  In addition, three executives of those companies have pleaded guilty, paid fines and served jail time.  *See Stolt-Nielsen S.A. v. United States*, 352 F. Supp. 2d 553, 568 (E.D. Pa. 2005), *rev'd*, 442 F.3d 177 (3d Cir. 2006) (finding that guilty pleas were directly related to SNTG's assistance); Press Release, Department of Justice, *Norwegian Shipping Co. and Two Executives Agree to Plead Guilty in International Parcel Tanker Shipping Investigation* (Sept. 29, 2003) (Ex. 3); Press Release, Department of Justice, *Dutch Shipping Company Agrees to Plead Guilty in International Parcel Tanker Shipping Investigation* (Apr. 19, 2004) (Ex. 4); Sue Reisinger, *Promise Breakers*, Corporate Counsel, Sept. 2006, at 21 (noting that SNTG's cooperation resulted in guilty pleas from other parcel tanker shipping companies) (Ex. 5).

After SNTG entered into the Amnesty Program and after SNTG and Mr. Wingfield delivered smoking gun evidence to the Antitrust Division, the Antitrust Division claimed that SNTG and Mr. Wingfield had breached their obligations under the Amnesty Agreement.  On June 24, 2003, the Antitrust Division arrested Mr. Wingfield and filed a criminal complaint against him.  That complaint is supported by the affidavit of FBI Special Agent John W. Sharp that Plaintiffs extensively quote in the Complaint.  *See* Compl. ¶ 42.

Faced with the arrest of Mr. Wingfield and the Antitrust Division's indication that it was considering seeking an indictment against SNTG, Mr. Wingfield and others, in February 2004 SNTG and Mr. Wingfield filed civil actions in federal court seeking a declaratory judgment and injunctive relief against the Antitrust Division.  After a full evidentiary hearing, the United States

District Court for the Eastern District of Pennsylvania ruled in favor of SNTG and Mr. Wingfield. The court held that SNTG and Mr. Wingfield had fulfilled their obligations under the Amnesty Agreement and that the Antitrust Division had reaped the benefit of its bargain. *Stolt-Nielsen S.A.*, 352 F. Supp. 2d at 561-62. On that basis, the Court enjoined the Antitrust Division from indicting or prosecuting SNTG and Mr. Wingfield. *Id.* at 562-63.

On March 23, 2006, however, a two-judge panel of the United States Court of Appeals for the Third Circuit reversed on narrow Separation of Powers grounds.[1] *See Stolt-Nielsen S.A. v. United States*, 442 F.3d 177, 187 (3d Cir. 2006). The Third Circuit did not consider the merits of the district court's finding that SNTG and Mr. Wingfield had satisfied their obligations under the Amnesty Agreement. Instead, the court found that the district court did not have the authority to enjoin the Executive Branch pre-indictment. *Id.* The Third Circuit, however, confirmed that **post**-indictment SNSA, SNTG and Mr. Wingfield had the right to immediately move to dismiss any indictment on the basis of the Amnesty Agreement. *Id.* at 187 n.7.

On an expedited basis, SNTG and Mr. Wingfield filed a petition for writ of certiorari with the Supreme Court of the United States. *See* Petition for Writ of Certiorari (Ex. 6) (appendices omitted). By their petition, SNSA, SNTG and Mr. Wingfield seek to have the Supreme Court reverse the Third Circuit and confirm the authority of the district court to enjoin criminal proceedings against the Antitrust Defendants on the basis of the Amnesty Agreement. Currently, SNSA, SNTG and Mr. Wingfield are preparing their reply brief, which they expect to file shortly.

While the certiorari petition has been pending before the Supreme Court, on September 6, 2006, the Antitrust Division obtained indictments against SNSA, SNTG and Mr. Cooperman, as

---

[1]    Then-Judge, now Justice, Samuel A. Alito sat for oral argument but was shortly thereafter nominated to the Supreme Court of the United States, and took no part in the decision of the matter. *See Stolt-Nielsen S.A.*, 442 F.3d at 178.

well as SNTG executive Mr. Wingfield.  The indictment, in a single count, alleges that SNSA,

SNTG, and Messrs. Cooperman and Wingfield — as well as other unnamed coconspirators —

violated the Sherman Act by engaging in anticompetitive conduct in the parcel tanker industry.

Indictment ¶ 2.  Of particular relevance, the indictment specifically alleges that Mr. Cooperman

encouraged and participated in the alleged illegal conduct.  *See, e.g.*, Indictment ¶¶ 6-7.

The arraignment in the criminal antitrust litigation is scheduled for October 5, 2006, in

Philadelphia.   The Antitrust Defendants expect the criminal case to proceed expeditiously.

SNSA has announced that, in response to the Antitrust Division's breach of the Amnesty

Agreement, SNSA and SNTG will promptly file their motion to dismiss the indictment as

expressly provided for in the Third Circuit's decision.  *See* Press Release, Stolt-Nielsen S.A.,

*U.S. Department of Justice Antitrust Division Breaches Stolt-Nielsen Amnesty Agreement*,  (Sept.

6, 2006) at 2 (Ex. 7).   If the district court grants SNSA's and SNTG's motion to dismiss, it will

dispose of the criminal case.  If the district court denies the motion to dismiss, the Antitrust

Defendants expect a resolution of the criminal matter that is consistent with the requirements of

the Speedy Trial Act.

## ARGUMENT

A stay of discovery in this action is necessary in light of the pending criminal

proceedings (i.e., the Antitrust Division's criminal case as well as the ongoing grand jury

investigation) targeting the Antitrust Defendants and others.  The Second Circuit has long made

clear that "the strongest case for deferring civil proceedings until after the completion of criminal

proceedings is where a party under indictment for a serious offense is required to defend a civil

or administrative action involving the same matter."  *Sec. & Exch. Comm'n v. Dresser Indus.,*

*Inc.*, 628 F.2d 1368, 1375-76 (2d Cir. 1980); *see also Javier H. v. Garcia-Botello*, 218 F.R.D. 72,

75 (W.D.N.Y. 2003) (same). As one court has observed, "The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment . . . ." *In re Par Pharms.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *see also Hicks v. City of New York*, 268 F. Supp. 238, 242 (E.D.N.Y. 2003) (same); *United States v. Certain Real Prop.*, 751 F. Supp. 1060, 1062-63 (E.D.N.Y. 1989) (granting stay when one of two moving defendants had been indicted). In fact, "district courts in this Circuit 'generally grant the extraordinary remedy of a stay only after the defendant seeking a stay has been indicted.'" *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 576 (S.D.N.Y. 2001) (quoting *Citibank, N.A. v. Hakim*, No. 92 Civ. 6233 (MBM), 1993 WL 481335, at *1 (S.D.N.Y. Nov. 18, 1993)). As the court in *Sterling National Bank* explained regarding the propriety of staying civil discovery:

> When a defendant has been indicted, his situation is particularly dangerous, and takes a certain priority, for the risk to his liberty, the importance of safeguarding his constitutional rights, and even the strain on his resources and attention that makes defending satellite civil litigation particularly difficult, all weigh in favor of his interest. Moreover, if the potential prejudice to the defendant is particularly high post-indictment, the prejudice to the plaintiff of staying proceedings is somewhat reduced, since the criminal litigation has reached a crisis that will lead to a reasonably speedy resolution.

*Sterling Nat'l Bank*, 175 F. Supp. 2d at 577.

When considering whether to stay civil discovery pending resolution of parallel criminal proceedings, courts balance (i) the burden civil discovery will impose on a criminal defendant; (ii) a plaintiff's interest in proceeding immediately; (iii) the interest of the courts; (iv) the interest of non-parties; and (v) the public interest. *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 8 (D. Conn. 2002); *see also Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (same); *White v. Mapco Gas Prods., Inc.*, 116 F.R.D. 498, 502 (E.D. Ark. 1987) (same).

## I.   THE SUBSTANTIAL BURDEN CIVIL DISCOVERY WILL IMPOSE ON DEFENDANTS SUPPORTS A STAY OF DISCOVERY

Although courts balance a number of factors in deciding whether to stay civil discovery, as detailed below, the overriding factor is the potential prejudice civil discovery may cause a criminal defendant.   Faced with parallel criminal and civil proceedings, courts stay civil discovery because it imposes substantial burdens on criminal defendants, including the possibility of: (i) prematurely exposing defenses to the criminal authorities, (ii) diverting limited resources from the defense of the criminal matter, and (iii) compromising a defendant's ability to fully defend itself in both proceedings.   *See Volmar Distribs., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (granting stay of discovery and noting risk that proceeding with civil discovery may "expose the basis of the defense to the prosecution in advance of trial, or otherwise prejudice the case."); *Mapco Gas Prods.*, 116 F.R.D. at 502 ("Intensive civil discovery may divert resources which may be necessary for defense of a possible criminal action."); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("A stay of civil discovery until after criminal proceedings are complete will enable them to defend the civil case vigorously without fear of subsequent prosecution.").   As the Second Circuit warned in *Dresser Industries*, 628 F.2d at 1376, a failure to stay discovery pending resolution of a criminal matter might "expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case."

Here, these potential prejudices to the Antitrust Defendants heavily favor a stay.   Should discovery in this matter proceed, each of the Antitrust Defendants — whether individual or corporate defendants — runs the very real risk of having defenses prematurely exposed to prosecutors and having limited resources diverted from the defense of the criminal matter.   It goes without saying that high-stakes litigation against the Antitrust Division over criminal

antitrust issues — at the Supreme Court, district court and grand jury levels — is costly and resource-intensive for all Defendants in this matter, especially the Antitrust Defendants that have now been indicted.

A further prejudice of requiring parties to simultaneously defend against civil and criminal proceedings is that it erodes Due Process and Fifth Amendment rights — a "dilemma" courts abhor and guard against by staying civil discovery.  As the Second Circuit warned:  "The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, [and] expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b)."  *Brock*, 109 F.R.D. at 119; *see also Bridgeport Harbour Place*, 269 F. Supp. 2d at 9 ("Courts often grant motions to stay on the grounds that the Fifth Amendment privileges of certain parties are implicated.  This is a key concern to courts."); *Brock*, 109 F.R.D. at 120 ("even if the defendant's dilemma does not violate the fifth amendment or due process, it certainly undercuts the protections of those provisions, and a Court can exercise its discretion to enable a defendant to avoid this unpalatable choice."); *Volmar Distribs.*, 152 F.R.D. at 39 (noting that denial of a stay "might undermine a defendant's Fifth Amendment privilege against self-incrimination.").

Courts avoid forcing parties to make the Hobson's choice of compromising their Fifth Amendment rights by participating in civil discovery or of asserting their Fifth Amendment rights and risking adverse inferences or a default in a civil proceeding.  *See Javier H.*, 218 F.R.D. at 75 ("If discovery moves forward, each defendant will be faced with the difficult choice between asserting his or her right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the criminal case.").

These Fifth Amendment concerns are directly implicated here where one of the indicted parties is Mr. Cooperman, a defendant in this case.  Additionally, the other individual Defendants in this matter, although not named in the indictment, cannot be sure of their status in the criminal proceedings at this time because the indictment against the Antitrust Defendants makes allegations regarding unnamed persons associated with SNSA and SNTG.  Additionally, the Antitrust Division has represented that the grand jury is continuing its investigation, which means that more indictments may follow.  Should discovery proceed, Mr. Cooperman — indeed all the individual Defendants in this matter — would be forced to make the very type of Hobson's choice that courts guard against by staying civil discovery.

Even though SNSA and SNTG — as corporate defendants in this matter — possess no Fifth Amendment rights themselves, Due Process concerns arising from Fifth Amendment considerations independently warrant a stay of discovery here.  As the court in *Mapco Gas Products* recognized in staying discovery as to the corporate defendants there, "corporate employees may have Fifth Amendment interests which could be jeopardized.  The implication of the right against self-incrimination must be given serious consideration in the balancing of interests."  116 F.R.D. at 502.  Here, due to the Antitrust Division's unprecedented revocation of SNTG's amnesty, SNSA and SNTG persons no longer are protected by the umbrella of corporate amnesty.  The indictment not only implicates Mr. Wingfield — an SNTG executive non-party to this action — but other SNSA and SNTG persons who are not specifically named in the indictment.  Indeed, the indictment expressly states that there are unindicted coconspirators who engaged in illegal conduct, which suggests that the Antitrust Division may seek to indict additional SNSA or SNTG persons.

Because the Fifth Amendment rights of other SNSA and SNTG persons are implicated by the pending criminal proceedings (i.e., the criminal case and ongoing grand jury investigation), it will be almost impossible for Plaintiffs — or Defendants — to have access to individuals who are non-parties to this matter, but who may have knowledge relevant to this case.  As a result, proceeding with civil discovery at this time would raise substantial Due Process concerns, as the corporate defendants would be denied meaningful access to relevant individuals due to their Fifth Amendment concerns of these individuals.  For these reasons, the Court should stay discovery to avoid this prejudice to Defendants, particularly where, as here, such stay will be necessary only until the criminal proceedings conclude.[2]  *See Volmar Distribs.*, 152 F.R.D. at 41 (for efficiency considerations, granting stay as to all defendants, including corporate defendants).

## II.    A STAY OF CIVIL DISCOVERY WILL NOT PREJUDICE PLAINTIFFS AND CAN POTENTIALLY BENEFIT THEM

Courts recognize that the substantial burdens criminal defendants face as a result of indictment — compared to the limited inconvenience and delay plaintiffs might suffer as a result of a stay — weighs heavily in favor of a stay.  As the court in *Bridgeport Harbour Place* explained:  "While plaintiff does have a legitimate interest in 'the expeditious resolution' of its case, courts frequently allow other factors, such as a party's Fifth Amendment privilege to trump a plaintiff's interest."  269 F. Supp. 2d at 9; *see also Volmar Distribs.,* 152 F.R.D. at 40 (noting, in a case in which the plaintiffs had amended the complaint three times, that "[t]he Court appreciates that this stay will result in inconvenience and delay to plaintiffs.  But under settled authority[,] the Fifth Amendment is the more important consideration.").  In fact, as one court

---

[2] Additionally, in deciding whether to stay discovery, courts sometimes weigh the prejudice to non-parties who may be affected by the civil case.  *See Mapco Gas Prods.*, 116 F.R.D. at 502-03.  As the court in *Mapco Gas Products* explained, the potential that a non-party may need to exercise his Fifth Amendment privilege during the civil suit is an "important factor in favor of staying civil discovery."  *Id*. at 503.  Here, Plaintiffs repeatedly allege that Mr. Wingfield — an indicted a non-party to this securities litigation — engaged in criminal antitrust conduct.  *See, e.g.*, Compl. ¶¶ 35-38.  Such allegations clearly implicate Mr. Wingfield's Fifth Amendment right against self-incrimination and further counsel in favor of a stay here.

has observed, while the potential prejudice to a defendant of proceeding with discovery is especially high post-indictment, the potential prejudice to a plaintiff after the defendant has been indicted actually may be "*reduced*, since the criminal litigation has reached a crisis that will lead to a reasonably speedy resolution." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 577 (emphasis added).

Staying discovery in this proceeding will cause Plaintiffs no cognizable prejudice. *See Javier H.*, 218 F.R.D. at 75 (noting that "[t]he private interests of the civil plaintiffs in this case do not outweigh the inherent risk in allowing civil discovery to proceed while a parallel criminal case is pending."). If anything, staying discovery while the criminal case proceeds will likely benefit Plaintiffs, as it can narrow or resolve issues relevant to the civil matter. *See Bridgeport Harbour Place*, 269 F. Supp. 2d at 9 ("Courts have also noted that the resolution of the criminal case may later streamline discovery in the civil case."); *Volmar Distribs.*, 152 F.R.D. at 39-40 (recognizing that a criminal case can help safeguard evidence); *Mapco Gas Prods.*, 116 F.R.D. at 502 ("Furthermore, plaintiffs may actually benefit from a stay since the completion of the grand jury investigation and the resolution of any criminal cases might reduce the scope of discovery in the civil case or simplify the issues.").

The potential for streamlined discovery also exists here. For example, Plaintiffs allege that Messrs. Cooperman and Wingfield engaged in anticompetitive conduct. (Compl. ¶¶ 37-38; 40-43; 47). Because these same allegations are at the heart of the criminal case against the Antitrust Defendants, these allegations — including any evidence relating to those issues — likely will be fully vetted in the criminal case.

## III.    A STAY OF CIVIL DISCOVERY PROMOTES JUDICIAL ECONOMY AND EFFICIENCY

A stay of civil discovery also promotes judicial economy and efficiency and helps conserve judicial resources.  As the court in *Javier H.* explained:  "A stay of discovery pending resolution of the criminal case clearly serves both the interests of the Court and those of the public.  By proceeding first with the criminal prosecution, the Court makes efficient use of judicial time and resources by insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination." 218 F.R.D. at 75; *see also Mapco Gas Prods.*, 116 F.R.D. at 502 (recognizing that a stay will promote judicial economy and efficiency because "[r]esolution of the related criminal matter may eliminate much of the Court's work in the civil action," and because "termination of the criminal matter eliminates the conflict concerning assertion of the Fifth Amendment privilege which should allow civil discovery to proceed more smoothly."); Manual For Complex Litigation (Fourth) § 30.4 (2004) ("Ordinarily, the criminal charges should be tried first . . . because Fifth Amendment claims tend to disrupt civil discovery.").

As in *Javier H.* and *Mapco Gas Products*, resolution of the criminal proceedings will encourage judicial economy and efficiency because it will likely narrow the issues in this action and resolve the substantial Fifth Amendment considerations at stake.  As noted above, any evidence the Government seeks to put forward in the criminal case regarding the conduct of Messrs. Cooperman, Wingfield and others may be relevant to Plaintiffs' allegations.  *See, e.g.*, Compl. ¶¶ 40-47; 84 (alleging that Messrs. Cooperman and Wingfield engaged in illegal conduct).  Moreover, the Fifth Amendment concerns of the individual Defendants and other SNSA and SNTG persons will likely lessen — or be eliminated — after the criminal proceedings conclude, thereby allowing this case to proceed more efficiently.

IV.    **THE PUBLIC INTEREST FAVORS A STAY OF CIVIL DISCOVERY**

Here the public interest supports the fair and expeditious resolution of both the criminal proceedings and the declaratory judgment action now pending before the Supreme Court.  As set forth above, "[a] stay of discovery pending resolution of the criminal case clearly serves both the interests of the Court and those of the public."  *Javier H.*, 218 F.R.D. at 75.  The public interest in ensuring the integrity of the judicial system — and the criminal justice system in particular — easily outweighs Plaintiffs' single-minded desire to proceed with civil discovery.

The Supreme Court has acknowledged the strong public interest in ensuring that criminal defendants receive a fair trial — indeed, it is a cornerstone of our legal system.  *See, e.g.*, *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963) ("From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials" for defendants).  Courts recognize that the public interest in ensuring the integrity of the criminal justice system frequently requires courts to stay civil discovery pending resolution of criminal matters.  *See Bridgeport Harbour Place*, 269 F. Supp. 2d at 10 (noting that "[t]he public interest will be served best by allowing the government's [criminal] case to proceed without obstacles" associated with civil discovery); *Javier H.*, 218 F.R.D. at 75 ("the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant"); *Mapco Gas Prods.*, 116 F.R.D. at 503 (staying civil discovery and noting that "[t]he public has an interest in maintaining the secrecy of grand jury proceedings and ensuring the integrity of the judicial system").  In fact, courts recognize that staying civil proceedings pending the resolution of criminal proceedings helps ensure that criminal defendants receive a full and fair trial.  *See, e.g., Sec. and Exch. Comm'n v. Tandem Mgmt., Inc.*, No. 95 Civ. 8411 (JGK), 2001 WL 1488218, at *4 (S.D.N.Y. Nov. 21, 2001) ("A stay of these

13

proceedings allowed Branston to focus his energies on his criminal defense, thus helping to ensure him a full and fair trial."). These cases apply with full force here. The public interest lies in ensuring that the Antitrust Defendants — and other witnesses with Fifth Amendment or Due Process concerns — can devote their resources to a full defense of the serious criminal charges.

Independent of the criminal proceedings and the rights of SNSA, SNTG and Mr. Cooperman to a full and fair criminal defense — but certainly underscoring the high stakes of the criminal proceedings — the declaratory judgment action currently before the Supreme Court also has broad public policy import that warrants a stay. In reversing the district court's injunction, the Third Circuit stated that "[t]his case raises a significant constitutional question of first impression in this Circuit . . . ." *Stolt-Nielsen, S.A.*, 442 F.3d at 178. The antitrust and criminal defense bars, as well as the business community, have closely followed the declaratory judgment action because the Antitrust Division's revocation of SNTG's amnesty is unprecedented. Indeed, several entities, including a foreign sovereign (the Grand Duchy of Luxembourg) have filed, or have sought leave to file, amicus curiae briefs with the Supreme Court advocating Stolt-Nielsen's position.[3] *See Stolt-Nielsen S.A. v. United States*, No. 06-97 (U.S. Jul. 21, 2006) (docket sheet) (Ex. 8); *see also* Michael Peel & Patti Waldmeir, *Business Wants More Power for US Courts to Enforce Amnesty Deals*, Financial Times, Sept. 25, 2006 (Ex. 9); *Nine Organizations File Briefs in Support of Stolt-Nielsen in U.S. Supreme Court Case*, Market Wire, Sept. 25, 2006 (Ex. 10). The public interest in determining the contours of the Government's amnesty program counsels in favor of a stay pending the Supreme Court's consideration of the matter. If the Supreme Court reverses the Third Circuit, it should terminate the criminal proceedings against the Antitrust Defendants.

---

[3] Other entities that have filed amicus briefs supporting SNSA, SNTG and Mr. Wingfield include the New England Legal Foundation, the New York Council of Defense Lawyers, the Chamber of Commerce of the United States of America, the Association of Corporate Counsel and the Washington Legal Foundation.

## V.    A STAY OF CIVIL DISCOVERY AS TO ALL PARTIES IS APPROPRIATE

The Court should stay civil discovery in this matter pending resolution of the criminal proceedings.  In seeking this relief, Defendants recognize Plaintiffs' desire to proceed with discovery now.  As detailed above, however, the burden and disruption that civil discovery will visit upon Defendants are substantial.  For the first time in history, the Antitrust Division has ousted amnesty participants from its corporate leniency program.  Now, the Antitrust Defendants — and quite possibly others — must mount a full defense to the charges brought against them.  The stakes are high for the Antitrust Defendants.  The corporate defendants face millions of dollars in potential fines, and their employees — especially indicted executives Messrs. Cooperman and Wingfield — face the prospect of prison time if they lose the criminal case.

Precisely because the stakes are so high, the Antitrust Defendants have an interest in the expeditious resolution of the criminal proceedings.  Indeed, as evidenced by the parties' conduct in the declaratory judgment action currently before the Supreme Court, Defendants have endeavored throughout to bring the criminal matter to a prompt resolution.[4]  Indeed, as a publicly-traded company, SNSA has a strong interest in quickly resolving the criminal matter and moving forward with the business of the company on its shareholders' behalf.

Thus, while Defendants seek a stay of discovery in this matter, they do so, in part, so that they may focus their resources on quickly concluding the criminal matter — whether by dismissal or acquittal.  While a scheduling order has not been issued in the criminal case yet, Defendants expect the criminal case to move along quickly.  Of course, should the Court grant Defendants' motion to stay civil discovery, Defendants would continue to inform the Court and

---

[4] For example, SNSA and SNTG have consistently taken steps necessary to seek the reversal of the Third Circuit panel's ruling well in advance of the deadlines imposed by applicable rules.  Thus, while Supreme Court Rule 13(1) allows an aggrieved litigant to submit a petition for writ of certiorari from an adverse circuit court decision within 90 days of the entry of judgment, SNSA and SNTG filed their certiorari petition (Ex. 6) only one week after the Third Circuit entered its judgment reversing the district court's judgment.

Plaintiffs on a periodic basis regarding the status of the criminal matter.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their

Motion to Stay Discovery.

Respectfully submitted,

*Defendants Stolt-Nielsen S.A., Stolt-Nielsen Transportation Group Ltd., Jacob Stolt-Nielsen, Niels G. Stolt-Nielsen, Samuel Cooperman and Reginald J.R. Lee*

By: /s/ Jaime M. Crowe

Michael P. Shea (ct19598)
Jason S. Weathers (ct24579)
Day, Berry & Howard LLP
City Place I
185 Asylum Street
Hartford, CT  06103-3499
Tel:  (860) 275-0356
Fax: (860) 275-0343
E-Mail:  jsweathers@dbh.com

Christopher M. Curran (ct22743)
J. Mark Gidley (ct18450)
Peter J. Carney (ct24721)
Jaime M. Crowe (ct25657)
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Tel:  (202) 626-3600
Fax: (202) 639-9355
E-Mail:  jcrowe@whitecase.com