## Business wants more power for US courts to enforce amnesty deals

By Michael Peel and Patti Waldmeir

Published: September 25 2006 03:00 | Last updated: September 25 2006 03:00

US business and lawyers' groups are calling on the Supreme Court to put new limits on the power of prosecutors to indict American and foreign companies in the post-Enron era.

The US Chamber of Commerce, National Association of Manufacturers, Association of Corporate Counsel and several other groups filed briefs with the country's highest court last week arguing that courts should have more power to enforce amnesty deals struck between the government and corporations or individuals that co-operate in antitrust investigations.

If they get their way, the courts' expanded oversight role could extend beyond antitrust to the increasingly common deals known as "deferred prosecution agreements" in which a company agrees to co-operate with the government in exchange for avoiding indictment for corporate crime.

The controversy over amnesty deals comes at a time when the Department of Justice is under increasing pressure to rein in some of the other tactics it uses to fight corporate crime. The chairman of the Senate judiciary committee has said he will introduce legislation to stop the department compelling companies to turn over information protected by attorney-client privilege in exchange for leniency. The department says it does not routinely do this but business groups insist it has become commonplace.

The case before the Supreme Court involves Stolt-Nielsen, the Norwegian shipping company. Stolt-Nielsen volunteered information about antitrust violations in the parcel tanker market in exchange for amnesty under a Justice Department programme that gives immunity to the first company to blow the whistle on wrongdoing in its industry. The department, saying the company violated the deal by breaching its duty to co-operate, went ahead with the indictment. A federal appeals court said the department had the right to do so, in spite of the existence of an amnesty deal, and that Stolt-Nielsen had no right to fight back until after the indictment was issued.

But Stolt-Nielsen says an indictment often causes irreparable harm to corporate defendants - as it did to the accounting firm Arthur Andersen - and that companies should be able to challenge the government's decision to tear up an amnesty deal before they are indicted.

The issue before the justices is not who is right or wrong but whether a federal judge has the power to stop the government from going ahead with an indictment in these circumstances.

The Chamber of Commerce says in its brief that the Department of Justice amnesty programme creates a "strong incentive for corporations to self-report antitrust violations" but that companies will only do so if they can trust the government to keep its side of the deal - or, at the very least, if they can be sure that "the federal courts will be open to hear the corporation's grievances before damage is done".

Justice Department sources say the decision to indict Stolt-Nielsen has not led to any drop in applications for antitrust amnesty.

The case is being closely watched by US and foreign companies for what it says about the value of deals with the Justice Department, says Stephanie Martz of the National Association of Criminal Defense Lawyers. The Supreme Court is expected to decide next month whether to intervene in the case.

Legal experts say the case also highlights the increased aggressiveness of US authorities towards foreign companies and executives accused of breaking antitrust laws. One European antitrust lawyer said the Justice Department was "deliberately reducing, if not eliminating" any difference between its treatment of US and foreign targets. "A few years ago an overseas company would typically get a small fine and a no-jail agreement," he said. "That doesn't happen any more."

The Stolt-Nielsen case has also fed debate among lawyers about whether authorities outside the US are more willing to scrap immunity agreements in cases where companies' co-operation is alleged to be flawed.

Gavin Robert, a partner at Linklaters in London, said regulators' pressing need for whistleblowers' evidence made it dangerous to infer from the Stolt-Nielsen case that there was a "general trend" in the US or elsewhere of immunity agreements being rescinded.

"If this was the case, it would undermine the various leniency programmes regulators have in place," he said. "It would invalidate the whole rationale of the system."

Copyright The Financial Times Limited 2006