UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IRENE RUCKER and GUSTAV RUCKER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 3:03-cv-00409-DJS |
| | ) | <u>CLASS ACTION</u> |
| Plaintiffs, | ) ) | |
| | ) | LEAD PLAINTIFFS' MEMORANDUM OF |
| vs. | ) | LAW IN OPPOSITION TO DEFENDANTS' |
| | ) | MOTION TO STAY DISCOVERY |
| STOLT-NIELSEN S.A., JACOB STOLT-NIELSEN, NIELS G. STOLT-NIELSEN, SAMUEL COOPERMAN and REGINALD J.R. LEE, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |
| | ) | |

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT .................................................................................1

II.   PROCEDURAL BACKGROUND...........................................................................3

III.  ARGUMENT ...........................................................................................................6

    A.    Defendants Should Not Be Afforded a Stay of the Instant Civil Securities
Action Pending the Outcome of the Government's Criminal Anti-Trust
Proceedings ..................................................................................................6

        1.    Legal Standard ....................................................................................6

        2.    The Interests of, and Burdens on, the Defendants Do Not Warrant
the Implementation of a Stay ...................................................................8

            a.    Defendants Will Not Be Prejudiced by Plaintiffs' – as
Private Litigants – Handling of Discovery in the Civil
Litigation................................................................................8

            b.    Allowing Discovery to Proceed in the Civil Litigation Will
Not Infringe Defendants' Fifth Amendment Rights ......................11

            c.    Defendants Cannot Genuinely Argue that They Do Not
Have the Financial Wherewithal or Legal Resources to
Defend the Parallel Actions Simultaneously ................................12

        3.    The Convenience to the Court in the Management of its Docket
and in the Efficient Use of Judicial Resources Support the Denial
of Defendants' Motion.............................................................................14

        4.    The Interests of Other Persons Not Parties to the Civil Litigation
and the Interests of the Public in the Pending Civil and Criminal
Actions Support Denial of Defendants' Motion ........................................15

        5.    Plaintiffs Are Entitled to an Expeditious Resolution of This Action
and Will Be Unfairly Prejudiced by a Stay................................................16

IV.   CONCLUSION.........................................................................................................21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bridgeport Harbour Place I, LLC v. Ganim,*
   269 F. Supp. 2d 6 (D. Conn. 2002).............................................................................7, 18

*Brock v. Tolkow,*
   109 F.R.D. 116 (E.D.N.Y. 1985) ...........................................................................8, 9, 11

*Citibank v. Hakim,*
   92 Civ. 6233 (MBM), 1993 U.S. Dist. LEXIS 16299
   (S.D.N.Y. Nov. 18, 1993) .............................................................................10, 11, 14, 16

*Dreier v. United States,*
   221 U.S. 394 (1911)..............................................................................................................11

*Hicks v. City of New York,*
   268 F. Supp. 2d 238 (E.D.N.Y. 2003) ...............................................................................14

*In re Grand Jury Subpoenas Issued to Thirteen Corps.,*
   775 F.2d 43 (2d Cir. 1985)...................................................................................................11

*JHW Greentree Capital, L.P. v. Whittier Trust Co.,*
   05 Civ. 2985 (HB), 2005 U.S. Dist. LEXIS 14687
   (S.D.N.Y. July 22, 2005) ......................................................................................... *passim*

*Javier H. v. Garcia-Botello,*
   218 F.R.D. 72 (W.D.N.Y. 2003).........................................................................................18

*Karimona Invs. LLC v. Weinreb,*
   02 CV 1792 (WHP), 2003 U.S. Dist. LEXIS 3324
   (S.D.N.Y. Mar. 7, 2003) ..................................................................................11, 14, 16

*Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.,*
   486 F. Supp. 1118 (S.D.N.Y. 1980)...............................................................................8, 13

*Par Pharm. Sec. Litig.,*
   133 F.R.D. 12 (S.D.N.Y. 1990) ................................................................................6, 19, 20

*Republic Credit Corp. I v. Autorino,*
   Civ. No, 3:99cv286 (PCD), 2001 U.S. Dist. LEXIS 14333
   (D. Conn. June 1, 2001)......................................................................................................14

*SEC v. Dresser Industries, Inc.,*
   628 F.2d 1368 (D.C. Cir. 1980) ...................................................................................6, 8, 9, 12

**Page**

*SEC v. Tandem Mgmt.*,
   95 Civ. 8411 (JGK), 2001 U.S. Dist. LEXIS 19109
   (S.D.N.Y. 2001) ................................................................................................10

*Savalle v. Kobyluck, Inc.*,
   Case No. 3:00CV675 (WWE), 2001 U.S. Dist. LEXIS 20158
   (D. Conn. Aug. 16, 2001) ......................................................................7, 10, 17

*Sterling Nat'l Bank v. A 1 Hotels Int'l, Inc.*,
   175 F. Supp. 2d 573 (S.D.N.Y. 2001)...................................................... *passim*

*Stolt-Nielsen S.A. v. United States*,
   352 F. Supp. 2d 553 (E.D. Pa. 2005) ...................................................................5

*Stolt-Nielsen S.A. v. United States*,
   442 F.3d 177 (3rd Cir. 2006) ...............................................................3, 5, 6, 17

*Transatlantic Reinsurance Co. v. Ditrapani*,
   No. 90 Civ. 3884 (JMC), 1991 U.S. Dist. LEXIS 872
   (S.D.N.Y. Jan. 28, 1991)...................................................................................6, 8

*Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical*,
   886 F. Supp. 1134 (S.D.N.Y. 1995)....................................................................17

*United States v. 4003-4005 5th Ave.*,
   55 F.3d 78 (2d Cir. 1995) ...................................................................................10

*United States v. Kordel*,
   397 U.S. 1 (1970)................................................................................................10

*United States v. Private Sanitation Indus. Ass'n*,
   811 F. Supp. 802 (E.D.N.Y. 1992) .................................................................7, 14

*Volmar Distribs. v. New York Post Co.*,
   152 F.R.D. 36 (S.D.N.Y. 1993) ..........................................................................19

*White v. Mapco Gas Products, Inc.*,
   116 F.R.D. 498 (E.D. Ark. 1987).................................................................18, 19

Lead Plaintiffs Irene Rucker and Gustav Rucker (the "Plaintiffs" or "Lead Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants Stolt-Nielson S.A. ("SNSA"), Stolt-Nielson Transportation Group, Inc. ("SNTG") (collectively, "the Companies"), Jacob Stolt-Nielson, Niels G. Stolt-Nielson, Samuel Cooperman ("Cooperman") and Reginald J.R. Lee's ("Lee")[1] (collectively, the "Defendants") motion to stay discovery (the "Motion"), dated September 26, 2006.

## I.    PRELIMINARY STATEMENT

This action was brought on behalf of the purchasers of American Depository Receipts ("ADRs") of SNSA between February 1, 2001 through February 20, 2003 (the "Class Period"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.  Plaintiffs allege that Defendants' statements during the Class Period were materially false and misleading because they failed to disclose SNTG's anti-competitive conduct.  This action has been pending for nearly three years and Plaintiffs recently survived Defendants' motion to dismiss.

Now, Defendants have moved to stay discovery in this action because SNSA and others have been indicted by the United States Department of Justice ("DOJ") for illegal anti-competitive conduct.  In their memorandum of law, Defendants offer nothing more than broad propositions of law and generalizations in arguing for a stay.  Defendants' primary argument is that SNSA is now subject to both criminal and civil litigation that relates to their anti-competitive conduct and, therefore, this case to recover for violations of the federal securities laws should be stayed indefinitely while Defendants defend themselves against criminal proceedings.  There is no case,

---

[1] Jacob Stolt-Nielson, Niels G. Stolt-Nielson, Cooperman and Lee are collectively referred to as the "Individual Defendants."

however, that supports a stay simply because there are civil and criminal proceedings relating to the same subject matter. Defendants cannot use their indictment as a shield against this litigation.

Conspicuously absent from Defendants' argument is the fact that distinguishes this case from almost every case Defendants cite in their favor; in most of those cases, the government intervened and sought the stay of the civil litigation. Here, it is the Defendants alone who have sought a stay. The absence of the government in this litigation strips away Defendants' purported concerns about discovery going forward here. Indeed, since the government is not a Plaintiff here, there can be no legitimate concern that this action is being used to undermine Defendants' Fifth Amendment rights (aside from the fact that the Companies do not have such rights) or to obtain a preview of Defendants' defenses. At bottom, Defendants appear to be seeking a stay to avoid the complexities that accompany being sued civilly and criminally on related facts. Defendants, however, do not get a stay of this case simply because it may place them in a difficult or problematic litigation position.

Similarly, Defendants' claims that it would be prejudicial for them to be made to defend two cases at once ring hollow. SNSA generated more than $354 million in profits in fiscal 2005 and has retained one of the world's largest and most prestigious law firms to represent it. Defendants have sufficient resources to defend these two actions. Moreover, Defendants are overstating the purported discovery burdens that this case will present. Indeed, Defendants have presumably collected most of the relevant documents on SNTG's anti-competitive conduct and can easily produce those documents in this litigation (and have offered no reasons why that cannot be done). *See* Def. Mem. at 2-3[2] (repeatedly noting that SNSA and others had provided numerous documents concerning anti-competitive conduct in the parcel tanker industry to the DOJ). Similarly, third party discovery can be accomplished without any burden on Defendants. Lastly, to the extent that Defendants have

---

[2] "Def. Mem at ____" refers to the Memorandum of Law in Support of Defendants' Motion to Stay Discovery, filed with this Court on September 26, 2006.

concerns about depositions, the Court can deal with those on a deponent-by-deponent basis and fashion a protective order that addresses any legitimate issues Defendants might have.

By contrast, a stay would greatly prejudice Plaintiffs, the public and this Court by engendering a needless delay which might stretch on indefinitely. While the DOJ has handed down an indictment against the Companies and Richard B. Wingfield ("Wingfield"),[3] several factors could (and likely will) prove as roadblocks to the progression of the criminal proceedings and inevitably postpone the resolution of the criminal antitrust matter for an extended, and indeterminate, period of time.[4] Plaintiffs are entitled to have their claims heard in an efficient and expeditious manner without having to wait for the criminal proceedings to draw to a close, whenever that may be.

For the reasons set forth herein, it is respectfully submitted that Defendants' motion to stay be denied in its entirety.

## II.     PROCEDURAL BACKGROUND

A brief overview of the litigation activity in this case is in order. Plaintiffs commenced this action by complaint, dated March 7, 2003. On September 8, 2003, Plaintiffs filed their amended complaint with this Court and on October 27, 2003, Defendants filed a motion to dismiss the amended complaint. By Memorandum and Order dated November 10, 2005, this Court granted

---

[3] Wingfield was previously the managing director of SNTG's tanker trading division, including during the Class Period.

[4] As Defendants note, SNSA, SNTG, and Wingfield have sought a writ of certiorari on the Third Circuit's decision in *Stolt-Nielsen S.A. v. United States*, 442 F.3d 177 (3rd Cir. 2006). The pending writ before the Supreme Court is the most immediate factor that will cause a delay to the criminal proceeding. The delay will be even further exacerbated should the Supreme Court grant the writ, and full briefing of the Third Circuit's decision is ordered. That said, even if the writ is denied, Defendants have definitively stated that, when necessary, they will file a motion to dismiss the indictment per the right afforded them by the Third Circuit's decision. *See* Def. Mem. at 5; *see also Stolt-Nielsen S.A.*, 442 F.3d at 187, n.7. Moreover, the government has indicated that it plans to add three indictments against other executives of the Company. Each one of these factors presents potential long-term, and open-ended, delay to the criminal proceedings.

Defendants' motion.  On November 28, 2005, Plaintiffs sought reconsideration of this Court's dismissal of their amended complaint.  The Court granted that motion and provided Plaintiffs leave to file a second amended complaint ("SAC"), which was filed on March 1, 2006.  On March 20, 2006, Defendants filed a motion to dismiss the SAC.  On June 19, 2006, the Court denied Defendants' motion to dismiss.

This Court then ordered the parties to submit a Rule 26(f) Report (the "Report"), which was jointly filed with the Court on August 11, 2006.  As part of the Report, Defendants requested permission from this Court to file a motion to stay this civil securities action pending the outcome of the criminal investigation by the DOJ of the Companies and certain executives.  On or about September 12, 2006, this Court granted Defendants' request to file the motion to stay, stating that the motion should be filed on or before September 26, 2006.

In the interim, on September 6, 2006, the DOJ issued an indictment of the Companies, Wingfield, and Defendant Cooperman (the indicted entities and individuals are hereinafter collectively known as the "Indicted").  The indictment by the DOJ was the product of a three year legal dispute between the government and the Indicted.

By way of background, on January 15, 2003, SNTG entered into an amnesty agreement with the DOJ's Antitrust Division in connection with Defendants' anti-competitive activities in its parcel tanker/tank container business.  *See* Def. Mem. Ex. 2.  Wingfield provided the government with information pertaining to the Companies' anti-competitive activities in exchange for government's agreement not to prosecute the Companies or their executives in connection with their anti-trust violations.  After entering into the amnesty agreement with SNTG, the government learned that the Companies and Wingfield violated the terms of the agreement.  *See* SAC ¶¶41-45.  In light of the breach of the amnesty agreement, the DOJ indicated that it would seek a revocation of the amnesty

agreement.  On June 24, 2003, the DOJ arrested Wingfield and concomitantly filed a criminal complaint against him.  *See* SAC ¶42.

In anticipation that the DOJ would issue indictments against them, on or about February 6, 2004, the Companies and Wingfield filed civil actions in the Eastern District of Pennsylvania seeking declaratory and injunctive relief against the government.  On January 14, 2005, the court enjoined the Antitrust Division from indicting or prosecuting the Companies and Mr. Wingfield.  *See Stolt-Nielsen S.A. v. United States*, 352 F. Supp. 2d 553, 562-3 (E.D. Pa. 2005).  However, on March 23, 2006, the United States Court of Appeals for the Third Circuit reversed the District Court's decision and concluded that the government could pursue criminal charges despite previously granting amnesty to SNTG and Wingfield.  *See Stolt-Nielsen S.A.*, 442 F.3d at 187.

On July 20, 2006, the Companies and Wingfield filed a petition for writ of certiorari with the Supreme Court of the United States.  *See* Def. Mem. at Ex. 6.  The petition to the Supreme Court requests a reversal of Third Circuit's decision and asks for enforcement of the amnesty agreement, thereby precluding any criminal proceedings against Defendants or others.

While it appears a preliminary schedule has been set in the criminal antitrust litigation (*See* Def. Mem. at 5), there is no indication as to how long the criminal proceeding will take and, more significantly, whether it will actually commence at all.[5]  There are several factors that, in all likelihood, will delay an ultimate resolution to the pending criminal proceedings.  First, there is no submitted definitive schedule in place for a decision on the writ and the numerous amicus curiae briefs filed in support of the Indicted.  *See* ENP Newswire, *Nine Organizations File Briefs in Support of Stolt-Nielsen In U.S. Supreme Court Case* (September 25, 2006) (Ex. 3).  Second, should

---

[5] Since Defendants' filing of their instant Motion, they have moved to suspend deadlines relating to pre-trial motion practice (Ex. 1) and the Eastern District of Pennsylvania agreed to extend that time (Ex. 2).  Already, the criminal proceedings are not advancing in an expeditious manner.

the writ be granted, there is no telling how long the appeal process to the Supreme Court will take or when a decision may be rendered by the Supreme Court. Third, the DOJ has suggested that it may be issuing additional indictments.[6] *See* Tradewinds, *More Stolt executives may face indictment* (October 6, 2006) (Ex. 4). Fourth, should the Supreme Court eventually deny the pending writ or affirm the Third Circuit's decision, Defendants have stated their intention to file a motion to dismiss the DOJ's indictment. *See* Def. Mem. at 5; *see also Stolt-Nielsen S.A.*, 442 F.3d at 187, n.7.

## III.    ARGUMENT

### A.    Defendants Should Not Be Afforded a Stay of the Instant Civil Securities Action Pending the Outcome of the Government's Criminal Anti-Trust Proceedings

#### 1.    Legal Standard

A defendant confronted with defending parallel criminal and civil actions is not ***entitled*** to a stay of the civil litigation pending the outcome of the criminal proceeding. *See JHW Greentree Capital, L.P. v. Whittier Trust Co.,* 05 Civ. 2985 (HB), 2005 U.S. Dist. LEXIS 14687, at *2 (S.D.N.Y. July 22, 2005) ("a stay is not constitutionally required whenever a litigant finds himself facing the dilemmas inherent in pursuing civil litigation while being the subject of a related criminal investigation") (quotations and citations omitted); *Transatlantic Reinsurance Co. v. Ditrapani*, No. 90 Civ. 3884 (JMC), 1991 U.S. Dist. LEXIS 872 (S.D.N.Y. Jan. 28, 1991) ("It is well settled that there is no constitutional right to a stay of civil proceedings pending the outcome of related criminal proceedings."); *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (noting that the Constitution "does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings."). In fact, such a stay is considered an extraordinary remedy. *Par Pharm.*

---

[6] The Tradewinds article reports that the DOJ issued target letters to "company founder and chairman Jacob Stolt-Nielsen, Stolt-Nielsen SA chief executive Niels Stolt-Nielsen and former Stolt-Nielsen Transportation Group executive Reginald Lee."

*Sec. Litig.,* 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("A total stay of civil discovery pending the outcome of related criminal proceedings, however, is an extraordinary remedy.").

In determining whether to impose a stay of discovery in a civil litigation pending the outcome of a criminal proceeding, the court must balance the interests of the litigants, nonparties, the public and the court itself. The factors to be considered include: (1) the interests of the plaintiff in an expeditious resolution and the prejudice to the plaintiff in not proceeding; (2) the interests of and burdens on the defendants; (3) the convenience to the court in the management of its docket and in the efficient use of judicial resources; (4) the interests of other persons not parties to the civil litigation; and (5) the interests of the public in the pending civil and criminal actions. *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6 (D. Conn. 2002).

Courts generally hold that defendants should not be afforded the benefit of using pending criminal prosecution as a basis for avoiding civil claims, as defendants' own conduct caused them to be the target of criminal investigations or indictments.[7] *See Savalle v. Kobyluck, Inc.,* Case No. 3:00CV675 (WWE), 2001 U.S. Dist. LEXIS 20158, at *8 (D. Conn. Aug. 16, 2001) ("The law was not meant to be used as a shield by the defendant in this matter to prevent the resolution of either his criminal or civil cases."); *see also United States v. Private Sanitation Indus. Ass'n*, 811 F. Supp. 802, 808 (E.D.N.Y. 1992) ("The courts must be mindful that a policy of issuing stays solely because a litigant is defending simultaneous lawsuits would threaten to become a constant source of delay and

---

[7] In denying defendants' motion to stay, the court in *Sterling Nat'l Bank v. A 1 Hotels Int'l, Inc.,* 175 F. Supp. 2d 573, 575 (S.D.N.Y. 2001) stated:

> There is no question that parties who face both civil litigation and criminal investigation face difficult choices. At the same time, parties who claim to have been victimized by frauds or other crimes are entitled to pursue their civil remedies, and it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities.

an interference with judicial administration.") (quotations omitted); *Transatlantic*, 1991 U.S. Dist. LEXIS 872 (holding that defendants should not be granted the benefit of a stay against civil litigation when defendants' actions elicited a criminal charge against them); *Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.,* 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980) ("That defendant's conduct also resulted in a criminal charge against him should not be availed of by him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim.").

> 2. **The Interests of, and Burdens on, the Defendants Do Not Warrant the Implementation of a Stay**

Defendants argue that, absent the imposition of a stay of discovery in this civil securities matter, they would be prejudiced for the following reasons: (1) Defendants would prematurely be exposed to government officials handling the criminal proceedings; (2) Defendants' Fifth Amendment privilege may be compromised; and (3) Defendants' "limited resources" would be "diverted from the defense of the criminal matter." Def. Mem. at 7-10. Defendants' arguments are misguided, do not apply to their present situation and, in any event, fall well short of weighing this factor in favor of granting a stay.

> a. **Defendants Will Not Be Prejudiced by Plaintiffs' – as Private Litigants – Handling of Discovery in the Civil Litigation**

The instant civil litigation does not expose Defendants to any form of premature exposure to criminal authorities. Unlike the case law cited by Defendants in support of their argument – *Dresser*, 628 F.2d 1368,[8] and *Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985) – the civil litigation

---

[8] Defendants purport that the Second Circuit supports the general notion that the potential exposure to prosecution warrants a stay of the civil litigation:

> As the Second Circuit warned in *Dresser Industries,* 628 F.2d at 1376, a failure to stay discovery pending resolution of a criminal matter might "expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case."

Continued

at issue here was commenced by private individuals and not a government entity. Significantly, courts are more apt to granting a stay where the government is the plaintiff in both the civil and criminal proceedings. The rationale behind this tenet is to protect against the government obtaining discovery for its criminal action through discovery in the civil action, *Dresser*, 628 F.2d at 1375, as "[i]n such circumstances, there is a special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a de facto criminal investigation using nominally civil means. In that special situation, the risk to individuals' constitutional rights is arguably magnified." *Sterling,* 175 F. Supp. 2d at 579; *see also Brock*, 109 F.R.D. at 119 ("***A stay of civil proceedings*** is most likely to be granted where the civil and criminal actions involve the same subject matter and ***is even more appropriate when both actions are brought by the government***.") (emphasis added) (citations omitted).

In *Dresser*, the court was presented with the question of whether to stay civil subpoena enforcement where the government – the SEC – was the plaintiff in both the civil proceedings and criminal investigation. 628 F.2d 1368. Similarly, in *Brock*, the parallel cases concerned a civil action under ERISA brought by the Labor Department and a grand jury investigation into the identical ERISA violations. 109 F.R.D. 116. Here, however, the government is a party only to the criminal proceedings. The instant civil securities action was commenced by private litigants. The fact that the government is not the plaintiff in both actions is a strong and paramount factor against

---

Def. Mem. at 7. Contrary to Defendants' citation to the Second Circuit to substantiate their argument, the decision in *Dresser* was actually rendered by the United States Court of Appeals, District of Columbia. Moreover, in ***denying the motion to stay***, the court in *Dresser* stated:

> The civil and regulatory laws of the United States frequently overlap with the criminal laws, creating the possibility of parallel civil and criminal proceedings, either successive or simultaneous. In the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence. 628 F.2d at 1374.

Defendants' request for a stay. *See Citibank v. Hakim*, 92 Civ. 6233 (MBM), 1993 U.S. Dist. LEXIS 16299, at *7 (S.D.N.Y. Nov. 18, 1993) ("Although the risk of prejudice to a civil defendant is heightened when the subject matter of the civil action parallels a pending criminal action, the potential for prejudice is diminished where, such as here, a private party, not the government, is the plaintiff in the civil action; it is less likely in such cases that the civil discovery process will be used as a cloak to conduct criminal discovery.") (citations omitted); *cf. SEC v. Tandem Mgmt.*, 95 Civ. 8411 (JGK), 2001 U.S. Dist. LEXIS 19109, at *12 (S.D.N.Y. 2001) (finding that where the "SEC brings a civil enforcement action that proceeds in parallel with a related criminal proceeding, it is often appropriate to stay the civil action pending resolution of the criminal proceedings"); *United States v. Kordel*, 397 U.S. 1 (1970) (FDA's parallel *in rem* civil seizure and criminal case); *See also United States v. 4003-4005 5th Ave.*, 55 F.3d 78 (2d Cir. 1995) (parallel civil forfeiture action and criminal proceedings).

Concurrently, there is no indication whatsoever (and Defendants have not even suggested) that Plaintiffs in this case have, or intend to, furnish the government with any information obtained through discovery in the civil litigation. *See Savalle,* 2001 U.S. Dist. LEXIS 20158, at *11 ("defendant has not provided any reason for the court to question plaintiff's motives in seeking discovery or any reason to believe that the state is inappropriately using the civil case to gain information for the criminal case"); *see also Sterling,* 175 F. Supp. 2d at 579 ("Plaintiff is a private entity, with interests distinct from those of the government.  There is no reason to assume that its civil case is simply a stalking horse for the government's criminal inquiry, rather than a good faith effort to obtain compensation for its own private injuries."); *JHW,* 2005 U.S. Dist. LEXIS 14687, at *5-*6 (same); *see also Hakim,* 1993 U.S. Dist. LEXIS 16299, at *7 ("Although the risk of prejudice to a civil defendant is heightened when the subject matter of the civil action parallels a pending criminal action, the potential for prejudice is diminished where, such as here, a private party, not the

government, is the plaintiff in the civil action; it is less likely in such cases that the civil discovery process will be used as a cloak to conduct criminal discovery.") (citation omitted).  In this regard, Defendants are under no risk of having the government abuse the discovery process in the civil proceeding nor risk being prematurely exposed to the DOJ's handling of the antitrust litigation.

### b.   Allowing Discovery to Proceed in the Civil Litigation Will Not Infringe Defendants' Fifth Amendment Rights

The fact that the instant action was brought by private parties, and not a government entity, likewise placates Defendants' concern that their Fifth Amendment rights would be compromised.[9] *Karimona Invs. LLC v. Weinreb*, 02 CV 1792 (WHP) (THK), 2003 U.S. Dist. LEXIS 3324, at *12 (S.D.N.Y. Mar. 7, 2003) (rejecting defendant's Fifth Amendment argument, stating that "this is not a case where the government is in control of both proceedings – a situation which poses a heightened threat of harm to a defendant.").

Further, courts generally hold that "it is not unconstitutional to force a litigant to choose between invoking the fifth amendment in a civil case, thus risking a loss there, or answering the questions in the civil context, thus risking subsequent criminal prosecution."  *Brock*, 109 F.R.D. at 119; *see also Karimona*, 2003 U.S. Dist. LEXIS 3324, at *11 ("[Defendant] has an obvious interest in avoiding the choice between compromising his Fifth Amendment rights and presenting a defense in this action through his testimony.  However, such a predicament alone does not entitle him to a stay of discovery.") (citation omitted); *Hakim*, 1993 U.S. Dist. LEXIS 16299, at *5 ("[D]efendant has argued that he will be forced to choose between testifying or asserting his Fifth Amendment privilege, and, in turn, either risking self-incrimination or adverse inferences and a diminished ability

---

[9] Only Defendant Cooperman actually has a basis for even raising this argument at all.  Corporate defendants have no Fifth Amendment rights, *see Dreier v. United States,* 221 U.S. 394, 399-400 (1911); *In re Grand Jury Subpoenas Issued to Thirteen Corps.*, 775 F.2d 43, 46 (2d Cir. 1985), and the non-parties have not been indicted.  *JHW*, 2005 U.S. Dist. LEXIS 14687, at *4.

to defend against the civil claims asserted against him.  Such a predicament will not alone justify a stay of civil discovery.").

Here, other than generalized statements of purported prejudice, Defendants have not shown that their simultaneous defense of the criminal and civil actions creates anything more than the basic or fundamental difficulty of defending parallel proceedings.[10]  *See Sterling,* 175 F. Supp. 2d at 578 ("[D]efendants here can point to nothing that suggests that the dilemma they face is more pointed or difficult than in any other case of parallel proceedings, and it is universally agreed that the mere pendency of a criminal investigation standing alone does not require a stay.").  Moreover, where, as here, a party is represented by counsel in both the civil and criminal litigations, the fear of prejudice against defendants, including in connection with their Fifth Amendment privilege, is greatly diminished.  *Dresser*, 628 F.2d at 1376.

> ### c. Defendants Cannot Sincerely Argue that They Do Not Have the Financial Wherewithal or Legal Resources to Defend the Parallel Actions Simultaneously

Defendants contend that they should be entitled to a stay on the basis that the simultaneous defense of both actions would be "costly" and "resource-intensive" for them.  Def. Mem. p. 7, 8, 15.  Defendants' position would be entertaining if it were not so embarrassingly disingenuous.

According the their website, SNTG is one of the largest and most sophisticated parcel tanker operators in the world, with offices in 18 countries worldwide and nearly 5000 employees.  Their reported net income for the past quarter was 36.8 million U.S. dollars, and their operating revenue was at $391.7 million for the second quarter of 2006.[11]  SNTG is a wholly-owned subsidiary of SNSA, one of the world's leading providers of transportation services for bulk liquid chemicals,

---

[10] In fact, as Defendants acknowledge, Cooperman is the lone defendant with a Fifth Amendment privilege.  Def. Mem. at 9.

[11] http://www.sntg.com/about/

edible oils, acids, and other specialty liquids.  According to their annual report for the fiscal year ended November 30, 2005, filed on Form 20-F with the SEC, SNSA finished the year with an operating revenue of $1.6 billion, gross profits of $354.1 million, and net income of $483 million.[12]

Also, according to published reports, Defendants' counsel, White & Case LLP, is a leading global law firm with 38 offices in 24 countries on five continents that are home to almost 2000 lawyers.  The firm's litigation division is a key-practice of the firm, accounting for more than one-third of their global work and designating more than 500 attorneys world-wide to its practice.

Based upon the staggering amount of resources available to Defendants, it is difficult to comprehend how Defendants could argue that the simultaneous defense of the criminal and civil actions would strain their resources and the resources of their counsel.[13]  *See Paine, Webber*, 486 F. Supp. at 1119 (observing that defense counsel have not advanced any reason why resources cannot be devoted to defend both actions).  Clearly, Defendants would not be prejudiced by allotting their vast resources to the defense of both the civil and criminal actions.

---

[12] *See* Form 20-F for the fiscal year ended November 30, 2005, filed with the SEC on May 31, 2006. (available at http://www.sec.gov/Archives/edgar/data/831980/000110465906038575/a06-10863_120f.htm).

[13] Defendants' counsel, White & Case LLP, has actually been defending the instant securities action and the government's investigation of the Companies and Wingfield for more than three years. Since this action was filed, in March 2003, Defendants have filed motions to dismiss in response to two separate complaints, opposed a motion for reconsideration, and filed their instant motion to stay. Since the amnesty agreement was signed in January 2003 (or at the latest when the Companies and Wingfield filed the complaint for declaratory relief against the DOJ in April 2004), White & Case LLP has filed or responded to several motions on behalf of the Indicted at both the District Court level and on appeal to the Third Circuit.  In fact, Defendants themselves boast that they filed a petition for writ of certiorari "on an expedited basis," (Def. Mem. at 4) and that as soon as necessary they will be prepared to file the motion to dismiss the indictment (Def. Mem. at 5).

3.    **The Convenience to the Court in the Management of its Docket and in the Efficient Use of Judicial Resources Support the Denial of Defendants' Motion**

The Court has an obvious interest in managing its cases and efficiently resolving litigation. Courts have commonly recognized and addressed the importance of expeditious handling of litigations and the efficient handling of its dockets, scheduling and calendaring. *See Republic Credit Corp. I v. Autorino*, Civ. No, 3:99cv286 (PCD), 2001 U.S. Dist. LEXIS 14333 (D. Conn. June 1, 2001) (stating that the convenience of the court is an important factor to consider on a motion to stay).

In fact, numerous Second Circuit District Courts have denied motions to stay on this basis. *See JHW*, 2005 U.S. Dist. LEXIS 14687, at *7 (emphasizing the "[c]ourt's interest is in managing its cases and docket efficiently"); *Karimona*, 2003 U.S. Dist. LEXIS 3324, at *13-*14 (stating that "[t]he Court has an obvious interest in managing its cases and efficiently resolving litigation" and finding the factor considering the court's interest "weighs against a stay" where a stay would "would indefinitely delay the resolution of this action") (quotations and citations omitted); *Hicks v. City of New York*, 268 F. Supp. 2d 238, 243 (E.D.N.Y. 2003) ("Discovery has already been stayed pending the outcome of the present motion. Courts have an interest in managing its cases and efficiently resolving litigation."); *Private Sanitation,* 811 F. Supp. at 808 ("convenience of the courts is best served when motions to stay proceedings are discouraged").

In some cases, the organization and predictability of the court's docket suffices as an overriding interest against implementing a stay. *Hakim*, 1993 U.S. Dist. LEXIS 16299, at *6 (stating that "[t]he convenience of the court weighs against a stay" and that the court would not "rely upon fortuitous events to manage its docket.") (quotation omitted). *See Sterling*, 175 F. Supp. 2d at 580 (denying motion to stay where "the stay requested would substantially halt the civil litigation

- 14 -

indefinitely, without any predictability as to when the case would return to the Court's active docket.").[14]

Here, Defendants cannot concretely state how long their requested stay should be implemented.  Therefore, the court's interest in the expeditious handling of the instant matter, coupled with the court's focus on efficient handling of its dockets and calendaring, weighs against Defendants' request for a stay.

### 4.  The Interests of Other Persons Not Parties to the Civil Litigation and the Interests of the Public in the Pending Civil and Criminal Actions Support Denial of Defendants' Motion[15]

The interests of the public and non-parties to the civil litigation in expeditiously resolving the civil securities litigation is a strong factor in favor of immediately proceeding with discovery.  *See JHW*, 2005 U.S. Dist. LEXIS 14687, at *7 ("the public interest in the administration of justice is served by preventing an indefinite delay of this civil proceeding.").  Here, while the public may have an interest in the outcome of Defendants' desired appeal to the United States Supreme Court, it has no bearing on whether a stay should be implemented on the instant civil litigation.  If anything, the pending motion practice and the possibility that the Supreme Court will agree to hear the issue on appeal further advances Plaintiffs' position that the criminal proceeding against the Indicted will not immediately commence.  This evinces that Defendants request for a stay is, in effect, indefinite in nature.

Further, there is a tangible interest by the public and non-parties, including the numerous

---

[14] In *JHW*, the court noted that defendants had already submitted a fully briefed motion to dismiss. 2005 U.S. Dist. LEXIS 14687, at *7.  The court then concluded that "[a] stay would indefinitely delay the resolution of this action and, therefore, the [third] factor, the 'Court's interest,' weighs against a stay."  *Id.*

[15] *Sterling,* 175 F. Supp. 2d 573 (handling the two factors in conjunction when the interests of both categories mirror one another).

class members, in recovering the monetary losses resulting from the securities fraud perpetuated on the public by Defendants. *Hakim*, 1993 U.S. Dist. LEXIS 16299, at *8 (finding that "the public interest, tips the scales against a stay, as the public interest in financial institutions promptly recovering misappropriated funds is significant").

In *Sterling*, the court held public interest weighed heavily against a stay as the civil litigation, in addition to seeking the recovery of funds, fostered criminal pursuits against defendants. 175 F. Supp. 2d at 580. The court in *Sterling* reasoned that, in certain instances, civil suits provide "private parties an incentive to supplement the government's limited resources for pursuing criminal activity." *Id.* Here, the instant securities case acts in a similar fashion. To date, the SEC has not pursued a criminal action against Defendants. As such, the expeditious resolution of the instant civil securities action serves the following interests: (1) the recovery of monetary funds on behalf private individuals and institutions; and (2) the proof of wrongdoing on the part of Defendants through their violations of SEC regulations, which may then be used by the SEC as a basis for criminal charges.

As such, the interests of the non-parties and the public overwhelmingly weigh against the implementation of a stay.

> **5.     Plaintiffs Are Entitled to an Expeditious Resolution of This Action and Will Be Unfairly Prejudiced by a Stay**[16]

Plaintiffs will undoubtedly be prejudiced by the implementation of a stay and the further

---

[16] In addition to the prejudice against Plaintiffs caused by the delay itself, the stay of discovery may also result in a diminished or exhausted source of judgment or settlement funds. The defense of the criminal proceedings is presumably being funded, in all or in part, by SNSA's insurer(s). Plaintiffs have repeatedly requested information pertaining to Defendants' insurance coverage, including the remaining available policy limits. Defendants denied Plaintiffs' requests, *including their refusal to provide any form of insurance information as part of initial disclosures.* As such, Plaintiffs have a legitimate concern over the availability of insurance funds as a contribution toward the eventual and ultimate judgment (or settlement) against Defendants. *See Karimona*, 2003 U.S. Dist. LEXIS 3324 (noting that plaintiff's interests include the threat against insufficient funding of secured judgment); *see also Sterling,* 175 F. Supp. 2d 573.

delay of litigating this matter.  The instant securities action is now more than three years old.  The government's indictment filed on September 6, 2006 was preceded by a three and one half year process in which the government and SNSA postured, negotiated, entered into and then revoked an amnesty agreement.  Now, even with filing of the indictment, the criminal proceedings against the Indicted cannot efficiently proceed without overcoming several likely postponements or hindrances.

The Companies and Wingfield have filed a writ with the Supreme Court of the United States seeking a determination by the Supreme Court regarding the government's revocation of the amnesty agreement.  There is no submitted timetable for when the Supreme Court will issue a decision on the writ submitted by the Indicted and, should the writ be granted, there is no current schedule for the ensuing appeal process.  Moreover, the criminal process will likely be further delayed when, by all indications, the DOJ issues additional indictments to executives of the Companies.  Finally, should the indictments against the Companies and Wingfield survive (either through a denial of the writ or by an affirmation of the Third Circuit's decision by the Supreme Court), Defendants will then have an opportunity to file a motion to dismiss the DOJ's indictment.  Def. Mem. at 5; *see also Stolt-Nielsen S.A.*, 442 F.3d at 187, n.7.  Therefore, while the criminal proceeding against the Indicted has been formally commenced, the ***actual*** commencement of the criminal proceeding against the Indicted has thereby been further delayed and there is no indication whatsoever as to when – or if – discovery in the criminal action will commence.

In essence, Defendants' request for a stay pending the outcome of the criminal proceeding amounts to an indefinite delay.  *See Savalle*, 2001 U.S. Dist. LEXIS 20158, at *8 (denying request for stay where no criminal trial date was set and where the request for the stay was for an indefinite amount of time); *Sterling,* 175 F. Supp. 2d 573 (denying stay where additional delay would cause the case to be over a year old); *cf. Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mechanical*, 886 F. Supp. 1134 (S.D.N.Y. 1995) (granting stay after court was able to

confirm that the parallel criminal case was expected to be resolved within seven months); *Bridgeport* 269 F. Supp 2d at 9 (ordering a limited stay only upon finding that the projected completion of the criminal proceeding "does not seem to create an inordinate delay"); *White v. Mapco Gas Products, Inc.*, 116 F.R.D. 498, 502 (E.D. Ark. 1987) (allowing a limited stay where the parties submitted that "discovery be stayed for six months or until the grand jury is dismissed without issuing an indictment or until the grand jury issues any indictments, whichever is shorter").

Defendants argue that Plaintiffs will not be prejudiced by a stay of discovery. Def. Mem. at 10-11. In support of their argument, Defendants rely on the decisions in *Javier H. v. Garcia-Botello*, 218 F.R.D. 72 (W.D.N.Y. 2003), *Bridgeport*, 269 F. Supp. 2d at 9, and *White*, 116 F.R.D. at 502. Def. Mem. at 10-11.[17] Each one of these decisions has been mischaracterized by Defendants and has no bearing to the facts and circumstances before this Court.

In *Javier*, the request for the stay pending the outcome of a parallel criminal proceeding was brought by the government, a non-party to the civil litigation and plaintiff in the parallel criminal action. 218 F.R.D. at 74. This factored weighed heavily on the court's analysis concerning *the interests of other persons not parties to the civil litigation*. No such factor exists here. Further, the plaintiffs in *Javier* did not object to the government's request for a stay and, in fact, consented to the government's request. *Id.* at 75 ("The civil plaintiffs have waived their interest in proceeding expeditiously with this civil action by consenting to the government's motion to intervene and to stay discovery."). The plaintiffs' acquiescence left the court without any pro-plaintiff arguments (*e.g.* private interests of plaintiff, public interest, etc.) to consider. Likewise, in *Bridgeport*, the government – a non-party to the civil litigation and plaintiff in the parallel criminal action – moved for the requested stay. 269 F. Supp. 2d at 7-8. As in *Javier*, the government's interest was a focal

---

[17] Defendants also relied on the decision in *Sterling,* 175 F. Supp. 2d 573, in support of this issue. Remarkably, the court in *Sterling* **denied** defendants' motion to stay. *See* analysis, *supra*, p. 9.

point to the court's decision to grant the stay and the court's decision was further aided by the fact the plaintiff did not object to a limited stay of discovery as against the government. 269 F. Supp. 2d at 10. Again, no such factor exists here. Finally, in *White*, the requested stay was supported by the government and the plaintiffs did not object to the stay of discovery. 116 F.R.D. at 502. Plaintiffs, in fact, joined in the request. *Id.* The court's analysis, therefore, accounted only for the defendants' interests and assumed that there was no potential prejudice against plaintiffs. *Id.*

Here, unlike the case law cited by Defendants, Plaintiffs do not concede their interests and have not forfeited the opportunity to show this court the prejudice a stay would have on Plaintiffs' right to an expeditious resolution to this matter. Also, contrary to the stated case law, the government's (or third-party's) interest is not represented and, furthermore, the instant motion to stay was brought by the Defendants to the civil action, not by the plaintiff in the parallel criminal proceeding.

On occasion, courts will consider the granting of a stay beneficial to plaintiffs where the discovery conducted in the criminal matter can later assist or streamline discovery in the civil matter. *See Volmar Distribs. v. New York Post Co*., 152 F.R.D. 36 (S.D.N.Y. 1993); Def. Mem. at 11. This analysis is only applicable, however, when the civil and criminal case address precisely the same facts, circumstances and/or legal issues. *See Par Pharm.,* 133 F.R.D. at 14 (A stay is "appropriate where both the civil and criminal charges arise from the same remedial statute such that the criminal investigation is likely to vindicate the same public interest as would the civil suit."). In *Volmar*, both the criminal and civil actions seek discovery concerning the identical question: whether defendants conducted antitrust activities in violation of the Sherman Act. 152 F.R.D. at 40; *cf. White*, 116 F.R.D. at 502 (finding a high level of relatedness between civil antitrust case versus criminal anti trust proceedings). In *Par Pharm.*, however, the court refused to grant the stay, holding that the criminal action against *Par Pharm.* involved misconduct before the FDA, while the private civil

action involved federal securities laws.  133 F.R.D. at 14.  Despite the fact that the matters were somewhat interrelated to the extent they stem from *Par Pharm.'s* activities regarding filing/licensing with the FDA (criminal) and the disclosure of that information to shareholders (civil), the court in *Par Pharm.* nevertheless held that a stay was not warranted "[b]ecause it cannot be said that the two actions will vindicate the same or substantially the same public interest."  *Id.*

In the case at bar, the criminal action by the DOJ and the civil private securities litigation do not sufficiently overlap to support that reasoning.  The similarities between the two cases are limited to the fact that they relate to anti-competitive activities conducted by Defendants.  The cases are patently different, however, for several reasons.  First, the government's criminal action relates to Defendants violation of the Sherman Act (SAC ¶42), while Plaintiffs' complaint alleges violations of various securities statutes (SAC ¶¶97, 108).  Second, the criminal action focuses directly on Defendants' anti-competitive activities, while Plaintiffs' complaint focuses on Defendants' false and misleading statements relating to the source of the Company's success in the parcel tanker/tank container industry (SAC ¶¶42, 50, 65, 76).  Third, the two actions seek completely disparate forms of relief.  The criminal action seeks a conviction of those parties indicted by the DOJ, which can result in a sentencing of pecuniary penalties and/or prison terms for the Individual Defendants.  The instant civil action, on the other hand, seeks monetary restitution on the part of individuals who suffered losses through investing in SNSA stock at artificially inflated prices (SAC ¶¶4, 20, 65, 88, 90, 92, 95, 99, 101).

Defendants contend that a stay of discovery in the securities action will streamline discovery when the stay is lifted due to information that may be gleaned from the criminal action.  Not so.  In this case, issues concerning the government's investigation of Defendants' anti-competitive activities

are a facet of the discovery to be conducted in the securities litigation. However, there are countless other issues that must be addressed in course of discovery.[18]

Clearly, Plaintiffs will be prejudiced by the delay a stay of discovery will inevitably cause. Also, Plaintiffs will garner no benefit from having the stay implemented so that discovery in the criminal proceedings can be conducted in advance of the discovery in the civil action. Therefore, the weight of the prejudice leans against the requested stay.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants' motion to stay should be denied.

DATED:  October 10, 2006                        Respectfully submitted,

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (SR-7957)
MARK S. REICH (MR-4166)


                                        */s/ Mark S. Reich*
                                        MARK S. REICH

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

*Lead Counsel for Plaintiffs*

---

[18] Discovery issues that do not directly relate to the antitrust criminal proceeding against the Indicted include, for example, basic company background, corporate structure, executives' roles and duties, insurance information, etc. Plaintiffs would also seek documents and materials relating to the lawsuit between the Companies and SNTG's former general counsel, *Paul O'Brien v. Stolt-Neilsen, et al.,* 02-cv-190051-S, Slip Op. (Jun. 19, 2002), as well as any documents or materials exchanged between the government and the Defendants or Wingfield in the course of negotiating and entering into the amnesty agreement in January 2003.

In fact, Defendants themselves noted several topics of discovery, aside from Defendants' antitrust activities, that must be handled by the parties to this action. *See* Report, ¶4(b).

SCOTT + SCOTT, LLC
DAVID R. SCOTT (CT 16080
ERIN G. COMITE (CT 24886)
108 Norwich Avenue
Colchester, CT  06415
Telephone:  860/537-3818
860/537-4432 (fax)

*Liaison Counsel*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Mark S. Reich
MARK S. REICH
LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
E-mail:MReich@lerachlaw.com

# Mailing Information for a Case 3:03-cv-00409-DJS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Peter J. Carney**
  pcarney@whitecase.com

- **Erin Green Comite**
  ecomite@scott-scott.com cmcgowan@scott-scott.com

- **Jaime M. Crowe**
  jcrowe@whitecase.com

- **Christopher M. Curran**
  ccurran@whitecase.com

- **J. Mark Gidley**
  mgidley@whitecase.com

- **Donna Nelson Heller**
  dheller@fdh.com

- **Patrick J. McHugh**
  pmchugh@fdh.com

- **Mark S. Reich**
  MReich@lerachlaw.com

- **Samuel H. Rudman**
  SRudman@lerachlaw.com

- **David Randell Scott**
  drscott@scott-scott.com cmcgowan@scott-scott.com

- **Michael P. Shea**
  mpshea@dbh.com kpbrooks@dbh.com

- **Jason S. Weathers**
  jsweathers@dbh.com jhinds@dbh.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)