UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Joel Menkes, *et al.*, | |
|     *Plaintiffs*, | |
|     *v.* | No. 3:03-CV-409 (DJS) |
| Stolt-Nielsen S.A., *et al.*, | October 27, 2006 |
|     *Defendants*. | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO STAY DISCOVERY**

As noted in Defendants' opening memorandum, and essentially ignored by Plaintiffs, the prevailing practice in this Circuit is to stay civil discovery when — as here — at least one of the parties to the action has been indicted in a related criminal case. This is the prevailing practice, not because of a nearly uniform whim of federal judges in this Circuit, but because courts recognize the substantial benefits in efficiency and fairness — including the preservation of substantial constitutional rights — that such stays obtain. As a result, Plaintiffs' almost exclusive reliance on cases in which courts have denied stays ***pre***-indictment — practically ignoring the weight of authority in which courts have granted stays ***post***-indictment — is off point.

Plaintiffs' other arguments against a stay — the same types of arguments typically but unsuccessfully advanced by civil plaintiffs — do not carry the day. Even if Plaintiffs' arguments had merit — which they do not — "under settled authority the Fifth Amendment is the more important consideration," *Volmar Distribs., Inc. v. N.Y. Post Co., Inc.*, 152 F.R.D. 36, 40 (S.D.N.Y. 1993), one that should "trump" Plaintiffs' interests. *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 9 (D. Conn. 2002). Thus, for the reasons set forth in Defendants'

opening memorandum and this reply, Defendants respectfully submit that the Court should follow the prevailing practice in this Circuit and grant Defendants' motion to stay civil discovery pending resolution of the criminal proceedings.

I. **COURTS IN THIS CIRCUIT STAY DISCOVERY IN CASES INVOLVING PARALLEL CRIMINAL AND CIVIL PROCEEDINGS REGARDLESS OF GOVERNMENT INTERVENTION**

Defendants cited case after case in their opening memorandum — mostly from within this Circuit — in which courts have stayed discovery pending resolution of criminal proceedings. In response, Plaintiffs erroneously contend that "the fact that distinguishes this case from almost every case Defendants cite in their favor" is that "the government intervened and sought the stay of the civil litigation." Opp'n at 2; *see also id.* at 8-10. In fact, Defendants cited several cases in which courts granted stays absent government intervention. *See* Mem. at 6-7 (citing *Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995); *Volmar*, 152 F.R.D. at 38). Defendants even cited authorities in which the government ***unsuccessfully*** attempted to intervene, and the court nonetheless granted a stay to protect a defendant's constitutional rights. *See* Mem. at 7-8 (citing *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75-76 (W.D.N.Y. 2003); *White v. Mapco Gas Prods., Inc.*, 116 F.R.D. 498, 501 (E.D. Ark. 1987)).

In any event, as even Plaintiffs implicitly acknowledge, government support or opposition to a stay is ***not*** one of the factors in the relevant test and therefore the Court should not consider it in deciding whether to grant a stay. *See* Opp'n at 7 (citing the five-factor test in *Bridgeport Harbour Place*, 269 F. Supp. 2d at 8). Indeed, ***no*** court has denied a stay solely because the government has failed to intervene in the civil matter. Quite the contrary, the foregoing cases — and others — demonstrate that courts routinely stay civil discovery even

2

when the government was not a party to or failed to intervene in the civil matter. *See, e.g.*, *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (affirming a pre-indictment stay); *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1089 (5th Cir. 1980) (ordering lower court to enter stay); *Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 266 (E.D.N.Y. 2002). Thus, the Court should reject Plaintiffs' flawed suggestion that is should deny a stay absent government involvement.

II.   **ALL OF THE FACTORS COURTS CONSIDER WARRANT A STAY OF DISCOVERY**

In arguing that Defendants will not suffer any prejudice if discovery moves forward and that a stay would be too indefinite, Plaintiffs misplace reliance on three unpublished cases — *Citibank, N.A. v. Hakim*, 92 Civ. 6233 (MBM), 1993 U.S. Dist. LEXIS 16299, at *3 (S.D.N.Y. Nov. 18, 1993), *JHW Greentree Capital, L.P. v. Whittier Trust Co.*, 05 Civ. 2985 (HB), 2005 U.S. Dist LEXIS 14687, at *3 (S.D.N.Y. July 22, 2005) and *Karimona Invs. LLC v. Weinreb*, 02 CV 1792 (WHP), 2003 U.S. Dist. LEXIS 3324, at *14 (S.D.N.Y. Mar. 7, 2003). In each of those cases the court denied the motions precisely because — unlike here — defendants moved to stay *pre*-indictment. *See Citibank*, 1993 U.S. Dist. LEXIS at *3 ("Hakim's pre-indictment motion to stay can be denied on this ground alone"); *JHW Greentree*, 2005 U.S. Dist LEXIS 14687, at *3 (focusing on the lack of an indictment and denying the stay request); *Karimona*, 2003 U.S. Dist. LEXIS 3324, at *8 (noting that whether the defendant has been indicted is "most significant" and denying the stay request). Notably, courts view pre-indictment motions to stay differently than post-indictment motions:

> Pre-indictment, [the relevant] factors must be balanced significantly differently. Though many of the same risks to the civil defendant are present, the dangers are at least somewhat more remote, and it is inherently unclear to the Court just how much the unindicted defendant really has to fear.

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001). In short, cases — such as those Plaintiffs cite — in which courts have denied *pre*-indictment motions to stay are simply irrelevant here, where several Defendants already have been indicted.

Moreover, *Karimona* actually supports a stay in this case. In *Karimona*, the court initially *stayed* discovery because the defendant had been charged by criminal information and had entered a guilty plea. 2003 U.S. Dist. LEXIS 3324, at *2. The civil court lifted the stay after the defendant withdrew his guilty plea and the criminal court dismissed the criminal charges (although it granted the government leave to seek an indictment). *Id*. At the time the defendant requested a second stay, the government still had not indicted the defendant and may even have terminated the investigation. *Id*. at *8. Therefore, the court denied the motion to stay. *Id*. *Karimona* clearly supports a stay where, as here, active criminal proceedings are pending.

    **A.**    **Denial Of A Stay Will Severely Prejudice Defendants By Exposing Them To The Risks Of Discovery Abuses Inherent In Parallel Criminal And Civil Proceedings**

As the court in *American Express* made clear, a stay of discovery is particularly appropriate "when there are similar issues between the civil and criminal cases." 225 F. Supp. 2d at 265. Incredibly, Plaintiffs now try to marginalize the similarities between this case and the criminal case by asserting that the actions "do not sufficiently overlap." Opp'n at 20. Plaintiffs do not deny, however, that that underlying anticompetitive conduct the Government alleges against the Antitrust Defendants is the very *same* conduct underlying Plaintiffs' securities claims. *See* Compl. ¶ 3 (alleging that Defendants' statements were "false and misleading because [Defendants] misrepresented and failed to disclose that a material portion of SNSA's and SNTG's revenues and earnings during the Class Period was derived from an illegal pact between SNTG and Odfjell ASA ("Odfjell"), SNTG's main competitor"); ¶ 73 (noting

4

government investigation of alleged conduct); *accord* Indictment ¶¶ 2; 6(a)-(b)(alleging anticompetitive agreements with Defendants' competitors).

In fact, there are so many "similar issues between the civil and criminal cases" that Plaintiffs' Complaint liberally references the Government's criminal investigation and quotes extensively from an FBI special agent who investigated the criminal matter. *See, e.g.*, Compl. ¶¶ 37, 42-45 (quoting the affidavit of FBI Special Agent John W. Sharp). Were the Court to strip the antitrust allegations from Plaintiffs' Complaint, Plaintiffs would have no case to prosecute. Under the circumstances, Plaintiffs cannot seriously contend that there are not "similar issues between the civil and criminal cases."[1]

Additionally, Plaintiffs ignore the real prejudice that results from forcing a defendant into the Hobson's choice of either testifying in the civil case (to avoid being penalized in that case) but waiving precious Fifth Amendment rights and jeopardizing criminal defenses, or exercising those Fifth Amendment rights and risking prejudice in the civil case. *See Javier H.*, 218 F.R.D. at 75 (describing the Hobson's choice that civil discovery imposes on a defendant). As the *Volmar* court stated, courts balance the relevant factors "with the basic goal being to avoid prejudice." *Id.* at 39. The Court should avoid forcing Defendants into that Hobson's choice by entering a stay.

---

[1] Plaintiffs' suggestion that the Court should not consider the preservation of Defendants' resources because they are large companies represented by large law firms is without merit. First, it is odd that Plaintiffs — self-anointed defenders of Stolt-Nielsen shareholders — would take such a cavalier attitude regarding Stolt-Nielsen's expenses. Second, the law does not have two standards — one for individual defendants and another for corporate defendants. Third, Plaintiffs' argument does not account for the effect of civil discovery on Mr. Cooperman, an individual Defendant who must defend against this putative class action and against a major criminal case that could result in his incarceration and a significant fine levied against him. Finally, courts recognize that a stay of discovery helps to avoid the inevitable diversion of resources from the criminal case to the civil case that may affect a defendant's ability to defend itself fully. *See, e.g.*, *White*, 116 F.R.D. at 502. Plaintiffs simply ignore that executives and employees will have to divert attention from normal business operations to the criminal case, and that proceeding with discovery in this case will put a further strain on those executives and employees — to the potential detriment of Stolt-Nielsen's efficient operation.

Finally, Plaintiffs argue that Defendants will not be prejudiced by Plaintiffs' handling of discovery materials should a stay be denied. Specifically, Plaintiffs assert that "there is no indication whatsoever" that the Plaintiffs have disclosed, or intend to disclose, information to the Government. Opp'n at 10. This assertion is unsupported by any sworn averment or undertaking, Defendants dispute it, and this Court should not accept it. There is a substantial risk of prematurely exposing Defendants' defenses to the Government in advance of the criminal trial. *Volmar*, 152 F.R.D. at 39. Defendants have already suffered — and will continue to suffer — severe prejudice as a result of the parallel criminal and civil proceedings if a stay is denied.

**B.    Plaintiffs Will Not Be Prejudiced By A Stay And Instead Will Benefit From The Enhanced Efficiency Achieved By A Stay**

Plaintiffs all but ignore the real efficiencies that staying civil discovery can achieve in this case. Courts have recognized that where issues in the civil and criminal proceedings overlap, the evidence from criminal proceedings may focus the civil proceedings and reduce unnecessary discovery. *See* Mem. at 12 (citing cases); *see also Volmar*, 152 F.R.D. at 41 ("Moreover, the availability of transcripts and other evidence from the criminal trial may eliminate altogether the need for certain depositions."); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("Moreover, the resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues."). In this case, Plaintiffs allege that Defendants engaged in certain anticompetitive conduct — the same conduct alleged by the Government — and failed to disclose that conduct in public filings. Evidence adduced at the criminal trial concerning the existence and timing of such anticompetitive conduct will likely focus the issues in these actions and save everyone time, effort and expense.

Plaintiffs' suggestion that the criminal case will somehow stall seems to be based on a number of misapprehensions. First, Plaintiffs assert that the certiorari petition before the United

6

States Supreme Court will somehow "cause a delay to the criminal proceeding." Opp'n at 3 n. 4. As described below, the criminal case is proceeding apace, notwithstanding the Supreme Court case.

Moreover, Plaintiffs' complaint that a stay would be "indefinite" (Opp'n at 2) is not well grounded. Should a stay issue, not only would this Court continue to monitor the progress of the criminal proceeding, but if circumstances warranted, it could vacate the stay. Vacating the stay should not be necessary, as the district judge presiding over the criminal case is indeed moving the case along. The court recently adopted a schedule under which Defendants' motion to dismiss would be fully briefed by January 2007 and heard in February 2007 — less than four months from now. There is simply no indication that the federal judge in Philadelphia will allow the criminal proceedings to linger "indefinitely."[2]

Finally, even a delay of several months would not prejudice Plaintiffs more than denying a stay will prejudice Defendants. As noted, courts in this Circuit have made clear that protecting a defendant's Fifth Amendment rights is more important than a plaintiff's interest in proceeding immediately. *See, e.g.*, *Volmar*, 152 F.R.D. at 40 ("The Court appreciates that this stay will result in inconvenience and delay to plaintiffs. But under settled authority the Fifth Amendment is the more important consideration."); *Trs. of Plumbers & Pipefitters*, 886 F. Supp. at 1140 (anticipating a six-month delay and noting that plaintiffs' interests in an immediate resolution "are trumped by defendants' interests in avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case.").

---

[2] Indeed, contrary to Plaintiffs' assertion, this case bears no similarities to *Savalle v. Kobyluck, Inc.*, No. 3:00-CV-675 (WWE), 2001 WL 1571381, at **4-5 (D. Conn. Aug. 15, 2001), a case in which the defendant was seeking what amounted to an indefinite stay. There, the court initially stayed proceedings. *Id*. at *1. However, the defendant sought and received ***fourteen*** continuances in the criminal case, and had not even entered a plea. *Id*. at *1. The court expressly noted that "[f]or whatever reason, defendant has taken no steps to resolve his criminal case." *Id*. at *3. Thus, a stay in the civil case would have been indefinite. Given all that Stolt-Nielsen has done (on behalf of itself and its employees) to resolve the criminal issues, *Savalle* is completely inapposite.

### C. A Stay Will Promote Judicial Economy And Advance The Public Interest

The interests of the Court and those of the public also favor a stay. The Court has an interest in a stay because a stay would promote the efficient resolution of this case. Staying civil discovery pending the resolution of parallel criminal proceedings not only permits the criminal case to narrow the issues for the civil litigants, but it also facilitates civil litigation largely free of the Fifth Amendment claims that can disrupt discovery:

> A stay of discovery pending resolution of the criminal case clearly serves both the interests of the Court and those of the public. By proceeding first with the criminal prosecution, the Court makes efficient use of judicial time and resources by insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination.

*Javier H.*, 218 F.R.D. at 75. Although Plaintiffs have failed to acknowledge these efficiencies, it is clear that they apply here. For instance, a stay in this case would avoid forcing the individual Defendants to exercise their Fifth Amendment rights during discovery, which can make discovery less than informative for all involved.

Similarly, Plaintiffs ignore the substantial public interest in the criminal proceeding, as the public awaits a decision that will impact future cooperation agreements with the federal government. Specifically, Plaintiffs cannot rebut the fact that nine amicus curiae support U.S. Supreme Court review of the Third Circuit's amnesty litigation decision, or that the Third Circuit itself recognized that the amnesty litigation raises a "significant constitutional question." *Stolt-Nielsen S.A. v. United States*, 442 F.3d 177, 178 (3d Cir. 2006). Plaintiffs also fail to acknowledge the longstanding public interest in ensuring that a defendant receive a fair criminal trial, *see Gideon v. Wainwright*, 372 U.S. 335, 344 (1963), which a stay of the civil proceedings — and the resulting ability to focus on the criminal proceedings — can help ensure. *See Sec. &*

8

*Exch. Comm'n v. Tandem Man., Inc.*, 2001 WL 1488218, at *4 (S.D.N.Y. Nov. 21, 2001) (noting that the "stay of these proceedings allowed Branston to focus his energies on his criminal defense, thus helping to ensure him a full and fair trial") (Ex. 1).

Plaintiffs, however, cannot ignore that their suit concerns events that allegedly occurred years in the past and present no threat of present harm. Unlike *Securities & Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368, 1380 (D.C. Cir. 1980), for example, in which the court was concerned about ongoing harm to the market if the case did not proceed immediately, there is no risk that Defendants are currently misleading any investor.[3] The final day of the alleged class period is the February 2003 day that a *Wall Street Journal* article alleges that Defendants engaged in anticompetitive conduct, (Compl. ¶¶ 1; 35), and Plaintiffs allege that the corporate Defendants disclosed the existence of "possible collusive behavior" in February 2003. (Compl. ¶ 76.) Plaintiffs also cannot ignore that the lawsuit has sparked neither additional investor interest in suing Defendants nor a criminal investigation by the Securities and Exchange Commission. *See* Opp'n at 16 (admitting absence of SEC criminal investigation). Thus, the comparison is clear: a criminal matter that the public is watching to determine what impact the case will have on cooperation agreements with the federal government versus a private civil matter concerning conduct allegedly occurring in the past and seeking private compensation. Plaintiffs' case pales in comparison to the public interest in the criminal matter, which favors staying discovery here.

---

[3] Defendants' Memorandum of Law in Support of their Motion to Stay Discovery mistakenly identifies *Dresser Industries* as Second Circuit authority when in fact the case was decided by the D.C. Circuit. Defendants apologize for this error. As set forth in Defendants' opening brief (at 5), however, the almost axiomatic principle for which Defendants cited *Dresser Industries* — i.e., that the "strongest case" for staying civil discovery is post-indictment (as opposed to pre-indictment) — is indeed recognized by courts in this Circuit. *See, e.g.*, *Javier H.*, 218 F.R.D. at 75 (citing *Dresser* for the same proposition); *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1011 (E.D.N.Y. 1992) ("Finally, courts are more likely to grant such stays when an indictment has already been issued, as is the case here").

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | *Defendants Stolt-Nielsen S.A., Stolt-Nielsen Transportation Group Ltd., Jacob Stolt-Nielsen, Niels G. Stolt-Nielsen, Samuel Cooperman and Reginald J.R. Lee* |
|  | By:   /s/ Jaime M. Crowe |
| Michael P. Shea (ct19598) | Christopher M. Curran (ct22743) |
| Jason S. Weathers (ct24579) | J. Mark Gidley (ct18450) |
| Day, Berry & Howard LLP | Peter J. Carney (ct24721) |
| City Place I | Jaime M. Crowe (ct25657) |
| 185 Asylum Street | **WHITE & CASE LLP** |
| Hartford, CT  06103-3499 | 701 Thirteenth Street, N.W. |
| Tel:  (860) 275-0356 | Washington, DC  20005 |
| Fax: (860) 275-0343 | Tel:  (202) 626-3600 |
| E-Mail:  jsweathers@dbh.com | Fax: (202) 639-9355 |
|  | E-Mail:  jcrowe@whitecase.com |

## **CERTIFICATION**

     I hereby certify that on October 27, 2006, a copy of the foregoing Reply Memorandum in Support of Defendants' Motion to Stay Discovery was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

     By:    /s/ Jaime M. Crowe
                 Jaime M. Crowe (#ct25657)
                 **WHITE & CASE LLP**
                 701 Thirteenth Street, N.W.
                 Washington, DC 20005
                 Tel: (202) 626-3600
                 Fax: (202) 639-9355
                 jcrowe@whitecase.com