Westlaw.
Not Reported in F.Supp.2d Page 1
Not Reported in F.Supp.2d, 2001 WL 1488218 (S.D.N.Y.)
**(Cite as: 2001 WL 1488218 (S.D.N.Y.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff,
v.
TANDEM MANAGEMENT INC., et al., Defendants.
**No. 95 CIV. 8411(JGK).**

Nov. 21, 2001.

OPINION AND ORDER
KOELTL, District J.

***1** The plaintiff Securities and Exchange Commission ("SEC") alleges that the defendant William F. Branston [FN1] violated Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S .C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, Sections 204, 206(1), 206(2), 206(4) and 207 of the Investment Advisers Act of 1940 (the "Advisers Act"), 15 U.S.C. §§ 80b-4, 80b-6(1), 80b-6(2), 80b-6(4), 80-b(7), and Rules 204-2, 206(4)-1 and 206(4)-4 promulgated thereunder, 17 C.F.R. §§ 275.204(2), 275.206(4)-1, 275.206(4)-4. The SEC seeks a permanent injunction prohibiting Branston, directly or indirectly, singly or in concert, from violating these federal securities laws. [FN2] (Compl. at 31.) There are currently two motions pending before the Court. Branston, having now been convicted of related criminal charges, moves pro se to dismiss the complaint against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the claims are barred by laches and the statute of limitations and are now moot. The SEC moves for summary judgment against Branston pursuant to Rule 56 of the Federal Rules of Civil Procedure based on collateral estoppel as a result of Branston's criminal conviction.

FN1. The SEC originally brought this action against Tandem Management Inc. ("Tandem"); Branston, the President, Chief Investment Officer and part owner of Tandem; and Eugene B. Deveney and Peter S. Alsop, who were also officers and part owners of Tandem. The Court has already entered a final default judgment against Tandem and a final judgment by consent against Alsop. *See* Default Judgment dated May 16, 2001; Final Judgment of Permanent Injunction and Other Equitable Relief by Consent Dated August 12, 1997. The SEC is currently pursuing settlement negotiations with Deveney. (*See* SEC's Motion for Summary Judgment and Permanent Injunction ("Pl.'s Br.") at 3 n. 2.) Branston is thus the only defendant at issue in the current motions.

FN2. The SEC originally sought a number of other remedies, including prelminary injunctive relief, a freeze of assets, civil penalties and disgorgement of any illicitly obtained funds. (*See* Compl. at 31-32.) The Court granted the SEC a preliminary injunction and other interim equitable relief on October 11, 1995. Branston was later convicted on related criminal charges, and his sentence included an order of restitution and a civil assessment. *See* Section I, *infra.* In light of these developments, the SEC has abandoned its request for civil penalties and disgorgement and now seeks only a permanent injunction against future violations of the securities laws. (*See* SEC's Opposition to Branston's Motion to Dismiss the Complaint ("Pl.'s Opp.") at 6-7; Pl.'s Br. at 23-24.)

I.

When considering a motion to dismiss, the Court " 'must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." ' *Gant v. Wallingford Bd. of Education,* 69 F.3d 669, 673 (2d Cir.1995) (considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)) (quoting *Hernandez v. Cough-*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 2
Not Reported in F.Supp.2d, 2001 WL 1488218 (S.D.N.Y.)
**(Cite as: 2001 WL 1488218 (S.D.N.Y.))**

*lin,* 18 F.3d 133, 136 (2d Cir.1994)). The complaint alleges the following facts, which the Court accepts as true for the purposes of Branston's motion to dismiss.

Since its inception in November 1991, and continuing through at least the filing of the complaint in 1995, Branston was the President and Chief Investment Officer of Tandem Management Inc. ("Tandem"), an investment adviser registered with the SEC. (Compl.¶¶ 13, 14.) [FN3] Tandem's primary business was to provide investment advisory services to individual and institutional investors. (Compl.¶¶ 13, 17.) Branston was also the general partner of one of Tandem's advisory clients, Parallax Group L.P. ("Parallax"). (Compl.¶¶ 5, 14.)

FN3. Branston owned one third Tandem until mid-1993, when he acquired a 50% interest in the company. (Compl.¶ 14.)

Beginning in or around November 1991 and continuing through 1995, Branston entered into a scheme with Eugene B. Deveney and Peter S. Alsop, who were also officers and owners of Tandem, to convert to their own use at least $1 million of their clients' assets. (Compl.¶¶ 2-4, 6, 19-39, 47-57.) The primary method of conversion arose out of their use of a number of "soft dollar" credit agreements that Tandem entered into with various broker-dealers. (Compl.¶ 2.) Under these arrangements, Tandem agreed to cause its clients to pay a specified commission for executing purchases and sales of securities for those clients' accounts, and the broker-dealers agreed to set aside a portion of these commissions as "soft dollar" credits, or rebates usable to pay for specified "soft dollar" services such as investment research used in connection with the transactions made for these clients' accounts. (Compl.¶¶ 19, 21.) A number of the broker-dealers agreed to use these soft dollar credits to pay Tandem directly upon receipt of invoices for any soft dollar services that Tandem either performed or obtained in connection with these clients' accounts. (Compl ¶ 19.)

***2** Throughout the period when these agreements were in effect, Branston knowingly or recklessly participated in a scheme to convert his clients' funds in five different but overlapping manners related to soft dollar arrangements. First, from November 1991 until at least January 1995, Branston, Alsop and Deveney caused Tandem to submit identical invoices to different broker-dealers or submit identical invoices to the same broker-dealer on multiple occasions. (Compl.¶¶ 24(a), 25.) Second, from June 1992 until at least August 1994, Branston, Alsop and Deveney altered invoices to obtain money in excess of what they paid for actual soft dollar services and to conceal their multiple billing practices. (Compl.¶¶ 24(b), 25.) Third, from August 1992 until at least April 1995, Branston, Alsop and Deveney submitted a number of invoices for expenses that Tandem was not in fact obligated to pay. (Compl.¶¶ 24(c), 25.)

Fourth, from June 1993 until at least April 1995, Branston, Alsop and Deveney participated, singly and in concert, in a practice of submitting numerous invoices for the exclusive services of a vendor named "First Call," which services Tandem neither paid for nor received. (Compl.¶ 24(d), 25.) Fifth, Deveney entered into one soft dollar credit arrangement (the "Kickback Agreement") with a broker-dealer under which Tandem agreed to cause clients to pay this broker-dealer a higher brokerage commission for soft dollar credits in return for a kick back of over half the amounts paid in commissions, which were then used to pay for various expenses including personal expenses for Branston and Deveney. (Compl.¶¶ 27-29.)

Throughout this period, and despite knowledge of these soft dollar credit arrangements, Branston knowingly or recklessly signed and filed a number of forms with the SEC (the "Forms ADV") claiming that neither he nor Tandem had any arrangements, oral or written, whereby they would receive cash or any other economic benefit from a non-client, such as a broker-dealer, in connection with advisory services. (Compl.¶¶ 33-39.) These Forms ADV also described Tandem's research and investment practices in a false and misleading manner and declared that Tandem managed $134 and $320 million in assets at different times, when Tandem never managed more than $40 million. (Compl.¶¶ 35, 36, 38.)

Throughout Tandem's existence, Branston also knowingly or recklessly participated in a scheme to distrib-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 3
Not Reported in F.Supp.2d, 2001 WL 1488218 (S.D.N.Y.)
**(Cite as: 2001 WL 1488218 (S.D.N.Y.))**

ute false and misleading information to prospective clients and investors concerning Tandem's performance history and assets under management. (Compl.¶¶ 58, 59.) These materials included marketing brochures that misrepresented the historical rates of return that clients had obtained under various trading strategies offered by Tandem and brochures indicating that Tandem managed $320 million in assets. (Compl.¶ 59(a)-(e).) On one occasion, Branston knowingly directed a Tandem employee to submit false information of this same kind to the publisher of a directory of money managers, which resulted in the publication of an inflated ranking of Tandem as among America's "Top 20 Money Managers." (Compl.¶ 59(e).) Branston used this publication and these false marketing materials to obtain investment advisory clients who would agree to pay increased commissions for soft dollar credits and to maintain prior clients in these arrangements. Branston also used false materials to cause at least six investors to purchase interests in Parallax. (Compl.¶¶ 60-61.)

***3** Based on these allegations, the SEC filed the present complaint on October 2, 1995. The subsequent history is a matter of public record and is undisputed.

After the complaint was filed, the United States Attorney's Office began a grand jury investigation of Branston concerning many of the same activities alleged in the complaint. Because of this ongoing criminal investigation, the Court removed this case from its active calender on January 30, 1997 by closing it subject to reinstatement by any party at any time.

The grand jury investigation culminated in a sixteen-count indictment. Branston was found guilty by a jury on all counts and a judgment of conviction was entered on September 27, 1999. *See* Judgment of Conviction at 1-2. Branston was sentenced principally to 37 months of imprisonment, 3 years of supervised release and $1,500,000 in restitution. *See id.* at 3, 6. The Court of Appeals dismissed Branston's appeal on June 26, 2000. *See* *United States v. Branston,* 216 F.3d 1073 (2d Cir.2000). The Supreme Court denied Branston's petition for a writ of certiorari on October 30, 2000. *See* *United States v. Branston,* 531 U.S. 973 (2000).

On January 8, 2001, the SEC moved to reopen this case, and the Court granted this motion on January 10, 2001. The current motions ensued.

A.

Branston argues that this case should be dismissed under the doctrine of laches. The doctrine of laches is inapplicable to governmental agencies seeking to vindicate public rights or interests. *See* *United States v. Summerlin,* 310 U.S. 414, 416 (1940); *United States v. RePASS,* 688 F.2d 154, 158 (2d Cir.1982). SEC civil enforcement actions "serve the public interest in accomplishing voluntary compliance with the securities laws." *SEC v. Toomey,* 866 F.Supp. 719, 724 (S.D.N.Y.1992) (internal citation and quotation marks omitted); *see also* *SEC v. Willis,* 777 F.Supp. 1165, 1175 (S.D.N.Y.1991) ( "[T]he SEC [acts] in the public interest by attempting to enforce effectively the federal securities laws under its statutory mandate." (internal citation and quotation marks omitted)). The defense of laches is thus inapplicable to SEC civil enforcement actions seeking to enjoin future violations of the securities laws. *See, e.g.,* *SEC v. Sarivola,* No. 95 Civ. 9270, 1996 WL 304371, at *1 (S.D.N.Y. June 6, 1996); *SEC v. Thrasher,* No. 92 Civ. 6987, 1995 WL 456402, at *6 (S.D.N.Y. Aug. 2, 1995); *Toomey,* 866 F.Supp. at 725; *Willis,* 777 F.Supp. at 1174-75.

In any event, laches is an equitable defense that requires proof of both (1) unreasonable and inexcusable delay in commencing an action and (2) resulting prejudice to the party asserting the defense. *See, e.g.,* *Ikelionwu v. United States,* 150 F.3d 233, 237 (2d Cir.1998); *Stone v. Williams,* 873 F.2d 620, 623 (2d Cir.1989), *reh'g granted and vac'd on other grounds,* 891 F.2d 401 (2d Cir.1989). Neither element is present here.

With regard to the first element, Branston does not argue that the SEC delayed in commencing this action. [FN4] He rests his argument, instead, on the contention that after the initial filing, the matter was closed without prejudice and that the SEC then moved to reopen the case on January 8, 2001, only after an allegedly unreasonable delay.

FN4. The complaint alleges activities begin-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 4
Not Reported in F.Supp.2d, 2001 WL 1488218 (S.D.N.Y.)
**(Cite as: 2001 WL 1488218 (S.D.N.Y.))**

> ning in or about November 1991 and continuing through October 2, 1995, the date on which the complaint was filed. It is unclear from the pleadings when the SEC first learned of these activities, but the SEC ordinarily must spend considerable time and energy investigating alleged violations before it can determine that a complaint is warranted. *See generally* *SEC v. Rind*, 991 F.2d 1486, 1492 (9th Cir.1993). Because of these facts, and because the SEC commenced this action while Branston was still allegedly engaging in the violations identified in the complaint, Branston is correct not to argue that the SEC filed its complaint in an untimely manner.

***4** It is not the amount of time that has elapsed but rather the reasonableness of the delay that is the focus of a laches inquiry. *See, e.g., United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 829 F.Supp. 608, 615 (S.D.N.Y.1993). Whether a delay is reasonable is a fact-intensive question and can depend upon the particular circumstances of a case. *See, e.g., Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 17 F.3d 38, 44 (2d Cir.1994). Where, as here, the SEC brings a civil enforcement action that proceeds in parallel with a related criminal proceeding, it is often appropriate to stay the civil action pending resolution of the criminal proceedings. *See, e.g., SEC v. Pignatiello*, No. 97 Civ. 9303, 1998 WL 293988, at *2, 4-5 (S.D.N.Y. June 5, 1998); *SEC v. Mersky*, No. Civ. A. 93-5200, 1994 WL 22305, at *2- 6 (E.D.Pa. Jan. 24, 1994); *SEC v. Downe*, No. 92 Civ. 4092, 1993 WL 22126, at *12, 14 (S.D.N.Y. Jan. 26, 1993). Such a stay is particularly appropriate where "a party under criminal indictment is required to defend a civil proceeding involving the same matter." *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y.1993); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 866 F.Supp. 1134, 1138, 1140-41 (S.D.N.Y.1995).

The delay that Branston complains of began when the Court closed this case on January 30, 1997 so as not to interfere with the related grand jury investigation of Branston that was pending at the time. *See* Order dated January 30, 1997. The Court did this in accordance with principles discussed above and "subject to reinstatement by any part[y] at any time." *Id.* The investigation of Branston ultimately culminated in a sixteen-count indictment, which was filed on February 12, 1997, and which ended in a conviction on all counts. The present case then remained closed while Branston timely but unsuccessfully appealed his conviction. The SEC moved to reopen this on January 8, 2000, about seventy days after the Supreme Court denied Branston's petition for a writ of certiorari to review his criminal conviction. During this period, Branston never indicated to the Court that removal of this case from the Court's active docket would prejudice him in any way, and a stay of these proceedings allowed Branston to focus his energies on his criminal defense, thus helping to ensure him a full and fair trial.

Hence, the SEC excusably refrained from attempting to reopen this case during the pendency of Branston's criminal proceedings. The SEC also moved to reopen this case in a reasonably diligent manner, once these proceedings were completed.

With regard to prejudice, Branston argues in a conclusory fashion that records and witnesses are unavailable because of the SEC's alleged delay. Branston does not identify any evidence that is actually missing, and much of the evidence relevant to this case is likely to consist either of documents that were produced at his recent criminal trial or testimony from witnesses who appeared in it. In any event, because this case should be decided as a matter of law based on collateral estoppel, as discussed below, there is no need for any evidence that may have grown stale. *See* Section II, *infra.* There is thus no prejudice to Branston arising from lost evidence in this case.

***5** Branston argues that he has been prejudiced because he is now without funds to represent himself and is not in a position to defend himself in prison. However, the only possibly relevant delay that occurred here began after Branston was sentenced and after his financial position had already changed. This delay could not have caused the alleged prejudice.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 5
Not Reported in F.Supp.2d, 2001 WL 1488218 (S.D.N.Y.)
**(Cite as: 2001 WL 1488218 (S.D.N.Y.))**

In any event, Branston's present incarceration and financial situation are due not to any SEC inaction but to his criminal conviction, the costs of his defense and the substantial restitution order. Branston could not have been lulled into a false sense of security, or relied to his detriment on any SEC inaction, during this period because he knew that this case was only stayed and could be opened after the conclusion of the criminal proceedings. Branston also profited from a stay of this action during his criminal proceedings. He cannot now profit in equity from the fact that he has suffered the consequences of his own criminal conduct.

In sum, there are no grounds to dismiss the present action under the doctrine of laches.

B.

Branston argues that this case is time-barred under the relevant statute of limitations for SEC enforcement actions. The SEC responds that there is no statute of limitations applicable to SEC enforcement proceedings seeking only injunctive relief. In the alternative, the SEC argues that the only statute of limitations that may apply is the five-year period set forth in 28 U.S.C. § 2462 and that this provision does not bar the relief the SEC seeks.

The Court of Appeals for the Second Circuit has not yet decided what statute of limitations, if any, applies to SEC enforcement proceedings seeking only injunctive relief. The question arises because Congress has not set forth an explicit statute of limitations for SEC enforcement actions. *See* *SEC v. Lorin*, No. 90 Civ. 7461, 1991 WL 576895, at *3 (S.D.N.Y. June 18, 1991). Statutes of limitations are nevertheless such a fundamental part of civil causes of actions that courts will ordinarily "borrow" the most analogous statute of limitations, usually from state law, in the face of such congressional silence. *See, e.g.,* *Wilson v. Garcia*, 471 U.S. 261, 266, 271 (1985) (noting that a "federal cause of action 'brought at any distance of time' would be 'utterly repugnant to the genius of our laws' (quoting *Adams v. Woods*, 6 U.S. (2 Cranch.) 336, 342 (1805)); *see also* *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 154, 158-63 (1983). [FN5] There is, however, an exception to this rule for actions brought by the government to enforce a public right or assert a public interest: "[A]n action on behalf of the United States in its governmental capacity ... is subject to no time limitation, in the absence of congressional enactment clearly imposing it. Statutes of limitation sought to be applied to bar rights of the government, must receive a strict construction in favor of the government." *E.I. Dupont De Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924); *see also* *Capozzi v. United States*, 980 F.2d 872, 875 (2d Cir.1992).

FN5. For implied private actions to enforce the securities laws, the Supreme Court has held that courts should borrow the one year/ three year limitation period that governs express private causes of action under the securities laws. *See* *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 359 (1991). These time limitations are, however, inapplicable to federal enforcement proceedings. *See* *SEC v. Sprecher*, Civ. A. No. 92-2860, 1993 WL 544306, at *2 (D.D.C. Dec. 16, 1993).

***6** Although Congress has not passed a statute of limitations that governs SEC enforcement proceedings specifically, Congress has passed 28 U.S.C. § 2462, which is a "catch-all" provision limiting the time within which the government and its agencies can pursue many civil enforcement actions. *See* *3M ..(Minnesota Mining and Mfg.) Co. v. Bronwer*, 17 F.3d 1453, 1461 (D.C.Cir.1994) (noting that § 2462 applies to "the entire federal government"). This catch-all provision states that:

> [e]xcept as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made on thereon.

28 U.S.C. § 2462.

The SEC argues that § 2462 is inapplicable to the present proceedings because the remedy the SEC seeks is not a "civil fine, penalty, or forfeiture" within

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 6
Not Reported in F.Supp.2d, 2001 WL 1488218 (S.D.N.Y.)
**(Cite as: 2001 WL 1488218 (S.D.N.Y.))**

the meaning of § 2462. In this case, the only remedy that the SEC now seeks against Branston is an injunction prohibiting him from future violations of the securities laws. Courts have found that SEC suits for equitable and remedial relief, including requests for permanent injunctions and disgorgement, are not governed by § 2462 because they are not actions or proceedings for a "penalty" within the meaning of the statute. *See,* *e.g., SEC v. McCaskey,* 56 F.Supp.2d 323, 326 (S.D.N.Y.1999); *SEC v. Schiffer,* No. 97 Civ. 5853, 1998 WL 226101, at *2 (S.D.N.Y. May 5, 1998); *SEC v. Williams,* 884 F.Supp. 28, 30 (D.Mass.1995); *SEC v. Lorin,* 869 F.Supp. 1117 (S .D.N.Y.1994). [FN6] This is consistent with those cases that have held that § 2462 does not apply to equitable claims for injunctions that seek solely to restore the status quo before the alleged violations of a statute and to enjoin future violations. *United States v. Telluride Co.,* 146 F.3d 1241, 1247-48 (10th Cir.1998); *United States v. Banks,* 115 F.3d 916, 919 (11th Cir.1997). However, the Court of Appeals for the District of Columbia Circuit has held that § 2462's five-year statute of limitations applied to an SEC administrative proceeding that resulted in a censure and six month disciplinary suspension of a securities industry supervisor. *See* *Johnson v. SEC,* 87 F.3d 484, 486-92 (D.C.Cir.1996). The Court held that the sanctions constituted a "penalty" within the meaning of § 2462, relying in part on the collateral consequences of the sanctions.

FN6. A number of other courts, without addressing § 2462, have held that there is no statute of limitations applicable to SEC enforcement actions seeking only injunctive relief. *See, e.g., SEC v. Rind,* 991 F.2d 1486, 1491-92 (9th Cir.1993); *SEC v. Downe,* No. 92 Civ. 4092, 1994 WL 67826, at *1 (S.D.N.Y. March 3, 1994); *Toomey,* 866 F.Supp. at 724; *SEC v. Bangham,* No. 89 Civ. 7910, 1991 WL 311922, at *1 (S.D.N.Y. Nov. 25, 1991); *Willis,* 777 F.Supp. at 1174.

It is unnecessary to decide whether § 2462 applies in this case because all of the activities alleged in the complaint occurred on or after November 1991, within five years of the time when the complaint was filed. The SEC thus filed this action before any statute of limitations expired, and the action is not barred by any statute of limitations.

C.

***7** Finally, Branston argues that this case is now moot because of his imprisonment on the related criminal convictions and his lack of funds or assets. Branston argues, in effect, that his imprisonment and present financial position will independently prevent him from future securities laws violations, thus rendering the present action "a waste of judicial time to pursue." (Def.'s Br. ¶ 4.) The argument is frivolous.

With regard to Branston's incarceration, Branston was sentenced to a 37-month term of imprisonment on September 24, 1999, more than two years ago. He will thus be released in the foreseeable future. Although Branston's prison term will be followed by a period of supervised release, one condition of which is that he "not, without the approval of the court or the probation officer, engage in any capacity of employment venture involving investments, trading of securities, money-management or similar financial planning or advising," this period will only last for another 3 years. *See* Judgment of Conviction at 5. A permanent injunction would, by contrast, be effective after Branston's sentence has expired.

Branston's financial position also provides no assurance that he will not again seek investments in violation of the securities laws. As the SEC correctly notes, Branston's financial situation may even provide him with increased incentives to engage in future violations. In sum, neither Branston's criminal sentence nor his present financial condition render this action for a permanent injunction moot.

D.

Because there are no other grounds to dismiss the complaint, Branston's motion to dismiss is denied.

II.

The SEC moves for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to inter-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 7
Not Reported in F.Supp.2d, 2001 WL 1488218 (S.D.N.Y.)
**(Cite as: 2001 WL 1488218 (S.D.N.Y.))**

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also* *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994); *SEC v. Todt*, No. 98 Civ. 3980, 2000 WL 223836, at *1-2 (S.D.N.Y. Feb. 25, 2000), *aff'd*, No. 00-6101, 2001 WL 345151 (2d Cir. Apr. 5, 2001). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue resolution." *Id.* at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also* *Gallo*, 22 F.3d at 1223.

***8** If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Affidavits submitted in opposition to a motion for summary judgment, like affidavits submitted in support thereof, "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Id.* With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See* *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

Where, as here, a pro se party is involved, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. *See* *McPherson v. Coombe*, 174 F.3d 276, 281 (2d Cir.1999); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir.1999); *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996); *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir.1994). In this case, the SEC served a notice (the "Notice") advising Branston of the procedures for responding to a motion for summary judgment and the consequences of failing to respond. This Notice made Branston aware of the requirement to submit a response by filing sworn affidavits or other papers as required by Rule 56(e). The Notice also attached a complete copy of Rule 56 and advised Branston of the need to submit counter-evidence. The Notice stated that "[i]f you do not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by the plaintiff, the court may accept plaintiff's factual findings as true. Judgment may then be entered in the plaintiff's favor without trial."

Branston responded by letter stating only that "the facts which the SEC now proposes are in serious dispute" and "are not resolved by collateral estoppel" because "they were not decided or at issue in the criminal matter." Undated letter from Branston to the Court. This statement is conclusory and could at most place into dispute those facts as to which Branston's personal testimony would be relevant and admissible. The fact that Branston is proceeding pro se does not preclude the Court from deeming facts set forth in the SEC's 56.1 Statement admitted where Branston has not produced any genuine evidence contraverting them. *See* *Smith v. Planas*, 975 F.Supp. 303, 305 n. 2 (S.D.N.Y.1997). In any event, as discussed more fully below, the SEC's motion for summary judgment should be granted based on facts established in Branston's criminal proceedings.

A.

The SEC argues that it is entitled to summary judg-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 8
Not Reported in F.Supp.2d, 2001 WL 1488218 (S.D.N.Y.)
**(Cite as: 2001 WL 1488218 (S.D.N.Y.))**

ment because the material facts in this case were established in Branston's criminal trial and because Branston is collaterally estopped from disputing those facts here. It is well settled that "a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978); *see also* *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568-69 (1951). In order for collateral estoppel to apply, the Court must determine that "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *NLRB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir.1999) (internal citation and quotation marks omitted). In the present case, it is necessary to examine the six claims raised in the complaint to determine whether the facts needed to support these claims were necessarily established at Branston's criminal trial.

***9** The SEC's first claim alleges that Branston violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (collectively, the "antifraud provisions"). To establish a violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, the SEC must prove that a defendant "(1) made a material misrepresentation or omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir.1999) (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1466 (2d Cir.1996)); *SEC v. Todt*, 2000 WL 223836, at *7. Scienter "means intent to deceive, manipulate, or defraud, or at least knowing misconduct." *First Jersey*, 101 F.3d at 1467 (internal citations omitted); *see also* *Aaron v. SEC*, 446 U.S. 680 (1980); *SEC v. Todt*, 2000 WL 223836, at *9. Scienter may also be established through a showing of reckless disregard for the truth. *See* *SEC v. McNulty*, 137 F.3d 732, 741 (2d . Turning to Section 17(a) of the Securities Act, "essentially the same elements [as in Section 10(b) of the Exchange Act] must be established in connection with the offer or sale of a security." *First Jersey*, 101 F.3d at 1467.

The SEC's first claim is predicated on factual allegations concerning the five schemes to misappropriate "soft dollar" credits and commission rebates discussed above. *See* Section I, *supra.* At his criminal trial, Branston was convicted of four counts (counts eight through eleven) of fraudulently misappropriating "soft dollar" credits and commission rebates in violation of 15 U.S.C. §§ 80b-6 and 80b-17 and 18 U.S.C. § 2 on the basis of substantially the same allegations. (*See* Indictment ¶¶ 33-34; Judgment of Conviction at 2.) These convictions required proof that Branston (1) made a material misrepresentation or omission to an investment client, or used a fraudulent devise or business practice; (2) in his capacity as an investment adviser; and (3) did so willfully. *See* 15 U.S.C. § 80b-6, 80b-17. These activities also plainly occurred in connection with the purchase or sale and the offer or sale of securities to Branston's clients because the soft dollar credits and commission rebates were generated through actual securities transactions by Tandem's clients. Thus, all of the facts needed to establish the SEC's first claim, including a degree of scienter exceeding that required for civil liability, were necessarily established at Branston's criminal trial.

The SEC's second claim similarly invokes the antifraud provisions, but rests on allegations concerning Branston's alleged distribution of false advertisement materials causing at least six advisory clients to investment in the Parallax limited partnership. (*See* Compl. ¶¶ 60-61, 71-76.) Branston was the sole manager of Parallax, and its outside investors were passive investors, with no managerial role in the limited partnership. Under these circumstances, investments in limited partnership funds are "investment contracts" within the meaning of Section 2(1) of the Securities Act, 15 U.S.C. § 77b(a)(1), and Section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10), which, in turn, qualify as "securities" under those provisions. *See, e.g.*, *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986); *Mayer v. Oil Filed Sys-*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*tems Corp.*, 721 F.2d 59, 65 (2d Cir.1983).

***10** At his criminal trial, Branston was convicted of one count (count seven) of false advertising by an investment adviser in violation of 15 U.S.C. §§ 80b-6(4) and 80b-17 based on fraudulent activities, in particular the distribution of a brochure containing untrue statements of material fact designed to induce investment in Parallax. (*See* Indictment ¶¶ 31-32; Judgment of Conviction at 1.) These activities undisputedly occurred in connection with the offer or sale of securities, and Title 15 U.S.C. § 80b-6(4) specifically prohibits an investment adviser from using the mails or any instrumentality of commerce "to engage in any act, practice, or course of business which is fraudulent, deceptive or manipulative." Thus, for the same reasons discussed in addressing the SEC's first claim, all of the facts needed to establish violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), were necessarily established in supporting Branston's conviction on count seven for violating 15 U.S.C. §§ 80b-6(4) and 80b-17. [FN7]

FN7. The Indictment did not specify the number of investors, if any, who were actually defrauded by these brochures, and count seven did not require proof of any actual sales or purchases, as would be needed to establish violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. As discussed more fully above, however, violations of these latter two provisions were established in connection with the soft dollar credit and commission rebate schemes alleged in claim one. The antifraud provisions are also similar in nature. An injunction against violations of all of the antifraud provisions would thus be justified on the basis of the conduct proven at Branston's criminal trial.

The SEC's third claim alleges that Branston committed fraud against Tandem's advisory clients in violation of Sections 206(1) and 206(2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) & (2), by presenting fraudulent marketing materials to potential investor adviser clients and misappropriating soft dollar credits and commission rebates. Branston was convicted of eight counts (counts two through five and eight through eleven) of violating those same provisions based on substantially the same factual allegations. (*See* Indictment ¶¶ 27-28; Indictment ¶¶ 33-34; Judgment of Conviction at 1-2.) The facts required to support these convictions are mirror images of those needed establish claim three.

The SEC's fourth claim alleges that Branston violated 15 U.S.C. § 80b-7 by signing and filing false Forms ADV, several of which contained false statements about Tandem's use of soft dollar agreements and two of which misrepresented Tandem's assets under management. (Compl.¶¶ 31-38.) At his criminal trial, Branston was convicted of three counts (counts thirteen through fifteen) of violating this same provision for filing three of false Forms ADV identified in the complaint. (*See* Indictment ¶ 38; Judgment of Conviction at 2.) The facts needed to support these convictions are identical to those needed to establish liability for claim four with regard to three of the four allegations raised.

Claim five alleges that Branston violated Section 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rules 206(4)-1 and 206(4)-4 thereunder, 17 C.F.R. 206(4)-1 & 4, by failing to disclose Tandem's true financial position to Tandem's clients and misrepresenting Tandem's historical performance and assets under management to potential clients. As discussed above, Branston was convicted of four counts (counts two through five) of violating these same provisions based on substantially the same factual allegations in the complaint. Branston was also convicted of one count (count six) of wire fraud in violation of 18 U.S.C. § 1343 for willfully and knowingly using a facsimile in interstate commerce to engage in a scheme to defraud by sending a false chart indicating the alleged historical rate of returns on some of the accounts managed by Tandem. (*See* Indictment ¶¶ 29-30.) The facts needed to support these convictions are identical to ones alleged in the SEC's fifth claim. [FN8]

FN8. Branston was also convicted of one count (count one) of conspiracy to commit securities fraud based on substantially the

Not Reported in F.Supp.2d Page 10
Not Reported in F.Supp.2d, 2001 WL 1488218 (S.D.N.Y.)
**(Cite as: 2001 WL 1488218 (S.D.N.Y.))**

same total set of allegations raised in the first five claims of the complaint. (*See* Indictment ¶¶ 1-26; Judgment of Conviction at 1.) This conviction further supports the application of collateral estoppel with regard to the facts already discussed.

***11** The sixth claim, finally, alleges that Branston violated Section 204 of the Advisers Act, 15 U.S.C. § 80b-4, and Rules 204-2 thereunder, 17 C.F.R. § 274.204(2), by failing to keep and maintain certain books and records, as required by the Investment Advisers Act. Branston was not convicted of any such violations at his criminal trial, and proof of failure to maintain records was not an essential part of any of his convictions. Hence, the SEC cannot establish its sixth claim by means of collateral estoppel.

In sum, Branston's criminal conviction required the actual litigation and decision of sufficient factual issues, identical to ones alleged in the first five (but not the sixth) claims in the complaint, to conclude that the facts needed to establish the SEC's first five claims have already been established in another proceeding. The only remaining issue concerning applicability of collateral estoppel is whether Branston had a full and fair opportunity to litigate these issues in his criminal proceedings. *See* *Thalbo Corp.*, 171 F.3d at 109.

Branston argues that, as a matter of law, he did not have such a full and fair opportunity. Branston relies on *SEC v. Monarch Funding Corp.*, 192 F.3d 295 (2d Cir.1999), in which the Court of Appeals found that a defendant in an SEC enforcement action was not necessarily collaterally estopped from relitigating facts developed in an earlier criminal sentencing proceeding. However, the facts at issue in *Monarch* were developed at the defendant's sentencing, not at his criminal trial, and this circumstance was critical to the Court's holding. As the Court of Appeals explained, sentencing hearings typically provide defendants with less procedural safeguards than civil proceedings. *See id.* at 305. A defendant's opportunities to present witnesses can be limited, and the Federal Rules of Evidence do not apply. *See id.* Moreover, "the incentive to litigate a sentencing finding is frequently less intense, and certainly more fraught with risk, that it would be for a full-blown civil trial." *Id.* at 305. The Court of Appeals thus found that facts developed at a sentencing hearing may not always be developed after a sufficiently full and fair opportunity to litigate the issues to warrant application of collateral estoppel.

This case is different from *Monarch.* The facts at issue here were developed not at a sentencing hearing but at a criminal trial, where Branston faced severe penalties and had every incentive to contest vigorously the charges against him. Branston was also given the full panoply of criminal procedural safeguards, including a standard of proof that was more favorable to him than in these civil proceedings. Branston's trial, which was held before a jury, took considerable time and involved numerous witnesses and evidence. There is no basis in the record to question the fairness of the trial. In these circumstances, it is well-settled that facts necessary to support a criminal conviction have collateral estoppel effect in a subsequent SEC enforcement proceeding. *See, e.g., Sprecher,* 1993 WL 544306, at *1.

***12** The SEC is therefore entitled to summary judgment on its first five claims against Branston.

B.

The SEC seeks a permanent injunction on the basis of the securities law violations that have been established. SEC suits for permanent injunctions are creatures of statute. *See* *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir.1975). Three statutes in particular give the SEC the authority to seek the relief in the present case: Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), and Section 209(d) of the Advisers Act, 15 U.S.C. § 80b-9(d). These provisions state that whenever it appears that a person has engaged or is about to engage in any acts or practices that would violate the provisions of the respective Acts or regulations passed thereunder, the SEC may "in its discretion, bring an action ... to enjoin such acts or practices." 15 U.S.C. §§ 77t(b), 78u(d), 80b-9(d).

Because these actions are creatures of statute, the SEC need not establish irreparable injury or the inadequacy of legal remedies, as would be required in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 11
Not Reported in F.Supp.2d, 2001 WL 1488218 (S.D.N.Y.)
**(Cite as: 2001 WL 1488218 (S.D.N.Y.))**

private injunction suits. *See* *Management Dynamics*, 515 F.2d at 808. The dispositive issue is simply whether there is a likelihood of future violations without an injunction. *See, e.g.,* *First Jersey*, 101 F.3d at 1477 (citing *CFTC v. American Board of Trade, Inc.,* 803 F.2d 1252, 1250-51 (2d Cir.1986)); *see also* *SEC v. Commonwealth Chemical Sec., Inc.*, 574 F.2d 90, 99 (2d Cir.1978). Branston's past violations are relevant to this question but do not necessarily dispose of it. *See, e.g.,* *SEC v. Commonwealth Chemical*, 574 F.2d at 100 (stating that settled precedent in this Circuit establishes "the need for the SEC to go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence"). Rather, past liability is one factor among others to be considered, including:

> the degree of scienter involved, the sincerity of defendant's assurances against future violations, the isolated or recurrent nature of the infraction, defendant's recognition of the wrongful nature of his conduct, and the likelihood, because of defendant's professional occupation, that future violations might occur.

*SEC v. Universal Major Indus. Corp.*, 546 F.2d 1044, 1048 (2d Cir.1976).

In this case, the facts established at Branston's criminal trial reveal not an isolated instance of misconduct but rather a complex pattern of fraud and deception spanning about four years. *See* *SEC v. Hasho*, 784 F.Supp. 1059, 1110 (S.D.N.Y.1992) (finding a permanent injunction appropriate where past violations occurred repeatedly over a protracted period of time and the defendants consistently violated their clients' trust through a myriad of omissions, misrepresentations and other fraudulent devices). Branston personally obtained a substantial amount of money by engaging in these activities, and there is every indication that he would have continued engaging in them were it not for the SEC's intervention. *See generally* *Management Dynamics*, 515 F.2d at 807 (noting that "cessation of illegal activity does not *ipso facto* justify the denial of injunction" and must be assessed under the circumstances of a case). Branston also committed these acts willfully, with a degree of scienter exceeding that needed for civil liability and far exceeding that needed for a permanent injunction. *See* *Universal Major*, 546 F.2d at 1047 ("[I]n SEC proceedings seeking equitable relief, a cause of action may be predicated upon negligence alone, and scienter is not required."). This is not a case of unwitting deception in the securities market resulting from an unsophisticated understanding of the securities laws, or a case where well intentioned and scrupulous registered representatives have allowed isolated violations to occur "out of an excessive zeal for fairness and accuracy." *SEC v. Bausch & Lomb, Inc.*, 565 F.2d 8, 18-19 (2d Cir.1977).

***13** With regard to assurances that he will not violate the securities laws in the future, Branston has not made any. Branston was also convicted of perjuring himself to the SEC during its investigation. This fact suggests that he is at least capable of lying to governmental authorities, something that would have to be taken into consideration in assessing any assurances he might make.

Branston's past employment record similarly suggests that he may well seek to obtain investments after his term of supervised release has expired. If Branston's financial condition remains in its present state, he is likely to have strong incentives to violate the securities laws, and any occupation in these industries would provide him with the opportunity. All of these factors point toward the strong need for a permanent injunction.

The fact that Branston is currently serving his criminal sentence weighs somewhat in his favor. Branston's imprisonment cuts against the likelihood of future violations, at least in the near future. A permanent injunction may only have value after Branston has completed his three subsequent years of supervised release. Moroever, the probative value of conduct engaged in more than five years ago in establishing the likelihood of future violations some four years hence is much smaller than evidence of recent misconduct would be to imminent possible violations. Still, none of these facts undermines the weight of the factors indicating that a permanent injunction is appropriate.

The Court has broad discretion to enjoin future violations of the securities laws upon a finding of past violations. *See* *SEC v. Manor Nursing Centers, Inc.*,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 12
Not Reported in F.Supp.2d, 2001 WL 1488218 (S.D.N.Y.)
**(Cite as: 2001 WL 1488218 (S.D.N.Y.))**

458 F.2d 1082, 1100 (2d Cir.1972). In the present circumstances, there is a substantial likelihood of future violations, and a permanent injunction is warranted. Moreover, although the SEC has not established that Branston violated the record and book keeping requirements set forth in Section 204 of the Investment Advisers Act, 15 u.S.C. § 80b-4, and Rule 204-2 thereunder, 17 C.F.R. § 274.204(2), lack of proper record keeping can help hide from view the very kinds of violations that have been established. It is thus reasonable under these circumstances to enjoin Branston from violating these provisions as well. *See id.* at 1102-03.

C.

While the SEC has not established that Branston is liable for the sixth claim, the SEC has established sufficient liability to obtain the complete relief it seeks. Therefore, the sixth claim for relief is dismissed as moot.

III.

For the foregoing reasons, Branston's motion to dismiss is denied. The SEC's motion for summary judgment on claims one through five is granted. The sixth claim for relief is dismissed as moot. Pursuant to Fed. R. Civ P. 54(b), there is no just reason for delay in entering a final judgment against Branston. A final judgment will be entered incorporating the relief discussed above.

SO ORDERED.

Not Reported in F.Supp.2d, 2001 WL 1488218 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 2001 WL 34727700 (Trial Pleading) Plaintiff Securities and Exchange Commission's Reply to Defendant William F. Branston's Response to the Sec's Motion for Summary Judgment and Permanent Injunction (Jun. 18, 2001)

• 2001 WL 34727846 (Trial Motion, Memorandum and Affidavit) Plaintiff Securities and Exchange Commission's Memorandum in Opposition to Defendant William F. Branston's Motion to Dismiss the Complaint (Jun. 04, 2001)

• 2001 WL 34727845 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiff Securities and Exchange Commission's Application for Entry of Judgment by Default Against Defendant Tandem Management Inc. (Apr. 25, 2001)

• 2001 WL 34727844 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Plaintiff Securities and Exchange Commission's Motion for Summary Judgment and Permanent Injunction (Apr. 09, 2001)

• 1:95cv08411 (Docket) (Oct. 02, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.