UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOEL MENKES, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>STOLT-NIELSEN S.A., JACOB STOLT-NIELSEN, NIELS G. STOLT-NIELSEN, SAMUEL COOPERMAN and REGINALD J.R. LEE,<br><br>　　　　　　　　　　Defendants. | ) Civil Action No. 3:03-cv-00409-DJS<br>)<br>) <u>CLASS ACTION</u><br>)<br>) SUPPLEMENTAL FORM 26(f) REPORT OF<br>) PARTIES' PLANNING MEETING<br>)<br>)<br>) May 23, 2008<br>)<br>)<br>)<br>)<br>)<br>) |

As their Supplemental Report of the parties' planning meetings of May 15, 2008 and May 21, 2008, submitted pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, the parties report as follows:

**Proceedings to Date**

The original Complaint was filed on March 7, 2003.

The original Complaint was served on Defendant Samuel Cooperman on March 17, 2003.

The original Complaint was served on Defendant Reginald J.R. Lee on March 27, 2003.

Appearance of Attorney for Stolt-Nielsen S.A. and Samuel Cooperman was entered on March 28, 2003.

Appearance of Attorney for Reginald J.R. Lee was entered on April 14, 2003.

Appearance of Attorney for Jacob Stolt-Nielsen and Niels G. Stolt-Nielsen was entered on April 17, 2003.

Waiver of Service of Summons as to Stolt-Nielsen S.A., Jacob Stolt-Nielsen and Niels G. Stolt-Nielsen was executed on April 29, 2003.

The Consolidated Amended Class Action Complaint was filed on September 8, 2003.

Defendants filed a Motion to Dismiss the Consolidated Amended Class Action Complaint on October 27, 2003.

The Memorandum of Decision granting Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint was entered by this Court on November 10, 2005.

The Second Consolidated Amended Class Action Complaint was filed on March 1, 2006.

Defendants filed a Motion to Dismiss the Second Consolidated Amended Class Action Complaint on March 20, 2006.

The Memorandum of Decision denying Defendants' Motion to Dismiss the Second Consolidated Amended Complaint was entered by this Court on June 19, 2006. The Court entered a discretionary stay of proceedings in its Memorandum of Decision.

Defendants filed a Motion to Stay Discovery on September 27, 2006, pursuant to the Court's Order of September 12, 2006.

The Memorandum of Decision granting Defendants' Motion to Stay Discovery was entered by this Court on December 4, 2006.

**Rule 26(f) Conferences**

Pursuant to Fed. R. Civ. P. 16(b), 26(f), D. Conn. L. Civ. R. 16, and this Court's Order of June 19, 2006, conferences were held on May 15, and May 20, 2008. The participants were:

Mark Reich and David Rosenfeld of Coughlin Stoia Geller Rudman & Robbins LLP for lead plaintiffs Irene Rucker and Gustav Rucker (referred to herein as "Lead Plaintiffs"), and

Jaime M. Crowe and Charles Moore of White & Case LLP for Defendants Stolt-Nielsen S.A. ("SNSA"), Stolt-Nielsen Transportation Group Inc. ("SNTG")[1] (collectively, "the Companies"), Jacob Stolt-Nielsen, Niels G. Stolt-Nielsen, Samuel Cooperman ("Cooperman") and Reginald J.R. Lee ("Lee")[2] (collectively, the "Defendants").

## I. Certification

The undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II. Jurisdiction

### A. Subject Matter Jurisdiction

Lead Plaintiffs bring this action pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 as amended (the "1934 Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Lead Plaintiffs maintain that this Court has federal question jurisdiction over the subject matter of this action pursuant to Section 27 of the 1934 Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

---

[1] Defendant Stolt-Nielsen Transportation Group Inc., a Delaware corporation, is an indirect subsidiary of SNSA. Stolt-Nielsen Transportation Group Ltd., a Bermuda company, is a wholly-owned subsidiary of SNSA. In the Complaint, "SNTG" refers to both Stolt-Nielsen Transportation Group Inc. and Stolt-Nielsen Transportation Group Ltd.

[2] Jacob Stolt-Nielsen, Niels G. Stolt-Nielsen, Samuel Cooperman, and Reginald J.R. Lee are collectively referred to as the "Individual Defendants."

B. **Personal Jurisdiction**

Lead Plaintiffs maintain that for the following reasons, personal jurisdiction and venue are proper in the District of Connecticut. Venue is proper in this District under § 27 of the Exchange Act and under 28 U.S.C. § 1391(b). Lead Plaintiffs maintain that SNTG is headquartered in this District and that the alleged underlying anti-competitive conduct emanated from SNTG's offices in this District. Defendants deny that SNTG is headquartered in this District. Lead Plaintiffs contend that SNSA maintains executive offices in this District. Defendants deny that SNSA maintains executive offices in this District, and further deny that they made any false and misleading statements, much less that any such statements and omissions that reached this District.

III. **Brief Description of Case[3]**

Lead Plaintiffs Irene Rucker and Gustav Rucker brought the instant federal securities class action complaint purportedly on behalf of all persons or entities who purchased or otherwise acquired securities of SNSA's American Depository Receipts ("ADRs") from February 1, 2001 through February 20, 2003 (the "Class Period"), and all United States ("U.S.") located purchasers of SNSA ordinary shares traded on the Oslo Stock Exchange (together with ADRs referred to herein as "SNSA securities") to recover damages allegedly caused by the Companies and the Individual Defendants.

Lead Plaintiffs allege that during the Class Period, Defendants made or issued materially false and misleading statements about the Companies' revenues, earnings, and business practices. Specifically, Lead Plaintiffs allege these statements were materially false and misleading because they misrepresented and failed to disclose that a material portion of SNSA's

---

[3] The sections of this Report setting forth the position of one party solely reflect the views of that party and are made subject to and without prejudice to the rights of opposing parties to disagree.

and SNTG's revenues and earnings during the Class Period was derived from an illegal pact between SNTG and its main competitor, Odfjell ASA ("Odfjell").

The Complaint alleges that SNTG and Odfjell, among other things, conspired to rig bids for international shipping contracts. Lead Plaintiffs contend that by concealing their anti-competitive behavior, the Companies portrayed to the public that they were immune to the economic downturn that was negatively impacting the rest of the shipping industry. The Complaint alleges that, to the contrary, the illegal activity was the true reason for the Companies' financial success.

Lead Plaintiffs allege that the false and misleading statements regarding the Companies' revenues, earnings, and business practices — specifically omitting SNTG's anti-competitive behavior — inflated the price of SNSA securities. According to the Complaint, when the market learned about SNTG's anti-competitive behavior, the price of SNSA securities declined, thereby causing damage to those who had purchased SNSA securities at the allegedly artificially inflated prices during the Class Period. For the foregoing reasons, Lead Plaintiffs contend that Defendants violated Sections 10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

\*   \*   \*

As reflected in their two motions to dismiss, Defendants believe that Lead Plaintiffs have failed to assert a claim under the securities laws. Defendants believe that the Complaint relies on the flawed assumption that the federal securities laws impose a duty to disclose uncharged antitrust violations. In addition, Defendants submit that the Complaint fails to satisfy the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Defendants maintain that Lead Plaintiffs will be unable to present evidence sufficient to prove their claims.

Defendants submit that Lead Plaintiffs' allegations of material misstatements or omissions are insufficient. Although Lead Plaintiffs allege an antitrust conspiracy affecting SNTG's parcel tanker operations, Lead Plaintiffs rely on alleged misstatements or omissions relating to SNTG's entirely separate tank container operations. Significantly, Defendants believe that Lead Plaintiffs will not be able to establish a nexus between the alleged conduct involving parcel tankers and the alleged misstatements concerning tank containers. This failure should be dispositive of Lead Plaintiffs' claims.

Defendants also submit that Lead Plaintiffs will not be able to establish Defendants' fraudulent intent. Lead Plaintiffs will not be able to establish a clear link between those who were involved in allegedly anti-competitive activities at SNTG and SNSA. Further, the allegations fail to establish that the Individual Defendants, including Samuel Cooperman and Reginald J.R. Lee, as officers of SNTG, made or caused to be made the alleged false and misleading statements.

Finally, Defendants maintain that Plaintiffs will be unable to satisfy their burden of proving that this action should proceed as a class action. Rather, Defendants believe that this matter should proceed as an individual action.

**A.     Claims of Lead Plaintiffs.**

Lead Plaintiffs submit the following summary of their claims:

**1.     First Cause of Action — Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.**

Lead Plaintiffs submit that during the Class Period, Defendants, the Companies and the Individual Defendants carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Lead Plaintiffs and other Class members, as alleged in the Complaint; (ii) artificially inflate and maintain the market price of SNSA common stock; and (iii) cause Lead Plaintiffs and other members of the Class to

purchase SNSA stock at artificially inflated prices. Lead Plaintiffs maintain that in furtherance of this unlawful scheme, plan and course of conduct, Defendants, the Companies and the Individual Defendants took the actions set forth in the Complaint. These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for SNSA common stock in violation of Section 10(b) of the Exchange Act of 1934 and SEC Rule 10b-5.

  2. **Second Cause of Action — Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a).**

Lead Plaintiffs maintain that by reason of their ownership of SNSA securities, management positions, and/or membership on SNSA's Board of Directors, each of the Individual Defendants was a controlling person of SNSA within the meaning of Section 20 of the 1934 Act throughout the Class Period. The Complaint alleges that the Individual Defendants, because of their positions of control and authority as officers and/or directors of the Companies, controlled the content of various SEC filings, press releases, and other public statements about the Companies, and caused the Companies to engage in the unlawful and improper conduct complained of in the Complaint. Lead Plaintiffs maintain that the Individual Defendants all received daily reports regarding the sales, revenues, new and repeat customers and other business performance, including the alleged illegal pact between SNTG and Odfjell. Lead Plaintiffs contend that by virtue of their positions, relationships and power, the Companies and the Individual Defendants all were controlling persons of SNTG and its officers, employees and agents. In this regard, according to the Complaint, Defendants are primarily and/or jointly and severally liable, as direct participants in and co-conspirators of the claims alleged in the

Complaint.

### B. Defenses of Defendants.

Defendants submit the following summary of their defenses, subject to and without prejudice to their forthcoming Answers to the Second Consolidated Amended Class Action Complaint. Because of the deficiencies in the Complaint, however, Defendants cannot state fully at this time what additional specific substantive defenses they will assert. Accordingly, Defendants reserve the right to supplement their statement of defenses if and when Lead Plaintiffs more clearly state their claims and theories. However, Defendants intend to dispute the material allegations of the Complaint. For purposes of this report, however, Defendants maintain as follows:

1. **First Cause of Action — Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.**

In answering the Complaint, Defendants will deny Lead Plaintiffs' allegations regarding the alleged violations of Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Moreover, for the reasons stated in their two motions to dismiss, Defendants continue to believe that Lead Plaintiffs have failed to state a claim under the applicable provisions of the securities laws. Among other things, Defendants deny that they carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Lead Plaintiffs and other Class members, as alleged in the Complaint; (ii) artificially inflate and maintain the market price of SNSA common stock; and (iii) cause Lead Plaintiffs and other members of the Class to purchase SNSA stock at artificially inflated prices.

Defendants further deny that in furtherance of this allegedly unlawful scheme, plan and course of conduct, they took the actions set forth in the Complaint, or that in furtherance thereof, they (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of

material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for SNSA common stock in violation of Section 10(b) of the Exchange Act of 1934 and SEC Rule 10b-5.

2.  **Second Cause of Action — Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a).**

In answering the Complaint, Defendants will deny Lead Plaintiffs' allegations regarding the alleged violations of Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a). Moreover, for the reasons stated in their two motions to dismiss, Defendants continue to believe that Lead Plaintiffs have failed to state a claim under the applicable provisions of the securities laws. Among other things, Defendants deny that the Individual Defendants, because of their positions of control and authority as officers and/or directors of the Companies, controlled the content of various SEC filings, press releases, and other public statements about the Companies, and caused the Companies to engage in the unlawful and improper conduct complained of in the Complaint.

IV.  **Statement of Undisputed Facts**

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1   Defendant SNSA is a holding company and the parent company of Defendant SNTG.

2.  SNTG is a wholly-owned indirect subsidiary of SNSA.

3.  SNTG maintains offices in Connecticut, located at 800 Connecticut Avenue, Fourth Floor East, Norwalk, CT 06854.

4.  Defendant Jacob Stolt-Nielsen has served as Chairman of SNSA since he founded

the Company in 1959. During the Class Period, Jacob Stolt-Nielsen also has served on the Board of Directors for SNSA. During the Class Period, Jacob Stolt-Nielsen has served on the Board of Directors for SNTG.

5.   Defendant Niels G. Stolt-Nielsen has served as Chief Executive Officer ("CEO") of SNSA during the Class Period. During the Class Period, Niels G. Stolt-Nielsen has served on the Board of Directors for SNSA. During the Class Period, Niels G. Stolt-Nielsen has served on the Board of Directors for SNTG.

6.   Defendant Cooperman served as non-executive Chairman of SNTG from approximately August 2001 to July 2003.

7.   Defendant Lee served as CEO of SNTG during the Class Period.

8.   Lead Plaintiffs filed a Memorandum in Support of the Motion of Irene and Gustav Rucker for Appointment as Lead Plaintiff stating that Lead Plaintiffs purchased 1000 shares of SNSA ADRs at a price of $8.0700 per share on November 19, 2002.

9.   Lead Plaintiffs filed an attachment to a Declaration in Support of the Motion of Irene and Gustav Rucker for Appointment as Lead Plaintiff providing that the average closing price of their SNSA ADRs during the period February 21, 2003 through May 15, 2003 was $6.3611.

10.   Lead Plaintiffs filed a Memorandum in Support of the Motion of Irene and Gustav Rucker for Appointment as Lead Plaintiff stating that Lead Plaintiffs suffered estimated losses of $1,708.90 in connection with their purchase of shares of SNSA ADRs during the Class Period.

V.   **Case Management Plan:**

   A.   **Standing Order on Scheduling in Civil Cases**

The parties request modification of the deadlines in the Standing Order on Scheduling in Civil Cases.

### B. Scheduling Conference with the Court

The parties have not been able to reach agreement on every date for a proposed scheduling order, as identified below. Defendants propose that the Court enter an order establishing the Schedule described in Attachment A.

Both parties agree that a conference would be the most expeditious way to solve this conflict.

### C. Early Settlement Conference

1. The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. As the Court is aware, the parties engaged in a mediation on May 6, 2008, facilitated by former Judge Nicholas H. Politan, but were not able to reach agreement. The parties believe settlement is unlikely at this time.

2. The parties do not request an early settlement conference because settlement is unlikely at this time.

3. The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

### D. Answers, Joinder of Parties and Amendment of Pleadings

1. Defendants shall file their Answers five days after the Court lifts the discretionary stay.

2. Plaintiffs should have until the later of May 30, 2008, or seven days after Defendants file their Answers to join additional parties or amend the pleadings.

### E. Discovery

1. Lead Plaintiffs anticipate requesting all relevant and non-privileged documents from Defendants and various non-parties pertaining to, for example: (a) the course of conduct reflected in Lead Plaintiffs' Amended Complaint; (b) each Defendants' participation in the anti-

competitive activities and/or bid rigging activities conducted by SNTG and Odfjell; (c) when each Defendant had knowledge of the anti-competitive activities and/or bid rigging activities conducted by SNTG and Odfjell; (d) Defendants' scienter.  Defendants reserve the right to object to any such discovery.

2.  Defendants anticipate seeking discovery from Lead Plaintiffs and non-parties (including many located overseas) on topics including, but not limited to:  (a) the characteristics of the putative class(es); (b) the type(s) of securities purchased by Lead Plaintiffs and putative class members; (c) the dates of purchase and prices paid for such securities; and (d) other issues relating to class certification.  Defendants also anticipate requesting all relevant and non-privileged documents from Lead Plaintiffs and non-parties regarding the bases for each of Lead Plaintiffs' allegations contained in the Second Consolidated Amended Class Action Complaint, including, but not limited to Lead Plaintiffs' allegations of antitrust violations by SNTG, and Lead Plaintiffs' reasonable reliance on the alleged false and misleading statements.

3.  The parties do not agree on the commencement date of discovery.

(a)  <u>Lead Plaintiffs' Position.</u>  Lead Plaintiffs propose the schedule set forth in Attachment B.  Lead Plaintiffs believe that their proposed schedule adheres to the interests of this Court to handle litigation in a time-efficient manner.  Defendants' own proposed schedule indicates that they believe merits discovery can be completed in three (3) months.  Lead Plaintiffs' proposed schedule allows for an even longer time period for merits discovery, which should minimize any potential modifications to the proposed schedule.  The true difference between the parties' proposed schedule rests on whether discovery should be bifurcated.  Defendants' proposal to perform class and then merits discovery substantially lengthens the scheduling.  Defendants' proposal is also not contemplated by the PSLRA, which lifts the stay on all discovery once a motion to dismiss is denied.  We

have long passed that stage in this litigation.  Lead Plaintiffs believe that merit and class discovery can easily be handled concomitantly, and has provided a reasonable time frame for the briefing of class certification.

(b)  <u>Defendants' Position.</u>  Defendants propose the schedule set forth in Attachment A.  Defendants note, however, that they have already provided Plaintiffs with several binders of relevant documents.  Defendants believe that their proposed schedule properly reflects the complexity of this international securities action.  Among other things, the international character of this action, in many cases, will require the parties to obtain discovery through the Hague Convention.  Defendants offer an active schedule with significant deadlines for practically each month of the litigation.  While the proposed schedule is an active one, it is realistic, would be manageable, should require fewer modifications than Plaintiffs' proposed schedule, and would render this case trial ready in 2009.

4.  The parties do not agree on whether to bifurcate discovery.

(a)  <u>Lead Plaintiffs' Position.</u>  It is Lead Plaintiffs' position that discovery should not be bifurcated and that discovery concerning the merits of any and all claims alleged in the Complaint should be conducted in conjunction with any necessary class certification questions.  This is method of discovery adopted by Your Honor in *In re: Priceline.com Inc. Securities Litigation*, 3:00CV01884 (DJS) and, as stated in ¶3(a) above, bifurcated discovery is not contemplated by the PSLRA and merit and class discovery can easily be handled concomitantly in this litigation.

(b)  <u>Defendants' Position.</u>  Defendants believe that bifurcated discovery will result in a more efficient and economical resolution of Lead Plaintiffs' claims.  *See Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1571 (11th Cir.

1992) (bifurcating class discovery because it "best served the ends of fairness and efficiency"); *Jacobsen v. Stop & Shop Supermarket Co.*, No. 02-Civ.-5915, 2004 WL 1918795, at *1 (S.D.N.Y. August 27, 2004) (noting that bifurcation allows class certification issues to be determined "as expeditiously as possible"); *Am. Nurses' Ass'n v. Illinois*, no. 84-C-4451, 1986 WL 10382, at *3 (N.D. Ill. September 12, 1986) (holding that bifurcation expedites class certification decisions "in accord with . . . Federal Rule 23"). Accordingly, Defendants intend to seek two phases of discovery — each of relatively short duration. The first phase of discovery would be limited to issues relevant to class certification. The second phase would concern the merits of Lead Plaintiffs' claims.

Proceeding with class discovery first and resolving the class certification issue is efficient and economical because if class certification is denied, this litigation will proceed only as to Lead Plaintiffs, which will significantly expedite this litigation and almost certainly lead to pretrial resolution. Lead Plaintiffs claim to have suffered losses of $1,708.90 in connection with their purchase of SNSA ADRs, and the issue of class certification greatly affects the value of this case. It is practically inconceivable that, if class certification is denied, this case will go forward. Moreover, in recent securities class action jurisprudence, courts have scrutinized class certification more rigorously. *See, e.g.*, *In re Initial Public Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007) (upholding denial of class certification because of "vast numbers of allocants as to whom individual issues of reliance and knowledge overwhelmed whatever common issues [plaintiffs] could identify"); *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1 (1st Cir. 2005) (tightening criteria to determine whether market is efficient).

Defendants provide their proposed schedule regarding merits discovery in anticipation of

the Court ruling on the class certification issue within sixty (60) days of the completion of the briefing of the class certification issue. Should the Court issue a ruling within that sixty-day period, Defendants believe that this case should be trial ready by December 2009.

5. The parties agree that each party may serve the number of interrogatories permitted by Rule 33 of the Federal Rules of Civil Procedure.

6. The parties agree that Lead Plaintiffs and Defendants may propound 30 written document demands.

7. The parties acknowledge that Rule 30 permits no more than 10 depositions per side. The parties agree, however, that should a party believe that it needs more than 10 depositions, the parties will attempt to work this issue out with the adverse party in good faith. Of course, if a party has a good faith basis to request a modification of the limit, it may move the Court at an appropriate time.

8. Lead Plaintiffs intend to call expert witnesses at trial. Lead Plaintiffs will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2).

10. Defendants intend to call expert witnesses at trial. Defendants will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2).

11. A damages analysis will be provided by any party who has a claim or counterclaim for damages by a date not later than the discovery cutoff date.

**F.   Dispositive Motions:**

Defendants' proposed schedule for dispositive motions is contained in Attachment A.

Lead Plaintiffs' proposed schedule for dispositive motions is contained in Attachment B.

G.  **Joint Trial Memorandum**

Defendants' schedule for trial memoranda is contained in Attachment A.

Lead Plaintiffs' schedule for trial memoranda is contained in Attachment B.

VI.  **TRIAL READINESS**

Defendants' proposed deadline for trial readiness is contained in Attachment A.

Plaintiffs' proposed deadline for trial readiness is contained in Attachment B.

Dated: May 23, 2008

| **COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP** | **WHITE & CASE LLP** |
|---|---|
| /s/ Mark S. Reich | /s/ Jaime M. Crowe |
| Samuel H. Rudman<br>David A. Rosenfeld<br>Mark S. Reich<br>58 South Service Road, Suite 200<br>Melville, NY 11747<br>Telephone: 631/367-7100<br>631/367-1173 (fax) | J. Mark Gidley (#ct18450)<br>Christopher M. Curran (#ct22743)<br>Peter J. Carney (#ct24721)<br>Jaime M. Crowe (#ct25657)<br>701 Thirteenth Street, N.W.<br>Washington, DC 20005<br>Telephone: 202/626-3600<br>202/639-9355 (fax) |
| *Lead Counsel for Plaintiffs* | |
| **SCOTT + SCOTT, LLC**<br>David R. Scott (CT 16080)<br>108 Norwich Avenue<br>Colchester, CT 06415<br>Telephone: 860/537-3818<br>860/537-4432 (fax) | **DAY PITNEY LLP**<br>Michael P. Shea (#ct19598)<br>Jason S. Weathers (#ct24579)<br>242 Trumbull St.<br>Hartford, CT 06103<br>Telephone: 860/275-0356<br>860/275-0343 (fax) |
| *Liaison Counsel* | *Attorneys for Defendants* |

## **CERTIFICATION**

I hereby certify that on May 23, 2008, a copy of the foregoing Form 26(f) Report of Parties' Planning Meeting was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

          By:    /s/ Jaime M. Crowe
                   Jaime M. Crowe (#ct25657)
                   **WHITE & CASE LLP**
                   701 Thirteenth Street, N.W.
                   Washington, DC 20005
                   Tel: (202) 626-3600
                   Fax: (202) 639-9355
                   jcrowe@whitecase.com