UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOEL MENKES, individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | No. 3:03CV00409(DJS) |
| STOLT-NIELSEN S.A., JACOB STOLT-NIELSEN, NIELS G. STOLT-NIELSEN, SAMUEL COOPERMAN, and REGINALD J.R. LEE, | : : : : : : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION AND ORDER

Gustav Rucker, individually and on behalf of all others similarly situated, brings this class action against Stolt-Nielsen S.A. ("SNSA"), Stolt-Nielsen Transportation Group ("SNTG"), Jacob Stolt-Nielsen, Niels G. Stolt-Nielsen, Samuel Cooperman, and Reginald J.R. Lee (collectively, the "Defendants"), alleging violations of Sections 10(b), 15 U.S.C. § 78j(b) (2000), and 20(a), 15 U.S.C. § 78t (2000), of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78a-78mm (2000), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (2000), promulgated thereunder. Jurisdiction exists under 28 U.S.C. § 1331 (2000). Rucker now moves for: (1)

1

final approval of the class action settlement; (2) final approval of the Plan of Allocation for the settlement's proceeds; and (3) attorney's fees and expenses.  For the following reasons, Rucker's Motion (dkt. # 131) is GRANTED.

## I. BACKGROUND

Familiarity with the underlying factual background and procedural history of this case, as set forth in this Court's prior decisions, is presumed.[1]  In brief, SNSA is a holding corporation that, among other things, engages in worldwide transportation, storage, and distribution of bulk liquids through its subsidiaries.  SNTG is SNSA's wholly-owned subsidiary.  SNTG stores, distributes, and transports bulk liquids over worldwide seaborne trade routes.  The other individually named defendants were directors or officers of these entities during the class period.

Rucker alleges that during the class period, the Defendants issued materially false and misleading statements about SNSA and STNG by misrepresenting or failing to disclose that a material portion of their revenues were derived from unlawful market allocation agreements between SNTG and its main competitors. Rucker further alleges that purchasers of SNSA securities during

---

[1] See Menkes v. Stolt-Nielsen S.A., No. 3:03CV00409, 2005 WL 3050970 (D. Conn. Nov. 10, 2005) (first motion to dismiss); Menkes v. Stolt-Nielsen S.A., No. 3:03CV00409, 2006 WL 1699603 (D. Conn. June 19, 2006) (second motion to dismiss); Menkes v. Stolt-Nielsen S.A., 270 F.R.D. 80 (D. Conn. 2010) (class certification, preliminary approval of proposed settlement and notice, appointment of class representative, class counsel and claims administrator).

2

this period paid artificially inflated prices as a result of Defendants' false and misleading statements, and suffered losses when the truth was revealed.  The Defendants deny these allegations.

In 2009, the parties reached agreement on the terms of a proposed settlement which, in essence, provides a $2 million fund for distribution to class members in exchange for their release of Defendants and for the dismissal of this class action.  On July 6, 2009, Rucker filed a Stipulation of Settlement and accompanying documents seeking certification of a settlement class as well as preliminary approval of the proposed settlement.

On September 10, 2010, the Court issued an Order certifying the class,[2] preliminarily approving the proposed settlement, approving the proposed Notices, and appointing a Class Representative, Class Counsel and Claims Administrator.  The appointed Claims Administrator initiated distribution of "Claim Packages" consisting in the Notice and Proof of Claim forms approved by the Court.  By November 16, 2010, a total of 8,684 Claim Packages were sent directly to the 1,208 identified

---

[2] With respect to United States-located purchasers of SNSA's ordinary shares traded on the Oslo Stock Exchange, the Court limited the class period to the interval beginning February 1, 2001 and ending February 20, 2003, inclusive.

3

members of the certified class[3] and to brokers, dealers, custodial banks, and other institutions that commonly hold securities as nominees for the benefit of their customers. (Dkt. # 135, ¶ 10.)  The Claims Administrator also caused the approved Summary Notice to be published in <u>Investor's Business Daily</u> and over <u>Business Wire</u>.  (Dkt. # 135, ¶ 13.)

On January 25, 2011, the Court held a hearing to determine whether the proposed settlement should be given final approval in accordance with Rule 23(e)(2) of the Federal Rules of Civil Procedure.  Ellen Gusikoff Stewart of Robbins Geller Rudman & Dowd LLP appeared on behalf of the Class.  Charles C. Moore of White & Case appeared on behalf of the Defendants.  Class Counsel represented that roughly 410 claim requests were submitted to the Claims Administrator as of the hearing date. Class Counsel further represented that no requests to be excluded from the class were received by the Claims Administrator as of the hearing date.  No objections to the proposed settlement were filed, and no class member appeared at

---

[3] The class members are all those who, from February 1, 2001 to February 20, 2003, inclusive: (1) purchased Stolt-Nielsen American Depository Receipts; or (2) were in the United States and purchased Stolt-Nielsen ordinary shares traded on the Oslo Stock Exchange.  Specifically excluded are: the Defendants; members of the families of each of the Individual Defendants; any parent, subsidiary, affiliate, partner, officer, employee, executive or director of any Defendant during the Class Period; any entity in which any such excluded person has a controlling interest; and the legal representatives, heirs, successors, and assigns of any excluded party.

the hearing to contest the proposed settlement.[4]

## II. ANALYSIS

### A. Settlement Approval

The class seeks this Court's final approval of the proposed settlement and Plan of Allocation, the terms of which are respectively set forth in the Stipulation of Settlement and Notice distributed to the class.

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action. Final approval of a proposed settlement may only be granted "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). See, e.g., McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009); Central States Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 247 (2d Cir. 2007). Determining whether a settlement is fair, reasonable, and adequate requires consideration of the "'negotiating process leading up to the settlement, i.e., procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness.'" McReynolds, 588 F.3d at 803-04 (quoting D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)).

#### 1. Procedural Fairness

In assessing a proposed settlement's procedural fairness, a

---

[4] The Court also confirms that no class member presented for the hearing's originally scheduled date of December 15, 2010 at 3:00pm.

5

court must "ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the necessary experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests."  Id. at 804 (quotation marks omitted).  Under such circumstances, the Second Circuit has recognized a presumption of fairness, reasonableness, and adequacy as to proposed settlements.  See id. at 803; Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005).

 Here, Class Counsel possessed the necessary experience and ability in the field of securities fraud litigation to effectively represent the interests of the class.  (See Dkt. # 136-1.)  Class Counsel also pursued the claims of the class to the extent necessary to effectively represent its interests. Specifically, Class Counsel investigated the claims of the class, conducted significant formal discovery, consulted experts, performed legal research, and negotiated a settlement. (Dkt. # 134, ¶¶ 44-47.)  As a result of Class Counsel's efforts, the claims of the class progressed beyond two motions to dismiss, settlement was reached, the class was certified, and adequate notice was provided to class members.  In sum, the class received adequate legal representation.  Class Counsel's performance, combined with the dearth of evidence suggesting collusion, confirm that the proposed settlement resulted from

arm's length negotiation.  Accordingly, the Court concludes that the proposed settlement is procedurally fair, reasonable, and adequate.

### 2. Substantive Fairness

In assessing the substantive fairness of a proposed settlement, the court must consider the nine Grinnell factors, namely:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000).  See McReynolds v. Richards-Cantave, 588 F.3d 790, 804 (2d Cir. 2009).  In assessing these factors, the court "must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  Grinnell, 495 F.2d at 462.

### a. Complexity, expense, and likely duration

This case has now been pending for seven years.  Litigating beyond the present point would involve complex issues of proof, particularly with respect to scienter, loss causation, and damages.  These necessary aspects of the class' claims will likely require additional discovery and expert involvement, which in turn will generate significant further expense and delay.  Accordingly, the complexity, expense, and likely duration of this action favor approval of the proposed settlement.

### b. Reaction of the class

Notice regarding the proposed settlement was sent directly to all identified potential class members, and was otherwise widely distributed.  As of January 25, 2011, no class member has objected to the proposed settlement or requested to be excluded from the class.  "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 118 (2d Cir. 2005).  Here, the complete absence of opposition or exclusion requests favors approval of the proposed settlement.

### c. Stage of the proceedings

This case has progressed through several stages of litigation including multiple dispositive motions, comprehensive

settlement negotiations including a full-day mediation session conducted by a retired district court judge, and class certification.  Throughout these proceedings, Class Counsel fully investigated the claims of the class and developed a sufficient appreciation of their merits to enter into a fair settlement.  Accordingly, the stage of the proceedings counsels in favor of approving the proposed settlement.

          d. Risk in proving liability and damages

The proposed settlement provides immediate compensation to the class.  Should litigation proceed forward, however, significant risk will persist with respect to establishing Defendants' liability.  Specifically, the Defendants steadfastly argue that scienter and loss causation cannot be established, and particular difficulty is expected in proving these necessary components of the class' claims.  The class will also have to overcome various theories asserted by the Defendants, such as the absence of a duty to disclose STNG's involvement in the market allocation agreements.  Significant risk, flowing from the difficulty in proving loss causation, will similarly persist in ascertaining the precise damages suffered by the class.  Damages amounts will thus likely turn on the unpredictable persuasive weight of expert estimates offered by each side.  In sum, the considerable anticipated risk in establishing liability and damages enhances the value conferred by the proposed

settlement, and thus counsels in favor of its approval.

### e. Risk in maintaining class status

On September 10, 2010, this Court certified the class for settlement purposes. The Court may revisit the appropriateness of certification at any time. See Fed. R. Civ. P. 23(c)(1)(C). To date, however, no challenge has been asserted by the Defendants or members of the class, and the Court finds no reason to otherwise revisit its certification decision. The risk of maintaining the class action is therefore a neutral factor which neither supports nor opposes approval of the proposed settlement.

### g. Ability to withstand a greater judgment

The class concedes that the Defendants are capable of withstanding a greater judgment. (Dkt. # 132, p. 16, dkt. # 134, ¶ 82.) Accordingly, the Defendants' ability to pay counsels against approving the proposed settlement. Standing alone, however, this factor does not definitively establish that the settlement is unfair. See D'Amato, 236 F.3d 78, 86.

### h. Reasonableness of the settlement in light of risks and potential recovery

Under the proposed settlement, the members of the class will receive immediate compensation for their alleged losses in accordance with the Plan of Allocation. The class asserts that the two million dollar settlement fund represents "over 10

10

percent" of its "most aggressive estimate of maximum provable damages," and that a recovery of such proportions "significantly exceeds the average recovery in shareholder litigation." (Dkt. # 132, p. 15 (citing studies), dkt. # 134, ¶ 66.) At preliminary review, the Court found that the proposed settlement fell within the range of possible approval. In light of the significant remaining obstacles addressed above with respect to proving liability, proving damages, and surviving any further dispositive motions, the Court now finds that the proposed settlement reasonably resolves the claims of the class.

In sum, seven of the nine <u>Grinnell</u> factors counsel in favor of approving the proposed settlement. The Court thus concludes that the proposed settlement is substantively fair, reasonable, and adequate. Accordingly, Rucker's motion for final approval of the proposed class action settlement and Plan of Allocation is granted.

### B. Attorney's Fees and Expenses

Class Counsel seeks an award of attorneys' fees of 33-1/3 percent of the Settlement Fund, or $666,666.66, plus interest at the same rate as that earned by the Settlement Fund. Class Counsel intends to allocate the awarded fees and expenses in a manner which, in its good-faith judgment, reflects each participant's contribution to the institution, prosecution, and resolution of this action. (Dkt. # 140.) "In a certified class

11

action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  The "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6) (2000).

The Second Circuit recognizes two methods by which attorney's fees may be assessed: (1) The "percentage of the fund" method;[5] and (2) The lodestar method.[6]  McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010).  Irrespective of the method used, the court must find that the resulting award is reasonable in light of: (1) "the time and labor expended by counsel"; (2) "the magnitude and complexities of the litigation"; (3) "the risk of the litigation"; (4) "the quality of representation"; (5) the requested fee's relationship to the settlement; and (6) "public policy considerations."  Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000); McDaniel, 595 F.3d at 423.

Here, the award sought is reasonable under both the

---

[5] Under the "percentage of the fund" method, the court "sets some percentage of the recovery as a fee."  Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000).

[6] Under the lodestar method, a lodestar value is ascertained by "multipl[ying] hours reasonably expended against a reasonable hourly rate.  Courts in their discretion may increase the lodestar by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the attorneys."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005).

12

percentage and lodestar methods. Under the percentage method, compensation of one third of the total fund is consistent with the proportion of common funds awarded as fees in other securities class action settlements within the Second Circuit.[7]

As to the lodestar method, Class Counsel invested a total of 1,617 hours in prosecuting this action over a span of seven years. (Dkt. # 133, p. 16, dkt. # 134, ¶ 90, dkt. # 136, ¶ 4, dkt. # 137, ¶ 4.) Based on their customary billing rates, Class Counsel submit that $667,529.50 in fees would have accrued to date. (Dkt. # 133, p. 16, dkt. # 134, ¶ 91.) This unmultiplied lodestar figure confirms that the sought award of $666,666.66 in attorney's fees falls within the range of reasonableness. The other Goldberger factors—i.e., counsel's time and labor; the complexities, magnitude, and risk of the litigation; the quality of the representation; and public policy—all support the sought award's approval. As discussed in the context of the settlement's final approval, the case raised complex issues of proof and presented substantial risk in establishing both

---

[7] See, e.g., In re Veeco Instruments Inc. Sec. Litig., No. 05 MDL 01695, 2007 WL 4115808, at *4 (S.D.N.Y. Nov. 07, 2007) (noting that "[t]hirty percent of a larger settlement fund could constitute a windfall; however, a settlement fund of [$5. 5 million] does not create such an issue."); In re Flag Telecom Holdings, Ltd. Sec. Litig., No. 02-CV-3400, 2010 WL 4537550, at *24 (S.D.N.Y. Nov. 08, 2010) (30% of $24,400,000); In re Bisys Sec. Litig., No. 04 Civ. 3840, 2007 WL 2049726, at *2-3 (S.D.N.Y. July 16, 2007) (30% of $65,870,000); Spann v. AOL Time Warner, Inc., No. 02 Civ. 8238, 2005 WL 1330937, at *8 (S.D.N.Y. June 7, 2005) (33.3% of $2,900,000); Maley v. Del Global Techs. Corp., 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (33.33% of $11,500,000); In re Blech Sec. Litig., No. 94 Civ. 7696, 2002 WL 31720381, at * 1 (S.D.N.Y. Dec. 4, 2002) (33.3% of $2,795,000).

liability and damages.  Faced with able opposing counsel, Class Counsel demonstrated its competence and experience in the field of securities fraud litigation by causing the claims of the class to progress beyond several dispositive motions through to preliminary settlement and certification.  The sought award properly balances the policy goal of encouraging counsel to pursue meritorious securities litigation while protecting against excessive attorney's fees.  See In re Nortel Networks Corp. Sec. Litigation, 539 F.3d 129, 132 (2d Cir. 2008).

    Finally, Class Counsel seeks reimbursement of in $84,048.73 in expenses incurred in connection with the prosecution of this action, plus interest at the same rate as that earned by the Settlement Fund.  The Court may award reimbursement of reasonable out-of-pocket expenses incurred by counsel and customarily charged to their clients, as long as these "were incidental and necessary to the representation."  Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987).  See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Here, Class Counsel's expenses were incurred in connection with expert consultation, mediation, filing, research, travel, and other incidental activities.  (Dkt. # 136, ¶¶ 5-7, dkt. # 137, ¶¶ 5-7.)  The Court is satisfied that these were incidental and necessary to the representation.

14

In sum, the Court finds that the requested attorney's fees are reasonable under the Goldberger factors whether measured as a percentage of the Settlement Fund or by the lodestar method, and that the requested expenses are warranted. Accordingly, the Court awards $666,666.66 in attorneys' fees and $84,048.73 in expenses, plus interest on both at the same rate as that earned by the Settlement Fund.

## IV. CONCLUSION

For the foregoing reasons, Rucker's Motion **(dkt. # 131)** is **GRANTED**. All parties shall forthwith perform in accordance with the Stipulation of Settlement (dkt. # 113). **All pending claims are hereby dismissed with prejudice.** Judgment shall enter accordingly. The clerk shall close this file.

SO ORDERED this twenty fifth day of January, 2011.

```
             /s/DJS
      DOMINIC J. SQUATRITO
    UNITED STATES DISTRICT JUDGE
```